## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

|                                          |     |                        |
|------------------------------------------|-----|------------------------|
| VON DUPRIN LLC,                          | )   |                        |
|                                          | )   |                        |
| Plaintiff,                               | )   |                        |
|                                          | )   |                        |
| vs.                                      | )   |                        |
|                                          | )   |                        |
| MORAN ELECTRIC SERVICE, INC.,            | )   | 1:16-CV-01942-TWP-DML  |
| MAJOR HOLDINGS, LLC, MAJOR               | )   |                        |
| TOOL AND MACHINE, INC., and              | )   |                        |
| ZIMMER PAPER PRODUCTS                    | )   |                        |
| INCORPORATED,                            | )   |                        |
|                                          | )   |                        |
| Defendants.                              | )   |                        |

### VON DUPRIN'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON SECTION 107(a) LIABILITY

Plaintiff Von Duprin LLC ("Von Duprin") submits this memorandum in support of its motion for partial summary judgment on liability. Von Duprin seeks judgment on the issue of liability only under Section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") for response costs incurred and to be incurred by Von Duprin to address chlorinated solvent contamination in groundwater and soil gas.

### I.  STATUTORY FRAMEWORK

In response to public concern over perceived inadequate authority and funding for existing environmental programs dealing with past disposal of hazardous substances and uncontrolled or abandoned hazardous waste sites, Congress enacted CERCLA in December of 1980. *See* 42 U.S.C. § 9601 *et seq.*  Congress enacted CERCLA in response to

the serious environmental and health risks posed by industrial pollution. *United States v. Bestfoods*, 524 U.S. 51, 55 (1998); *United States v. R.W. Meyer*, 889 F.2d 1407, 1500 (6th Cir. 1989).

The only major Congressional revision of CERCLA has been the Superfund Amendments and Reauthorization Act of 1986 ("SARA"). The culmination of three years of legislative work, SARA left the basic framework of CERCLA intact and at the same time attempted to correct certain perceived deficiencies. SARA created a separate express right of contribution. *See* 42 U.S.C. § 9613(f). In short, after SARA, CERCLA provided for a right to cost recovery in certain circumstances, §107(a), and a separate right to contribution in other circumstances, §113(f)(1). The Supreme Court has observed that §107 and §113 created "similar and somewhat overlapping" remedies. *Key Tronic Corp. v. United States,* 511 U.S. 809, 816 (1994). "The cost recovery remedy of §107(a)(4)(B) and the contribution remedy of §113(f)(1) are similar at a general level in that they both allow private parties to recoup costs from other private parties. But the two remedies are clearly distinct." *Cooper Indus., Inc. v. Aviall Serv., Inc.*, 543 U.S. 157 n.3 (2004). Von Duprin has asserted a claim for cost recovery under Section 107(a) of CERCLA against Moran Electric Service, Inc. ("Moran"), Major Holdings, LLC ("Major Holdings"), and Major Tool and Machine, Inc. ("Major Tool") (collectively, "Defendants"). [Dkt. 42] [1]

---

[1] The Defendants have asserted counterclaims against Von Duprin under Section 113(f) and cross-claims against one another. [Dkt. 46, 68, and 118]

CERCLA is very complicated environmental legislation that has been developed on a case-by-case basis in the federal courts for nearly 40 years. However, the issue that is the subject of the instant motion for partial summary judgment is uncomplicated.

## A.    Strict, Joint and Several Liability

The Seventh Circuit has held, that in enacting CERCLA § 107, Congress created a strict liability scheme. "Proof of CERCLA liability does not require proof even of negligence, let alone deliberate wrongdoing; CERCLA liability is strict." *Harley-Davidson, Inc. v. Minstar, Inc.*, 41 F.3d 341, 343 (7th Cir. 1994); *United States v. Webzeb Enterprises, Inc.*, 809 F. Supp. 646, 651 (S.D. Ind. 1992) (CERCLA imposes no fault liability). Any release of a hazardous substance, no matter how small or how long ago it occurred, is sufficient to trigger joint and several liability for the entire cost of the cleanup. *Templeton Coal Co., Inc. v. Shalala*, 882 F. Supp. 799, 824 n. 13 (S.D. Ind. 1995); *Rumpke of Ind., Inc. v. Cummins Engine Co., Inc.*, 107 F.3d 1235, 1240 (7th Cir. 1997). Once it is determined that a defendant satisfies the requirements for liability under CERCLA § 107(a), that defendant is strictly, jointly and severally liable, "[n]otwithstanding any other provision or rule of law, subject only to" the very limited defenses allowed under CERCLA.[2]  42 U.S.C. § 9607(a).

CERCLA's draconian imposition of joint and several liability, even against parties with a minimal connection to the contamination, has been upheld by the highest legal authority. *United States v. Atl. Research Corp.*, 551 U.S. 128, 136 (2007) (CERCLA

---

[2] Where a liable party fails to meet its burden of establishing an applicable defense, that party is jointly and severally liable "for the full amount of the harm." *Chem-Nuclear Sys., Inc. v. Bush*, 292 F.3d 254, 260 (D.C. Cir. 2002).

liability is joint and several, meaning that any responsible party may be held liable for the entire cost of cleanup even where other parties contributed to the contamination); *United States v. Capital Tax Corp.*, 545 F.3d 525, 534 (7th Cir. 2008) (noting that joint and several liability is the default rule under § 107(a)).

