UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| VON DUPRIN LLC, | ) |
|       Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MORAN ELECTRIC SERVICE, INC., | ) |
| MAJOR HOLDINGS, LLC, | ) |
| MAJOR TOOL AND MACHINE, INC., | ) |
| and ZIMMER PAPER PRODUCTS | ) |
| INCORPORATED, | ) |
|       Defendants. | ) |

| | | |
|---|---|---|
| MAJOR HOLDINGS, LLC, | ) | |
|       Cross-Claimant, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-01942-TWP-DML |
| | ) | |
| MORAN ELECTRIC SERVICE, INC., | ) | |
|       Cross-Claim Defendant. | ) | |

| | |
|---|---|
| MORAN ELECTRIC SERVICE, INC., | ) |
|       Counterclaimant, | ) |
| | ) |
| v. | ) |
| | ) |
| VON DUPRIN, LLC, and | ) |
| MAJOR TOOL AND MACHINE, INC., | ) |
|       Counterclaim Defendants. | ) |

## <u>DECLARATION OF ADAM H. LOVE, Ph.D.</u>

I, Adam H. Love, Ph.D., declare as follows:

1. I am and adult over the age of 21 years, and I am competent to testify to the matters set forth herein.  I have personal knowledge of the facts stated herein.

**Exhibit R**

2. I am Vice President and Principal Scientist for Roux Associates, Inc., 555 12th Street, Suite 250, Oakland, California 94607.  I authored the *Expert Report of Adam H. Love, Ph.D.,* dated May 21, 2018 (hereinafter "Love Expert Report"), which I understand was submitted to the Court in this action.  [Dkt. 135 – 1 DE 1]

3. As stated in the Love Expert Report, I hold a Bachelor of Arts degree in Geosciences from Franklin & Marshall College (1996), a Master of Science degree from University of California at Berkeley in Material Science and Mineral Engineering (1998), and a Doctor of Philosophy degree from University of California at Berkeley in Civil and Environmental Engineering (2002).  I reference the "Qualifications" section of the Love Expert Report (pp 1-2) for my extensive experience involving environmental science.

4. I was asked to provide opinions with regard to the source and release characteristics of the chlorinated volatile organic compounds (CVOC) observed in the vicinity of former Moran properties in Indianapolis, Indiana.  I was also asked to provide opinions related to the divisibility and relative contributions of the CVOC contamination from the various responsible parties at the Site (as defined and referenced in my report). [Love Expert Report, p. 1]

5. The methodology I used for establishing divisibility of the CVOC contribution from each property and calculating the relative mass contributions from each site to the groundwater contamination is based solely on my analysis of the site investigation data collected from environmental samples at the various sites. [Love Expert Report, p. 11-12]  Site investigation data is specifically collected in order to assess the extent and magnitude of contamination on a property.  Mass contribution to a discharge, release or disposal of a hazardous waste is one of the "Gore factors" and is a reasonable basis for apportionment

that I have used in numerous other matters.  No fate and transport models or other "computer models" were used in my analysis, as the Von Duprin Reply Brief misstates. Therefore, the Von Duprin Reply Brief's use of an analogy to the *NCR* methodology for apportionment is incorrect. [Von Duprin Reply Brief, p. 15]

    a. The methodology I used analyzed the unique chemistry of CVOC contamination in groundwater below and downgradient of the Von Duprin property to determine the relative CVOC contribution to groundwater from the Von Duprin property compared to all properties upgradient of the Von Duprin property.  I then used the magnitude of CVOC soil contamination at each of the upgradient properties to determine the relative CVOC contribution to groundwater among each of the upgradient properties. [Love Expert Report, p. 11-12]

    b. Von Duprin's objections to the methodology and soil data I used for establishing divisibility among the sites upgradient of the Von Duprin property have no impact on the relative CVOC contributions to groundwater determined to result from the Von Duprin site. [Love Expert Report, p. 18-19] Only groundwater CVOC characteristics were used to established divisibility and the relative CVOC contribution to groundwater from the Von Duprin property compared to all properties upgradient of the Von Duprin property.

