UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| VON DUPRIN LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:16-cv-01942-TWP-DML |
| | ) | |
| MORAN ELECTRIC SERVICE, INC. | ) | |
| MAJOR HOLDINGS, LLC, | ) | |
| MAJOR TOOL AND MACHINE, INC., and | ) | |
| ZIMMER PAPER PRODUCTS INCORPORATED, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS MAJOR HOLDINGS, LLC AND MAJOR TOOL AND MACHINE,
INC.'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT
AGAINST PLAINTIFF VON DUPRIN**

Defendants Major Holdings, LLC and Major Tool and Machine, Inc. (collectively, the

"Major Defendants") have demonstrated that the "harm" alleged by Plaintiff Von Duprin, LLC

("Von Duprin") is divisible and that the Major Defendants should be apportioned no liability.

There is nothing to controvert the evidence in the summary judgment record that the Major

Defendants made no contribution to the contamination, nor did they cause Von Duprin to incur

any costs. In fact, the Major Defendants only acted voluntarily to remediate impacts caused by

others.  Rather than rebut the Major Defendants' evidence as to divisibility (because it cannot),

Von Duprin ignores it and instead, cites to an inapposite case while failing to apply that court's

reasoning (which supports the Major Defendant's position) to the facts at hand.  Moreover, Von

Duprin has failed to specify any of its costs to show that the purported costs it incurred were

consistent with the National Contingency Plan, an omission not only fatal to Von Duprin's

summary judgment motion, but requiring judgment as a matter of law in favor of the Major

Defendants.  Finally, Von Duprin has not legitimately refuted the Major Defendants' designated

1

evidence that they are protected by the bona fide prospective purchaser and third party defenses to liability.

A.  <u>The Relevant Contamination Is Divisible As To The Major Defendants And The Major Defendants Should Be Apportioned No Liability For The Contamination</u>

The law on divisibility is clear.  As the Supreme Court has explained (and Von Duprin admits), when a reasonable basis exists for dividing a single harm, each party should be subject to liability only for the portion of the harm that it actually caused.  *Burlington Northern & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 613-14 (2009).  In these cases, CERCLA[1] does not impose joint and several liability.  *Id.* at 613.

The Major Defendants assert that the harm at issue in this case – contamination from a so-called "commingled plume" – is divisible as to the Major Defendants.  (Dkt. 142, Major Defendants' Brief at 20-24.)  Specifically, the Major Defendants argue that: (1) the harm is capable of apportionment because there is no evidence that the Major Defendants ever caused or contributed to any contamination; and (2) the Major Defendants should be apportioned a zero percent share of the harm because none of the harm is traceable to them.  (*Id.*)  In support, the Major Defendants cited several federal decisions demonstrating that a court can apportion a party no liability under 42 U.S.C. § 9607 ("Section 107") if the party can prove that it did not contribute to the relevant release and resultant response costs.[2]  The Major Defendants also relied upon Mr. Walker's expert opinion.  (Dkt. 142 at 22-24.)  Mr. Walker opined that there is no evidence that the Major Defendants stored, handled, used, disposed of, or otherwise released any volatile chlorinated compound on any property at issue in this litigation.  (*See* Dkt. 135-7, Expert

---

[1]  The Comprehensive Environmental Response, Compensation, and Liability Act is referred to herein as "CERCLA."

[2]  Dkt. 142 at 23-24, n. 8 (citing *United States v. Capital Tax Corp.*, 545 F.3d 525, 535 n. 8 (7th Cir. 2008); *United States v. P.H. Glatfelter Co.*, 768 F.3d 662, 678 (7th Cir. 2014); *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 270-71 (3d Cir. 1992); *United States v. Township of Brighton*, 153 F.3d 307, 318 (6th Cir. 1998); *United States v. Alcan Aluminum Corp.*, 990 F.2d 711 (2d Cir. 1993)).

Report of Walker at 5-10.)  Von Duprin's own experts did not provide any opinion that the Major Defendants caused or contributed to any contamination or any of the response costs related to that contamination.  (Dkt. 142 at 22-23.)

Von Duprin never addresses Mr. Walker's opinion, nor does it offer any evidence proving that the Major Defendants caused or contributed to any contamination.  Instead, Von Duprin curiously spends multiple pages challenging the expert opinion offered by *Defendant Moran Electric Service Inc.'s* ("Moran") expert, Dr. Adam Love, and claims that "Major asks this Court to rely on the expert report of Moran's expert (Dr. Love) to find that the harm is both theoretically capable of apportionment and that the undisputed facts point to a reasonable basis for apportionment." (Dkt. 150, Von Duprin's Response at 18-22.)  But what does Dr. Love have to do with it?  The Major Defendants did not rely upon or even cite to Dr. Love's opinion in their Brief.  (*See* Dkt. 142.)  They certainly did not ask the Court to find that harm was divisible based upon Dr. Love's opinion.  (*Id.*)  As a result, the majority of Von Duprin's response on the issue of divisibility misses the mark completely.

