# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| VON DUPRIN LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-01942-TWP-DML |
| | ) | |
| MORAN ELECTRIC SERVICE, INC., | ) | |
| MAJOR HOLDINGS, LLC, | ) | |
| MAJOR TOOL AND MACHINE, INC., and | ) | |
| ZIMMER PAPER PRODUCTS INCORPORATED | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| MAJOR HOLDINGS, LLC, | ) | |
| MORAN ELECTRIC SERVICE, INC., | ) | |
| MAJOR TOOL AND MACHINE, INC., | ) | |
| | ) | |
| Counter Claimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VON DUPRIN LLC, MAJOR HOLDINGS, LLC, | ) | |
| and MAJOR TOOL AND MACHINE, INC., | ) | |
| | ) | |
| Counter Defendants. | ) | |
| | ) | |
| MAJOR HOLDINGS, LLC, AND MAJOR TOOL | ) | |
| AND MACHINE, INC., | ) | |
| | ) | |
| Cross Claimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MORAN ELECTRIC SERVICE, INC., | ) | |
| VON DUPRIN LLC, | ) | |
| Cross Defendants. | ) | |

## ENTRY ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on Plaintiff Von Duprin LLC's ("Von Duprin") Motion for

Partial Summary Judgment on Section 107(a) Liability (Filing No. 133), and Defendant Moran

Electric Service, Inc's. ("Moran") Cross-Motion for Partial Summary Judgment ([Filing No. 138](#)). Also pending is Major Holdings, LLC's and Major Tool and Machine, Inc.'s (collectively, "the Major Defendants"), Cross-Motion for Summary Judgment against Plaintiff and Motion for Summary Judgment against Cross-Claimant ([Filing No. 141](#)). Von Duprin alleges the Major Defendants, in their status as current owners of certain properties, are liable for damages owed to it under Section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). ([Filing No. 134](#).) Moran asks the Court to deny Von Duprin's motion for summary judgment and to issue a ruling declaring that Moran is responsible only for its proportionate share of harm. ([Filing No. 139](#).) The Major Defendants seek summary judgment on all claims asserted against them by both Von Duprin and Moran. ([Filing No. 142](#).) For the reasons stated below, Von Duprin's Motion for Partial Summary Judgment is **denied**. Moran's Motion for Partial Summary Judgment is **granted**. The Major Defendants' Motion for Summary Judgment against Von Duprin is **granted in part and denied in part,** and their Motion for Summary Judgment against cross-claimant Moran is **denied**.

## I. BACKGROUND

### A. Factual History

This litigation relates to the release of hazardous substances at several properties located in Indianapolis, Indiana, including a property previously owned by Von Duprin, and 1925 Columbia Avenue, (the "Von Duprin Facility") and several upgradient properties, owned at various times by Moran and/or the Major Defendants. Those upgradient properties are bounded by Hovey Street to the east, East 19th Street to the south, Dr. Andrew J. Brown Avenue to the west, and East 21st Street to the North. ([Filing No. 42-1](#).) The parties have generally divided the upgradient lot into three components based on ownership rather than geography: the "Former Ertel

Facility," the "Former Zimmer Paper Facility," (subdivided into the Zimmer Paper Facility and the Zimmer Packaging Facility) and the "Former Moran Facility." (Filing No. 134 at 7-8; Filing No. 139 at 5-6; Filing No. 142 at 6-7.) All three of those facilities as well as the Von Duprin Facility were once owned and operated by manufacturers who released chlorinated solvents into nearby groundwater, which comingled into a plume producing negative environmental effects.

The Major Defendants are the current owners of four of the properties at issue in this case: the Moran Property, the Zimmer Paper Parcel, the Zimmer Packaging Facility, and the Ertel Facility. While the Major Defendants themselves have not caused or contributed any contamination on any of those properties, it is undisputed that their ownership of the contaminated properties brings legal obligations. Since acquiring the properties they have participated in investigation and cleanup.

### 1. The Von Duprin Facility

Von Duprin manufactured exit devices such as door handles for commercial applications from 1955 to 1986 at 1925 Columbia Avenue in Indianapolis.[1] (Filing No. 140-1 at 2,5.) Its operations resulted in the release of hazardous chemicals, including trichloroethylene ("TCE") and perchloroethylene ("PCE"), into soil and groundwater on and around the Von Duprin Facility[2]. (Filing No. 140-2.) In 1986, Von Duprin ceased operations, and its owner at that time, Ingersoll-Rand Company, sold the facility to Threaded Rod Company, Inc. in 1987. (Filing No. 140-1 at 2.) Threaded Rod Company manufactured anchor bolts and connecting rods and did not generate hazardous waste. *Id*.

---

[1] The address of the site has changed from 1925 Columbia Avenue to 1929 Columbia Avenue. (Filing No. 140-2.)
[2] *Trichloroethylene* is used as a solvent for cleaning metal parts. Exposure to very high concentrations of trichloroethylene can cause dizziness, headaches, sleepiness, incoordination, confusion, nausea, unconsciousness, and even death. See https://www.atsdr.cdc.gov/toxfaqs /tf.asp?id=172&tid=30. *Perchloroethylene* is a colorless liquid that is also called tetrachloroethylene, PERC, or PCE. It is primarily used for dry cleaning fabrics and degreasing metals. See https://toxtown.nlm.nih.gov/chemicals-and-contaminants/perchloroethylene-pce-perc. Both TCE and PCE are designated as hazardous substances under federal regulations. 40 C.F.R. § 302.4(a).

## 2. __Former Ertel Facility__

Ertel Manufacturing operated the facility from the 1890's through 2001 and it originally contained a machine shop and aluminum and iron foundries, but later was used to manufacture automotive engine parts. (Filing No. 135-1 at 5.) The property was sold to Dynagear in 1998, who used it to manufacture auto parts until 2002, when the property was abandoned, leaving behind soil and groundwater impacted with chlorinated volatile organic compounds. *Id.* Between 2004 and 2008, the City of Indianapolis, the Indiana Department of Environmental Management ("IDEM"), and the U.S. Environmental Protection Agency performed cleanup activities at the Former Ertel Facility site. *Id* at 6. The parties agree that these cleanup activities addressed soil on the site that had been impacted by TCE, and designated evidence shows that confirmation sampling following soil excavation at the site showed elevated levels of TCE and PCE at levels that far exceed industrial default closure levels. (Filing No. 140-17 at 28-32.) The parties disagree as to whether the cleanup activities addressed TCE or PCE in the groundwater on the site.[3] (Filing No. 134 at 7; Filing No. 139 at 6; Filing No. 142 at 6.)

## 3. __Former Zimmer Paper Facility__

The Former Zimmer Paper Facility was located at 1931 Dr. Andrew J. Brown Avenue. (Filing No. 135-1 at 4.) It had been used for chemical and equipment storage. (Filing No. 134 at 7.) Moran owned the property between 1967 and 1983, when title was conveyed to Defendant Zimmer Paper Products Incorporated ("Zimmer"). (Filing No. 135-1 at 4.) Major Holdings acquired title to the facility in 2007 and is the current owner. *Id.* In 2007, 7,350 tons of chlorinated solvent-impacted-soil were removed from the site. (Filing No. 135-4 at 5.) The parties dispute

---

[3] Von Duprin and Moran contend no cleanup effort has addressed groundwater contamination, while the Major Defendants state: "Remedial actions undertaken at the Ertel Facility have resulted in a substantial reduction of the contaminant mass and a reduction of the migration of contamination to the groundwater." (Filing No. 142 at 6.)

whether there has been any remedial effort to address impacts to the groundwater at the Former Zimmer Paper Facility.[4]  (Filing No. 134 at 8; Filing No. 139 at 6; Filing No. 142 at 6.)

### 4. __Former Moran Facility__

The Former Moran Facility (Moran Motor Shop and Moran Dynamometer Building) is property addressed as 1931 Dr. Andrew J. Brown Avenue and 1436 E. 19th Street.  Moran used the site for industrial manufacturing operations from approximately 1927 to 1998.  Major Holdings has owned this property since 2005.

