**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| VON DUPRIN LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-01942-TWP-DML |
| | ) | |
| MORAN ELECTRIC SERVICE, INC., | ) | |
| MAJOR HOLDINGS, LLC, | ) | |
| MAJOR TOOL AND MACHINE, INC., | ) | |
| ZIMMER PAPER PRODUCTS | ) | |
| INCORPORATED, Defaulted on 7/24/2017, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| MAJOR HOLDINGS, LLC, | ) | |
| MORAN ELECTRIC SERVICE, INC., | ) | |
| MAJOR HOLDINGS, LLC, | ) | |
| MORAN ELECTRIC SERVICE, INC., | ) | |
| MAJOR TOOL AND MACHINE, INC., | ) | |
| MORAN ELECTRIC SERVICE, INC., | ) | |
| | ) | |
| Counter Claimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VON DUPRIN LLC, | ) | |
| MAJOR HOLDINGS, LLC, | ) | |
| VON DUPRIN LLC, | ) | |
| VON DUPRIN LLC, | ) | |
| MAJOR HOLDINGS, LLC, | ) | |
| VON DUPRIN LLC, | ) | |
| VON DUPRIN LLC, | ) | |
| MAJOR TOOL AND MACHINE, INC., | ) | |
| | ) | |
| Counter Defendants. | ) | |
| | ) | |
| | ) | |
| MAJOR HOLDINGS, LLC, | ) | |
| MAJOR HOLDINGS, LLC, | ) | |
| MAJOR TOOL AND MACHINE, INC., | ) | |
| | ) | |

|                              |     |
|------------------------------|-----|
| Cross Claimants,             | )   |
|                              | )   |
| v.                           | )   |
|                              | )   |
| MORAN ELECTRIC SERVICE, INC., | )   |
| MORAN ELECTRIC SERVICE, INC., | )   |
| VON DUPRIN LLC,              | )   |
|                              | )   |
| Cross Defendants.            | )   |

## ENTRY ON PENDING MOTIONS

This litigation seeks to determine the responsibility of various parties for the release of hazardous substances at several properties located on the northeast side of downtown Indianapolis, Indiana. Plaintiff Von Duprin, LLC ("Von Duprin") brought suit against Moran Electric Service, Inc. ("Moran") and Major Holdings, LLC and Major Tool and Machine, Inc. (collectively, the "Major Defendants") in an attempt to get them to contribute to the costs of cleaning up the contaminated properties. This matter is scheduled for final pretrial conference on June 26, 2019 and trial on July 22, 2019.

There are nine pending motions: (1) Major Defendants' Motion to Limit Expert Testimony at Trial (Filing No. 166); (2) Moran's Motion *in Limine* to Exclude Expert Opinions of Sam Williams (Filing No. 168); (3) Von Duprin's Motion *in Limine* to Exclude Opinions of Adam H. Love, Ph.D. (Filing No. 169); (4) Moran's Motion for Leave to File Sur-Reply in Opposition to Von Duprin's Motion to Exclude the Opinions of Adam H. Love, Ph.D. (Filing No. 191); (5) Von Duprin's Motion *in Limine* (Filing No. 186); (6) Major Defendants' Motion for Separation of Witnesses (Filing No. 194); (7) Von Duprin's Motion to Exclude or Limit Major Defendants' Designation of Deposition Testimony (Filing No. 195); (8) Von Duprin's Motion to Exclude Certain Exhibits Proposed by Major Defendants (Filing No. 196); and (9) Von Duprin's Motion to Exclude Certain Exhibits Proposed by Moran (Filing No. 197).

The factual background of this case is recited in detail in the Court's Entry on the Parties' Cross-Motions for Summary Judgment ([Filing No. 203](#)) and are addressed only sparingly in this Entry.