This Court should recognize and enforce the clear intent of Congress' enactment by determining that the Defendants are strictly, jointly and severally liable to Von Duprin. (The exact amount of Defendants' liability to be determined at a later stage of this litigation.) There are no questions of material fact to be decided as to the issue of CERCLA liability. Therefore, Von Duprin respectfully requests that this Court rule, as a matter of law, the Defendants are strictly, jointly and severally liable under CERCLA to Von Duprin for its response costs.

**B.      The Elements of Proof Required to Establish CERCLA Liability Are Minimal**

The elements of a CERCLA claim are: (1) the Site in question is a "facility"; (2) a release or threatened release of a hazardous substance at or from the facility has occurred; (3) the release or threatened release has resulted in necessary response costs being incurred consistent with the "national contingency plan"; and (4) the defendant is a "covered person" under §107(a) of CERCLA. 42 U.S.C. § 9607(a); *Sycamore Indus. Park Assocs. v. Ericsson, Inc.*, 546 F.3d 847, 850 (7th Cir. 2008); *NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 791 (7th Cir. 2000); *G.J. Leasing Co. v. Union Elec. Co.*, 54 F.3d 379, 386 (7th Cir. 1995); *Kerr-McGee Chem. Corp. v. Lefton Iron & Metal Co.*, 14 F.3d 321, 325 (7th Cir. 1994); *Environmental Trans. Sys., Inc. v. Ensco, Inc.*, 969 F.2d 503, 506 (7th Cir. 1992). A "covered person" includes all of the following: (1) the current owner and operator of the

facility; (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of; (3) any person, who by contract, agreement or otherwise arranged for the disposal or treatment of hazardous substances at the facility; and (4) persons who transported hazardous substances to the facility. 42 U.S.C. § 9607(a)(1)-(4); *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1497 (11th Cir. 1996). The facts required to establish the elements of a CERCLA claim against the Defendants can be conclusively demonstrated by undisputed evidence as shown in this memorandum and the evidentiary documents relied on by Plaintiff.[3] This Court should find the Defendants liable to Von Duprin under CERCLA. Therefore, Von Duprin respectfully requests partial summary judgment be entered against the Defendants on the CERCLA liability issue.

## II. STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

### A. Factual Background

This action relates to the release of hazardous substances at several properties located in Indianapolis, Indiana. [Dkt. 118, ¶ 3][4] These former manufacturing facilities are located along Dr. Andrew J. Brown Boulevard and north of East 19th Street in Indianapolis, Indiana. [DE 1 (Love Report) at 3; Dkt. 118, ¶ 3] These sites have been

---

[3] When Von Duprin successfully establishes these minimal elements of proof, it is entitled to summary judgment on the liability issue. "This is true even when genuine issues remain regarding the apportionment of damages among responsible parties." *Chesapeake & Potomac Tel. Co. of Va. v. Peck Iron & Metal Co.,* 814 F. Supp. 1269, 1274 (E.D. Va. 1992).

[4] The evidentiary material designated in support of Von Duprin's motion for partial summary judgment is being filed separately. References to Von Duprin's designated evidence is abbreviated "DE" in this brief.

impacted by releases of chlorinated solvents over a period of decades. [DE 1 at 3] The various releases each impacted the local groundwater and eventually these separate contaminant plumes joined together to make a single, comingled plume that now covers an area nearly one mile long beneath residential and commercial parts of the City (the "Plume Area"). [DE 1 (Love Report) at 3; DE 2 (IDEM Commissioner's Order) at 3; DE 3 (McInnes Report) at 2-6] Several facilities in the Plume Area used and released chemical solvents containing chlorinated solvents including: perchloroethylene ("PCE"), trichloroethylene ("TCE"), or other chlorinated compounds. [DE 1 (Love Report) at 3; DE 2 (IDEM Commissioner's Order) at 3; DE 3 (McInnes Report) at 2-6; DE 4 (Walker Dep.) at 75:9-15; 95:2-10; 96:12-14; 103:9-16; 106:11-22; 117:11-18] The operations at the various sites spanned many decades from at least the 1890's to present day. [DE 1 (Love Report) at 3-5][5] The contaminants released at the former Ertel, Zimmer Paper, and Moran sites have traveled in the groundwater to the former Threaded Rod property and beyond. [DE 1 (Love Report) at 3; DE 5 (Adam Love Dep.) at 53:8-14] The comingled plume has produced potentially harmful vapors that have impacted both commercial and residential structures along the groundwater flow path. [DE 6 (Ferree Aff.), ¶ 4] Plaintiff has incurred significant costs to mitigate these vapors under the direction of the Indiana Department of Environmental Management ("IDEM"). [DE 6 (Ferree Aff.), ¶ 16]

---

[5] Defendant Major Tool & Machine, Inc. continues to operate on its business today on the former Ertel, Zimmer Paper, and Moran sites.