6. While the specifics of releases from each site (volume, concentration, duration) are unknown, the location and concentrations of CVOC soil contamination at each site was established using data collected as part of each property's site investigation and this data is reasonably expected to be indicative of the overall magnitude of the historical releases from each site.  The soil data used for establishing divisibility of CVOC contribution to

groundwater among the sites upgradient of the Von Duprin property and calculating the relative contributions from each site to the groundwater contamination was complete and appropriate for these intended objectives.  While the Von Duprin Reply Brief misstates that data from the actual excavated soil are needed to assess the relative CVOC impact at each site [p. 16, 19], characterization of the excavated soil and preservation of excavated soil is unnecessary to assess the relative CVOC impact at each site, as the site investigation soil samples used in my analysis were what was used to establish the extent and magnitude of CVOC contamination at each site.

    a. The CVOC data I used for establishing divisibility of CVOC contribution to groundwater among the sites upgradient of the Von Duprin property and calculating the relative contributions from each site to the groundwater contamination were from pre-excavation site investigation soil samples and soil samples from the assessment of residual levels of contamination in the areas surrounding soil excavations, both of which were used to delineate the extent and magnitude of site contamination. The soil data was collected from the native soil and do not represent new clean soil used to fill the holes created from excavations. Based on my review, only 1 soil samples (SME-2) among approximately 470 unique soil samples (0.2% of all soil data) utilized in the soil database was collected from a location that <u>may</u> have marginally overlapped a previously excavated area.  The Von Duprin Reply Brief misrepresent my deposition testimony by stating the there was "no knowledge of the subsurface conditions that existed prior to the excavation because no samples were taken". [Von Duprin Reply Brief, p. 16] In fact, establishing the extent of the

contaminated soil excavations required site investigation data be collected pre-excavation.  My deposition answers were misrepresented in the Von Duprin Reply Brief where I was referring to not having CVOC data for waste characterization of the soil removed during excavation, not that there was never any sampling at any of the sites prior to excavation.  Again, numerous pre-excavation soil samples were required to establish the extent of the necessary excavations, and when combined with and assessment of residual levels of contamination in the areas surrounding soil excavation, were the source of the data used in the methodology for divisibility and relative contribution described above.

b.  While the additional samples from native soil that were collected post-excavation in order to assess residual levels of contamination in the areas surrounding soil excavation were included in my analysis of the overall magnitude of site soil contamination, the Von Duprin Reply Brief misrepresents the inclusion of these native post-excavation samples as skewing the relative contribution results lower compared to the use of only pre-excavation samples, when in fact, the post-excavation samples were simply incorporated into a comprehensive assessment of the overall extent of magnitude of soil contamination above the water table.  My analysis integrated data from post-excavation samples with data from pre-excavation samples to develop the most accurate determination of the extent CVOC soil contamination and thus the relative site contributions represented the best approach for assessing the magnitude of site CVOC soil contamination that existed above the groundwater on each property. [Love Expert Report, p. 27,

Figure 3-5] Thus, the inclusion of samples in my analysis from a post-excavation timeframe at upgradient properties does not result in an exaggeration of "the Threaded Rod site while underestimating the contribution of contaminants from upgradient properties" as the Von Duprin Reply Brief misstates [Von Duprin Reply Brief, p. 16-17]

c.   Since the objective of the analysis was to assess the relative contributions from each site, soil samples below the groundwater table were excluded from the soil data used for establishing divisibility of CVOC contribution to groundwater among the sites upgradient of the Von Duprin property and calculating the relative contributions from each site to the groundwater contamination [Love Expert Report, p. 11,20] because groundwater can mix together the contamination in soil below the water table from different locations. Thus, soil samples collected below the water table can represent the CVOC contributions from multiple upgradient properties. While the Von Duprin Reply Brief attributes the exclusion of soil data collected below the water table to an intent to skew the results in favor of upgradient sites over the Von Duprin site, [Von Duprin Reply Brief, p. 18] as described above, the exclusion of soil data below the water table has no impact on the calculated contribution of the Von Duprin property on groundwater CVOC contamination.  In reality, the exclusion of soil data below the water table was required in order to maintain the geographic divisibility of the soil data used to represent relative CVOC contribution from the site above the location where soil was collected.

PURSUANT TO 28 U.S.C. § 1746, I AFFIRM UNDER THE PENALTIES FOR

PERJURY THAT THE ABOVE FACTS ARE TRUE AND CORRECT THIS 28TH DAY

OF SEPTEMBER, 2018.

_____

Adam H. Love, Ph.D.