Von Duprin's attempt to analogize *United States v. NCR Corp.* to this case is also misguided.  688 F.3d 833 (7th Cir. 2012) (*see also* Dkt. 150 at 17-19).  Although Von Duprin is quick to point out that the court in *NCR* found that the harm in that case was not divisible, it overlooks the reason for the court's conclusion.  The evidence in that case showed that the defendant (the party seeking to prove the harm was divisible) contributed to the relevant contamination, but there was no way to determine what portion of the plaintiff's cleanup costs were attributable to the defendant's contamination.  *Id.* at 839-40.  The *NCR* defendant failed to refute the plaintiff's contention that the defendant's contributions to the contamination, taken alone, would have caused the plaintiff to undertake all of its remedial measures.  *Id.*  In other

words, because the evidence proved that the cleanup costs were not linearly correlated to the contamination caused by the defendant, the court found that the harm was not divisible. *Id.* at 839-40.

Those facts are not "fundamentally the same" as the facts here. Unlike the defendant in *NCR*, the Major Defendants have not contributed to *any* of the relevant contamination and there is no evidence that they have. (Dkt. 135-7 at 5-10; *see also* Dkt. 143-1, Declaration of Weir at 6, ¶ 35.) Von Duprin does not meaningfully dispute this fact.[3] Furthermore, unlike the evidence against the defendant in *NCR*, there is no evidence that Von Duprin took any action or incurred a single cost as a result of contamination caused or contributed to by the Major Defendants. (Dkt. 135-3, Expert Report of McInnes; Dkt. 135-14, Expert Report of Williams; Dkt. 143-4, Deposition of Williams at 104:24-105:18.) The Major Defendants' argument and evidence is entirely different from that set forth by the defendant in *NCR*.

Von Duprin further insists that the Major Defendants' divisibility position is not "legally supportable" under CERCLA (Dkt. 150 at 22-23) but, in doing so, it ignores the cases cited by the Major Defendants holding that a party can be apportioned a zero percent share of the liability if it can show the harm is divisible. (Dkt. 142 at 23-24, n. 8.) Federal courts have explained that "defendants who can show that the harm is divisible, and that they are not responsible for any of the harm, have effectively fixed their own share of the damages at zero. No causation means no liability, despite § 9607(a)'s strict liability scheme." *Township of Brighton*, 153 F.3d at 318. Other courts have similarly noted that the divisibility analysis brings causation into consideration

---

[3] The "guilty conscious" contention that Von Duprin asserts in its Introduction – that the Major Defendants *must* have caused or contributed because the Major Defendants voluntarily performed remedial actions on their properties – is nonsensical. (Dkt. 150 at 2.) That the Major Defendants voluntarily remediated their properties does not mean the Major Defendants caused the contamination they remediated. Rather, the Major Defendants remediated the contamination on the properties caused by others so that, among other things, the Major Defendants could use those properties for their business. Tellingly, Von Duprin offers no evidence to support this "guilty conscious" contention.

"through the back door."  *Alcan II*, 990 F.2d at 722.  Here, Von Duprin offers no evidence that the Major Defendants caused or contributed to any of the contamination in the commingled plume, and the only expert that has offered an opinion on the issue (Mr. Walker) expressly stated that no such evidence existed.  As the harm in this case is divisible as to the Major Defendants and the Major Defendants are not responsible for any harm, their share of the liability should be zero percent.

Accordingly, even assuming a divisibility defense applies only in "exceptional" cases (as Von Duprin claims without support), this is such a case.

B. Von Duprin Has Not Proven That Contamination From Any Site Owned Or Operated By The Major Defendants Caused Von Duprin To Incur Any Costs

Von Duprin does not challenge the general rule of law that a party does not incur "response costs" for purposes of CERCLA where the party would have incurred identical costs in the absence of any release or threatened release from the relevant facility.  *See Regional Airport Authority of Louisville v. LFG, LLC*, 460 F.3d 697, 706 (6th Cir. 2006).  Rather, Von Duprin claims only that the Major Defendants mischaracterized an express statement made by Von Duprin's own expert, wherein that expert admitted that all of the costs Von Duprin has incurred would have been incurred regardless of whether there was any contamination on the properties now owned by the Major Defendants.  (Dkt. 150 at 23-25.)

The statement is clear despite Von Duprin's attempts to retroactively revise it:

Q: "[W]ould Von Duprin have been required to incur the costs that you're testifying that it has incurred if its contamination was the only contamination present on its property?"

A: "*Yes*."

(Dkt. 143-4 at 104:14-19) (emphasis added).

5

Von Duprin's bid to salvage its case and distance itself from this admission falls short. Primarily, Von Duprin contends that the Major Defendants are misusing the admission because Mr. Williams – the expert who made the statement – was not retained to offer any opinion regarding allocation.  (Dkt. 150 at 23-25.)   Von Duprin points the Court to several quotes from Mr. Williams' deposition, wherein Mr. Williams clarifies that he did not determine which costs Von Duprin incurred as a result of which contamination.  (Dkt. 150 at 23-25.)  Of course, the Major Defendants are not attempting to establish any allocation (through Mr. Williams' admission or otherwise) among the parties at this stage of the proceedings.  Whether Von Duprin actually incurred costs because of upgradient contamination or whether Mr. Williams can identify which party caused Von Duprin to incur which costs are irrelevant considerations.  The Major Defendants cited the admission to prove that they are not liable to Von Duprin under Section 107(a).  Mr. Williams was retained by Von Duprin to offer an opinion regarding the costs and the necessity of costs that Von Duprin has incurred.  (Dkt. 135-14.)  He admitted that Von Duprin would have incurred identical costs in the absence of any release from the Ertel Facility, the Moran Property, the Zimmer Paper Parcel, or the Zimmer Packaging Facility.[4] (Dkt. 143-4 at 104:14-19.)  That admission *alone* is sufficient to find that the Major Defendants are not liable to Von Duprin for the costs Von Duprin has allegedly incurred.