In April 2016, IDEM notified Moran that it was a potentially responsible party ("PRP") under the State Cleanup Program pursuant to Indiana Code § 13-25-4, in connection with soil and gradient contamination at property located on the former Moran Facility.  IDEM determined the Former Moran Facility released TCE, PCE, and other hazardous substances that aggregated with hazardous substances running off other nearby properties to create a "ground water contaminant plume." (Filing No. 135-1 at 6.) Von Duprin attributes these hazardous substances to degreasing pits that Moran operated when it owned the property.  (Filing No. 134 at 8.)  Von Duprin alleges "no effort was made to address impacts to the groundwater either on the Moran site or downgradient." *Id.*   Moran alleges that soil samples taken from the degreasing pits just after Moran ceased operations at the site in 1996 showed either no traces of TCE or TCE concentrations "well below industrial default closure levels."  (Filing No. 139 at 5.)  According to Moran, after buildings at the Former Moran Facility were demolished, soil samples detected levels of TCE and PCE below the industrial default closure levels and those samples were disposed of as non-hazardous waste.  *Id.*  The Major Defendants dispute Von Duprin's claim that no remedial efforts

---

[4] The Major Defendants assert that they have voluntarily undertaken remedial actions at the site that have "resulted in a substantial reduction of the contaminant mass and a reduction of the migration of contamination to the groundwater." (Filing No. 142 at 6.)

were undertaken at the Former Moran Facility to reduce the migration of contamination to the groundwater. ([Filing No. 142 at 7](#).)

    5.    **Investigative and Remedial Efforts**

In August 2013, IDEM notified Von Duprin that it was a PRP under the State Cleanup Program pursuant to Indiana Code § 13-25-4 in connection with soil and groundwater Contamination at the Columbia Avenue Facility and may have incurred liability in connection with the release of hazardous substances from the Von Duprin Facility. ([Filing No. 135-8](#).) At IDEM's direction, Von Duprin performed extensive sampling and investigation of the soil, soil gas, indoor air, and groundwater at the Von Duprin Facility. ([Filing No. 136 at 2](#).) IDEM required Von Duprin to conduct downgradient groundwater and indoor air sampling to determine how far certain hazardous substances migrated. *Id.* Von Duprin's investigation found hazardous substances at the Von Duprin Facility and other properties near Dr. Andrew J. Brown Avenue and E. 19th Street, including at residences. *Id.* Von Duprin installed mitigation systems into each affected residence that reduced contaminants to levels that meet IDEM's expectations. *Id.* Von Duprin continues to maintain and pay the annual cost for the operation of each residential mitigation system. *Id.*

IDEM also ordered the Threaded Rod Company, the current occupant of the Von Duprin Facility, to investigate the extent of groundwater contamination and to engage in remedial actions to protect nearby residents and the public from hazardous chemicals. ([Filing No. 135-9](#).) After undertaking an investigation, the Threaded Rod Company sued Von Duprin and Moran to recover the costs. ([Filing No. 135-10](#).) Von Duprin reached a settlement with the Threaded Rod Company, the terms of which required Von Duprin to complete the investigation the Threaded Rod Company had started and to finance cleanup of the Von Duprin Facility and the contaminated groundwater. ([Filing No. 136 at 3](#).) The Threaded Rod Company relinquished its work product to Von Duprin,

giving Von Duprin access to sampling results and laboratory data and reports prepared by Threaded Rod Company's consultants. *Id.* Von Duprin has attempted to engage the Defendants in remedial efforts to mitigate the contaminated groundwater in the area, but, according to Von Duprin, the Defendants have refused. *Id.* at 4. Moran denies it has contributed to contamination of groundwater through TCE and PCE seepage ([Filing No. 139 at 5-6](#)), and the Major Defendants deny that they have refused to engage in remedial efforts. ([Filing No. 142 at 7](#).)

More facts will follow as necessary.

**B.** **Procedural History**

Von Duprin filed this action seeking a judgment against Moran, the Major Defendants and Zimmer Paper Products Incorporated (collectively, "Defendants") under 42 U.S.C. §§ 9607(a)(4)(B) and 9613(g)(2) and Indiana Code § 13-30-9. Von Duprin's Amended Complaint, filed on January 4, 2017, alleges the same two claims against each Defendant: (1) cost recovery under section 107(a)(4)(B) of CERCLA, and (2) declaratory judgment under section 113(g)(2) of CERCLA[5]. ([Filing No. 42](#).) It also alleges environmental claims against Moran and Zimmer Paper under Indiana Code § 13-30-9, *et seq*, which allows Hoosiers to "bring an environmental legal action against a person that caused or contributed to the release [of hazardous substances or petroleum] to recover reasonable costs of a removal or remedial action." *Id.*

On January 18, 2017, the Major Defendants filed an Answer to Von Duprin's Amended Complaint and a counterclaim against Von Duprin and a cross-claim against Moran. ([Filing No. 46](#).) On January 24, 2017, Moran filed an Answer to Von Duprin's Amended Complaint, a

---

[5] Both the case law and administrative materials addressing CERCLA frequently switch back and forth between referring to sections of the act by their section number, as enacted, and their section by number as codified. "Section 107(a) of CERCLA, for example, was codified at 42 U.S.C. § 9607(a); "Section 113(f)" corresponds to § 9613(f). See *Bernstein v. Bankert*, 733 F.3d 190, 288 (7th Cir. 2013).

counterclaim against Von Duprin, and a Motion for Leave to Assert Counterclaims against the other Defendants. (Filing No. 52; Filing No. 53.)

Pursuant to the Court's "Courtroom Procedures and Trial Practice," (Filing No. 67), the Major Defendants and Moran notified the Court that the parties intended to file cross-motions for summary judgment and moved to set a "summary judgment briefing schedule." (Filing No. 129.) The Court granted that motion in part and set the following summary judgment briefing schedule:

1. Von Duprin's deadline to file its Motion for Summary Judgment and Brief in Support is **July 27, 2018** (limited to 35 pages);

2. Moran, Major Holdings, and Major Tool's deadline to file their Cross-Motions for Summary Judgment, Briefs in Support, and Responses in Opposition to Von Duprin's Motion for Summary Judgment is **August 17, 2018** (limited to 55 pages);

3. Von Duprin's deadline to file its Reply in Support of its Motion for Summary Judgment and Responses in Opposition to Cross-Motions for Summary Judgment is **September 14, 2018** (limited to 40 pages); and

4. Moran, Major Holdings, and Major Tool's deadline to file their Replies in Support of Cross-Motions for Summary Judgment is **September 28, 2018** (limited to 20 pages).

If Von Duprin believes a Surreply is appropriate under Local Rule 56-1(d), plaintiff may file a Surreply **no later than seven days** from the filing of Defendants' Replies in Support of Cross-Motions for summary judgment, (limited to 7 pages).

(Filing No. 132.)

On July 27, 2018, Von Duprin filed its Motion for Partial Summary Judgment, asking only for judgment as to liability under Section 107(a) of CERCLA against all parties. (Filing No. 133.) On August 17, 2018, Moran filed a response and Cross-Motion for Summary Judgment asking the Court to determine that it is liable only for its proportionate share of the harm caused under Section 107(a) of CERCLA. (Filing No. 138.) Also, on August 17, 2018, the Major Defendants filed their response and Cross-Motion for Summary Judgment, asking for judgment against all parties as to all claims. (Filing No. 141.)

On August 21, 2018, Moran moved to strike the Major Defendants' Motion for Summary Judgment, arguing the Court's Summary Judgment Briefing Schedule did not contemplate a Motion for Summary Judgment against a cross-claimant, and thus the Major Defendants should have filed their Motion for Summary Judgment against Moran by the July 27, 2018 original deadline for dispositive motions. (Filing No. 144.) The Major Defendants responded that the briefing schedule did not specify when it should file its Motion for Summary Judgment against Moran, but that it had acted in good faith and Moran had not suffered any prejudice. (Filing No. 145.) Before the Court ruled on that Motion to Strike, Von Duprin filed a Reply in support of its Motion for Partial Summary Judgment (Filing No. 149; Filing No. 150), and Moran filed a Response in Opposition to Major Defendants' Cross-Motion for Summary Judgment. (Filing No. 152.) On December 10, 2018, the Court denied Moran's Motion to Strike, finding the Major Defendants had committed excusable neglect by filing their Cross-Motion for Summary Judgment after the Court's original dispositive motions deadline. (Filing No. 164.)