## I. MAJOR DEFENDANTS' MOTION TO LIMIT EXPERT TESTIMONY AT TRIAL ([Filing No. 166](#)) AND MORAN'S MOTION *IN LIMINE* TO EXCLUDE EXPERT OPINIONS OF SAM WILLIAMS ([Filing No. 168](#))

Major Defendants and Moran move to limit or exclude the expert testimony of Sam Williams. They assert "Williams' opinions are deficient or incorrect in several respects," Major Defendants "seek to limit the opinions offered by Williams that lack required evidentiary support or that would otherwise be unhelpful to the Court at trial." ([Filing No. 166](#).) Moran also seeks to limit Williams' testimony. ([Filing No. 168](#).) The motions overlap substantially.

Federal Rule of Evidence 702 permits expert testimony—defined as testimony regarding scientific, technical, or other specialized knowledge—if the testimony (a) is given by a person qualified as an expert by his knowledge, skill, experience, training, or education; (b) will assist the trier of fact to understand evidence or determine a fact at issue in the case; and (c) is sufficiently reliable—that is, it is based on "sufficient facts or data," "is the product of reliable principles and methods," and "the witness has applied the principles and methods reliably to the facts of the case."

The Court serves as gatekeeper to weed out expert testimony that is not sufficiently reliable or relevant to issues in the case or testimony offered by a person not sufficiently expert in the field of study that his testimony concerns. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Determining whether expert testimony is sufficiently reliable for the fact-finder to consider requires a flexible approach, and the Court has "great latitude in determining not only *how* to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009) (emphasis in

original).  The Court's gatekeeping role is thus focused on whether the expert testimony pertains to an issue in the case and whether the methodology underlying the testimony is sound.  *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 159 (1999)).

Major Defendants argue that all three conclusions that Williams' report reaches should be excluded for lack of evidentiary support.  Williams' first conclusion is that "Von Duprin has incurred necessary response costs for site investigation and remediation activities associated with the release and threatened release of hazardous substances on the Defendants' properties." ([Filing No. 167-1 at 12](#).)  Major Defendants argue that Williams' conclusion lacks evidentiary support because he merely asserts that the Indiana Department of Environmental Management ("IDEM") has directed Von Duprin to perform investigation and remedial response actions, but IDEM's direction is irrelevant to which response costs are necessary under the Comprehensive Environmental Response, Compensation, and Liability Act. ([Filing No. 167 at 3-4](#).)  Second, Williams opines that "Site investigation activities performed at the Property and Study Area have been performed in substantial compliance with the National Contingency Plan." ([Filing No. 167-1 at 14](#).)  Major Defendants contend this opinion should be excluded because investigative costs need not comply with the National Contingency Plan ("NCP"), so the opinion is irrelevant.  Additionally, Major Defendants argue that Williams' testimony should be excluded because he "intends to testify that multiple environmental consultants have incurred costs consistent with the NCP," even though "when asked whether he had performed a specific analysis to support an opinion that any consultant complied with the NCP, Mr. Williams expressly conceded that he had not done so." ([Filing No. 167 at 5-6](#)) (emphasis deleted). Third, Williams opined that "Remedy selection and remediation within the Study Area has been performed in substantial compliance

with the NCP." ([Filing No. 167-1 at 25](.)  Major Defendants argue this opinion should be excluded as well because Williams' report only discusses removal action, not remedial action or remedy selection.  ([Filing No. 167 at 8](.))

Moran's objections follow largely the same logic.  It argues that Williams admitted that he performed no NCP compliance analysis for any consultants other than Geosyntec, Von Duprin's consulting firm, and yet Von Duprin is seeking to recover costs incurred by other consultants. ([Filing No. 168 at 3](.))  Moran also complains that Williams' report does not provide any "analysis or explanation of how Von Duprin's response actions satisfied the NCP's public participation requirement."  *Id.* at 6.