### B. Former Ertel Facility

Around 1917,[6] Ertel Manufacturing began operations at what was then known as the Indianapolis Industrial Center. [DE 1 (Love Report) at 3-4; DE 6 (Ferree Aff.), Exh. A at 2-2 to 2-3] The Ertel site was a manufacturing operation that made automotive engine parts.[7] [*Id.*] Ertel had various machining operations, including quenching baths, degreasing baths, cutting, and paint booth operations, all of which involved the use of solvents. [*Id.*] The Ertel property was sold to Dynagear in 1998 and continued to manufacture auto parts until 2002. [*Id.*] The facility was abandoned leaving behind soil and groundwater impacted with chlorinated solvents. [*Id.*] Between 2004 and 2008, the City, IDEM, and USEPA performed certain cleanup activities to address TCE impacts including removal of containerized waste, demolition of the former structures, and the excavation of 37,000 tons of on-site soils. [DE 1 (Love Report) at 4] While these efforts addressed TCE impacted soil at the Ertel site, they did not directly address impacted groundwater at the site and made no effort to remediate the groundwater contamination that had been leaving the site year after year for decades. [DE 4 (Walker Dep.) at 77:20-23]

### C. Former Zimmer Paper Facility

The former Zimmer Paper site was used for chemical and equipment storage. [DE 1 (Love Report) at 5; DE 6 (Ferree Aff.), Ex. A at 2-3) A 16,000 gallon underground

---

[6] Certain facts in this brief (like the 1917 date) are not material facts but are provided as context to aid the reader in understanding the undisputed material facts which support Von Duprin's motion for partial summary judgment.

[7] Prior to Ertel's operations, site operations included manufacturing cannons and cannonballs, locomotive engines and steam boilers, and later automotive engines.

storage tank ("UST") was discovered and removed in 2007 along with 7,350 tons of chlorinated solvent impacted soil. [DE 4 (Walker Dep.) at 93:4-94:24; DE 7 (Walker Report) at 2-3] Again, no effort was made to address impacts to the groundwater either on the Zimmer Paper site or downgradient. [DE 4 (Walker Dep.) at 77:20-23]

### D. Former Moran Facility

The former Moran Motor Shop began operations in 1927. [DE 1 (Love Report) at 4] The Dynamometer building was acquired in 1969. [DE 1 (Love Report) at 4; DE 6 (Ferree Aff., Ex. A at 2-3] Moran's operations involved parts washing and varnishing. Moran also operated a degreasing pit. [DE 1 (Love Report) at 4; Dkt. 118 at ¶ 24] The degreasing operations used TCE (a chlorinated solvent) as evidenced by the presence of 225 gallons of TCE contaminated water in a former degreasing pit discovered in 1996. [DE 2 (IDEM Commissioner's Order) at 3; DE 6 (Ferree Aff.) Ex. A at 41] (After Moran ceased operations, 4,641 tons of impacted soil was removed from the Site. [DE 7 (Walker Report) at 6] But no effort was made to address impacts to the groundwater either on the Moran site or downgradient. [DE 4 (Walker Dep.) at 77:20-23]

### E. Regulatory Involvement

In August 2013, the Indiana Department of Environmental Management notified Von Duprin that it was a potentially responsible party because its predecessor had owned and operated one of the contaminated properties—specifically, the Former Threaded Rod facility—from 1965 until 1986. [DE 8 (IDEM 2013 Special Notice of Liability to Von Duprin) at 1]

At the direction of IDEM, Von Duprin performed extensive sampling and investigation of the soil, soil gas, indoor air, and groundwater at the Former Threaded Rod facility and other properties surrounding it (collectively, "the Source Area"). [DE 6 (Ferree Aff.), ¶ 7] IDEM also required Von Duprin to conduct downgradient groundwater and indoor air sampling to determine how far certain hazardous substances had migrated from the Source Area. [*Id.*] Von Duprin confirmed the presence of hazardous substances at the Former Threaded Rod facility and several other properties located within the Source Area, as well as the presence of potentially harmful substances in nearby residences. [*Id.* at ¶ 8] Thereafter, Von Duprin installed mitigation systems into each affected residence that allowed Von Duprin's consultant access to reduce the amount of contaminants to IDEM accepted levels. [DE 6 (Ferree Aff.), ¶ 9] Von Duprin continues to maintain and pay the annual cost for the operation of each residential mitigation system. [*Id.*]

As a result of the hazardous substances in groundwater and soil gas, Threaded Rod was ordered by IDEM to take action to delineate the extent of the groundwater contamination exceeding regulatory standards, to protect park visitors and nearby residents from unwanted exposure to chlorinated solvent vapors, and to determine what potential sources were contributing to the comingled groundwater plume. [DE 9 (IDEM 2012 Site Status Letter to Threaded Rod) at 1] After undertaking significant investigation (but no remedial action), Threaded Rod sued Von Duprin and Moran to recover the costs which it had incurred. [DE 10 (Amended Complaint)] Von Duprin reached a settlement with Threaded Rod that required Von Duprin to complete the

investigation and remediation of the Threaded Rod property and the impacted groundwater. [DE 6 (Ferree Aff.), ¶ 13]  In exchange for a cash settlement, Threaded Rod ceded its work product including existing monitoring wells, sampling results, laboratory data and reports prepared by environmental consultants employed by Threaded Rod. [*Id.*] The acquisition of Threaded Rod's data set and knowledge base allowed Von Duprin to focus its investigative efforts on areas that had not yet been investigated adequately by Threaded Rod. [DE 6 (Ferree Aff.), ¶ 14]

Von Duprin has continued to conduct investigations and take soil, soil gas, and groundwater samples. [DE 6 (Ferree Aff.), ¶ 15]  Von Duprin sought the cooperation of Defendants in addressing the contaminants released from sites that are currently owned or previously operated by Defendants. [DE 6 (Ferree Affidavit) at ¶ 17; DE 11 (E-mail to Counsel for Defendants)] The groundwater flowing beneath the JTV Hill Park, and under the existing homes along Yandes Street and Alvord Street, has generated soil gases with sufficient concentrations of chlorinated solvents to require remedial action to reduce or eliminate the exposure of human beings to the released contaminants. [DE 3 (IDEM Commissioner's Order) at 2-3; *see also* DE 6 (Ferree Affidavit) at ¶¶ 7-11]