   C.  <u>Von Duprin Has Not Proven That Its Costs Were Necessary Costs Incurred Consistent With The National Contingency Plan, Nor Has It Adequately Identified Its Costs</u>

   1.  *Von Duprin has not identified its costs, and the investigation or assessment costs that it references cannot be used to establish the Major Defendants' liability for all of Von Duprin's costs.*

Von Duprin must identify its costs and prove that those costs complied with the National Contingency Plan ("NCP") in order to establish the other parties' liability for the costs.  Von

---

[4] The terms "Ertel Facility," "Moran Property," "Zimmer Paper Parcel," and  "Zimmer Packaging Facility" are used herein as those terms are used in the Major Defendants' opening Brief.  (Dkt. 142.)

Duprin seeks to establish the Major Defendants' liability for its costs, but Von Duprin never specifically identifies those costs or proves that those costs were necessary response costs incurred consistent with the NCP.   According to Von Duprin, it can establish the Major Defendants' liability for *all* of its costs (both past and future) simply by showing that *some* of its costs were necessary response costs incurred consistent with the NCP.   (Dkt. 150 at 15.) Von Duprin then attempts to satisfy this self-created and self-serving burden by generally asserting that it has incurred certain costs that, by law, do not need to comply with the NCP.   (*Id.* at 9-11.) ***In other words, Von Duprin is asking this Court to find the Major Defendants liable for the entirety of its costs without adequately identifying a single cost or showing that a single cost is consistent with the NCP.***

Von Duprin's position is inconsistent with the plain language of Section 107(a) and the case law interpreting that provision.   Section 107(a) dictates that a plaintiff can only recover "necessary costs of response incurred . . . consistent with the national contingency plan."   42 U.S.C. § 9607(a).   Federal courts – including the Seventh Circuit – have repeatedly held this is an element of a plaintiff's *prima facie* case for liability under Section 107(a).[5]   Accordingly, to establish a defendant's liability for a cost, a plaintiff must show that the cost was a necessary response cost incurred consistent with the NCP.   42 U.S.C. § 9607(a).   By failing to even identify all of its costs (let alone, prove that those costs were necessary response costs incurred consistent with the NCP), Von Duprin fails to satisfy this element of its *prima facie* case against the Major Defendants.

The insufficient evidence that Von Duprin offers to prove that it has incurred *some* investigation or assessment costs cannot be used to establish the Major Defendants' liability for

---

[5] *See e.g., NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 791 (7th Cir. 2000); *County Line Inv. Co. v. Tinney*, 933 F.2d 1508, 1512 (10th Cir. 1991).

*all* of Von Duprin's costs under Section 107(a).  As a preliminary matter, Von Duprin never actually identifies the investigatory costs it claims to have incurred.  It merely points the Court and the parties to a Declaration that vaguely states Von Duprin has paid certain environmental consultants for work over a period of years.  (Dkt. 150 at 11; *see also* Dkt. 136, Declaration of Robert Ferree at 1-5.)  Without more, it is impossible for the Court or the parties to ascertain the specific nature of these activities and determine whether they were, in fact, investigation or assessment costs that need not comply with the NCP.  In any event, the law is clear that a party cannot use its incurrence of investigation or assessment costs (costs which do not need to be incurred consistent with the NCP) to establish a defendant's liability for other costs (costs which must be incurred consistent with the NCP).  *Marriott Corp. v. Simkins Indus., Inc.*, 825 F.Supp. 1575, 1583-85 (S.D. Fla. 1993).  Tellingly, Von Duprin ignores the *Marriott* case – a case wherein the court specifically found that the mere expenditure of investigatory costs is not sufficient to prove compliance with the NCP.  *Id.*  In short, Von Duprin has not adequately proven that it incurred investigation and assessment costs and, even if it had, it cannot use the incurrence of those costs to establish the Major Defendants' liability for other yet to be identified costs.

The cases that Von Duprin cites only provide further support for the conclusion that Von Duprin cannot establish the Major Defendants' liability for all of its costs without identifying those costs and proving that they were necessary response costs incurred consistent with the NCP.[6]  For instance, Von Duprin cites *NutraSweet* in its opening Brief and in its

---

[6] The *Continental Title Co. v. Peoples Gas Light & Coke Co.* case cited by Von Duprin (Dkt. 150 at 10) is inapposite for several reasons.  No. 96 C 3257, 1999 WL 753933 (N.D. Ill. Sep. 15, 1999).  First, the district court relied upon the magistrate judge's recommendation in reaching its conclusion, but the magistrate judge incorrectly found that compliance with the NCP was not an element of a plaintiff's *prima facie* case for liability under Section 107.  *Id.* at *3; *see also Continental Title Co. v. Peoples Gas Light & Coke Co.*, No. 96 C 3257, 1999 WL 1250666, at *5 (N.D. Ill. Mar. 18, 1999).  Second, and equally importantly, the only costs at issue in that case were

Reply/Response.   (*See* Dkt. 134, Von Duprin's Brief at 20-23; Dkt. 150 at 12.)   However, as noted in the Major Defendants' original Brief, in *NutraSweet*, the defendant was found partially liable for the plaintiff's identified cleanup costs only after the defendant failed to challenge "the NCP issue at summary judgment."  227 F.3d at 791.   After explaining that the defendant should have addressed the NCP issue on summary judgment, the Seventh Circuit expressly stated, "***for if [the plaintiff] did not comply with the NCP, then [the defendant] would not have been liable for any of [the plaintiff's] clean-up costs***."[7]   Here, the Major Defendants have argued that Von Duprin has not complied with the NCP, and Von Duprin has not shown that it has.   Accordingly, the Major Defendants should not be liable for Von Duprin's costs.