## II.     STANDARD OF REVIEW

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584

(7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

These same standards apply even when each side files a motion for summary judgment. The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the

motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation and quotation marks omitted).

### III. <u>DISCUSSION</u>

In response to the serious environmental and health risks posed by industrial pollution, Congress enacted CERCLA in December of 1980. *See* 42 U.S.C. § 9601-9675. *Burlington Northern and Santa Fe Ry. Co. v. United States,* 556 U.S. 599, 602 (2009). CERCLA is designed to encourage private parties to assume the financial responsibility of cleanup by allowing them to seek recovery from others. *Id*. at 602. In 1986, Congress passed the Superfund Amendments and Reauthorization Act (SARA), which amended CERCLA. Among the SARA amendments: Congress created an express cause of action for contribution for certain parties liable or potentially liable under Section 107(a), codified as CERCLA § 113(f)(1), and an express right of contribution for those parties who resolved their liability to the United States or the State in an approved settlement, codified as CERCLA § 113(f)(3)(B). See *Bernstein v. Bankert*, 733 F. 3d 190, 206 (7th Cir. 2013).

Section 107(a)(2) CERCLA liability attaches to any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were released. The elements of a CERCLA claim are: (1) the Site in question is a "facility"; (2) a release or threatened release of a hazardous substance at or from the facility has occurred; (3) the release or threatened release has resulted in necessary response costs being incurred consistent with the "national contingency plan"; and (4) the defendant is a "covered person" under §107(a) of CERCLA. 42 U.S.C. § 9607(a); *Sycamore Indus. Park Assocs. v. Ericsson, Inc.*, 546 F.3d 847, 850 (7th Cir. 2008); *NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 791 (7th Cir. 2000). A "covered person" includes the following: (1) the current owner and operator of the facility; (2) any

11

person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of; (3) any person, who by contract, agreement or otherwise arranged for the disposal or treatment of hazardous substances at the facility; and (4) persons who transported hazardous substances to the facility. *See*, 42 U.S.C. § 9607(a)(1)-(4). In its Amended Complaint, Von Duprin has asserted a claim for cost recovery under Section 107(a) of CERCLA against each of the Defendants.

## A.    Count I – Cost Recovery Under Section 107(a) of CERCLA

### 1.    Von Duprin's Motion For Partial Summary Judgment (Filing No. 133)

Von Duprin asserts three premises in its motion for partial summary judgment. First, that the Former Ertel Facility, the Former Zimmer Paper Facility, and the Former Moran Facility are all facilities that released or threatened to release hazardous substances under CERCLA. (Filing No. 134 at 12-17.) Second, Moran operated the Former Moran Facility while it released or threatened to release hazardous substances, and the Major Defendants currently own and operate the Former Ertel Facility and the Former Zimmer Paper Facility. *Id.* at 17-19. Third, Von Duprin incurred response costs due to release or threatened release of hazardous substances from those facilities, and at least some of those response costs were necessary and incurred consistent with the National Contingency Plan ("NCP") as required for recovery under CERCLA. *Id.* at 19-25.

Moran urges the Court to deny Von Duprin's Motion for Partial Summary Judgment, arguing Von Duprin has not met its burden of showing that its expenditures were necessary or incurred in compliance with the NCP, as required by Section 107(a).[6] (Filing No. 139 at 12-21.)

---

[6] Moran also makes an argument for summary judgment in its favor—that the harms caused by runoff are distinct based on geographical considerations, and thus joint and several liability is inappropriate. (Filing No. 139 at 7-12.) The Court addresses that argument below in section III.A.4.

The Major Defendants join that argument and make six others in opposition to Von Duprin's Motion.[7] (Filing No. 142 at 25-42.)  First, they argue that Von Duprin waived its claims by failing to file the State of Claims and Defenses required by the Second Revised Case Management Plan. *Id.* at 19-20.  They argue Von Duprin has failed to show that contamination from any site owned by the Major Defendants caused Von Duprin to incur any costs.  *Id.* at 24-25.  They argue Von Duprin's claims are barred because as Bona Fide Prospective Purchasers, the Major Defendants are exempted from CERCLA.  *Id.* at 42-50. They argue Von Duprin's claims are barred by the "third party" defense set forth in Section 107(b)(3) of CERCLA, which exempts current owners or operators who can show that the release of hazardous substance was solely caused by a third party, among other things. *Id.* at 50-52. And last, the Major Defendants argue Von Duprin failed to state a claim against Major Holdings under Section 107(a)(2) of CERCLA.  *Id.* at 52-54.  The Major Defendants also seek summary judgment against Moran which the Court will addresses below.

> **2.**     **Waiver**

As an initial matter, the Court must determine whether Von Duprin has waived its claims against the Major Defendants. The Second Revised Case Management Plan states "… consistent with the certification provisions of Fed. R. Civ. Proc. 11(b) the party with the burden of proof shall file a statement of the claims or defenses it intends to prove at trial, stating specifically the legal theories upon which the claims or defenses are based."  (Filing No. 98 at 3, ¶ E.)  The parties agree that Von Duprin never filed a Statement of Claims and Defenses.  The Major Defendants argue that by failing to file a Statement of Claims and Defenses, Von Duprin "waived its claims against the Major Defendants under Section 107 and Section 113 and its defenses to the Major Defendants'

---

[7] The Major Defendants echo Moran's argument that the harms are divisible, and the Major Defendants should be apportioned no liability for the contamination. The Court addresses this argument below. (Filing No. 132 at 20-24.)

claims under Section 113(f)." ([Filing No. 142 at 20](#).)  In support, the Major Defendants cite four cases in which this Court granted summary judgment on a claim that a party had omitted from its Statement of Claims and Defenses.  *Id.*

In lieu of filing a statement that it considered redundant, "superfluous and unnecessary," Von Duprin's counsel informed defense counsel that all of Von Duprin's claims were set forth in its Amended Complaint and he inquired of the parties to see whether there was an objection to his decision to stand on that complaint.  Von Duprin cites an e-mail its counsel sent to counsel for Moran and the Major Defendants on July 16, 2018, which reads:

> Von Duprin's claims were fully set forth in its Amended Complaint [Dkt. 42] and there has been no change in its position in the intervening 18 months. Also, we do not believe that Von Duprin has asserted any defenses on which it bears the burden of proof. We believe that repeating Von Duprin's claims in yet another docket filing is superfluous and unnecessary.
>
> That said, Von Duprin is willing to participate in this exercise if the Defendants see any benefit to having Von Duprin repeat its claims again. We would appreciate having the Defendants' view on this issue.
>
> Also, we will check with the Court staff who may want to maintain the symmetry of the docket by having a statement from each party even if that submission merely repeats the party's previous claims. If so, we will certainly accommodate the Court's wishes.

([Filing No. 143-6](#).)

In its initial reply to that e-mail, on July 16, 2018, counsel for the Major Defendants said, "We take no position as to whether the filings are superfluous or necessary, however if Von Duprin wishes to seek the court's guidance or leave to file, [the Major Defendants] will not object." ([Filing No. 151-5](#).)  The Major Defendants continued moving forward seemingly unperturbed, filing a Motion to Set Summary Judgment Briefing Schedule on July 19, 2018, and a reply in support of that motion on July 20, 2018.  ([Filing No. 129](#); [Filing No. 131](#).)  However, also on July 20, 2018, the Major Defendants' counsel sent an e-mail to Von Duprin's counsel saying:

> After further consideration and because Von Duprin's failure to file its Statement of Claims and Defenses has become increasingly prejudicial to us, especially considering Von Duprin's refusal to agree to a briefing schedule, we must retract our earlier representation that [the Major Defendants] would not object if Von Duprin seeks approval to belatedly file its Statement of Claims and Defenses.

([Filing No. 151-6](#).)