Von Duprin responds that Williams is qualified to testify as an expert on NCP compliance, that he need not opine that Von Duprin was in total compliance with the NCP, and that his opinions that Von Duprin incurred necessary response costs and that it complied with the NCP are reliable and based on sufficient facts. ([Filing No. 175 at 3-4](.))  Von Duprin argues the Defendants "simply misconstrue[] the nature of the opinion and testimony Williams was proffered to provide."  *Id.* at 12.  He was not hired to create an itemized list of Von Duprin's response costs and determine if each complied with the NCP, he was hired to "look at the response as a whole and determine whether it substantially complied with the NCP."  *Id.*  Von Duprin also contends that Geosyntec reports and IDEM documents provide a sufficient factual basis for Williams' opinion that removal costs were NCP-compliant.  *Id.* at 12-15.

Defendants do not allege that Williams has insufficient knowledge, skill, experience, training or education to serve as an expert witness.  Rather, they argue that his testimony is not based on sufficient facts or data and that, even if it were, much of it would not be helpful to the trier of fact.  The Court disagrees.  Williams' report is based on sufficient data to qualify him as

an expert witness, and Defendants' qualms with the report are a matter for cross-examination, not a motion *in limine*.

Major Defendants dispute that the report contains a sufficient factual basis to form the opinion that Von Duprin undertook necessary response costs. However, Williams' report lists the consultant reports that he reviewed to come to the conclusion that Von Duprin did take response actions and it discusses the costs of those actions. (Filing No. 167-1 at 16-17.) Major Defendants also questions Williams' ability to speak to the reports of consultants other than Geosyntec because "when asked whether he had performed a specific analysis to support an opinion that any consultant complied with the NCP, Williams expressly conceded that he had not done so." (Filing No. 167 at 5-6) (emphasis deleted). Importantly, Williams reviewed the reports written by those other consultants, and as an expert in the field his testimony will be useful in helping the factfinder make sense of those reports. His report details his opinion that Von Duprin incurred remedial costs that were substantially in compliance with the NCP.

The Defendants make valid arguments that cast doubt on Williams' report and expected testimony. But those arguments do not go to the admissibility of his testimony under Federal Rule of Evidence 702. They only go to his credibility—whether the factfinder should credit certain conclusions he reached. As such, they are appropriate questions for cross-examination, but not enough to limit his testimony. Thus, Major Defendants' Motion to Limit Expert Testimony at Trial (Filing No. 166), and Moran's Motion *in Limine* to Exclude Expert Opinions of Sam Williams (Filing No. 168) are **denied**.

## II.     <u>Von Duprin's Motion *in Limine* to Exclude Opinions of Dr. Love (Filing No. 169)</u>

Von Duprin moves to exclude the opinions of Moran's expert Adam H. Love, Ph.D. ("Dr. Love"). The legal standard applied to this motion is the same standard recited in Section I of this

Order:  Federal Rule of Evidence 702 permits expert testimony—defined as testimony regarding scientific, technical, or other specialized knowledge—if the testimony (a) is given by a person qualified as an expert by his knowledge, skill, experience, training, or education; (b) will assist the trier of fact to understand evidence or determine a fact at issue in the case; and (c) is sufficiently reliable—that is, it is based on "sufficient facts or data," "is the product of reliable principles and methods," and "the witness has applied the principles and methods reliably to the facts of the case."

Von Duprin does not challenge Dr. Love's qualifications, rather, it argues that his report and testimony rely "on insufficient, selectively chosen data," rendering them "unreliable and not adequately related to the facts at issue in the litigation." (Filing No. 170 at 4.) Von Duprin contends that Dr. Love's report is inaccurate because, in an effort to determine the contribution of Moran's properties to the contaminant plume, he analyzed soil samples from Moran's property that had possibly contaminated soil removed and replaced with clean soil.  *Id.* at 5.  Moran responds that Dr. Love's data comes from soil samples taken either pre-excavation or during excavation. (Filing No. 173 at 7.)  Because Dr. Love has declared that "only 1 soil samples [sic] (SME-2) among approximately 470 unique soil samples (0.2% of all soil data) utilized in the soil database was collected from a location that <u>may</u> have marginally overlapped a previously excavated area," Von Duprin's argument is unpersuasive. (Filing No. 155-1 at 4.) (Emphasis in original.) The challenge is one that Von Duprin may raise with Dr. Love on cross-examination, but not one that requires exclusion of this evidence.