Despite the dangers posed by the contaminants released on the upgradient properties that have migrated to the southwest in a groundwater plume that flows under the Threaded Rod property and then further downgradient into residential areas, the Defendants have refused to cooperate in coordinated remedial actions with Von Duprin or to share in the costs of performing such remedial actions. [DE 6 (Ferree Aff.), ¶ 17; DE 11 (E-mail to Counsel for Defendants)]

## III. SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, the Court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (mandating summary judgment when this standard is met); *Nehan v. Tootsie Roll Indus., Inc.*, 621 F. App'x 847, 849 (7th Cir. 2015). Summary judgment may be sought on all or any part of a claim. *Id.* The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. "[A] party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003). Plaintiff must come forward with "*specific facts creating a genuine issue for trial and may not rely on vague, conclusory allegations.*" *See Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist. 163,* 315 F.3d 817, 822 (7th Cir. 2003) (emphasis in original). [8]

The non-moving party must demonstrate that there is a "genuine issue for trial." FED. R. CIV. P. 56(c); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). General denials, unsupported by documentation of specific facts, are insufficient to create issues of material fact that would preclude summary judgment. A

---

[8] The burden of proof on a motion for summary judgment in a CERCLA case is the same standard that applies in any other civil case. *NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 784-85 (7th Cir. 2000) (applying Rule 56 to a CERCLA claim); *City Management Corp. v. U.S. Chemical Co.*, 43 F.3d 244, 250 (6th Cir. 1994) (same).

factual issue is *genuine* only if sufficient evidence exists for a reasonable fact finder to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-249 (1986). Not all genuine factual disputes, however, will preclude summary judgment. The disputed fact must also be *material*. "Only disputes over [material] facts that might affect the outcome of the suit … will properly preclude the entry of summary judgment." *Id*. at 248. A factual issue is material only if its resolution might change the outcome of the case under the governing law. *Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). Federal courts have found that liability issues under CERCLA § 107 are particularly susceptible to resolution on summary judgment.

## IV.  LEGAL ANALYSIS

CERCLA is a remedial statute and is interpreted broadly in order to accomplish environmental cleanups. *United States v. Nalco Chem. Co.*, 2002 U.S. Dist. LEXIS 6679, *33 (N.D. Ill. 2002) ("[T]he remedial intent of CERCLA requires a liberal statutory construction in order to avoid frustrating its purpose."). For that reason, the elements of Section 107(a) are fairly easy to establish, especially where (as here) there is abundant uncontroverted evidence tying each individual defendant to a contaminated site.

### A.  Release of a Hazardous Substance

CERCLA defines a "release" as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing

into the environment[,]⁹ 42 U.S.C. § 9601(22), of any "hazardous substance." The term "release" is interpreted broadly by the courts to encompass a wide variety of circumstances. For example, a "release" into the environment includes dumping hazardous substances onto the ground, *General Elec. Co. v. Litton Bus. Sys.*, 715 F. Supp. 949, 957 (W.D. Mo. 1989), *aff'd*, 920 F.2d 1415 (8th Cir. 1990), *cert. denied*, 449 U.S. 937 (1991); any activity that results in hazardous substances reaching the soil, *United States v. Northernaire Plating Co.*, 670 F. Supp. 742, 746-47 (W.D. Mich. 1987); and, the leaching of hazardous substances into the soil or groundwater, *United States v. Shell Oil Co.*, 841 F. Supp. 962 (C.D. Cal. 1993).

A "threat of release" is a condition with the potential to result in a release, and is sufficient in itself to establish liability under CERCLA. *State of New York v. Shore Realty Co.*, 759 F.2d 1032, 1045 (2d Cir. 1985) (holding that "suggestion that CERCLA does not impose liability for threatened releases is simply frivolous"); *see also United States v. BFG Electroplating & Mfg. Co.*, 31 Env't Rep. Cas. 1183 (W.D. Pa. 1990); *Dedham Water Co. v. Cumberland Farms Diary, Inc.*, 889 F.2d 1146, 1152 (1st Cir. 1989).

CERCLA does not require proof that a particular defendant caused a release or threatened release at a site. *United States v. Alcan Aluminum*, 964 F.2d 252, 260-61 (3d Cir. 1992). Rather, a plaintiff need only show that a hazardous substance of the type used at the site at the time of release or threatened release prompted the response action. *United States v. Monsanto*, 858 F.2d 160, 171 (4th Cir. 1988), *cert. denied*, 490 U.S. 1106 (1989).

_____

⁹ The term "environment" includes ground waters, surface waters, and land surfaces and subsurfaces within the United States. 42 U.S.C. § 9601(8).

Furthermore, a plaintiff does not need to prove that a particular amount of hazardous substance was released to the site. CERCLA liability does not depend on a threshold quantity of a hazardous substance and liability attaches regardless of the concentration of the hazardous substances present. *See Alcan*, 964 F.2d at 260-61 (3d Cir. 1992); *City of New York v. Exxon Corp.*, 744 F. Supp. 474, 483 (S.D.N.Y. 1990).