Other courts have similarly held that a party is not entitled to summary judgment on the issue of liability where the party does not show that all of its costs were incurred consistent with the NCP.  *See Marcas, L.L.C. v. Bd. of Cnty. Comm'rs of St. Mary's Cnty.*, 977 F.Supp.2d 487, 499-500 (D. Md. 2013).   In *Marcas*, for instance, the district court initially granted the plaintiff summary judgment on the issue of liability under Section 107(a) because the district court believed the plaintiff needed to show only that it had incurred some costs consistent with the NCP.   817 F.Supp.2d 692, 746 (D. Md. 2011).   However, when the defendant reasserted its argument that it could not be liable to the plaintiff under Section 107(a) because the plaintiff had not proven that *all* of its costs were necessary responses costs incurred consistent with the NCP later in the litigation, the court reconsidered and vacated its prior holding.   977 F.Supp.2d at 500.

---

preliminary investigation and assessments costs.  *Continental I*, 1999 WL 1250666 at *5; *Continental II*, 1999 WL 753933 at *3.  Here, there are more than preliminary investigation and assessments costs at issue.

[7] *Valbruna Slater Steel Corp. v. Joslyn Mfg. Co.* – a case cited frequently by Von Duprin in its Response/Reply – relied upon *NutraSweet* in determining that summary judgment on the issue of liability is appropriate where the facts demonstrate that some of a plaintiff's costs were necessary.  No. 1:10-CV-044-JD, 2015 WL 8055999, at *4 (N.D. Ind. Dec. 4, 2015).  However, the *NutraSweet* court affirmed only a limited holding that addressed a plaintiff's ability to establish liability when the defendant does not challenge the plaintiff's compliance with the NCP on summary judgment.  227 F.3d at 791.  The Seventh Circuit did not hold that a party can establish a defendant's liability for all of the plaintiff's costs by showing that some of the costs were necessary response costs incurred consistent with the NCP, especially where the defendant challenges "the NCP issue" on summary judgment.  *Id.*

Specifically, the court found that because the plaintiff had failed to present evidence sufficient to show that it complied with at least one provision of the NCP, the plaintiff could not establish an element of its *prima facie* case for liability against the defendant. *Id*. at 500-01. "On that basis alone," the plaintiff's liability claim failed and the plaintiff was not entitled to summary judgment. *Id*. Here, as shown in the Major Defendants' opening Brief, Von Duprin has failed to prove that its costs comply with several relevant provisions of the NCP. For that reason alone, Von Duprin cannot establish the Major Defendants' liability under Section 107(a).

      2.  *Von Duprin's other costs must have been incurred consistent with the NCP, but were not.*

Perhaps realizing that it cannot show that all of its costs were necessary response costs incurred consistent with the NCP, Von Duprin simultaneously contends: (1) that the NCP's requirements are inapplicable to most or all of the costs it has incurred to date; and (2) that the Indiana Department of Environmental Management's ("IDEM") involvement constitutes compliance with the NCP. (Dkt. 150 at 9-16.) Neither argument is factually or legally supported.

With regard to the first argument, Von Duprin's position is inconsistent with that of *its own* purported NCP expert. Although Von Duprin accuses the Major Defendants of "ignor[ing]" Mr. Williams' report (Dkt. 150 at 12), it is Von Duprin that overlooks several conclusions offered by Mr. Williams. Von Duprin now claims that the NCP requirements are inapplicable to the costs it has incurred to date. (*Id*.) However, Mr. Williams identifies several actions Von Duprin has conducted (and presumably seeks to recover costs for conducting) that must comply with the NCP. For instance, Mr. Williams identified multiple "applicable requirements" under 40 C.F.R. § 300.415 relating to the vapor mitigation work that Von Duprin supposedly performed. (Dkt. 135-14 at 20.) Likewise, Mr. Williams noted that activities Von Duprin conducted were required to comply with 40 C.F.R. § 300.400(g). (*Id*. at 18.) Likewise, Mr.

Hokkanen – the NCP expert retained by the Major Defendants – opined that the NCP applied to certain actions Von Duprin claims to have already undertaken.  (*See* Dkt. 143-5, Expert Report of Hokkanen.)