Von Duprin argues it did not waive its claims or defenses because the Court's staff advised Von Duprin's counsel that a Statement of Claims and Defenses was not required under the circumstances and the Major Defendants were not prejudiced by Von Duprin's decision not to file. ([Filing No. 150 at 36](#).) Von Duprin's telephone call to a court staff member to inquire regarding following Fed. R. Civ. Proc. 11(b) and a court order in the Case Management Plan was inappropriate. Court orders and rules say what they mean and mean what they say. Any request for revisions of court orders must be made to the judge either on the record or in a written motion. Unless granted leave or permission by the Court to do otherwise, counsel must comply with all requirements of the Case Management Plan and Federal Rules of Civil Procedure, regardless of whether counsel views them as redundant and regardless of what a member of court staff recommends. Von Duprin's failure to comply with the case management order not only caused inconvenience to opposing counsel, but also the Court who now must rifle through a 22 page Amended Complaint to locate Von Duprin's claims and defenses.

Fortunately for Von Duprin, no prejudice resulted from its failure to file a Statement of Claims and Defenses because Von Duprin has not attempted and does not attempt to prove any claims beyond the ones alleged in its Amended Complaint. ([Filing No. 42](#).) This fact distinguishes this case from the cases the Major Defendants cite, all of which involved a party trying to argue a claim it had not listed in the Statement of Claims it filed. *See Harris v. Carrier Corp.*, No. 1:15-cv-01952-JMS-MJD, 2017 WL 4037658, at *2 (S.D. Ind. Sept. 13, 2017); *Schambers v. Key*

*Family of Cos.*, No. 1:16-cv-2406-WTL-DLP, 2018 WL 1794915 at *7 (S.D. Ind. April 16, 2018); *McGann v. Trathen*, No. 1:16-cv-1235-JMS-DML, 2017 WL 5571289 at *12 (S.D. Ind. Nov. 20, 2017); *Tucker v. Express Scripts Holding*, No. 1:14-cv-1698-TWP-MJD, 2016 WL 2643737 at *8 (S.D. Ind. May 10, 2016). In those cases, the movant was prejudiced by an omission from the Statement of Claims because it was caught off-guard when its opponent attempted to prove a claim it had never declared or had abandoned. But here, Von Duprin has never wavered from the claims it alleges in its Amended Complaint. It alleges causes of action under Sections 107 and 113 of CERCLA and still pursues those claims and only those claims against the Major Defendants. The Major Defendants have not explained, even in their Motion for Summary Judgment, what prejudice they suffered due to Von Duprin's failure to file a Statement of Claims and Defenses.

Von Duprin is admonished to follow court orders and make all inquiries to do otherwise, to the judge, and not court staff. Because Von Duprin's decision to rely on its Amended Complaint and forego filing a Statement of Claims and Defenses did not prejudice the Major Defendants, the Court will not find that it has waived its claims and defenses.

### 3. "Necessary costs of response incurred…consistent with the national contingency plan"

The parties dispute whether costs Von Duprin incurred were necessary and consistent with the NCP as required for recovery by 42 U.S.C. § 9607(a)(4)(B). Whether costs are necessary under CERCLA is a mixed question of law and fact. *G.J. Leasing Co. v. Union Elec. Co.*, 54 F.3d 379, 386 (7th Cir. 1995). District courts in this Circuit have determined that costs are "necessary" under CERCLA "if they are incurred in response to a threat to human health or the environment and they are necessary to address that threat." *Valbruna Slater Steel Corp. v. Joslyn Mfg. Co.*, No. 1:10-CV-044-JD, 2015 WL 8055999, at *4 (N.D. Ind. Dec. 4, 2015) (citing *G.J. Leasing Co. v. Union Elec. Co.*, 854 F. Supp. 539, 562 (S.D. Ill. 994) *aff'd*, 54 F.3d 379 (7th Cir. 1995)).

Von Duprin ultimately seeks to hold the Defendants jointly and severally liable for an array of costs. Von Duprin breaks its costs into two categories: (1) investigatory and assessment costs, and (2) remedial costs. (Filing No. 134 at 20.) Those investigation and assessment costs include "extensive sampling and investigation of the soil, soil gas, indoor air, and groundwater at the Former Threaded Rod facility and other properties surrounding it" and "downgradient groundwater and indoor air sampling to determine how far certain hazardous substances had migrated." *Id.* at 9. Von Duprin incurred remedial costs when it installed "residential migration systems" in nearby homes, which "allowed Von Duprin's consultant access to reduce the amount of contaminants to IDEM accepted levels." *Id.* Von Duprin reached a settlement with the Threaded Rod Company, who had incurred investigation costs. The settlement required Von Duprin to complete the investigation and remediation of the area and to pay a cash settlement, in exchange for which it obtained the Threaded Rod Company's "work product including existing monitoring wells, sampling results, laboratory data and reports prepared by environmental consultants employed by Threaded Rod." *Id.* at 9-10. It is not clear which of the costs Von Duprin incurred in that settlement it seeks to recover from the defendants.

Von Duprin claims summary judgment is appropriate as to liability "if the undisputed facts demonstrate that at least some of Von Duprin's costs were necessary." *Id.* at 20 (citing *NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 782 (7th Cir. 2000)). It cites as uncontested evidence correspondence between Von Duprin's environmental consultant Geosyntec and IDEM discussing remedial measures (Filing No. 136-7; Filing No. 136-8; Filing No. 136-9) and the deposition of Sam Williams, Von Duprin's expert. (Filing No. 135-13.) Von Duprin also argues that its investigative and remedial effort "easily meets the current standard for NCP compliance." (Filing

No. 134 at 21.) It urges the Court to adopt the view that IDEM's oversight of Von Duprin's cleanup process establishes compliance with the NCP. *Id.* at 21-23.

Moran argues that Von Duprin has not shown that its cleanup process comported with the NCP, noting that Von Duprin cited to expert opinion but did not analyze the specific provisions of the NCP or identify which specific cleanup costs comported with the NCP. (Filing No. 139 at 12-19.) Moran also disputes that Von Duprin's cleanup costs were necessary under CERCLA, an issue of facts. It argues that Von Duprin's expert did not offer an opinion on whether Von Duprin incurred cleanup costs in order to reduce contaminants that pose a risk to human health and the environment. *Id.* at 20.

The Major Defendants likewise argue that Von Duprin has not proven its response costs were necessary and compliant with the NCP and fault Von Duprin for failing to adequately identify its response costs. The Major Defendants believe that Von Duprin must identify specific cleanup costs and show they were necessary and compliant with the NCP. (Filing No. 142 at 27.) It disagrees with Von Duprin's position, premised on its understanding of the *NutraSweet* case, that a showing that some of its costs were necessary and compliant with the NCP is sufficient to obtain a summary judgment. *Id.*

Von Duprin's first disputed contention is that "[s]ummary judgment is appropriate for the purposes of determining each Defendant's liability if the undisputed facts demonstrate that at least some of Von Duprin's costs were necessary." (Filing No. 134 at 20.) In support of that contention Von Duprin cites *NutraSweet*, a case in which the Seventh Circuit affirmed partial summary judgment against a CERCLA defendant because it had "caused *some* of the [volatile organic compounds] on NutraSweet's property, not necessarily all of them." 277 F.3d at 785. Based on

this holding Von Duprin asserts that partial summary judgment is also warranted when *some* of its costs, though not necessarily all of them, are recoverable under CERCLA.

CERCLA casts a wide net for liability. It holds liable any person who owned or operated a facility during a time hazardous waste was disposed of at the facility, anyone who arranged for disposal of hazardous waste, and anyone who released or threatened to release hazardous waste. 42 U.S.C. § 9607. There is no floor—that is, any amount of any hazardous substance that qualifies under § 9601(14) triggers liability, no matter how small it is in comparison to the volume of hazardous substances released by one's neighbor. But, costs are treated differently under CERCLA.

The only costs recoverable by a private party are "necessary costs of response incurred…consistent with the national contingency plan," "damages for injury to, destruction of, or loss of natural resources," and "the costs of any health assessment or health effects study carried out" under § 9604(i) of CERCLA. To be recoverable, costs must be necessary and comport with the national contingency plan. But incurring some such costs does not enable a plaintiff to recover costs that were unnecessary, or costs that do not comport with the NCP. Judge Posner said as much in *G.J. Leasing Co.*: "The statutory limitation to 'necessary' costs of cleaning up is important. Without it there would be no check on the temptation to improve one's property and charge the expense of improvement to someone else." 54 F.3d at 386. At the summary judgment stage, Von Duprin must identify each cost that it seeks to recover and designate evidence that the cost was both necessary and that it was incurred consistent with the NCP.