Von Duprin next contends that Dr. Love's report "excludes data … that would hurt Moran's case and support Von Duprin's." (Filing No. 170 at 9.)  Specifically, it argues Dr. Love's dataset "excluded upgradient sample locations … that demonstrated the presence of PCE contamination near the Moran site," that Dr. Love "ignored and excluded soil data at 1929

Columbia Avenue which demonstrated lower and/or inconsistent amounts of PCE contamination in the soil near the facility," and that Dr. Love "knowingly disregards and excludes the impact of other neighboring sites known to have used chlorinated solvents." *Id.* at 9-10. Moran responds that some of the data Von Duprin alleges Dr. Love has excluded is actually considered by his report. (Filing No. 173 at 8-9.) Regardless, the data Von Duprin alleges Dr. Love to have excluded does not make his testimony less reliable. His report is based on sufficient facts that qualify him to testify under Federal Rule of Evidence 702, and any additional facts Von Duprin believes he should have considered can be brought to his attention during cross-examination.

Finally, Von Duprin argues Dr. Love's methodology is not acceptable because it cannot be accurately replicated and because his "chemical signature" for contaminants at 1929 Columbia Avenue differs from his own recommended practices. (Filing No. 170 at 13-19.) The Court is convinced that Dr. Love's report is the product of reliable methods and that it is detailed enough for other scientists to probe the report and attempt to replicate his investigation. The 30-page report is heavily footnoted with the documents Dr. Love relied upon in preparing his report. (Filing No. 135-1.) Nothing in Von Duprin's motion persuades the Court that Dr. Love's methodology was so flawed that it should be excluded. Von Duprin's Motion to Exclude the Opinions of Adam H. Love, Ph.D. (Filing No. 169) is **denied**.

### III.   Moran's Motion for Leave to File Sur-Reply in Opposition to Von Duprin's Motion to Exclude the Opinions of Dr. Love (**Filing No. 191**)

Having denied Von Duprin's Motion to Exclude the Testimony of Adam H. Love, Ph.D, Moran's Motion for Leave to File a Sur-Reply (Filing No. 191) is **denied as moot**.

### IV.   Von Duprin's Motion *in Limine* (**Filing No. 186**)

Von Duprin filed a short but sweeping Motion *in Limine* asking the Court to preclude Moran and the Major Defendants from introducing evidence on the following topics: (1) Claims

not previously disclosed in Defendants' Pleadings or Discovery Responses; (2) Witnesses, exhibits, or opinions not disclosed in Defendants' expert witness disclosures, interrogatory response, witness lists, or exhibit lists; (3) Opinions not offered by qualified and disclosed expert witnesses; (4) Legal conclusions offered by any witness. (Filing No. 186.) The Court agrees with Moran that Von Duprin's motion might be "better described as a request for the parties to follow the Rules of Evidence at trial." (Filing No. 190.) Von Duprin does not ask the Court to exclude any specific evidence; it asks the Court to exclude broad categories of evidence. The Court declines to issue an expansive ruling that merely reiterates the Rules of Evidence, but the parties can rest assured that the Court will enforce those rules when resolving specific evidentiary disputes at trial. Therefore, Von Duprin's Motion *in Limine* (Filing No. 186) is **denied**.

### V.     Major Defendants' Motion for Separation of Witnesses (Filing No. 194)

The Major Defendants have moved for separation of witnesses. (Filing No. 194.) In the absence of an objection from another party, the Court **grants** the motion.