The release or threat of release "of any hazardous substance" at the site is sufficient to establish liability under CERCLA § 107(a). *United States v. South Carolina Recycling & Disposal Inc.*, 653 F. Supp. 984, 992 (D.S.C. 1984), *aff'd in part, vacated in part on other grounds sub nom.*, *United States v. Monsanto Co.*, 858 F.2d 160 (4th Cir. 1988). Actual proof of where all the hazardous substances at the site came from is not necessary to prove a "release" sufficient to establish liability. Von Duprin is not required to "trace" or "fingerprint" any of the hazardous substances released to any particular source or defendant. "[T]o require a plaintiff under CERCLA to 'fingerprint' wastes is to eviscerate the statute." *United States v. Wade*, 577 F. Supp. 1326, 1339-40 (E.D. Pa. 1983); *see also United States v. Bliss*, 667 F. Supp. 1298, 1310 (E.D. Mo. 1987) (same); *United States v. Marisol, Inc.*, 725 F. Supp. 833, 840 (M.D. Pa. 1989) (same). Accordingly, courts consistently construe CERCLA's broad definition of "release" to encompass the mere presence of a hazardous substance without regard to its source. *See, e.g.*, *Weyerhaeuser Corp. v. Koopers Co.*, 771 F. Supp. 1406 (D. Md. 1991) (holding that for purposes of summary judgment, a release occurred when hazardous substance was present at the site, and evidence exists that the same hazardous substance was used at the site).

Von Duprin's expert witness, John McInnes, opined that hazardous substances were released at the former Ertel, Zimmer Paper, and Moran sites, as the shallow soils show elevated levels of TCE, a hazardous substance. [DE 3 (McInnes Report) at 2-6] Expert witnesses retained by the Defendants, Robert Walker and Adam Love, agreed with the opinions expressed Mr. McInnes. [DE 4 (Walker Dep.) at 75:9-15; 95:2-10; 96:12-14; 103:9-16; 106:11-22; 117:11-18; DE 5 (Love Dep.) at 58:13-21] There is no genuine dispute that a release or threatened release occurred at and from each of the former Ertel, Zimmer Paper, and Moran sites. *Id.* The manufacturing operations conducted there necessarily involved, by their nature, a risk that hazardous substances would be released into the environment. *Gould, Inc. v. A&M Battery & Tire Serv.*, 987 F. Supp. 351, 356 (M.D. Penn. 1997). The site operations are the only logical explanation for the hazardous substances found in shallow soils at those sites. No other potential sources of those hazardous substances have been identified to date despite the investigatory efforts of several environmental professionals at each of the sites.

The term, hazardous substance, is defined in CERCLA § 101(14), 42 U.S.C. § 9601(14). The United States Environmental Protection Agency ("USEPA") has designated those substances the Agency considers to be hazardous under CERCLA. TCE and PCE are both designated as hazardous substances under this federal regulation. 40 C.F.R. § 302.4(a);[10] *NutraSweet Co. v. X-L Eng'g Corp.*, 933 F. Supp. 1409, 1417 (N.D. Ill. 1996) ("The list of 'hazardous substances' designated by the USEPA includes … TCE[.]").

---

[10] Table 302.4 lists the hazardous substances in alphabetical order.

At the former Ertel, Zimmer Paper, and Moran sites, the mere existence of TCE/PCE, a hazardous substance, in elevated levels in shallow soils establishes that a release occurred there which is sufficient for the purposes of establishing CERCLA liability. There is no material fact in controversy that a release or threatened release of one or more hazardous substances occurred at the former Ertel, Zimmer Paper, and Moran sites.

### B.    Each Site Is A Facility

CERCLA's definition of a "facility" is very broad:

> (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or, (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located.

42 U.S.C. § 9601(9); *see also City of Martinsville*, 2006 U.S. Dist. LEXIS 67619 at *7 n. 3 ("A 'facility' is defined as property on which hazardous substances have come to rest").[11]

As admitted by the Defendants, and the uncontroverted evidence also clearly establishes, each of the sites is a "facility" as defined by CERCLA. [Dkt. 118, ¶¶ 27, 30, 33; DE 12 (Major Tool/Major Holdings Amended Responses to Von Duprin Requests for Admission) 6, 9, 12] As discussed in Section IV.A. above, the investigations at the former Ertel, Zimmer Paper, and Moran sites have irrefutably demonstrated that elevated levels of TCE/PCE have come to be located in shallow soils, saturated soils,

---

[11] Since judicial interpretation of this term is equally broad, this requirement is seldom litigated. *See, e.g.*, *Dedham Water*, 889 F.2d at 1151 (definition covers "every, conceivable place" where hazardous substances are found); *Kelly v. Thomas Solvent Co.*, 727 F. Supp. 1532 (W.D. Mich. 1989).

and in groundwater beneath those sites. [DE 3 (McInnes Report) at 2-6; DE 4 (Walker Dep.) at 75:9-15; 95:2-10; 96:12-14; 103:9-16; 106:11-22; 117:11-18; DE 5 (Love Dep.) at 58:13-21] It is beyond question that the former Ertel, Zimmer Paper, and Moran sites are each a facility within the meaning of CERCLA Section 101(9).

Defendants have admitted this element of proof and no evidence the Defendants could possibly introduce at trial could prove that each of these sites is not a facility, so this requirement for establishing CERCLA liability should be decided in Von Duprin's favor.

### C. Moran Electric Operated the Moran Site When a Release of a Hazardous Substance Occurred

Under CERCLA § 107(a)(2), CERCLA liability attaches to any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were released. 42 U.S.C. § 9607(a)(2). As discussed above, CERCLA liability is not fault-based, and therefore, does not require any intentional disposal or even negligence on the part of any person for liability to attach. The evidence has established that a chlorinated solvent was released during the period that Moran Electric operated the former Moran site. [DE 5 (McInnes Report) at 4-5.]