Mr. Hokkanen, however, showed that Von Duprin had not complied with multiple NCP requirements. (Dkt. 143-5 at 4-8; *see also* Dkt. 142 at 32-39.)   Among other things, Mr. Hokkanen noted that Von Duprin was required to, but did not, comply with the following NCP provisions:  40  C.F.R.  300.160(a)(1);  40  C.F.R.  §  300.415(b)(4)(ii)(A);  40  C.F.R.  § 300.415(b)(4)(ii)(B); 40 C.F.R. § 300.415(b)(4)(i); 40 C.F.R. § 300.150; 40 C.F.R. § 300.400(g); 40 C.F.R. § 300.400(c); 40 C.F.R. § 300.155; 40 C.F.R. § 300.700(c); 40 C.F.R. § 300.415(n); and 40 C.F.R. § 300.430.  (*Id.*)   Rather than substantively responding to the arguments and evidence that the Major Defendants set forth demonstrating that Von Duprin had not complied with the relevant NCP requirements, Von Duprin brushes those arguments, that evidence, and those NCP provisions aside and claims that "Von Duprin's compliance with specific provisions of the NCP are immaterial[.]" (Dkt. 150 at 15 (internal citations omitted).)   But Von Duprin's compliance with the NCP is not immaterial; it is an element of its *prima facie* case against the Major Defendants.  *NutraSweet*, 227 F.3d at 791.  As stated by its own expert, Von Duprin's costs must comply with the NCP, and Von Duprin has not presented any evidence sufficient to rebut the Major Defendants' arguments that Von Duprin did not comply with several provisions of the NCP. Von Duprin has failed to prove this element of its claim against the Major Defendants.

3. *IDEM's involvement is not a substitute for compliance with the NCP.*

Von Duprin cannot salvage its claim by contending that IDEM's involvement equates to compliance with the NCP.  First, as explained more fully in the Major Defendants' opening Brief, the Seventh Circuit did not create a broad rule that absolves a party from showing that its

costs were incurred consistent with the NCP when a state agency is involved. (Dkt. 142 at 40-41.)[8]

Regardless, even if IDEM's involvement could theoretically help Von Duprin satisfy this element of its claim, IDEM's involvement in this case is not the kind that would allow Von Duprin to meet this requirement for CERCLA recovery. Although Von Duprin goes to great lengths to inform the Court that IDEM "approved" a Remedial Work Plan ("RWP") during the briefing of these dispositive motions, Von Duprin curiously fails to inform the Court that IDEM did not (and could not) officially approve its proposed RWP because the RWP is still subject to a public comment period and the proposed RWP was incomplete. (Dkt. 151-1, IDEM Letter at 1-2.) Indeed, the RWP Von Duprin submitted did not address the remediation of contamination in the groundwater – a point of obvious contention in this case. (*Id*. at 1.) Because the proposed RWP did not address a groundwater remedy, the RWP could not receive approval by IDEM. (*Id*.) Furthermore, there is no dispute that Von Duprin has not even begun remediating the contamination on its own property. (Dkt. 150 at 20; Dkt. 151-1 at 1-2.)

These are important omissions by Von Duprin, differentiating IDEM's involvement in this case from that in other cases in which courts have found such involvement might indicate compliance with the NCP. For instance, in *NutraSweet* (the case cited as purportedly creating the rule allowing parties to use state involvement to satisfy this element of their *prima facie* Section 107(a) liability claim), the court only determined that the plaintiff met this requirement when the plaintiff showed that the Illinois EPA had approved its cleanup plan and the plaintiff had "remediated its property until the Illinois EPA advised it that it could stop because [the plaintiff's] efforts had succeeded to the maximum extent possible." 227 F.3d at 791. Here,

---

[8] Other federal courts have more expressly ruled that state regulatory involvement is not a substitute for compliance with the NCP. *See e.g.*, *Union Pacific R. Co. v. Reilly Indus., Inc.*, 215 F.3d 830, 839 (8th Cir. 2000); *Sherwin-Williams Co. v. City of Hamtramck*, 840 F.Supp. 470, 477 (E.D. Mich. 1993).

conversely, IDEM has not approved Von Duprin's proposed RWP and Von Duprin has not even begun remediating its contamination on its property. (Dkt. 150 at 20; Dkt. 151-1 at 1-2.) It certainly has not remediated its property to the "maximum extent possible." Even *Valbruna* – the case upon which Von Duprin heavily relies – is distinguishable. (Dkt. 150 at 13-14.) In *Valbruna*, the court held that IDEM's involvement satisfied the NCP compliance requirement where, among other things, IDEM had raised concerns regarding the plaintiff's proposed RWP and the plaintiff had subsequently addressed those concerns and remediated the relevant area. 260 F.Supp.3d at 998-99. To date, Von Duprin has not addressed IDEM's comments regarding its proposed RWP, nor has it even begun to remediate its own contamination.

IDEM's involvement in this case is more similar to its involvement in the *City of Gary v. Shafer* case. No. 2:07-CV-56-PRC, 2009 WL 1605136, at *14 (N.D. Ind. June 2, 2009). In *Shafer*, the plaintiff – like Von Duprin – asserted that it had complied with the NCP because it entered into IDEM's Voluntary Remediation Program ("VRP") to ensure a CERLCA-quality cleanup with IDEM's assistance. *Id.* The court disagreed. *Id.* The court remarked that although the plaintiff had (among other things) submitted certain documents to IDEM, it – like Von Duprin – had no final remedial plan. *Id.* As a result, the court concluded that "IDEM's level of involvement in the instant matter is likely insufficient to indicate NCP compliance" and denied the plaintiff's motion for summary judgment. *Id.* at *14, 17. Given the undisputed facts here, IDEM's involvement in this matter is not sufficient to indicate NCP compliance, much less to establish it as a matter of law.