A dispute of material fact regarding whether Von Duprin's costs were incurred in accordance with the NCP precludes summary judgment on this record. Von Duprin designated "the expert opinion of Sam Williams that Von Duprin's response costs were incurred in substantial

compliance with the NCP." ([Filing No. 134 at 21.](#)) A ten-page section of Williams' report titled "OPINION 2: Site investigation activities performed at the Property and Study Area have been performed in substantial compliance with the National Contingency Plan (NCP)" offers Williams' opinion that Von Duprin's costs were incurred consistent with the NCP. ([Filing No. 135-14 at 13-23.](#))

But the Major Defendants raise several factual questions about the accuracy of that opinion that also find support in the designated evidence. First, they direct the Court to Williams' deposition, in which he was more equivocal about whether the costs Von Duprin incurred were in compliance with the NCP. ([Filing No. 143-4 at 8.](#)) Williams testified that "the work was in substantial compliance with the NCP," but was not able to identify any specific costs that met the NCP's requirements.[8] Williams also acknowledged that, believing the NCP's communication and public relations requirement to be satisfied by Von Duprin's cooperation with IDEM, he did not do an independent analysis of whether any of Von Duprin's work complied with the letter of the NCP's communication and public relations requirement.[9] *Id.* at 24-25. Additionally, the Major

---

[8] One exchange from his deposition reads:

Q: Now have you developed an opinion as to whether those costs are compliant with the NCP?
A: It is my opinion that some of those costs are consistent with the NCP.
Q: Which are not?
A: I cannot spell out specifically. There is a summary of costs that are recoverable and costs that are not recoverable.
Q: A summary of those?
A: Yes.
Q: Where are those? Where is that summary?
A: That was part of the settlement associated with Threaded Rod.
Q: Has that been disclosed as part of your expert report in this matter, which costs are recoverable, which are not?
A: It has not.
Q: What can I look at in Exhibit B to find out which of those costs are recoverable and which of those costs are not?
A: I don't think there is anything in Exhibit B that reflects that.

([Filing No. 143-4 at 8-9.](#))

[9] The NCP advises liable parties that "When an incident occurs, it is imperative to give the public prompt, accurate information on the nature of the incident and the actions underway to mitigate the damage." 40 C.F.R. § 300.155. Von Duprin's position is that its coordination with IDEM satisfied this portion of the NCP.

Defendants point out that Von Duprin did not provide Williams with the actual cost invoices for all the work done by their environmental consultants, but only with "cost summaries," which might not satisfy the NCP's documentation requirements. *Id.* at 18-19.

The Major Defendants argue that Von Duprin did not meet other requirements of the NCP. They dispute whether the document offered as a sampling and analysis plan required by Section 300.415(b)(4)(ii)(A) qualifies under the terms of the NCP. (Filing No. 142 at 34.) And they allege Von Duprin did not create a quality assurance project plan, which is required by Section 300.415(b)(4)(ii)(B), until May 2017. *Id.* The Major Defendants argue Von Duprin did not comply with the NCP by conducting an engineering evaluation and cost analysis and did not create a health and safety plan in time to comply with the NCP. *Id.* at 34-35.

Von Duprin urges the Court to follow *Valbruna Slater Steel Corp. v. Joslyn Mfg. Co.*, No. 1:10-CV-044-JD, 2015 WL 8055999, at *4 (N.D. Ind. Dec. 4, 2015), and determine that oversight by a state agency satisfies CERCLA's requirement that cleanup costs be incurred consistent with the NCP. But the *Valbruna* court did not go so far as to say that. Rather, the *Valbruna* court said only that state agency involvement can provide an adequate substitute for the NCP's public participation requirement. *Valbruna* at *4-5. But the Major Defendants allege Von Duprin has failed to comply with no less than five other sections and subsections of the NCP, not including Section 300.155, which requires engagement with the public. In light of these other factual disputes, even a strict adherence to *Valbruna* would not be enough for a summary judgment here.

Von Duprin's Motion for Partial Summary Judgment is **denied**. The Court need not address the other arguments Moran and the Major Defendants make in opposition to that motion.

### 4. Moran's Motion for Partial Summary Judgment (Filing No. 138)

Moran also seeks partial summary judgment on the liability aspect of Count I. Arguing the harm in this case is divisible, Moran urges the Court to issue "a ruling that it may be responsible for only its proportionate share of the harm," leaving specific damages to be determined at trial. ([Filing No. 139 at 22](#).) Von Duprin asks the Court to deny Moran's Motion for Partial Summary Judgment, because the harm in this case is not divisible, either theoretically or practically. ([Filing No. 149 at 26](#).) Von Duprin also asserts that most of Moran's designated evidence is inadmissible. *Id.*

Under CERCLA, although Congress "imposed a 'strict liability standard,' it did not mandate 'joint and several' liability in every case." *Burlington N. & Santa Fe. Ry. Co. v. U.S.*, 556 U.S. 599, 614 (2009) (quoting *United States v. Chem-Dyne Corp.*, 572 F. Supp. 802, 805 & 807 (S.D. Ohio 1983)). The United States Supreme Court embraced *Chem-Dyne* as the seminal case on apportionment in the CERCLA context, which looks to the Restatement (Second) of Torts to determine when harm was divisible.

> [W]hen two or more persons acting independently caus[e] a distinct or single harm for which there is a reasonable basis for division according to the contribution of each, each is subject to liability only for the portion of the total harm that he has himself caused. Restatement (Second of Torts, §§ 443A, 881 (1976); Prosser, Law of Torts, pp. 313-14 (4th ed. 1971).... But where two or more persons cause a single and indivisible harm, each is subject to liability for the entire harm. Restatement (Second) of Torts, § 875; Prosser, at 315-17. *Chem-Dyne Corp.*, 572 F. Supp., at 810.

*Burlington N.* at 614 (ellipses in original).

The Seventh Circuit has distilled that analysis into a two-part test. First, a court "must determine whether the harm at issue is theoretically 'capable of apportionment.'" *U.S. v. NCR Corp.*, 688 F.3d 833, 838 (quoting *Burlington* at 614). That determination is a matter of law and will be made by the Court, but underlying factual findings will often guide the Court's inquiry. *Id.* "Second, if the harm is capable of apportionment, the fact-finder must determine how actually to

apportion the damages, which is 'a question of fact.'" *Id.* (quoting *Burlington* at 614). The party seeking apportionment—here Moran—bears the burden of proving that a reasonable basis for apportionment exists. *Id.*

Acknowledging that the second part of the test involves a question of fact, Moran asks the Court only to resolve the first part, determining that the harm in question is theoretically capable of apportionment. It cites the report of Moran's expert Adam Love, which states: "The areas of chlorinated solvent contamination can be divided based on geographic and chemical characteristics and then apportioned to appropriate [responsible parties] based on those divisions." (Filing No. 135-1 at 13.) Love reported "For CVOC [chlorinated volatile organic compound] groundwater plumes in the Site, the CVOC chemical composition from the Von Duprin site is distinct from upgradient CVOC source locations because it consists largely of PCE, whereas the CVOCs from upgradient direction is characterized primarily by TCE." *Id.* at 14. Moran also cites the deposition testimony of Von Duprin's expert John McInnes, who, when asked whether there were "distinct areas of release on those four sites," responded, "That's correct." (Filing No. 140-12 at 27.)

Von Duprin agrees that McInnes' statement that "each one of four facilities had its own release into the soil at that facility" is "true and undisputed." (Filing No. 149 at 19.) But Von Duprin faults Love's methodology, arguing his opinions are "worthless" because his "modelling work used data that represented the conditions after large quantities of soil had been removed" from the properties. *Id.* at 20. That concern highlights a practical problem, not a theoretical one. At summary judgment, Moran is arguing only that the harm—in this case pollution—emanated from geographically distinct areas, and thus can be divided among the responsible parties according to which areas they controlled. That Moran's estimate of its own contribution may be inaccurate because its expert failed to consider the contamination that might have been revealed if

he had examined excavated soil is irrelevant to the question of whether the harm is divisible. It speaks only to the question of what share of the damages each party is responsible for—a question of fact that the Court does not address on summary judgment.