### VI.     Von Duprin's Motion to Exclude or Limit Major Defendants' Designation of Deposition Testimony (Filing No. 195)

The Court excludes evidence on a motion in *limine* only if the evidence clearly is not admissible for any purpose. *See Hawthorne Partners v. AT&T Technologies, Inc*., 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Unless evidence meets this exacting standard, evidentiary rulings must be deferred until trial, so questions of foundation, relevancy, and prejudice may be resolved in context. *Id*. at 1400–01. Moreover, denial of a motion in *limine* does not necessarily mean that all evidence contemplated by the motion is admissible; rather, it only means that, at the pretrial stage, the court is unable to determine whether the evidence should be excluded. *Id*. at 1401.

Major Defendants designated Richard W. Phelps' ("Phelps") 125-page deposition as evidence they intend to present during their case-in-chief. (Filing No. 180.) Von Duprin asks the Court to exclude this evidence because Major Defendants' designation did not comply with the Case Management Plan. (Filing No. 195.) Section VIII.A.4 of the Case Management Plan states:

> A party who intends to offer any depositions into evidence during the party's case in chief shall prepare and file with the Court and copy to all opposing parties either:
>
> a. brief written summaries of the relevant facts in the depositions will be offered. (Because such a summary will be used in lieu of the actual deposition testimony to eliminate the time reading depositions in a question and answer format, this is strongly encouraged.); or
>
> b. if a summary is inappropriate, a document which lists the portions of the deposition(s), including the specific page and line numbers, that will be read….

(Filing No. 98 at 8.) Von Duprin asks the Court to exclude the Phelps deposition because the Major Defendants designated the entire 125-page deposition instead of complying with the Court's instruction.

The Major Defendants are unable call Phelps to testify in person because he has passed away. They respond that they did not intend to flout the Case Management Plan, but merely decided not to follow it "because they intend to ask the Court to take notice of the entire Phelps Deposition." (Filing No. 199.) "However, in the spirit of acquiescence, Major Tool has designated page and line numbers of particularly relevant portions of the Phelps Deposition" as an exhibit to its response. *Id.* at 2; Filing No. 199-1. Moreover, the Major Defendants do not intend to have the entire 125-page deposition read into the record. They merely ask the Court to take notice of the whole deposition because it is relevant.

The Court finds that the Major Defendants' have cured any non-compliance with the Case Management Plan by highlighting particularly relevant parts of the deposition in an exhibit to their

response. The Court will take notice of Phelps' Deposition. Von Duprin's motion to exclude it is **denied**.

### VII.   Von Duprin's Motion to Exclude Certain Exhibits Proposed by Major Defendants (Filing No. 196)

Von Duprin asks the Court to exclude two other types of exhibits the Major Defendants intend to offer: the Deposition of Michael Fye ("Fye") (and accompanying exhibits) and "[e]xhibits concerning off-site vapor intrusion investigation activities determined unrelated to the co-mingled plume." (Filing No. 196.) Von Duprin argues Fye's Deposition should be excluded because the Major Defendants did not summarize or abridge it in compliance with the Case Management Plan. *Id.* at 2-3.

The Major Defendants named Fye, a former Von Duprin employee, on their witness list and, in response to Von Duprin's motion, note that they intend to call him to testify in person at trial regarding Von Duprin's operations and use of chemicals and hazardous substances. (Filing No. 199 at 2.) They explain that Fye's deposition is included on their exhibit list, only because

> [t]he Major Defendants are not in regular contact with Mr. Fye and are currently unaware of his status and availability to testify at the trial. The Major Defendants therefore included Mr. Fye's deposition, which was taken in another matter to which the Major Defendants were not a party, on their Trial Exhibit List in the event Mr. Fye is shown to be unavailable to testify at the trial.

*Id.*

Because the Major Defendants do not intend to offer Fye's deposition testimony unless he is unavailable to testify at trial, the Court **denies** Von Duprin's motion as to the Fye Deposition. If the Major Defendants do ultimately move to admit the deposition into evidence at trial, Von Duprin may renew its objection, a ruling will be made on unavailability and Von Duprin may explain why the evidence should be excluded.