Although there is no direct evidence of a spill,[12] the undisputed testimony of Von Duprin's expert conclusively establishes that a release did, in fact, occur at the former Moran site. [DE 5 (McInnes Report) at 4-5; DE 4 (Walker Dep.) 106:11-22] The distribution of PCE/TCE and their breakdown constituents in the shallow soil, deeper

---

[12] "CERCLA liability may be inferred from the totality of the circumstances; it need not be proven by direct evidence." *City of Gary*, 683 F. Supp. 2d 836, 853 (N.D. Ind. 2010) (*quoting Tosco Corp. v. Koch Industries, Inc.*, 216 F.3d 886, 892 (10th Cir. 2000)).

subsurface soil, and groundwater leave open only one possible conclusion—that a release of TCE/PCE occurred at the former Moran Site. *Id.* The how or why of a release is not relevant to the question of Moran's liability under CERCLA. It is sufficient that a release of TCE/PCE did, in fact, occur at the former Moran site and that Moran stored and used the same hazardous substance in its operations.

>    **D.**   **Major Tool and Major Holdings are the Current Owners of Sites Where Releases of a Hazardous Substance Occurred**

Major Tool is the current owner of the former Ertel Site. [Dkt. 68, ¶ 64] Major Holdings is the current owner of the former Zimmer Paper and former Moran sites. [Dkt. 46, ¶ 56] The fact that there is no evidence that Major Tool or Major Holdings participated in, or knew of, any polluting activity at these sites that would have resulted in the actual or threatened release of TCE/PCE is not relevant to the liability issue before this Court. The current owner of a facility may be held liable without fault, as Section 107 does not require the present owner to contribute to the release, mere proof of ownership is enough to establish CERCLA liability. *Valbruna Slater Steel Corp. v. Joslyn Mfg. Co.*, 2018 WL 446645, at 16 (N.D. Ind. January 16, 2018) (allocating 25% of the response costs to the current owner of the site even though the owner had no involvement in the polluting activities); *see also California Department of Toxic Substance Control v. Westside Delivery, LLC*, 888 F.3d 1085 (9th Cir. 2018); *California Department of Toxic Substances Control v. Hearthside Residential Corp.*, 613 F.3d 910 (9th Cir. 2010); *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863 (9th Cir. 2001) *(en banc).*

The undisputed evidence proves that Major Tool owns the former Ertel site and Major Holdings owns the former Zimmer Paper and former Moran sites. [Dkt. 68, ¶ 64

and Dkt. 46, ¶ 56] The fee title holder of contaminated property is subject to strict liability under Section 107(a)(1).

### E. Von Duprin Has Incurred Response Costs as a Result of a Release or Threatened Release of Hazardous Substances at or near the Sites

To find Defendants liable, this Court need only determine that Von Duprin has incurred *some* response costs. *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 672 (5th Cir. 1989); *Weyerhaeuser*, 771 F. Supp. at 1413 ("[s]o long as [plaintiff] has demonstrated that some of its costs are recoverable under CERCLA, it is entitled to judgment on the issue of liability, proof of the consistency of the remaining costs may wait until trial on the issue of damages"). Under CERCLA, "response costs" include all administrative, investigative, and prejudgment interest,[13] the costs of removal and remedial actions,[14] and attorney's fees incurred to identify potentially responsible parties.[15] 42 U.S.C. § 9601(25). Furthermore, Von Duprin does not need to establish that a particular Defendant caused the release leading to the incurrence of response costs. *See United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 721 (2d Cir. 1993).

There can be no serious dispute that Von Duprin has incurred substantial response costs in connection with the releases at and from the former Ertel, Zimmer

---

[13] *R.W. Meyer*, 889 F.2d at 1503, 1506; *South Carolina Recycling*, 653 F. Supp. at 1008-09; *United States v. American Cyanamid Co.*, 786 F. Supp. 152, 164 (D.R.I. 1992).

[14] The significance of the removal/remedial distinction is that situations calling for an urgent response are generally characterized as "removal" actions, while non-urgent situations are generally considered "remedial." *Channel Master Satellite Sys., Inc. v. JFD Elec. Corp.*, 748 F. Supp. 373, 385 (E.D.N.C. 1990).

[15] The Supreme Court has held that attorney's fees spent identifying potentially responsible parties are recoverable as "costs of response" under CERCLA. *Key Tronic Corp. v. United States*, 511 U.S. 809, 819-20 (1994).

Paper, and Moran sites. (Von Duprin has spent than more than $2 million to date excluding any prejudgment interest). [DE 6 (Ferree Aff.), ¶ 16] Von Duprin incurred these costs as a direct result of the release or threatened release of PCE/TCE at the upgradient facilities. [*Id.*] There can be no reasonable dispute that the release or threat of release of hazardous substances at the upgradient facilities caused Von Duprin to incur at least *some* response costs. Accordingly, this element of liability has been established by undisputed evidence.