4. *Conclusion*

Despite Von Duprin's assertions otherwise, the Major Defendants are not asking the Court to determine which precise costs may later be recovered from it or other parties. (Dkt. 150

at 11.)  Rather, the Major Defendants contend that Von Duprin has not proven its *prima facie* case of liability against them.  To establish a defendant's liability under Section 107(a), a private party must show that the costs it incurred were necessary responses costs incurred consistent with the NCP.  42 U.S.C. § 9607(a); *NutraSweet*, 227 F.3d at 227 F.3d at 791.  Although Von Duprin seeks to establish the Major Defendants' liability for ***all*** of the costs it has or will incur, Von Duprin has not identified those costs and cannot prove that all of its necessary response costs were  incurred consistent with the NCP.  On this basis alone, Von Duprin's Section 107(a) claim fails and the Major Defendants are entitled to summary judgment.

   D.   <u>The Major Defendants Are Bona Fide Prospective Purchasers</u>[9]

      1.   *The Zimmer Packaging Facility*

   The Major Defendants demonstrated that Major Tool was a bona fide prospective purchaser ("BFPP") of the Zimmer Packaging Facility.  (Dkt. 142 at 42-50.)  Von Duprin did not address or rebut the evidence presented by the Major Defendants on summary judgment as to BFPP status for the Zimmer Packaging Facility.  As a result, Major Tool is a BFPP and the Major Defendants cannot be held liable for any costs incurred relating to contamination from the Zimmer Packaging Facility.

      2.   *The Zimmer Paper Parcel, the Moran Property, and the Ertel Facility*

   The challenges that Von Duprin does raise regarding the Major Defendants' BFPP status as to the Zimmer Paper Parcel, the Moran Property and the Ertel Facility are unavailing and

---

[9] The argument Von Duprin asserts in its Introduction regarding Ms. Weir's Declaration is illogical and contradicted by Von Duprin's own evidence.  (Dkt. 150 at 5.)  Specifically, Von Duprin asks how Ms. Weir can possibly have personal knowledge of events that occurred before she became CFO of the Major Defendants.  (*Id.*)  However, Ms. Weir testified that her role as CFO requires her to understand the environmental issues relating to the properties the Major Defendants own and operate.  (Dkt. 143-1 at 1-2, ¶ 3.)  As many of those environmental issues relate to activities that occurred before Ms. Weir became CFO of the Major Defendants (and before the Major Defendants acquired the properties), Ms. Weir's role as CFO necessarily requires her to understand events that predate her time with the Major Defendants.  This is not a novel representation by Ms. Weir.  In fact, Von Duprin also offers a declaration of an individual who testified to matters that occurred long before he accepted employment with his newest environmental consultant company.  (Dkt. 136 at 1-5.)

ultimately lead to the same conclusion – the Major Defendants are BFPPs and cannot be held liable under Section 107(a). Von Duprin essentially raises two arguments regarding each property: (1) the Major Defendants did not comply with the all appropriate inquiries rule (the "AAI rule") (42 U.S.C. § 9601(40)(B)(ii)); and (2) the Major Defendants did not comply with the "appropriate care" requirement (42 U.S.C. § 9601(40)(B)(iv)).   Neither argument is persuasive.

### a.   The "All Appropriate Inquiry" Rule

<u>Zimmer Paper Parcel</u>:  Von Duprin claims Major Holdings did not comply with the AAI rule because the Phase I Environmental Site Assessment ("Phase I") that was conducted less than a year before Major Holdings acquired the property was technically prepared for Major *Tool*. (Dkt. 150 at 32.)   But in the final version of the AAI rule, the United States Environmental Protection Agency ("EPA") retained the provision expressly stating that "all appropriate inquiries investigations may be conducted by or for one party and used by another party."  70 FR 66070-01, 2005 WL 2847047 (November 1, 2005).

Von Duprin also claims that the Phase I is insufficient because it does not comply with each of the requirements included in 40 C.F.R. § 312.1 *et. seq.* (Dkt. 150 at 32-33.)  However, the Phase I was completed under the ASTM Standard E1527-05 "Standard Practice for Environmental Site Assessments: Phase I Environmental Site Assessment Process."  (Dkt. 143-1 at 13.)  Between November 1, 2006 and March 22, 2009, 40 C.F.R. § 312.11 provided:

> The following industry standards may be used to comply with the requirements set forth in §§ 312.23 through 312.31: (a) The procedures of ASTM International Standard E1527-05 entitled "Standard Practice for Environmental Site Assessments: Phase I Environmental Site Assessment Process. [10]

---

[10] The EPA similarly clarified that the "ASTM E1527-05 Phase I Environmental Site Assessment Standard is consistent and compliant with EPA's final rule and may be used to comply with the provision of the all appropriate inquiries final rule."  United States Environmental Protection Agency, *Comparison of the Final All Appropriate Inquiries Standard and the STM E1527–00 Environmental Site Assessment Standard*, at 1 (2005); *see also* 70 FR

In other words, the Phase I did not need to comply with all of the provisions of 40 C.F.R. § 312.1 *et. seq.* because it was performed in accordance with the ASTM Standard E1527-05.