Parties "may be able to demonstrate that harms are distinct based on geographical considerations, such as where a site consists of 'non-contiguous' areas of soil contamination." *U.S. v. Hercules, Inc.*, 247 F.3d 706 (8th Cir. 2001) (quoting *Akzo Coatings Inc. v. Aigner Corp.*, 881 F.Supp. 1202, 1210 (N.D. Ind. 1994), *clarified on reconsid.*, 909 F.Supp. 1154 (N.D. Ind. 1995)). Here, Moran's expert testified that contamination emanated from geographically distinct areas at the properties, not from one contiguous source encompassing all the properties. McInnes, Von Duprin's expert, agreed. When asked whether there was "just one big blob of shallow soil impacts," he said, "no". When asked whether there were "distinct areas of release on those four sites," he said, "that's correct". (Filing No. 140-12 at 27-28.) Although Von Duprin clearly disputes Moran's method of arriving at the share of the harm it claims to be responsible for, Von Duprin has not designated any evidence disputing the notion that the contamination in this case emanated from four separate source points on four separate properties.

Von Duprin likens this case to *U.S. v. NCR Corp.*, in which the Seventh Circuit found harm was not divisible where the defendant's pollution on its own would have necessitated remediation even if no other party had polluted. 688 F.3d 833 (7th Cir. 2012). But Von Duprin does not allege that Moran's pollution on its own would have required substantially the same remedial measures. It analogizes to *NCR* because multiple pollution sources contaminated a single stream of water (here groundwater, in *NCR*, a river) and because "[l]ike in *NCR*, Moran offers a computer model that would limit its own share of liability to a small portion of the whole harm." (Filing No. 149 at 15.) *NCR* did not reject a model of apportionment calculation outright; in fact, it contended the

24

Supreme Court's decision in *Burlington Northern* "demonstrates that apportionment calculations need not be precise." *NCR* at 842. *NCR* advised that district courts need not always allow imprecise apportionment calculations to serve as evidence of divisibly—courts are free to scrutinize that evidence. But here, Moran has supported its contention with an expert report opining not only that the harm is divisible but attaching a specific percentage of harm to each property that polluted. Love's report is precise enough to carry Moran's burden of showing a reasonable basis for apportionment.

Von Duprin argues most of Moran's designated evidence is inadmissible hearsay. But Moran properly classifies all the disputed evidence as either excluded or excepted from hearsay rules as statements of a party opponent (Fed. R. Evid. 801(d)(2)), records of regularly conducted activity (Fed. R. Evid. 803(6)), and public records (Fed. R. Evid. 803(8)). Moran's designated evidence is properly before the Court.

Moran's Motion for Partial Summary Judgment is **granted**. Moran is liable only for its share of the harm committed; it is not jointly and severally liable. Determination of the specific amount of damages, if any, each party owes, will occur at trial. The Major Defendants also argue the harm in this case is divisible. Because they have moved for summary judgment as to all claims against all parties, the Court considers their arguments separately.

## B.  <u>Other Counts – Major Defendants' Motion for Summary Judgment (Filing No. 141)</u>

The Major Defendants moved for summary judgment as to all claims against Von Duprin and against Moran. (Filing No. 141.) Against Von Duprin, the Major Defendants argue (1) the harm in this case is divisible and they should be apportioned no liability, (2) Von Duprin has not proven that contamination from any site owned by the Major Defendants caused Von Duprin to incur costs, (3) Von Duprin's claims are barred because the Major Defendants are Bona Fide

Prospective Purchasers, (4) Von Duprin's claims are barred by the third party defense, and (5) Von Duprin has failed to state a claim against Major Holdings under Section 107(a)(2) of CERCLA. (Filing No. 142.)  Against Moran, the Major Defendants argue (1) Moran's Section 113(f) claims for contribution fail because the Major Defendants are not responsible parties under Section 107(a), and (2) Moran's state law claims fail because the Major Defendants did not "cause or contribute" to releases of hazardous substances as required for liability under Indiana's Environmental Legal Action Statute.  *Id.* at 54.

1. **Von Duprin**

   a. **Divisibility of Harm**

Like Moran, the Major Defendants argue the harm in this case is divisible and parties should be responsible only for their own contribution.  However, while Moran claimed it was responsible for 3% of the total harm, the Major Defendants claim to be responsible for 0% of the harm.  *Id.* at 24.  They aim to avoid liability entirely.  Von Duprin argues that because the pollutants co-mingled in a single stream, the harm related to the Major Defendants is not theoretically capable of apportionment, and even if it was, there is no reasonable basis for apportionment. (Filing No. 150 at 16-25.)

The Major Defendants do not specify whether they believe the harm here is geographically divisible, temporally divisible, or both. They claim "[t]here is no evidence that the Major Defendants used the chlorinated solvents at issue, nor is there any evidence that they released or threatened to release any of the chlorinated solvents."  (Filing No. 142 at 24.)  But Von Duprin has designated evidence that pollution from the Zimmer and Ertel Facilities contributed to the comingled plume.  According to McInnes, Von Duprin's expert, "based on the magnitude, extent, and pattern impacts observed in soil and groundwater at each of the four facilities (Zimmer, Ertel,

Moran, and Threaded Rod) all contributed significantly to the comingled plume and none can be considered de minimis. (Filing No. 135-3 at 7-8.) If that is correct, it exposes the Major Defendants to liability as "the owner and operator of a vessel or facility." 42 U.S.C. § 9607(a)(1).

The Major Defendants dispute that evidence. Their expert, Robert Walker, rebuts McInnes' claims that pollution from the Former Zimmer and Ertel Facilities entered the co-mingled plume. (Filing No. 135-7.) Both parties have designated evidence supporting their position, creating a dispute of fact that the Court cannot resolve on summary judgment. But, as the Court said in Section III.A.4 of this Entry, the harm in this case is divisible by geography and there is a reasonable basis for apportionment—the amount of runoff from each site in question. Therefore, the Court **grants in part and denies in part** the Major Defendants' Motion for Summary Judgment. It is **granted** as to divisibility only, leaving the calculation of any damages for the fact-finder to determine at trial.

### b. Caused Von Duprin to Incur Costs

Second, the Major Defendants argue "no release or threatened release from any property currently owned or operated by the Major Defendants caused Von Duprin to incur *any* response costs." (Filing No. 142 at 25.) (Emphasis in original.) Citing *Regional Airport Authority of Louisville v. LFF, LLC*, 460 F.3d 697, 706 (6th Cir. 2006), the Major Defendants argue that "[i]f a party would have incurred 'identical costs' in the absence of any release or threatened release from a facility, then the release or threatened release 'cannot be said to have caused the incurrence of response costs.'" (Filing No. 142 at 25.) Von Duprin does not challenge that legal point, arguing only that it has designated evidence indicating pollution from properties owned by the Major Defendants did cause Von Duprin to incur response costs it otherwise would not have incurred. (Filing No. 150 at 24.)

The Major Defendants cite the deposition testimony of Sam Williams, the expert Von Duprin retained to offer an opinion about its response costs. (Filing No. 142 at 25.) In answering the question "would Von Duprin have been required to incur the costs that you're testifying that it has incurred if its contamination was the only contamination present on its property," Williams answered, "yes." (Filing No. 143-4 at 17.) Von Duprin argues that statement is taken out of context, and the full deposition reveals that Williams did not determine which costs Von Duprin incurred resulted from pollution at upgradient properties. Von Duprin cites the following exchange:

> Q: Which response costs has Von Duprin incurred as a result of Major Holdings' or Major Tool's Actions?
>
> A: As I testified earlier, I haven't distinguished between Major Tool, Zimmer, Ertel, or Moran of the upgradient costs.
>
> Q: So you think Von Duprin has incurred some costs as a result of Major Holdings' or Major Tool's actions, but you don't know which costs those would be?
>
> A: I haven't done that analysis.

*Id.* at 18.