Von Duprin also asks the Court to exclude exhibits concerning the Major Defendants' investigation of possible vapor intrusion as St. Rita's Catholic Church. (Filing No. 196 at 3.) Von Duprin alleges that because the property falls outside the comingled plume at issue in this case, the investigation into St. Rita's Catholic Church is irrelevant. *Id.* The Major Defendants argue the investigation is relevant because it will serve as a response to Von Duprin's claims that the Major Defendants' response to contamination was inadequate. (Filing No. 199 at 3.)

Federal Rule of Evidence 401 defines "relevant evidence" as evidence having any tendency to make the existence of any facts that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. By that definition, evidence that the Major Defendants have incurred investigation costs related to contamination of properties not at issue in this case is irrelevant. Whether the Major Defendants have attempted to clean other contaminated properties is irrelevant to the Court's inquiry here: how much the Major Defendants contributed to the contamination of the comingled plume and what amount, if any, they must contribute to help remediate the contamination. Therefore, Von Duprin's motion is **granted** as to the evidence that the Major Defendants investigated vapor intrusion at St. Rita's Catholic Church.

## VIII. <u>Von Duprin's Motion to Exclude Certain Exhibits Proposed by Moran (**Filing No. 197**)</u>

Finally, Von Duprin seeks a pre-trial order excluding two of Moran's proposed exhibits: (1) Exhibit No. 600 – Redacted version of Confidential Release, Indemnification, Hold Harmless, and Settlement Agreement between Major Defendants and Moran dated September 11, 2017 (the "Settlement Agreement"); and (2) *Demonstrative Exhibits* – Any and all of the figures and tables that are in the expert report of Dr. Adam Love, Ph.D. (Filing No. 197). Moran did not respond to this Motion.

Von Duprin asserts that the Settlement Agreement as redacted will be "unhelpful and a waste of time." (Filing No. 197 at 2.) It asks the Court either to exclude the Settlement Agreement under Federal Rule of Evidence 403 or require Moran to produce and unredacted version of the Settlement Agreement pursuant to the Court's protective order (Filing No. 22) or under seal to the Court. (Filing No. 197 at 2-3.)

Rule 403 allows the Court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of … undue delay [or] wasting time." Moran designated the redacted Settlement Agreement in support of its cross-motion for summary judgment against the Major Defendants (Filing No. 153-19.) In its cross-motion for summary judgment, Moran explained that it was engaged in litigation with the Major Defendants, and as part of the settlement of that litigation, "Major agreed to undertake any responsibility and pay the costs associated with any environmental response action required in response to any residual contamination at the Moran Property or the Zimmer Parcel." (Filing No. 152 at 4.) An unredacted part of the Settlement Agreement supports that assertion. (Filing No. 153-19 at 10.)

Moran's assertion that it discharged any responsibility for cleaning up the Moran Property and the Zimmer Parcel in its settlement with the Major Defendants is relevant to this litigation, which aims to apportion the costs of cleaning up contaminated areas including those two properties. Von Duprin argues that "[e]xcessive redaction will not provide the Court or Von Duprin an adequate opportunity to determine whether the Agreement contains any admissions, obligations, recitals, or other terms pertinent to the Defendants' liability in this case." (Filing No. 197 at 2.) The Court is not persuaded.

Unredacted portions of the Settlement Agreement indicate that the Major Defendants released Moran from liability as to the Moran Property.[1] Von Duprin does not explain how redacted portions of the Settlement Agreement would cause an undue delay or waste the Court's time. By failing to do so, Von Duprin has not demonstrated that the Settlement Agreement's probative value would be outweighed by a waste of time associated with its admission. Because Von Duprin has not shown that the Settlement Agreement is inadmissible under Rule 403, the Court declines to exclude the Settlement Agreement.