### F.     At Least Some of Von Duprin's Response Costs were Necessary and Incurred Consistent with the National Contingency Plan

Under CERCLA, costs are "necessary" if they are incurred in response to a threat to human health or the environment and they are necessary to address that threat. *G.J. Leasing Co. v. Union Elec. Co.*, 854 F. Supp. 539, 562 (S.D. Ill. 1994), *aff'd*, 54 F.3d 379 (7th Cir. 1995). Whether costs are necessary is a mixed question of law and fact. *G.J. Leasing Co. v. Union Elec. Co.*, 54 F.3d 379, 386 (7th Cir. 1995). Summary judgment is appropriate for the purposes of determining each Defendant's liability if the undisputed facts demonstrate that at least some of Von Duprin's costs were necessary. *See NutraSweet*, 227 F.3d at 782. There is ample uncontested evidence that Von Duprin spent at least some amount of money to eliminate vapor intrusion in commercial and residential structures that posed a threat to human health. *See, e.g.*, [DE 6 (Ferree Aff.), ¶ 10, Ex. D, Ex. E] (IDEM approval of vapor intrusion system installation at the JTV Hill Park building); [DE 6 (Ferree Aff.) at Ex. C] (IDEM demand that vapor intrusion risk be evaluated and systems installed where indoor air levels exceeded the concentrations considered safe for human dwellings); [DE 13 (Willams Dep.) at 123:3-23; DE 6 (Ferree

Aff.), ¶ 16] (testimony of Sam Williams discussing Von Duprin's investigations and removal actions, which have cost millions of dollars and resulted in the elimination of an exposure pathway in at least six (6) structures used as residential dwellings and a public park building used by children). [DE 6 (Ferree Aff.), ¶¶ 8-11, 16]

The National Contingency Plan ("NCP") is a federal regulation promulgated by the USEPA that establishes criteria for performing removal and remedial actions designed to assure that a CERCLA-quality cleanup is achieved. 40 C.F.R. Part 300. Whether a response cost is consistent with the NCP is to be determined based on the NCP in effect at the time the response costs were incurred. *See, e.g., G.J. Leasing Co. v. Union Elec. Co.*, 854 F. Supp. 539, 563 (S.D. Ill. 1994), *aff'd*, 54 F.3d 379 (7th Cir. 1995); *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). Under the current version of the NCP, a "private party response action" is consistent with the NCP "if the action, when evaluated as a whole, is in *substantial compliance* with the applicable requirements … and results in a CERCLA-quality cleanup." 40 C.F.R. § 300.700(c)(3)(i) (emphasis added);[16] *Franklin County Convention Facilities Auth. v. American Premier Underwriters, Inc.*, 240 F.3d 534, 543 (6th Cir. 2001).

Von Duprin easily meets the current standard for NCP compliance. Von Duprin has designated the expert opinion of Sam Williams that Von Duprin's response costs were incurred in substantial compliance with the NCP. [DE 14 (Williams Report) at 10-20] One of the NCP's provisions provides that "[p]rivate parties undertaking response

---

[16] The substantial compliance standard was first introduced in the 1990 version of the NCP. Prior to April 9, 1990, the 1985 NCP (and all earlier versions) required strict compliance.

actions should provide an opportunity for public comment concerning the selection of the response action[.]" 40 C.F.R. § 300.700(c)(6). It further lists several provisions regarding public participation that are "potentially applicable to private party response actions." *Id*.

In *NutraSweet*, the Seventh Circuit found that the involvement of a public agency sufficed to meet the public participation requirements of the NCP:

> The Illinois EPA approved NutraSweet's clean-up plan, and the agency monitored the progress of the remediation. NutraSweet remediated its property until the Illinois EPA advised it that it could stop because NutraSweet's efforts had succeeded to the maximum extent possible. In light of this evidence, we are satisfied that NutraSweet met this requirement for a CERCLA recovery.

*NutraSweet*, 227 F.3d at 791; *accord Bedford Affiliates v. Sills*, 156 F.3d 416, 428 (2d Cir. 1998). So, while the Seventh Circuit has not yet decided the issue explicitly, *NutraSweet* "suggests strongly that government agency involvement … can provide an adequate substitute for public notice and comment." *Norfolk S. Ry. Co. v. Gee Co.*, 158 F. Supp. 2d 878, 883 (N.D. Ill. 2001); see also *City of Gary, Indiana v. Shafer*, 2009 WL 1605136, at *14 (N.D. Ind. June 2, 2009).

Judge DeGuilio followed the Seventh Circuit's lead in *Valbruna Slater Steel* stating: "The Seventh Circuit's analysis on this issue, brief as it may be, is the best guidance as to how to proceed. Further, such an approach is reasonable, given the NCP provides that the public comment provisions are not intended to be rigid. *See Bedford*, 156 F.3d at 428. So, it appears that state agency involvement can fulfill the public

participation requirement of the NCP." *Valbruna Slater Steel Corp. v. Joslyn Mfg. Co.*, 2015 WL 8055999, at *6 (N.D. Ind. December 4, 2015).

Other district courts in this Circuit have more broadly held that: "a state environmental protection agency's substantial involvement in a cleanup can also establish compliance with the NCP. In *Padgett Bros. LLC v. A.L. Ross & Sons, Inc.,* a plaintiff unknowingly acquired a contaminated site. When the contamination was discovered, plaintiff started searching for the persons responsible for the contamination. Eventually, the property was entered into IDEM's Voluntary Remediation Program ("VRP") and a Voluntary Remediation Agreement ("VRA") was executed. The VRA included a reporting requirement, required plaintiff to follow certain IDEM guidance when completing the work, and required that plaintiff submit a Remediation Work Plan for approval by IDEM. The *Padgett* court adopted the principle that has developed in other district courts within the Seventh Circuit that "[t]he involvement of a state environmental agency in approving cleanup plans and monitoring remediation progress satisfies the CERCLA requirement of consistency with the NCP." *City of Gary v. Shafer*, 2009 WL 1605136, *14 (N.D. Ind. June 2, 2009); *Valbruna Slater Steel Corp. v. Joslyn Mfg. Co.,* 2015 WL 8055999, at *6 n.4 (N.D. Ind. Dec. 4, 2015); *Allied Waste Transp., Inc. v. John Sexton Sand & Gravel Corp.,* 2016 WL 3443897, at *19 (N.D. Ill. June 23, 2016). The *Padgett* court concluded that the testimony and evidence before the court showed "the costs incurred by or on behalf of [plaintiff] are consistent with the provisions of CERCLA" because "[t]his work will continue to be done under IDEM's supervision and

pursuant to the terms of the VRA between IDEM and [plaintiff]." *Padgett Bros. LLC v. A.L. Ross & Sons, Inc.,* 2014 WL 3547353, *13 (S.D. Ind. July 17, 2014).