<u>Moran Property</u>:  Von Duprin asserts that Major Holdings did not comply with the AAI rule because a Phase II Site Investigation ("Phase II") was conducted on the property before Major Holdings acquired it, rather than a Phase I.  (Dkt. 150 at 34.)  While a party can satisfy the AAI rule by conducting a Phase I, a Phase I is not the exclusive means by which to comply with the rule.  *R.E. Goodson Const. Co., Inc. v. International Paper, Co*., No. 4:02-4184-RBH, 2006 WL 1677136, at *6 (D.S.C. June 14, 2006) (finding argument that party had not satisfied the AAI rule because the party had not performed a Phase I prior to purchasing the property "unconvincing").  Rather than performing another Phase I on the Moran Property – a property that had been significantly investigated before Major Holdings purchased it – the Major Defendants chose to conduct a Phase II Site Investigation (a more in-depth investigation that is typically performed after a Phase I).  (Dkt. 143-3, Declaration of Zumbaugh and Phase II; *see also* Dkt. 143-1 at 2, ¶¶ 4-5.)  The Phase II involved multiple site investigation activities, including soil and groundwater sampling, provided the results of that sampling, and contained recommendations for ensuring that the contamination on the property was below the relevant IDEM screening levels.  (Dkt. 143-3 at 4-7.)  The Phase II also addressed previous operations on the property.  (*Id*.)  Accordingly, Major Holdings satisfied the AAI rule for the Moran Property.

<u>Ertel Facility</u>: Although IDEM has already determined that Major Tool qualifies as a BFPP for the Ertel Facility (Dkt. 143-2 at 35-50), Von Duprin nevertheless claims that it is not. (Dkt. 150 at 35-36.) Specifically, Von Duprin maintains that because Major Tool *leased* the property before it purchased the property, the Phase I that Major Tool conducted before it

---

66070-01, 2005 WL 2847047 (November 1, 2005) ("Persons conducting all appropriate inquiries may use the procedures included in the ASTM E1527-05 standard to comply with today's final rule.")

*purchased* the property cannot satisfy the AAI rule. (*Id.* at 35.)  According to the BFPP statute, "a person who . . . acquires ownership of the facility after January 11, 2002" and establishes the remainder of the BFPP criteria may qualify as a BFPP.  42 U.S.C. 9601(40)(B)(A)(i).  The relevant facts are undisputed: (1) Major Tool acquired the Ertel Facility on January 31, 2013; (2) on January 17, 2013, Heartland prepared a Phase I for the Ertel Facility; and (3) the Phase I was conducted in general conformance with the ASTM Standard E1527-05.  (Dkt. 143-1, Ertel Phase I at 116-133; Dkt. 143-2 at 1-33; Dkt. 143-1 at 5, ¶ 16.)  That Major Tool leased the property prior to purchasing it or that the BFPP rule contains separate provisions pertaining to lessees does not mean Major Tool cannot establish its BFPP status by showing that it performed a Phase I before it purchased the property.  Tellingly, Von Duprin cites no case law or statutory provision supporting its interpretation of the law.  Thus, as IDEM found, Major Tool is a BFPP of the Ertel Facility.[11]

### b.  The "Appropriate Care" Requirement

In a final effort to discredit the Major Defendants' BFPP status, Von Duprin argues that the Major Defendants cannot qualify as BFPPs because they have failed to exercise appropriate care with respect to the hazardous substances found on the properties.  (Dkt. 150 at 30-36.)  This argument ignores the substantial voluntary investigation and remediation activities that have been performed on each of the properties and which are detailed more fully in the Major Defendants' opening Brief (Dkt. 142 at 8-14) and in Mr. Walker's expert report (Dkt. 135-7 at 6-

---

[11] Although Von Duprin does not claim that that Major Tool has not complied with the land use restrictions on the Ertel Facility, and although Von Duprin does not set forth any evidence demonstrating that Major Tool has not complied with those restrictions, Von Duprin also argues that Major Tool has not has not *set forth enough evidence* to prove that it complied with the restrictions.  (Dkt. 150 at 35-36.)  However, Natalie Weir – Major Tool's Chief Financial Officer – testified based upon her own personal knowledge that Major Tool has complied with all of the relevant land use restrictions and institutional controls on the property.  (Dkt. 143-1 at 5, ¶ 31.)  Federal Rule of Civil Procedure 56 expressly allows a party to support its assertions on summary judgment by filing a declaration and Von Duprin does not identify any reason to consider Ms. Weir's declaration inaccurate or inadmissible, at least as it pertains to Major Tool's compliance with the land use restrictions.  Fed. R. Civ. P. 56.

10). To summarize, significant remediation (including testing, monitoring, and excavation) has been performed on each property. These extensive activities "resulted in a substantial reduction of the contaminant mass; thereby, reducing the potential migration of contamination to the groundwater" from any of these properties. (*Id.* at 5.) In fact, IDEM even issued a No Further Action letter for the Ertel Facility, meaning IDEM does not require any further remedial activities on the property because it no longer poses any threat to any downgradient property. (Dkt. 143-2, Ertel No Further Action Letter at 52-57.)