Von Duprin's expert equivocated about whether pollution emanating from the Major Defendants' and other upgradient properties caused Von Duprin to incur additional response costs. But the Court is not convinced that equivocation dooms Von Duprin's Section 107 claim against the Major Defendants. Williams' testimony is inconclusive, but Von Duprin has designated other evidence that indicates pollution from the Former Ertel Facility and Former Zimmer Facility amounts to over 10% of the total contaminants emanating from the site. (Filing No. 135-1 at 24.) It is the job of the fact-finder at trial, not the Court on summary judgment, to weigh this competing evidence. Accordingly, the Major Defendants' Motion for Summary Judgment on these grounds is **denied**.

### i.     Bona Fide Prospective Purchasers

Section 107(a)(1) of CERCLA is subject to certain affirmative defenses, one of which is the bone fide prospective purchaser (or "BFPP") defense. 42 U.S.C. § 9607(a)(1); 2 U.S.C. § 9607(r)(1). The BFPP defense exempts from CERCLA liability a purchaser who:

(1) Acquired ownership of the property after January 11, 2002;

(2) Shows that all disposal of hazardous substances at the property occurred before the purchaser's acquisition of the property;

(3) Conducts "all appropriate inquiries" into the previous ownership and uses of the property;

(4) Provides all legally required notices regarding the lease;

(5) Provides full cooperation, assistance, and access to those conducting response actions at the property;

(6) Complies with institutional and engineering controls and does not impede the effectiveness of such controls;

(7) Complies with requests for information and subpoenas from the Environmental Protection Agency;

(8) Is not affiliated with a responsible or potentially responsible party; and

(9) Exercises appropriate care with respect to the hazardous substances found, including: stopping continuing releases, preventing threatened future releases, and preventing exposure to releases.

The Major Defendants contend they satisfy all these requirements. Von Duprin does not dispute the Major Defendants' contention as to the Zimmer Packaging Facility. As to the other three facilities owned by the Major Defendants, Von Duprin argues the Major Defendants failed

to conduct "all appropriate inquiries" in a timely manner when they acquired the property and that they failed to exercise reasonable care to prevent exposure to previously released hazardous substances.  ([Filing No. 150 at 30-366](#).)

## ii.    **The Former Ertel Facility**

On November 16, 2007, Major Tool entered into a 99-year lease and option to purchase the Former Ertel Facility with the City of Indianapolis.  ([Filing No. 151-2](#).)  Major Tool acquired the Former Ertel Facility on January 31, 2013. ([Filing No. 143-1 at 5](#).)  Major Tool hired Heartland Environmental to conduct a Phase I Environmental Site Assessment, which it did on January 17, 2013.  *Id.* at 112.  That Phase I assessment claims it was "conducted in general conformance with American Society of Testing and Materials (ASTM) Standards for Phase I Environmental Site Assessments (ASTM E 1527-05), including the United States Environmental Protection Agency's (USEPA) All Appropriate Inquiries (AAI) Rule that was finalized on November 1, 2006."  *Id.* at 116.

Von Duprin asserts this assessment does not satisfy CERCLA's "all appropriate inquiry" requirement (42 U.S.C. § 9607(q)(1)(A)(viii)(I)) because Major Tool began leasing the property in 2007 but did not conduct an environmental assessment until 2013, just before it purchased the property.  ([Filing No. 150 at 35](#).)  CERCLA requires parties to make all appropriate inquiries "on or before the date on which the defendant acquired the facility."  42 U.S.C. § 9601(35)(B)(i)(I).  Von Duprin argues Major Tool acquired the facility when it began its lease in 2007, not when it purchased the property in 2013 because the BFPP defense protects "'a person who…acquires ownership of the facility after January 11, 2002' and establishes the remainder of the BFPP criteria." ([Filing No. 156 at 17](#).) (Ellipses in original.)  The Major Defendants argue CERCLA

refs to acquiring ownership in a property. Neither party cites any caselaw in support of its position.

While the Major Defendants accurately quote the BFPP defense protecting those who acquire ownership after January 11, 2002 and establish the rest of the BFPP criteria, they ignore that the defense also mentions "a person…who acquires a leasehold interest in the facility after January 11, 2002" and establishes the remaining criteria. 42 U.S.C. § 9601(40)(A)(ii)(I). More importantly, CERCLA imposes liability on both owners and operators—a party need not be both owner and operator to incur liability. 42 U.S.C. § 9607(a)(1). The Major Defendants undisputedly became operators of the site in 2007, when they began leasing it, but they have not designated evidence that they satisfied the BFPP defense's "all appropriate inquiries" requirement until 2013, just before they purchased the facility. Thus, the Court cannot grant their summary judgment motion on this basis.

### iii. The Zimmer Paper Parcel

The parties do not dispute that Major Holdings acquired the Zimmer Paper Parcel on January 31, 2007. (Filing No. 142 at 44; Filing No. 150 at 32.) Nor do they dispute that, on November 16, 2006, Enviroforensics provided a Phase I Environmental Site Assessment. (Filing No. 143-1 at 9-56.) However, Von Duprin argues that assessment was faulty and does not satisfy the BFPP defense's "all appropriate inquiry" requirement for three primary reasons: (1) it was prepared for Major Tool and Machine even though Major Holdings was the nominal owner of the Zimmer Paper Parcel; (2) it did not make the necessary and required inquiries with the owner of the parcel required by 40 C.F.R. § 312.22 *et seq*.; and (3) it does not have the required Environmental Professional certifications required by 40 C.F.R. § 312.21(d).

The Major Defendants correctly point out that the assessment did not need to comply with 40 C.F.R. §§ 312.23 through 312.31 because it followed "[t]he procedures of ASTM International Standard E1527-05," which was an adequate substitute in 2006 under 40 C.F.R. § 312.11. But that does not rebut Von Duprin's argument, which alleges that the Major Defendants failed to comply with the requirements of §§ 312.21 and 312.22. A party cannot circumvent by complying with the procedures of ASTM International Standard E1527-05. Thus, the Court cannot grant summary judgment to the Major Defendants on this basis.

### iv.  **The Former Moran Facility**

Major Holdings acquired the Former Moran Facility on October 4, 2005. ([Filing No. 142 at 44](#).) On December 28, 2004, Enviroforensics conducted a limited Phase II Site Investigation. ([Filing No. 143-3 at 4-7](#).) The Major Defendants assert this investigation satisfies CERCLA's all appropriate inquiries requirement, while Von Duprin argues a Phase I Environmental Site Assessment, like the one the Major Defendants commissioned for the other facilities, was necessary.

CERCLA makes it clear that performing a Phase I Environmental Site Assessment is sufficient to satisfy the all appropriate inquiries prong of the BFPP defense. 42 U.S.C. § 9601(35)(B)(iv)(II). But the law leaves open to interpretation whether a Phase I assessment is the *only* way to satisfy that prong, saying that a Phase I assessment "shall satisfy the requirements" of the all appropriate inquiries prong. At least one court has determined that a Phase I assessment is not the exclusive means by which a purchaser of land can make all appropriate inquiries. *R.E. Goodson Const. Co., Inc. v. International Paper Co.*, No. 4:02-4184-RBH, 2006 WL 1677136, at *6 (D.S.C. June 14, 2006). The *Goodson* court determined that the Senate Report on the amendment adding the "shall satisfy" language to CERCLA read that a Phase I assessment "*can*

satisfy" the "all appropriate inquiries" requirement. *Id.* That court also noted that "Congress could have provided that a Phase I site assessment was required or was the exclusive procedure to satisfy the 'all appropriate inquiries' standard; however, Congress made no such mandate."

This Court is inclined to agree with *Goodson* that Congress did not intend to make a Phase I Environmental Site Assessment the exclusive means by which a purchaser could satisfy the BFPP defense's all appropriate inquiries standard. Bolstering this view in this case is the content of the Phase II assessment the Major Defendants commissioned before purchasing the Moran property. That assessment collected seven soil samples and three groundwater samples, noting that there were dangerous levels of harmful chemicals in some samples and acceptable levels in others. (Filing No. 143-3 at 4-6.) The assessment recommended "removal and disposal of all [underground storage tanks] and associated contaminated soils at the Site…in accordance with all applicable IDEM regulations. In addition, verification sampling of the UST excavations should be completed, and the excavations should be backfilled and the Site properly restored." *Id.* at 7. The Major Defendants acted on that recommendation in 2011 when they "agreed to implement a remedial action plan to address the impacted soil at the former Moran facility property." (Filing No. 135-7 at 10.) Von Duprin also argues that "even if Major Holdings had performed the required pre-acquisition AAI (which it did not timely do), it has failed to take post-acquisition reasonable steps to prevent exposure to previously released hazardous substances." (Filing No. 150 at 34-35.) The argument is not fully developed, and regardless, the Major Defendants have designated evidence indicating they undertook remedial measures at the Moran property in 2011. (Filing No. 135-7 at 10.)