Von Duprin also asks the Court to exclude "any figure, table, or other matter from the expert report of Adam H. Love, Ph.D.," if "Dr. Love's opinions and testimony are excluded from trial." *Id.* at 3. Because Section II of this order denies Von Duprin's Motion to exclude Dr. Love's opinions and testimony, and because this motion relies on the success of that motion, the Court also declines the request to exclude Dr. Love's demonstrative exhibits. Accordingly, Von Duprin's Motion to Exclude Certain Exhibits Proposed by Moran (Filing No. 197) is **denied**.

## IX. CONCLUSION

For the reasons explained above, the Court makes the following rulings:

Major Defendants' Motion to Limit Expert Testimony at Trial (Filing No. 166) and Moran's Motion *in Limine* to Exclude Expert Opinions of Sam Williams (Filing No. 168) are **DENIED**. Von Duprin's Motion *in Limine* to Exclude Opinions of Adam H. Love, Ph.D. (Filing No. 169) is **DENIED**. Moran's Motion for Leave to File Sur-Reply in Opposition to Von Duprin's

---

[1] Specifically, an unredacted portion of the Settlement Agreement reads: "In exchange for payment of the SETTLEMENT AMOUNT to MAJOR TOOL by the MORAN INSURERS on behalf of MORAN, MAJOR TOOL grants to MORAN and the MORAN INSURERS a full, complete and final release, discharge and settlement of all CLAIMS, DAMAGES and EXPENSES that MAJOR TOOL has, known or unknown, suspected, or unsuspected, against MORAN and the MORAN INSURERS arising from CONTAMINATION or KNOWN CONTAMINATION of or on the MORAN PROPERTIES, as asserted or that could have been asserted in the LAWSUIT, which have been incurred by MAJOR TOOL, for which MAJOR TOOL has sought to hold MORAN liable in the LAWSUIT." (Filing No. 153-19 at 10.)

Motion to Exclude the Opinions of Adam H. Love, Ph.D. (Filing No. 191) is **DENIED as moot**. Von Duprin's Motion *in Limine* (Filing No. 186) is **DENIED**.

The Major Defendants' Motion for Separation of Witnesses (Filing No. 194) is **GRANTED**. The Court directs the parties to instruct their witnesses to not discuss their testimony with anyone else either before or after it is given. Von Duprin's Motion to Exclude or Limit Major Defendants' Designation of Deposition Testimony (Filing No. 195) is **DENIED**. Von Duprin's Motion to Exclude Certain Exhibits Proposed by Major Defendants (Filing No. 196) is **GRANTED in part and DENIED in part**. It is **granted** as to the admissibility of evidence regarding the Major Defendants' investigation into vapor intrusion at properties outside the comingled plume area. It is **denied** as to the admissibility of the Phelps Deposition and the Fye Deposition. And finally, Von Duprin's Motion to Exclude Certain Exhibits Proposed by Moran (Filing No. 197) is **DENIED**.

**SO ORDERED.**

Date: 6/14/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Glenn David Bowman
STOLL KEENON OGDEN, PLLC (Indianapolis)
Glenn.Bowman@skofirm.com

Alexandra Robinson French
BARNES & THORNBURG LLP
arobinson@btlaw.com

Samuel B. Gardner
ICE MILLER LLP
samuel.gardner@icemiller.com

Edward S. Griggs

BARNES & THORNBURG LLP (Indianapolis)
sean.griggs@btlaw.com

Bruce L. Kamplain
NORRIS CHOPLIN & SCHROEDER LLP
bkamplain@ncs-law.com

Angela Pease Krahulik
ICE MILLER LLP
krahulik@icemiller.com

Cynthia Elaine Lasher
NORRIS CHOPLIN & SCHROEDER LLP
clasher@ncs-law.com

Marc Andrew Menkveld
STOLL KEENON OGDEN, PLLC (Indianapolis)
Marc.Menkveld@skofirm.com

Nicholas B. Reuhs
ICE MILLER LLP
nicholas.reuhs@icemiller.com