The release of hazardous substances at and from the former Ertel, Zimmer Paper, and Moran sites has resulted in the expenditure of response costs to investigate, delineate, and mitigate the environmental impacts caused by the hazardous substances (including TCE/PCE and its breakdown byproducts) that are migrating downgradient with the groundwater plume. Some of the response costs incurred by Von Duprin to date have been purely investigative in nature and others have been designed to address the soil gases emanating from the contaminated groundwater. [DE 6 (Ferree Aff.), ¶ 18] Von Duprin's investigative activities were undertaken to assess the nature and extent of the contamination in preparation for selecting interim remedial actions to protect human health from potentially harmful vapors in their homes and a public park building. [DE 6 (Ferree Aff.), ¶ 19] Many courts have held that preliminary investigation and assessment costs are *per se* consistent with the NCP because they are necessary to plan future response actions. *PMC, Inc. v. Sherwin-Williams Co.,* 151 F.3d 610, 617 (7th Cir. 1998), *cert. denied* (affirming district court ruling that site assessment costs and further investigation costs are not subject to same NCP requirements as response actions); *Donahey v. Bogle,* 987 F.2d 1250, 1255 (6th Cir. 1993) (holding that costs incurred for site investigation are always recoverable as consistent with the NCP), *vacated on other grounds,* 512 U.S. 1201 (1994); *Alcan-Toyo America v. Northern Illinois Gas,* 904 F. Supp. 833, 836 (N.D. Ill. 1995) ("[a]n investigation into the extent of the hazardous waste problem was surely necessary" and the steps a party "may" follow in making a

preliminary assessment and site investigation have few procedural requirements; holding such activities complied with the NCP); *see also CNH Am., LLC v. Champion Envtl. Servs., Inc.*, 863 F. Supp. 2d 793, 809 (E.D. Wis. 2012) (collecting Seventh Circuit district court cases holding that "initial investigation, site-assessment, and monitoring costs are recoverable under § 107(a) of CERCLA irrespective of compliance with NCP requirements.").

At minimum, the evidence in this case is uncontroverted that *some* response costs incurred by Von Duprin will be considered "consistent with the NCP" as they are of a site assessment and investigation character. *Any* response costs incurred by Von Duprin are sufficient to trigger Defendants' CERCLA liability but the actual damage amount will be determined at a later stage of this proceeding.

## G. Defendants Bear the Burden To Prove Any Affirmative Defense

Since all the elements necessary to impose CERCLA liability under §107(a) have been established, Defendants must prove an affirmative defense by a preponderance of the evidence to avoid CERCLA liability. *See, e.g., United States v. Fleet Factors Corp.*, 901 F.2d 1550, 1555 (11th Cir. 1990) (party seeking to benefit from exclusion to liability bears the burden of proving that it falls within the scope of the exclusion), *cert. denied*, 498 U.S. 1046 (1991). CERCLA §107(a) makes clear that the only defenses to liability are found in §107(b). 42 U.S.C. §9607(a). Those defenses are (1) act of God; (2) act of war; (3) act of a third party; and (4) any combination of the first three defenses. 42 U.S.C. § 9607(b); *Town of Munster v. Sherwin-Williams Co., Inc.*, 27 F.3d 1268, 1273 (7th Cir. 1994) (holding that the plain language of §107 explicitly limits the defenses to CERCLA liability to

those enumerated in §107(b); citing prior decisions from the Third, Sixth and Eighth Circuits in support). The affirmative defenses available to avoid CERCLA liability are very limited.

## CONCLUSION

Defendants' CERCLA liability is clear and can be decided as a matter of law. There is no dispute that hazardous substances were released or threatened to be released from a "facility." Likewise, there is no reasonable basis to dispute that Von Duprin has incurred necessary response costs related to the release of chlorinated solvents into the soil, soil gas, and groundwater. The undisputed facts show that Moran, Major Tool, and Major Holdings are each within the class of responsible persons who are liable for response costs under CERCLA § 107(a). And finally, at least some of Von Duprin's response costs were incurred in substantial compliance with the NCP.

This Court should grant Von Duprin's motion for partial summary judgment on liability under its CERCLA Section 107(a) claim against Moran, Major Tool, and Major Holdings because there are no genuine issues of material fact concerning the elements necessary to establish CERCLA liability.

Respectfully submitted,

*/s/  E. Sean Griggs*
E. Sean Griggs (17716-49)
Alexandra R. French (32737-29)

BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana  46204
alexandra.french@btlaw.com
sean.griggs@btlaw.com

Phone: (317) 231-7793
Facsimile:  (317) 231-7433

*Attorneys for Plaintiff,*
*Von Duprin LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was filed on the 27th day of July, 2018 through the Court's electronic filing system. Notice of the filing was sent to all counsel of record by operation of the ECF notification system, and the parties may access the filing through ECF and/or PACER.

*/s/  E. Sean Griggs*