Although Von Duprin has not even begun remediating the contamination on its own property (Dkt. 150 at 20; Dkt. 151-1 at 1-2), it claims that the Major Defendants' extensive activities are somehow not enough to satisfy the "appropriate care" requirement. (Dkt. 150 at 32-35.) For clarification, that prerequisite only requires the Major Defendants to exercise "appropriate care with respect to hazardous substances found at the facility . . . ." 42 U.S.C. § 9601(40)(B)(iv). Notably, the EPA has clarified that, in creating the rule, "Congress did <u>not</u> intend to create, as a general matter, the same types of response obligations that exist for a CERCLA liable party (e.g., removal of contaminated soil, extraction and treatment of contaminated groundwater)."[12]   In other words, the Major Defendants' actions appear to be *in excess* of what is required under the rule. Indeed, by claiming that the Major Defendants should have done more to treat or otherwise remediate the groundwater at issue here, Von Duprin is claiming that the Major Defendants should have done the ***very thing*** Congress did not intend to require them to do under the rule. The Major Defendants are not obligated to ensure that every molecule of contamination that may have existed on the properties (including molecules that may have existed before the Major Defendants ever acquired that property) is remediated. This

---

[12] United States Environmental Protection Agency, *Interim Guidance Regarding Criteria Landowners Must Meet in Order to Qualify for Bona Fide Prospective Purchaser, Contiguous Property Owner, or Innocent Landowner Limitations on CERCLA Liability ("Common Elements")*, (March 6, 2003) (emphasis in the original).

is particularly true where – as here – the contamination on the downgradient property is magnitudes greater and has not been addressed. (Dkt. 150 at 20; Dkt. 151-1 at 1-2.) Accordingly, the Major Defendants have acted with appropriate care.

E. <u>The Major Defendants Are Protected By The Third Party Defense</u>.

In maintaining that the Major Defendants cannot assert the third party defense for certain properties, Von Duprin appears to conflate the third party defense with the innocent landowner defense. (Dkt. 150 at 26-29 (discussing innocent landowner defense and citing case "rejecting" innocent landowner defense).) The two defenses are similar, but separate.

Under Section 107(b)(3), the third-party defense applies to a defendant that can establish that: (1) another party "solely caused" the release of hazardous substances; (2) the responsible party did not cause the release in connection with a contractual, employment, or agency relationship with the defendant; (3) the defendant exercised due care with respect to the hazardous substances; and (4) the defendant took reasonable precautions against the foreseeable acts of third parties. 42 U.S.C. § 9607(b)(3). To assert the innocent landowner defense – an affirmative defense added to CERCLA in 1986 and modified in 2002 – a defendant must establish these same elements. *See* 42 U.S.C. § 9607(b)(3); 42 U.S.C. § 9601(35)(A). However, the innocent landowner defense is distinct from the third party defense in that the innocent landowner defense also requires the defendant to satisfy additional requirements, including making all appropriate inquiries prior to purchasing the property and taking reasonable steps to stop continuing releases. 42 U.S.C. § 9601(35)(A). The third party defense does not contain that language. 42 U.S.C. § 9607(b)(3). Thus, Von Duprin's citations of the innocent landowner defense requirements and its arguments regarding the Major Defendants' failure to meet those requirements are misplaced. (Dkt. 150 at 26-29.)

The contentions made by Von Duprin that *do* apply to the third party defense are equally futile.  Although Von Duprin repeats its mantra about the Major Defendants not acting with sufficient "due care" or "precaution," as explained above and in the Major Defendants' opening Brief, the Major Defendants performed significant investigation and remedial activities on the properties, which "resulted in a substantial reduction of the contaminant mass; thereby, reducing the potential migration of contamination to the groundwater" from any of these properties.  (Dkt. 135-7 at 5) (*see also* Section D (b) *supra*.)  The Major Defendants' actions are sufficient to satisfy the "due care" and "reasonable precautions" elements of the third party defense.  Likewise, while the Major Defendants did purchase the Zimmer Paper Parcel from Defendant Zimmer Paper Products, Inc. ("Zimmer"), that "contractual relationship" bears no connection to any contamination on the Zimmer Paper Parcel and there is no evidence that the Major Defendants had any control over Zimmer.  *Westwood Pharm., Inc. v. Nat. Fuel Gas Distrib. Corp.*, 964 F.2d 85, 91-92 (2d Cir. 1992);[13] *American Nat'l Bank & Trust Co. v. Harcros Chems*, 997 F. Supp. 994, 1001-02 (N.D. Ill. 1998).  Additionally, there is no record evidence that Zimmer caused any contamination on the Zimmer Paper Parcel. (Dkt. 135-7 at 6-7.)  Accordingly, Von Duprin has not shown that the Major Defendants fail the "contractual relationship" element of the third party defense.  The Major Defendants are, therefore, entitled to protection from Von Duprin's Section 107(a) under the third party defense.

## CONCLUSION

For all of the foregoing reasons, the Major Defendants request that the Court grant them judgment as a matter of law, deny Von Duprin's motion for summary judgment and grant them all other appropriate relief.

---

[13] "In order for the landowner to be barred from raising the third-party defense . . ., the contract between the landowner and the third party must either relate to the hazardous substances or allow the landowner to exert some element of control over the third party's activities."

Respectfully submitted,

*/s/ Angela P. Krahulik*
Angela P. Krahulik (23036-49)
Nicholas B. Reuhs (31181-49)
Samuel B. Gardner (32825-29)
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN  46282-0200

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2018, a copy of the foregoing was filed electronically.  Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Angela P. Krahulik*
Angela P. Krahulik
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN  46282-0200