The Major Defendants are Bona Fide Prospective Purchasers of the Former Moran Facility, and thus cannot incur liability on contamination emanating from that property. The Major

Defendants' Motion for Summary Judgment is **granted in part and denied in part**. The Court **grants** summary judgment as to the Zimmer Packaging Facility and the Moran property because the Major Defendants are Bona Fide Prospective Purchasers of those properties. The Court **denies** summary judgment as to the Former Ertel Facility and the Former Zimmer Paper Facility because the Major Defendants have not shown they are Bona Fide Prospective Purchasers of those sites by law.

## 1. Third Party Defense

The Major Defendants also argue they are shielded from liability by the third-party defense. (Filing No. 142 at 50-51.) Codified at 42 U.S.C. § 9607(b)(3), the third-party defense exempts a CERCLA defendant from liability of release or threats of release of hazardous material stemming from an act or omission of a third party. To establish the defense, the defendant must demonstrate that: (1) the third party was not an employee or agent; (2) the acts or omissions of the third party did not occur in connection with a direct or indirect contractual relationship to the defendant; (3) a third party was the sole cause of the release or threatened release of hazardous substances; and (4) the defendant exercised due care with respect to the hazardous substances and took precautions against foreseeable acts and omissions of the third party. The Major Defendants claim they satisfy all four prongs of the defense.

Von Duprin makes multiple arguments in opposition to the Major Defendants' claim, but the Court will focus on one: that the acts or omissions of the third party occurred in connection with a contractual relationship to the Major Defendants. (Filing No. 150 at 26.) The term "contractual relationship" is defined in § 9601(35)(A) of CERCLA as including "land contracts, deeds, easements, leases" where it is established "[a]t the time the defendant acquired the facility the defendant did not know and had no reason to know that any hazardous substance which is the

34

subject of the release or threatened release was disposed of on, in, or at the facility."  According to the next subsection, "[t]o establish that the defendant had no reason to know of the matter described in subparagraph (A)(i)," the defendant must show that it undertook all appropriate inquiries.  42 U.S.C. § 9601(35)(B)(i).  As the Court pointed out in section III.B.1.c. of this Entry, the Major Defendants are not able to show they made all appropriate inquiries as to two properties: the Former Ertel Facility and the Zimmer Paper Parcel.  Thus, their motion for summary judgment as to those two properties is **denied**.

### 2. <u>Failure to State a Claim</u>

The Major Defendants argue Von Duprin failed to state a claim against Major Holdings under 42 U.S.C. § 9607(a)(2) because "[a]lthough Von Duprin attempted to assert a claim against Major Holdings under Section 107(a)(2) in its Amended Complaint, Von Duprin did not seek to establish liability against Major Holdings under that provision in its Motion for Summary Judgment."  (Filing No. 142 at 52.)  Von Duprin does not address this argument in its response brief. (Filing No. 150.) Section 9607(a)(2) subjects to liability "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of."  The Major Defendants are correct that Von Duprin has not designated evidence that the Major Defendants owned any property *at the time of disposal of any hazardous substance*, and thus does not state a claim under § 9607(a)(2). Therefore, the Court **grants** summary judgment in favor of the Major Defendants as to that claim.  However, Von Duprin's claim against the Major Defendants under § 9607(a)(1) as "the owner or operator of a vessel or facility" remains.

### v. <u>Moran</u>

The Major Defendants move for summary judgment against cross-claimants Moran on its claims for contribution under 42 U.S.C. § 9113(f) ([Filing No. 52](#)) and for cost recovery under Indiana Code § 13-30-9-2 ([Filing No. 70](#)).

### 1.     Contribution

The Major Defendants argue "Moran's Section 113(f) claims fail because Section 113(f) only allows a party to seek contribution from a person or entity that is liable or potentially liable under Section 107(a) and, as set forth above, the Major Defendants are not liable under Section 107(a)." ([Filing No. 142 at 54](#).)  But the Court has concluded that the Major Defendants may be liable under Section 107(a)(1) for contamination emanating from two properties, the Former Ertel Facility and the Zimmer Paper Parcel.  Thus, Major Defendants' motion fails because it relies entirely on arguments made above.  The Major Defendants' Motion for Summary Judgment against cross-claimants Moran as to liability under 42 U.S.C. § 6113(f) is **denied**.

### 2.     Indiana Environmental Legal Actions Statute

The Indiana Environmental Legal Actions statute provides a cause of action for contribution in multi-party environmental clean-ups.  Ind. Code § 13-30-9.  It allows a party to bring an action "against a person that caused or contributed to the release to recover reasonable costs of a removal or remedial action involving the hazardous substances or petroleum." *Id.* at § 13-30-9-2. The Major Defendants argue that "[t]here is no other evidence that the Major Defendants ever caused or contributed to any release of any hazardous substance at issue in this case, and no expert in this case offered any opinion that the Major Defendants have done so." ([Filing No. 142 at 54](#).)

Moran disagrees, arguing the Major Defendants' carelessness with respect to contamination on their property contributed to the harm caused by hazardous substance released

on their property.  ([Filing No. 152 at 12](.))  Specifically, "Moran has designated evidence showing that there was a release from a[n underground storage tank] and a leaking drum at the Zimmer Parcel when Major owned and controlled that property." *Id.*  Moran also argues it "has designated evidence showing that Major has contracted with the City of Indianapolis specifically with respect to remediating contaminants at issue in this case, which remediation has not occurred." *Id.*  That evidence creates a dispute of material fact precluding summary judgment on this issue.  Thus, Major Defendants' motion is **denied**.

## IV.  CONCLUSION

For the reasons stated above, Von Duprin's Motion for Partial Summary Judgment on Section 107(a) Liability, ([Filing No. 133](.)), is **DENIED**.  Moran's Cross-Motion for Partial Summary Judgment, ([Filing No. 138](.)), is **GRANTED**.  All claims against Moran remain for resolution at trial, but Moran is not jointly and severally liable on Count I, it is liable only for the proportion of the harm it caused.  The Major Defendants' Cross-Motion for Summary Judgment against Plaintiff and Motion for Summary Judgment Against Cross-Claimant, ([Filing No. 141](.)), is **GRANTED in part and DENIED in part**.  Both claims against the Major Defendants remain for resolution at trial, but like Moran, they are liable only for the proportion of the harm they caused.  Additionally, they are not liable for any contamination emanating from the Zimmer Packaging Facility or the Moran property because they are bona fide prospective purchasers of those parcels of land.  The Major Defendants' Motion for Summary Judgment against cross-claimant Moran is **DENIED**.  Thus, both cross-claims ([Filing No. 52](.); [Filing No. 70](.)) remain to be resolved at trial.

**SO ORDERED.**

Date:  2/11/2019

_____

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Alexandra Robinson French
BARNES & THORNBURG LLP
arobinson@btlaw.com

Edward S. Griggs
BARNES & THORNBURG LLP (Indianapolis)
sean.griggs@btlaw.com

Samuel B. Gardner
ICE MILLER LLP
samuel.gardner@icemiller.com

Glenn David Bowman
STOLL KEENON OGDEN, PLLC (Indianapolis)
Glenn.Bowman@skofirm.com

Angela Pease Krahulik
ICE MILLER LLP
krahulik@icemiller.com

Marc Andrew Menkveld
STOLL KEENON OGDEN, PLLC (Indianapolis)
Marc.Menkveld@skofirm.com

Nicholas B. Reuhs
ICE MILLER LLP
nicholas.reuhs@icemiller.com

Bruce L. Kamplain
NORRIS CHOPLIN & SCHROEDER LLP
bkamplain@ncs-law.com

Cynthia Elaine Lasher
NORRIS CHOPLIN & SCHROEDER LLP
clasher@ncs-law.com