

# UNITED STATES DISTRICT COURT
## Southern District of Indiana

### Laura A. Briggs, Clerk of Court

Birch Bayh Federal Building
& U.S. Courthouse, Room 105
46 East Ohio Street
Indianapolis, IN 46204
(317) 229-3700

U.S. Courthouse, Room 104
921 Ohio Street
Terre Haute, IN 47807
(812) 231-1840

Winfield K. Denton Federal Building
& U. S. Courthouse, Room 304
101 NW Martin Luther King Blvd.
Evansville, IN 47708
(812) 434-6410

Lee H. Hamilton Federal Building
& U.S. Courthouse, Room 210
121 West Spring Street
New Albany, IN 47150
(812) 542-4510

April 29, 2020

Alexandra Robinson French
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204

Bruce L. Kamplain
NORRIS CHOPLIN & SCHROEDER LLP
101 West Ohio Street
Ninth Floor
Indianapolis, IN 46204

Angela Pease Krahulik
ICE MILLER LLP
One American Square
Suite 2900
Indianapolis, IN 46282

RE:  VON DUPRIN LLC v. MORAN ELECTRIC SERVICE, INC., et al

CAUSE NO:  1:16-cv-01942-TWP-DML

Dear Appellant and Appellee:

Please be advised that the Notice of Appeal filed in 1:16-cv-01942-TWP-DML has been forwarded to the United States Court of Appeals for the Seventh Circuit. The Clerk of the Seventh Circuit will assign an appellate case number, docket the appeal, and notify case participants of the Seventh Circuit case number assigned to this matter.

Please review Seventh Circuit Rule 10 (enclosed) for guidance regarding record preparation.

Please contact the Clerk's office with any questions or concerns.

Sincerely,
Laura A. Briggs,
Clerk of Court

By Laura Townsend, Deputy Clerk
812-542-4511

# Selected Rules for Reference

**CIRCUIT RULE 10. Preparation and Accessibility of Record in District Court Appeals**

**(a) Record Preparation Duties.**

**(1) Within 14 days of filing the notice of appeal the district court must ensure the district court docket is complete and made available electronically to the court of appeals.**

**(2) The clerk of the district court must prepare and hold any confidential record or exhibit not available electronically on the district court docket until requested by the court of appeals.**

**(3) Counsel must ensure, within 21 days of filing the notice of appeal, that all electronic and non electronic documents necessary for review on appeal are on the district court docket.**

(b) *Correction or Modification of Record.* A motion to correct or modify the record pursuant to Rule 10(e), Fed. R. App. P., or a motion to strike matter from the record on the ground that it is not properly a part thereof must be presented first to the district court. That court's order ruling on the motion must be included as part of the record and a notice of the order must be sent to the court of appeals.

(c) *Order or Certification with Regard to Transcript.* Counsel and court reporters are to utilize the form prescribed by this court when ordering transcripts or certifying that none will be ordered. For specific requirements, see Rules 10(b) and 11(b), Fed. R. App. P.

(d) *Ordering Transcripts in Criminal Cases.*

(1) *Transcripts in Criminal Justice Act Cases.* At the time of the return of a verdict of guilty or, in the case of a bench trial, an adjudication of guilt in a criminal case in which the defendant is represented by counsel appointed under the Criminal Justice Act (C.J.A.), counsel for the defendant must request a transcript of testimony and other relevant proceedings by completing a C.J.A. Form No. 24 and giving it to the district judge. If the district judge believes an appeal is probable, the judge must order transcribed so much of the proceedings as the judge believes necessary for an appeal. The transcript must be filed with the clerk of the district court within 40 days after the return of a verdict of guilty or, in the case of a bench trial, the adjudication of guilt or within seven days after sentencing, whichever occurs later. If the district judge decides not to order the transcript at that time, the judge must retain the C.J.A. Form No. 24 without ruling. If a notice of appeal is filed later, appointed counsel or counsel for a defendant allowed after trial to proceed on appeal in forma pauperis must immediately notify the district judge of the filing of a notice of appeal and file or renew the request made on C.J.A. Form No. 24 for a free transcript.

(2) *Transcripts in Other Criminal Cases.* Within 14 days after filing the notice of appeal in other criminal cases, the appellant or appellant's counsel must deposit with the court reporter the estimated cost of the transcript ordered pursuant to Rule 10(b), Fed. R. App. P., unless the district court orders that the transcript be paid for by the United States. A non-indigent appellant must pay a pro rata share of the cost of a transcript prepared at the request of an indigent co-defendant under the Criminal Justice Act unless the district court determines that fairness requires a different division of the cost. Failure to comply with this paragraph will be cause for dismissal of the appeal.

(e) *Indexing of Transcript.* The transcript of proceedings to be part of the record on appeal (and any copies prepared for the use of the court or counsel in the case on appeal) must be bound by the reporter, with the pages consecutively numbered throughout. The transcript of proceedings must contain a suitable index, as well as the following information:

(1) An alphabetical list of witnesses, giving the pages on which the direct and each other examination of each witness begins.

(2) A list of exhibits by number, with a brief description of each exhibit indicating the nature of its contents, and with a reference to the pages of the transcript where each exhibit has been identified, offered, and received or rejected.

(3) A list of other significant portions of the trial such as opening statements, arguments to the jury, and instructions, with a reference to the page where each begins.

When the record includes transcripts of more than one trial or other distinct proceeding, and it would be cumbersome to apply this paragraph to all the transcripts taken together as one, the rule may be applied separately to each transcript of one trial or other distinct proceeding.

(f) *Presentence Reports.* The presentence report is part of the record on appeal in every criminal case. The district court must maintain this report under seal, unless it has already been placed in the public record in the district court. If the report is under seal, the report may not be included in the appendix to the brief or the separate appendix under Fed. R. App. P. 30 and Circuit Rule 30. Counsel of record may review the presentence report but may not review the probation officer's written comments and any other portion submitted in camera to the trial judge.

(g) *Effect of Omissions from the Record on Appeal.* When a party's argument is countered by a contention of waiver for failure to raise the point in the trial court or before an agency, the party opposing the waiver contention must give the record cite where the point was asserted and also ensure that the record before the court of appeals contains the relevant document or transcript.

NOTE:   The complete Federal Rules of Appellate Procedure & Rules of the 7th Circuit Court of Appeals are available at: http://www.ca7.uscourts.gov/Rules/Rules/rules.pdf

# THE SETTLEMENT CONFERENCE PROGRAM
## U.S. COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Pursuant to Rule 33 of the Federal Rules of Appellate Procedure[1] and Circuit Rule 33, the Court conducts conferences with counsel and clients to encourage and facilitate the settlement of civil appeals. Rule 33 conferences are conducted in all types of fully-counseled civil appeals except immigration, social security, habeas corpus, prisoners' civil rights, sentencing, and mandamus cases. The Court spontaneously notices most eligible appeals for Rule 33 conferences. Attorneys for one or more parties may also request that a conference be conducted in any eligible case.

Counsel and clients are well-advised to explore opportunities for settlement at the appellate level.Regardless of how unlikely it may seem, the fact is that many cases can be settled at this stage, substituting a certain and acceptable outcome for the risk and expense of further litigation. The Court's Settlement Conference Office has assisted counsel in settling many appeals without unduly delaying the progress of those appeals which do not yield to settlement efforts.      The following information is intended to assist practitioners and their clients in understanding how the Seventh Circuit's settlement conference program works and how they can make the best use of it to achieve favorable results.

- **How do counsel learn that a Rule 33 conference will be conducted in their appeal?**
  A Notice of Rule 33 Settlement Conference is posted on the docket. The Notice is an order of the Court advising counsel of the date and time of the conference, whether it is to be in person or by telephone, and how they and their clients are expected to prepare.

- **How can a Rule 33 conference be requested?**
  Counsel are invited to request a Rule 33 conference by contacting the Settlement Conference Office, U.S. Court of Appeals for the Seventh Circuit, 219 S. Dearborn, Room 1120, Chicago, Illinois 60604-1705 (Tel. (312) 435-6883/Fax (312) 435-6888/E-mail:  settlement@ca7.uscourts.gov ). At the request of any party or parties in an eligible appeal, the Settlement Conference Office will schedule a Rule 33 conference if its calendar permits. Counsel are then advised by notice that a conference will be held.

- **Do other parties have to be informed that a conference was requested?**
  No. If a party prefers to keep its request confidential, the Settlement Conference Office will not disclose to other parties or to the Court that the conference was requested.

- **Is participation in Rule 33 conferences optional?**
  No. When a Rule 33 conference is scheduled, participation is mandatory.

- **Are clients required to attend?**
  Clients and insurance representatives are required to attend Rule 33 conferences whenever the Settlement Conference Office so directs. When clients or insurance representatives have not been directed to attend the initial conference, they must be available by phone – with full settlement authority – for the duration of the conference.

- **Is it mandatory to settle?**
  No. Whether to settle is ultimately for the parties and their counsel to decide. However, counsel and parties are required to participate with the utmost diligence and good faith. Experience shows that settlements can often be achieved when neither side thought it possible.

---

[1] FRAP Rule 33 provides: "Appeal Conferences. The Court may direct the attorneys, and in appropriate cases the parties, to participate in one or more conferences to address any matter that may aid in the disposition of the proceedings, including the simplification of the issues and the possibility of settlement. A conference may be conducted in person or by telephone and be presided over by a judge or other person designated by the court for that purpose. Before a settlement conference, attorneys must consult with their clients and obtain as much authority as feasible to settle the case. As a result of a conference, the court may enter an order controlling the course of the proceedings or implementing any settlement agreement."

- **Who conducts Rule 33 conferences?**

  The Court has delegated the responsibility for conducting Rule 33 conferences to three full-time conference attorneys: Joel N. Shapiro, Rocco J. Spagna, and Jillisa Brittan. All were civil litigators in private practice prior to their appointment by the Court.

- **Is there a fee for the services of the conference attorney?**

  No. The assistance of the Settlement Conference Office is available to appellate litigants at no charge.

- **Must each party's lead attorney attend the Rule 33 conference?**

  Yes. It is essential that each party be represented at the Rule 33 conference by an attorney who not only is conversant with the case but is the attorney on whose advice the party relies. If more than one attorney meets these criteria, either of them may represent the client in the Rule 33 conference.

- **How is it decided whether a Rule 33 conference will be conducted by telephone or in person?**

  When all participants reside in the Chicago metropolitan area, Rule 33 conferences are usually held in the Settlement Conference Office at the United States Courthouse. Otherwise, conferences are generally conducted by telephone. The telephone equipment used in these conferences can accommodate more than a dozen separate lines and enables the conference attorney to speak privately with any combination of participants. Experience indicates that telephone conferences are generally as effective as in-person conferences in fostering settlements.

- **Are in-person conferences ever held outside Chicago?**

  Because the resources of the settlement conference program are limited, in-person conferences cannot routinely be held throughout the Circuit. However, from time to time in-person conferences are conducted at locations other than Chicago. If the participants believe that an in-person conference outside Chicago would be more productive than a conference by telephone, they are welcome to suggest it.

- **Are Rule 33 conferences confidential?**

  Yes. The Court requires all participants to keep what is said in these conferences strictly confidential. Communications, oral and written, which take place in the course of Rule 33 proceedings may not be disclosed to anyone other than the litigants, their counsel, and the conference attorney.

- **Do judges of the Court of Appeals learn what has happened at a Rule 33 conference?**

  No. Participants in Rule 33 conferences, including the conference attorney, are forbidden to impart to any judge or other court personnel, in the Court of Appeals or elsewhere, what has been communicated in these conferences.

- **What occurs at a Rule 33 conference?**

  Rule 33 conferences are official proceedings of the Court but are off-the-record and relatively informal. Discussion is conversational rather than argumentative. The focus is on realistically assessing the prospects of the appeal, the risks and costs of further litigation, the interests of the parties, and the benefits each side can gain through settlement. The conference attorney ordinarily meets with counsel both together and separately. Settlement proposals are discussed. A resolution may or may not be reached during the initial conference. Often, follow-up conferences or shuttle negotiations are conducted. Letters or draft proposals may be exchanged. By the conclusion of the Rule 33 process, the parties will have either reached an agreement to settle or learned how far apart they are and what are the remaining obstacles to settlement.

- **Is discussion of settlement limited to the appeal itself?**

  Not necessarily. If settlement of the appeal will not dispose of the entire case, or if related litigation is pending in other forums, the parties are invited and encouraged to explore the possibility of a global settlement.

- **Is briefing deferred when a Notice of Rule 33 Conference is issued?**

  Briefing is usually postponed until after the initial conference. If further modification of the briefing schedule would be conducive to settlement, an order to that effect may later be entered. What preparation is required of

counsel? In preparation for the initial Rule 33 conference, attorneys are required to consult rigorously with their clients and obtain as much authority as feasible to settle the case. Counsel must also review their legal and factual contentions with a view to being able to discuss candidly the prospects of the appeal and the case as a whole. If the conference attorney requests copies of pleadings, hearing transcripts, or other material in anticipation of the conference, counsel are expected to provide it promptly.

- **What is the role of the conference attorney?**
  Because the format of Rule 33 conferences is flexible and each appeal is dealt with on its own terms, the conference attorney plays a variety of roles. He or she acts as moderator, facilitator, and intermediary. The conference attorney serves as a neutral evaluator and a reality check. He or she may suggest terms of settlement. Without being coercive, the conference attorney acts as a determined advocate for settlement.

- **What can counsel expect of the conference attorney**?
  Before the initial conference, the conference attorney will have familiarized him or herself with the history of the litigation, the posture of the case, and the issues on appeal. During the conference, the conference attorney will seek additional information about the background of the dispute and the parties' interests, claims and defenses in order to explore all possibilities for a voluntary resolution. The conference attorney is strictly impartial. He or she does not advocate for any party and avoids making comments that could advantage one side or another in arguing the issues on appeal. The conference attorney will disclose any affiliation or prior representation of which he or she is aware that could call his or her neutrality into question. The conference attorney does not force any party to settle or to accept terms it is not willing to accept. While he or she urges parties to take advantage of opportunities to settle favorably, the conference attorney recognizes that settlement is not always possible.

- **How can counsel make best use of the Rule 33 conference to benefit their clients?**
  Recognize that the Rule 33 conference is an opportunity to achieve a favorable outcome for your client. Without laying aside the advocate's responsibility, approach the conference as essentially cooperative rather than adversarial. Help your client make settlement decisions based not on overconfidence or wishful thinking, but on a realistic assessment of the case; not on emotion, however justified it may be, but on rational self-interest. Suggest terms of settlement that maximize the benefits of settlement for all parties. Take advantage of the opportunity to talk confidentially and constructively with counsel for the other parties and, if clients are present, to address them respectfully but convincingly. Let the conference attorney know how he or she can help you obtain a satisfactory resolution. Be candid. Don't posture. Listen closely to what other participants have to say. Give the process a chance to work.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| VON DUPRIN LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:16-cv-01942-TWP-DML |
| | ) | |
| MORAN ELECTRIC SERVICE, INC. | ) | |
| MAJOR HOLDINGS, LLC, | ) | |
| MAJOR TOOL AND MACHINE, INC., and | ) | |
| ZIMMER PAPER PRODUCTS INCORPORATED,) | | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF APPEAL

Notice is hereby given that Major Holdings, LLC and Major Tool and Machine, Inc., Defendants in the above-captioned case, hereby appeal to the United States Court of Appeals for the Seventh Circuit from a Final Judgment (Dkt. 257), entered on March 30, 2020 (the "Judgment"); from any and all adverse rulings incorporated in, antecedent to, or ancillary to the Judgment; and from any and all adverse interlocutory orders, judgments, decrees, decisions, rulings, and opinions that merged into and became part of the Judgment, that shaped the Judgment, that are related to the Judgment, and upon which the Judgment is based, including, but not limited to, the Entry on the Parties' Cross-Motions for Summary Judgment (Dkt. 203).

Respectfully submitted,

*/s/ Angela P. Krahulik*
Angela P. Krahulik (23036-49) (counsel of record)
Samuel B. Gardner (32825-29)
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282-0200

*Attorneys for Defendants Major Holdings, LLC and*
*Major Tool and Machine, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2020, a copy of the foregoing was filed electronically.

Service of this filing will be made on all ECF-registered counsel by operation of the Court's

electronic filing system. Parties may access this filing through the Court's system.

*/s/ Angela P. Krahulik*
Angela P. Krahulik

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN  46282-0200
(317) 236-2100

| | | |
|---|---|---|
| VON DUPRIN LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:16-cv-01942-TWP-DML |
| | ) | |
| MORAN ELECTRIC SERVICE, INC. | ) | |
| MAJOR HOLDINGS, LLC, | ) | |
| MAJOR TOOL AND MACHINE, INC., and | ) | |
| ZIMMER PAPER PRODUCTS INCORPORATED,) | | |
| | ) | |
| Defendants. | ) | |

## CIVIL DOCKETING STATEMENT

Defendants Major Holdings, LLC and Major Tool and Machine, Inc. (collectively, the "Major Defendants"), by counsel, hereby submit this Docketing Statement pursuant to Circuit Rules 3(c)(1) and 28(a).

1.     Plaintiff Von Duprin LLC ("Von Duprin") brought this environmental action against the Major Defendants, as well as Defendant Moran Electric Service, Inc. ("Moran") and Defendant Zimmer Paper Products Inc. ("Zimmer"), in a purported effort to recover certain costs it has allegedly incurred (or allegedly will incur) in investigating and remediating contamination on its own property and other downgradient properties. Von Duprin asserted claims under Section 107 (42 U.S.C. § 9607) and Section 113 (42 U.S.C. § 9613) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") against all Defendants. Von Duprin also asserted claims against Moran and Zimmer under Indiana's Environmental Legal Action Statute (Indiana Code § 13-30-9 *et seq.*) (the "Indiana ELA"). Von Duprin did not assert a claim against the Major Defendants under the Indiana ELA, and only asserted the

CERCLA claims against the Major Defendants because they are allegedly the current owners and/or operators of various previously-contaminated properties.

The Major Defendants asserted a counterclaim and cross-claim against Von Duprin and Moran under Section 113. Moran asserted a counterclaim and cross-claim against Von Duprin and the Major Defendants under Section 113. Moran also asserted a cross-claim against the Major Defendants under the Indiana ELA, but ultimately dismissed that cross-claim at trial. Zimmer failed to appear or respond to the Amended Complaint, and the Clerk entered a default against Zimmer under Federal Rule of Civil Procedure 55(a).

2.      The district court has jurisdiction over the subject matter of this action based on federal question jurisdiction pursuant to 28 U.S.C. § 1331: CERCLA provides for exclusive federal district court jurisdiction. The district court also has jurisdiction over Von Duprin's claim for declaratory relief pursuant to 28 U.S.C.§§ 2201-2202 and 42 U.S.C. § 9613(g)(2), and has pendant jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

3.      Appellate jurisdiction is proper under 28 U.S.C. § 1291. This appeal is taken as of right pursuant to Federal Rule of Appellate Procedure 3(a)(1) from the district court's March 30, 2020, Final Judgment (Dkt. 257). The Notice of Appeal was timely filed on April 28, 2020 (Dkt. 258). The district court has disposed of all pending claims by and against the parties.

Respectfully submitted,

*/s/ Angela P. Krahulik*
Angela P. Krahulik (23036-49) (counsel of record)
Samuel B. Gardner (32825-29)
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282-0200

*Attorneys for Defendants Major Holdings, LLC and Major Tool and Machine, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2020, a copy of the foregoing was filed electronically.

Service of this filing will be made on all ECF-registered counsel by operation of the Court's

electronic filing system. Parties may access this filing through the Court's system.

*/s/ Angela P. Krahulik*
Angela P. Krahulik


ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282-0200
(317) 236-2100

I\15371904.3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| VON DUPRIN LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:16-cv-01942-TWP-DML |
| | ) |
| MORAN ELECTRIC SERVICE, INC., | ) |
| MAJOR HOLDINGS, LLC, | ) |
| MAJOR TOOL AND MACHINE, INC., and | ) |
| ZIMMER PAPER PRODUCTS INCORPORATED | ) |
| | ) |
| Defendants. | ) |
| | ) |
| MAJOR HOLDINGS, LLC, | ) |
| MORAN ELECTRIC SERVICE, INC., | ) |
| MAJOR TOOL AND MACHINE, INC., | ) |
| | ) |
| Counter Claimants, | ) |
| | ) |
| v. | ) |
| | ) |
| VON DUPRIN LLC, MAJOR HOLDINGS, LLC, | ) |
| and MAJOR TOOL AND MACHINE, INC., | ) |
| | ) |
| Counter Defendants. | ) |
| | ) |
| MAJOR HOLDINGS, LLC, AND MAJOR TOOL | ) |
| AND MACHINE, INC., | ) |
| | ) |
| Cross Claimants, | ) |
| | ) |
| v. | ) |
| | ) |
| MORAN ELECTRIC SERVICE, INC., | ) |
| VON DUPRIN LLC, | ) |
| Cross Defendants. | ) |

## ENTRY ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on Plaintiff Von Duprin LLC's ("Von Duprin") Motion for

Partial Summary Judgment on Section 107(a) Liability (Filing No. 133), and Defendant Moran

Electric Service, Inc's. ("Moran") Cross-Motion for Partial Summary Judgment ([Filing No. 138](#)). Also pending is Major Holdings, LLC's and Major Tool and Machine, Inc.'s (collectively, "the Major Defendants"), Cross-Motion for Summary Judgment against Plaintiff and Motion for Summary Judgment against Cross-Claimant ([Filing No. 141](#)). Von Duprin alleges the Major Defendants, in their status as current owners of certain properties, are liable for damages owed to it under Section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). ([Filing No. 134](#).) Moran asks the Court to deny Von Duprin's motion for summary judgment and to issue a ruling declaring that Moran is responsible only for its proportionate share of harm. ([Filing No. 139](#).) The Major Defendants seek summary judgment on all claims asserted against them by both Von Duprin and Moran. ([Filing No. 142](#).) For the reasons stated below, Von Duprin's Motion for Partial Summary Judgment is **denied**. Moran's Motion for Partial Summary Judgment is **granted**. The Major Defendants' Motion for Summary Judgment against Von Duprin is **granted in part and denied in part,** and their Motion for Summary Judgment against cross-claimant Moran is **denied**.

## I. BACKGROUND

### A. Factual History

This litigation relates to the release of hazardous substances at several properties located in Indianapolis, Indiana, including a property previously owned by Von Duprin, and 1925 Columbia Avenue, (the "Von Duprin Facility") and several upgradient properties, owned at various times by Moran and/or the Major Defendants. Those upgradient properties are bounded by Hovey Street to the east, East 19th Street to the south, Dr. Andrew J. Brown Avenue to the west, and East 21st Street to the North. ([Filing No. 42-1](#).) The parties have generally divided the upgradient lot into three components based on ownership rather than geography: the "Former Ertel

Facility," the "Former Zimmer Paper Facility," (subdivided into the Zimmer Paper Facility and the Zimmer Packaging Facility) and the "Former Moran Facility." (Filing No. 134 at 7-8; Filing No. 139 at 5-6; Filing No. 142 at 6-7.) All three of those facilities as well as the Von Duprin Facility were once owned and operated by manufacturers who released chlorinated solvents into nearby groundwater, which comingled into a plume producing negative environmental effects.

The Major Defendants are the current owners of four of the properties at issue in this case: the Moran Property, the Zimmer Paper Parcel, the Zimmer Packaging Facility, and the Ertel Facility. While the Major Defendants themselves have not caused or contributed any contamination on any of those properties, it is undisputed that their ownership of the contaminated properties brings legal obligations. Since acquiring the properties they have participated in investigation and cleanup.

### 1. **The Von Duprin Facility**

Von Duprin manufactured exit devices such as door handles for commercial applications from 1955 to 1986 at 1925 Columbia Avenue in Indianapolis.[1] (Filing No. 140-1 at 2,5.) Its operations resulted in the release of hazardous chemicals, including trichloroethylene ("TCE") and perchloroethylene ("PCE"), into soil and groundwater on and around the Von Duprin Facility[2]. (Filing No. 140-2.) In 1986, Von Duprin ceased operations, and its owner at that time, Ingersoll-Rand Company, sold the facility to Threaded Rod Company, Inc. in 1987. (Filing No. 140-1 at 2.) Threaded Rod Company manufactured anchor bolts and connecting rods and did not generate hazardous waste. *Id.*

---

[1] The address of the site has changed from 1925 Columbia Avenue to 1929 Columbia Avenue. (Filing No. 140-2.)
[2] *Trichloroethylene* is used as a solvent for cleaning metal parts. Exposure to very high concentrations of trichloroethylene can cause dizziness, headaches, sleepiness, incoordination, confusion, nausea, unconsciousness, and even death. See https://www.atsdr.cdc.gov/toxfaqs /tf.asp?id=172&tid=30. *Perchloroethylene* is a colorless liquid that is also called tetrachloroethylene, PERC, or PCE. It is primarily used for dry cleaning fabrics and degreasing metals. See https://toxtown.nlm.nih.gov/chemicals-and-contaminants/perchloroethylene-pce-perc. Both TCE and PCE are designated as hazardous substances under federal regulations. 40 C.F.R. § 302.4(a).

## 2.    <u>Former Ertel Facility</u>

Ertel Manufacturing operated the facility from the 1890's through 2001 and it originally contained a machine shop and aluminum and iron foundries, but later was used to manufacture automotive engine parts. ([Filing No. 135-1 at 5](#).) The property was sold to Dynagear in 1998, who used it to manufacture auto parts until 2002, when the property was abandoned, leaving behind soil and groundwater impacted with chlorinated volatile organic compounds. *Id.* Between 2004 and 2008, the City of Indianapolis, the Indiana Department of Environmental Management ("IDEM"), and the U.S. Environmental Protection Agency performed cleanup activities at the Former Ertel Facility site. *Id* at 6. The parties agree that these cleanup activities addressed soil on the site that had been impacted by TCE, and designated evidence shows that confirmation sampling following soil excavation at the site showed elevated levels of TCE and PCE at levels that far exceed industrial default closure levels. ([Filing No. 140-17 at 28-32](#).) The parties disagree as to whether the cleanup activities addressed TCE or PCE in the groundwater on the site.[3] ([Filing No. 134 at 7](#); [Filing No. 139 at 6](#); [Filing No. 142 at 6](#).)

## 3.    <u>Former Zimmer Paper Facility</u>

The Former Zimmer Paper Facility was located at 1931 Dr. Andrew J. Brown Avenue. ([Filing No. 135-1 at 4](#).) It had been used for chemical and equipment storage. ([Filing No. 134 at 7](#).) Moran owned the property between 1967 and 1983, when title was conveyed to Defendant Zimmer Paper Products Incorporated ("Zimmer"). ([Filing No. 135-1 at 4](#).) Major Holdings acquired title to the facility in 2007 and is the current owner. *Id.* In 2007, 7,350 tons of chlorinated solvent-impacted-soil were removed from the site. ([Filing No. 135-4 at 5](#).) The parties dispute

---

[3] Von Duprin and Moran contend no cleanup effort has addressed groundwater contamination, while the Major Defendants state: "Remedial actions undertaken at the Ertel Facility have resulted in a substantial reduction of the contaminant mass and a reduction of the migration of contamination to the groundwater." ([Filing No. 142 at 6](#).)

whether there has been any remedial effort to address impacts to the groundwater at the Former Zimmer Paper Facility.[4] ([Filing No. 134 at 8](); [Filing No. 139 at 6](); [Filing No. 142 at 6]().)

4. **Former Moran Facility**

The Former Moran Facility (Moran Motor Shop and Moran Dynamometer Building) is property addressed as 1931 Dr. Andrew J. Brown Avenue and 1436 E. 19th Street. Moran used the site for industrial manufacturing operations from approximately 1927 to 1998. Major Holdings has owned this property since 2005.

In April 2016, IDEM notified Moran that it was a potentially responsible party ("PRP") under the State Cleanup Program pursuant to Indiana Code § 13-25-4, in connection with soil and gradient contamination at property located on the former Moran Facility. IDEM determined the Former Moran Facility released TCE, PCE, and other hazardous substances that aggregated with hazardous substances running off other nearby properties to create a "ground water contaminant plume." ([Filing No. 135-1 at 6]().) Von Duprin attributes these hazardous substances to degreasing pits that Moran operated when it owned the property. ([Filing No. 134 at 8]().) Von Duprin alleges "no effort was made to address impacts to the groundwater either on the Moran site or downgradient." *Id.* Moran alleges that soil samples taken from the degreasing pits just after Moran ceased operations at the site in 1996 showed either no traces of TCE or TCE concentrations "well below industrial default closure levels." ([Filing No. 139 at 5]().) According to Moran, after buildings at the Former Moran Facility were demolished, soil samples detected levels of TCE and PCE below the industrial default closure levels and those samples were disposed of as non-hazardous waste. *Id.* The Major Defendants dispute Von Duprin's claim that no remedial efforts

---

[4] The Major Defendants assert that they have voluntarily undertaken remedial actions at the site that have "resulted in a substantial reduction of the contaminant mass and a reduction of the migration of contamination to the groundwater." ([Filing No. 142 at 6]().)

were undertaken at the Former Moran Facility to reduce the migration of contamination to the groundwater. ([Filing No. 142 at 7](.).)

5.    **Investigative and Remedial Efforts**

In August 2013, IDEM notified Von Duprin that it was a PRP under the State Cleanup Program pursuant to Indiana Code § 13-25-4 in connection with soil and groundwater Contamination at the Columbia Avenue Facility and may have incurred liability in connection with the release of hazardous substances from the Von Duprin Facility. ([Filing No. 135-8](.).) At IDEM's direction, Von Duprin performed extensive sampling and investigation of the soil, soil gas, indoor air, and groundwater at the Von Duprin Facility. ([Filing No. 136 at 2](.).) IDEM required Von Duprin to conduct downgradient groundwater and indoor air sampling to determine how far certain hazardous substances migrated. *Id.* Von Duprin's investigation found hazardous substances at the Von Duprin Facility and other properties near Dr. Andrew J. Brown Avenue and E. 19th Street, including at residences. *Id.* Von Duprin installed mitigation systems into each affected residence that reduced contaminants to levels that meet IDEM's expectations. *Id.* Von Duprin continues to maintain and pay the annual cost for the operation of each residential mitigation system. *Id.*

IDEM also ordered the Threaded Rod Company, the current occupant of the Von Duprin Facility, to investigate the extent of groundwater contamination and to engage in remedial actions to protect nearby residents and the public from hazardous chemicals. ([Filing No. 135-9](.).) After undertaking an investigation, the Threaded Rod Company sued Von Duprin and Moran to recover the costs. ([Filing No. 135-10](.).) Von Duprin reached a settlement with the Threaded Rod Company, the terms of which required Von Duprin to complete the investigation the Threaded Rod Company had started and to finance cleanup of the Von Duprin Facility and the contaminated groundwater. ([Filing No. 136 at 3](.).) The Threaded Rod Company relinquished its work product to Von Duprin,

giving Von Duprin access to sampling results and laboratory data and reports prepared by Threaded Rod Company's consultants. *Id.* Von Duprin has attempted to engage the Defendants in remedial efforts to mitigate the contaminated groundwater in the area, but, according to Von Duprin, the Defendants have refused. *Id.* at 4. Moran denies it has contributed to contamination of groundwater through TCE and PCE seepage ([Filing No. 139 at 5-6](#)), and the Major Defendants deny that they have refused to engage in remedial efforts. ([Filing No. 142 at 7](#).)

More facts will follow as necessary.

## B.  <u>Procedural History</u>

Von Duprin filed this action seeking a judgment against Moran, the Major Defendants and Zimmer Paper Products Incorporated (collectively, "Defendants") under 42 U.S.C. §§ 9607(a)(4)(B) and 9613(g)(2) and Indiana Code § 13-30-9. Von Duprin's Amended Complaint, filed on January 4, 2017, alleges the same two claims against each Defendant: (1) cost recovery under section 107(a)(4)(B) of CERCLA, and (2) declaratory judgment under section 113(g)(2) of CERCLA[5]. ([Filing No. 42](#).) It also alleges environmental claims against Moran and Zimmer Paper under Indiana Code § 13-30-9, *et seq*, which allows Hoosiers to "bring an environmental legal action against a person that caused or contributed to the release [of hazardous substances or petroleum] to recover reasonable costs of a removal or remedial action." *Id.*

On January 18, 2017, the Major Defendants filed an Answer to Von Duprin's Amended Complaint and a counterclaim against Von Duprin and a cross-claim against Moran. ([Filing No. 46](#).) On January 24, 2017, Moran filed an Answer to Von Duprin's Amended Complaint, a

---

[5] Both the case law and administrative materials addressing CERCLA frequently switch back and forth between referring to sections of the act by their section number, as enacted, and their section by number as codified. "Section 107(a) of CERCLA, for example, was codified at 42 U.S.C. § 9607(a); "Section 113(f)" corresponds to § 9613(f). See *Bernstein v. Bankert*, 733 F.3d 190, 288 (7th Cir. 2013).

counterclaim against Von Duprin, and a Motion for Leave to Assert Counterclaims against the other Defendants. (Filing No. 52; Filing No. 53.)

Pursuant to the Court's "Courtroom Procedures and Trial Practice," (Filing No. 67), the Major Defendants and Moran notified the Court that the parties intended to file cross-motions for summary judgment and moved to set a "summary judgment briefing schedule." (Filing No. 129.) The Court granted that motion in part and set the following summary judgment briefing schedule:

> 1. Von Duprin's deadline to file its Motion for Summary Judgment and Brief in Support is **July 27, 2018** (limited to 35 pages);
>
> 2. Moran, Major Holdings, and Major Tool's deadline to file their Cross-Motions for Summary Judgment, Briefs in Support, and Responses in Opposition to Von Duprin's Motion for Summary Judgment is **August 17, 2018** (limited to 55 pages);
>
> 3. Von Duprin's deadline to file its Reply in Support of its Motion for Summary Judgment and Responses in Opposition to Cross-Motions for Summary Judgment is **September 14, 2018** (limited to 40 pages); and
>
> 4. Moran, Major Holdings, and Major Tool's deadline to file their Replies in Support of Cross-Motions for Summary Judgment is **September 28, 2018** (limited to 20 pages).
>
> If Von Duprin believes a Surreply is appropriate under Local Rule 56-1(d), plaintiff may file a Surreply **no later than seven days** from the filing of Defendants' Replies in Support of Cross-Motions for summary judgment, (limited to 7 pages).

(Filing No. 132.)

On July 27, 2018, Von Duprin filed its Motion for Partial Summary Judgment, asking only for judgment as to liability under Section 107(a) of CERCLA against all parties. (Filing No. 133.) On August 17, 2018, Moran filed a response and Cross-Motion for Summary Judgment asking the Court to determine that it is liable only for its proportionate share of the harm caused under Section 107(a) of CERCLA. (Filing No. 138.) Also, on August 17, 2018, the Major Defendants filed their response and Cross-Motion for Summary Judgment, asking for judgment against all parties as to all claims. (Filing No. 141.)

On August 21, 2018, Moran moved to strike the Major Defendants' Motion for Summary Judgment, arguing the Court's Summary Judgment Briefing Schedule did not contemplate a Motion for Summary Judgment against a cross-claimant, and thus the Major Defendants should have filed their Motion for Summary Judgment against Moran by the July 27, 2018 original deadline for dispositive motions. (Filing No. 144.) The Major Defendants responded that the briefing schedule did not specify when it should file its Motion for Summary Judgment against Moran, but that it had acted in good faith and Moran had not suffered any prejudice. (Filing No. 145.) Before the Court ruled on that Motion to Strike, Von Duprin filed a Reply in support of its Motion for Partial Summary Judgment (Filing No. 149; Filing No. 150), and Moran filed a Response in Opposition to Major Defendants' Cross-Motion for Summary Judgment. (Filing No. 152.) On December 10, 2018, the Court denied Moran's Motion to Strike, finding the Major Defendants had committed excusable neglect by filing their Cross-Motion for Summary Judgment after the Court's original dispositive motions deadline. (Filing No. 164.)

## II.     STANDARD OF REVIEW

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584

(7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

These same standards apply even when each side files a motion for summary judgment. The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the

motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation and quotation marks omitted).

## III. DISCUSSION

In response to the serious environmental and health risks posed by industrial pollution, Congress enacted CERCLA in December of 1980. *See* 42 U.S.C. § 9601-9675. *Burlington Northern and Santa Fe Ry. Co. v. United States,* 556 U.S. 599, 602 (2009). CERCLA is designed to encourage private parties to assume the financial responsibility of cleanup by allowing them to seek recovery from others. *Id*. at 602. In 1986, Congress passed the Superfund Amendments and Reauthorization Act (SARA), which amended CERCLA. Among the SARA amendments: Congress created an express cause of action for contribution for certain parties liable or potentially liable under Section 107(a), codified as CERCLA § 113(f)(1), and an express right of contribution for those parties who resolved their liability to the United States or the State in an approved settlement, codified as CERCLA § 113(f)(3)(B). See *Bernstein v. Bankert*, 733 F. 3d 190, 206 (7th Cir. 2013).

Section 107(a)(2) CERCLA liability attaches to any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were released. The elements of a CERCLA claim are: (1) the Site in question is a "facility"; (2) a release or threatened release of a hazardous substance at or from the facility has occurred; (3) the release or threatened release has resulted in necessary response costs being incurred consistent with the "national contingency plan"; and (4) the defendant is a "covered person" under §107(a) of CERCLA. 42 U.S.C. § 9607(a); *Sycamore Indus. Park Assocs. v. Ericsson, Inc.*, 546 F.3d 847, 850 (7th Cir. 2008); *NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 791 (7th Cir. 2000). A "covered person" includes the following: (1) the current owner and operator of the facility; (2) any

person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of; (3) any person, who by contract, agreement or otherwise arranged for the disposal or treatment of hazardous substances at the facility; and (4) persons who transported hazardous substances to the facility. *See*, 42 U.S.C. § 9607(a)(1)-(4).  In its Amended Complaint, Von Duprin has asserted a claim for cost recovery under Section 107(a) of CERCLA against each of the Defendants.

## A.    Count I – Cost Recovery Under Section 107(a) of CERCLA

### 1.    Von Duprin's Motion For Partial Summary Judgment (Filing No. 133)

Von Duprin asserts three premises in its motion for partial summary judgment. First, that the Former Ertel Facility, the Former Zimmer Paper Facility, and the Former Moran Facility are all facilities that released or threatened to release hazardous substances under CERCLA.  (Filing No. 134 at 12-17.)  Second, Moran operated the Former Moran Facility while it released or threatened to release hazardous substances, and the Major Defendants currently own and operate the Former Ertel Facility and the Former Zimmer Paper Facility.  *Id.* at 17-19.  Third, Von Duprin incurred response costs due to release or threatened release of hazardous substances from those facilities, and at least some of those response costs were necessary and incurred consistent with the National Contingency Plan ("NCP") as required for recovery under CERCLA.  *Id.* at 19-25.

Moran urges the Court to deny Von Duprin's Motion for Partial Summary Judgment, arguing Von Duprin has not met its burden of showing that its expenditures were necessary or incurred in compliance with the NCP, as required by Section 107(a).[6] (Filing No. 139 at 12-21.)

---

[6] Moran also makes an argument for summary judgment in its favor—that the harms caused by runoff are distinct based on geographical considerations, and thus joint and several liability is inappropriate. (Filing No. 139 at 7-12.) The Court addresses that argument below in section III.A.4.

The Major Defendants join that argument and make six others in opposition to Von Duprin's Motion.[7] (Filing No. 142 at 25-42.)  First, they argue that Von Duprin waived its claims by failing to file the State of Claims and Defenses required by the Second Revised Case Management Plan.  *Id.* at 19-20.  They argue Von Duprin has failed to show that contamination from any site owned by the Major Defendants caused Von Duprin to incur any costs.  *Id.* at 24-25.  They argue Von Duprin's claims are barred because as Bona Fide Prospective Purchasers, the Major Defendants are exempted from CERCLA.  *Id.* at 42-50. They argue Von Duprin's claims are barred by the "third party" defense set forth in Section 107(b)(3) of CERCLA, which exempts current owners or operators who can show that the release of hazardous substance was solely caused by a third party, among other things. *Id.* at 50-52. And last, the Major Defendants argue Von Duprin failed to state a claim against Major Holdings under Section 107(a)(2) of CERCLA.  *Id.* at 52-54.  The Major Defendants also seek summary judgment against Moran which the Court will addresses below.

### 2.  **Waiver**

As an initial matter, the Court must determine whether Von Duprin has waived its claims against the Major Defendants. The Second Revised Case Management Plan states "… consistent with the certification provisions of Fed. R. Civ. Proc. 11(b) the party with the burden of proof shall file a statement of the claims or defenses it intends to prove at trial, stating specifically the legal theories upon which the claims or defenses are based." (Filing No. 98 at 3, ¶ E.)  The parties agree that Von Duprin never filed a Statement of Claims and Defenses.  The Major Defendants argue that by failing to file a Statement of Claims and Defenses, Von Duprin "waived its claims against the Major Defendants under Section 107 and Section 113 and its defenses to the Major Defendants'

---

[7] The Major Defendants echo Moran's argument that the harms are divisible, and the Major Defendants should be apportioned no liability for the contamination. The Court addresses this argument below. (Filing No. 132 at 20-24.)

claims under Section 113(f)." ([Filing No. 142 at 20](#).)  In support, the Major Defendants cite four cases in which this Court granted summary judgment on a claim that a party had omitted from its Statement of Claims and Defenses.  *Id.*

In lieu of filing a statement that it considered redundant, "superfluous and unnecessary," Von Duprin's counsel informed defense counsel that all of Von Duprin's claims were set forth in its Amended Complaint and he inquired of the parties to see whether there was an objection to his decision to stand on that complaint.  Von Duprin cites an e-mail its counsel sent to counsel for Moran and the Major Defendants on July 16, 2018, which reads:

> Von Duprin's claims were fully set forth in its Amended Complaint [Dkt. 42] and there has been no change in its position in the intervening 18 months. Also, we do not believe that Von Duprin has asserted any defenses on which it bears the burden of proof. We believe that repeating Von Duprin's claims in yet another docket filing is superfluous and unnecessary.
>
> That said, Von Duprin is willing to participate in this exercise if the Defendants see any benefit to having Von Duprin repeat its claims again. We would appreciate having the Defendants' view on this issue.
>
> Also, we will check with the Court staff who may want to maintain the symmetry of the docket by having a statement from each party even if that submission merely repeats the party's previous claims. If so, we will certainly accommodate the Court's wishes.

([Filing No. 143-6](#).)

In its initial reply to that e-mail, on July 16, 2018, counsel for the Major Defendants said, "We take no position as to whether the filings are superfluous or necessary, however if Von Duprin wishes to seek the court's guidance or leave to file, [the Major Defendants] will not object." ([Filing No. 151-5](#).)  The Major Defendants continued moving forward seemingly unperturbed, filing a Motion to Set Summary Judgment Briefing Schedule on July 19, 2018, and a reply in support of that motion on July 20, 2018.  ([Filing No. 129](#); [Filing No. 131](#).)  However, also on July 20, 2018, the Major Defendants' counsel sent an e-mail to Von Duprin's counsel saying:

> After further consideration and because Von Duprin's failure to file its Statement of Claims and Defenses has become increasingly prejudicial to us, especially considering Von Duprin's refusal to agree to a briefing schedule, we must retract our earlier representation that [the Major Defendants] would not object if Von Duprin seeks approval to belatedly file its Statement of Claims and Defenses.

([Filing No. 151-6](#).)

Von Duprin argues it did not waive its claims or defenses because the Court's staff advised Von Duprin's counsel that a Statement of Claims and Defenses was not required under the circumstances and the Major Defendants were not prejudiced by Von Duprin's decision not to file. ([Filing No. 150 at 36](#).) Von Duprin's telephone call to a court staff member to inquire regarding following Fed. R. Civ. Proc. 11(b) and a court order in the Case Management Plan was inappropriate. Court orders and rules say what they mean and mean what they say. Any request for revisions of court orders must be made to the judge either on the record or in a written motion. Unless granted leave or permission by the Court to do otherwise, counsel must comply with all requirements of the Case Management Plan and Federal Rules of Civil Procedure, regardless of whether counsel views them as redundant and regardless of what a member of court staff recommends. Von Duprin's failure to comply with the case management order not only caused inconvenience to opposing counsel, but also the Court who now must rifle through a 22 page Amended Complaint to locate Von Duprin's claims and defenses.

Fortunately for Von Duprin, no prejudice resulted from its failure to file a Statement of Claims and Defenses because Von Duprin has not attempted and does not attempt to prove any claims beyond the ones alleged in its Amended Complaint. ([Filing No. 42](#).) This fact distinguishes this case from the cases the Major Defendants cite, all of which involved a party trying to argue a claim it had not listed in the Statement of Claims it filed. *See Harris v. Carrier Corp.*, No. 1:15-cv-01952-JMS-MJD, 2017 WL 4037658, at *2 (S.D. Ind. Sept. 13, 2017); *Schambers v. Key*

15

*Family of Cos.*, No. 1:16-cv-2406-WTL-DLP, 2018 WL 1794915 at *7 (S.D. Ind. April 16, 2018); *McGann v. Trathen*, No. 1:16-cv-1235-JMS-DML, 2017 WL 5571289 at *12 (S.D. Ind. Nov. 20, 2017); *Tucker v. Express Scripts Holding*, No. 1:14-cv-1698-TWP-MJD, 2016 WL 2643737 at *8 (S.D. Ind. May 10, 2016). In those cases, the movant was prejudiced by an omission from the Statement of Claims because it was caught off-guard when its opponent attempted to prove a claim it had never declared or had abandoned. But here, Von Duprin has never wavered from the claims it alleges in its Amended Complaint. It alleges causes of action under Sections 107 and 113 of CERCLA and still pursues those claims and only those claims against the Major Defendants. The Major Defendants have not explained, even in their Motion for Summary Judgment, what prejudice they suffered due to Von Duprin's failure to file a Statement of Claims and Defenses.

Von Duprin is admonished to follow court orders and make all inquiries to do otherwise, to the judge, and not court staff. Because Von Duprin's decision to rely on its Amended Complaint and forego filing a Statement of Claims and Defenses did not prejudice the Major Defendants, the Court will not find that it has waived its claims and defenses.

### 3. "Necessary costs of response incurred…consistent with the national contingency plan"

The parties dispute whether costs Von Duprin incurred were necessary and consistent with the NCP as required for recovery by 42 U.S.C. § 9607(a)(4)(B). Whether costs are necessary under CERCLA is a mixed question of law and fact. *G.J. Leasing Co. v. Union Elec. Co.*, 54 F.3d 379, 386 (7th Cir. 1995). District courts in this Circuit have determined that costs are "necessary" under CERCLA "if they are incurred in response to a threat to human health or the environment and they are necessary to address that threat." *Valbruna Slater Steel Corp. v. Joslyn Mfg. Co.*, No. 1:10-CV-044-JD, 2015 WL 8055999, at *4 (N.D. Ind. Dec. 4, 2015) (citing *G.J. Leasing Co. v. Union Elec. Co.*, 854 F. Supp. 539, 562 (S.D. Ill. 994) *aff'd*, 54 F.3d 379 (7th Cir. 1995)).

Von Duprin ultimately seeks to hold the Defendants jointly and severally liable for an array of costs. Von Duprin breaks its costs into two categories: (1) investigatory and assessment costs, and (2) remedial costs. ([Filing No. 134 at 20](#).) Those investigation and assessment costs include "extensive sampling and investigation of the soil, soil gas, indoor air, and groundwater at the Former Threaded Rod facility and other properties surrounding it" and "downgradient groundwater and indoor air sampling to determine how far certain hazardous substances had migrated." *Id.* at 9. Von Duprin incurred remedial costs when it installed "residential migration systems" in nearby homes, which "allowed Von Duprin's consultant access to reduce the amount of contaminants to IDEM accepted levels." *Id.* Von Duprin reached a settlement with the Threaded Rod Company, who had incurred investigation costs. The settlement required Von Duprin to complete the investigation and remediation of the area and to pay a cash settlement, in exchange for which it obtained the Threaded Rod Company's "work product including existing monitoring wells, sampling results, laboratory data and reports prepared by environmental consultants employed by Threaded Rod." *Id.* at 9-10. It is not clear which of the costs Von Duprin incurred in that settlement it seeks to recover from the defendants.

Von Duprin claims summary judgment is appropriate as to liability "if the undisputed facts demonstrate that at least some of Von Duprin's costs were necessary." *Id.* at 20 (citing *NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 782 (7th Cir. 2000)). It cites as uncontested evidence correspondence between Von Duprin's environmental consultant Geosyntec and IDEM discussing remedial measures ([Filing No. 136-7](#); [Filing No. 136-8](#); [Filing No. 136-9](#)) and the deposition of Sam Williams, Von Duprin's expert. ([Filing No. 135-13](#).) Von Duprin also argues that its investigative and remedial effort "easily meets the current standard for NCP compliance." ([Filing](#)

No. 134 at 21.) It urges the Court to adopt the view that IDEM's oversight of Von Duprin's cleanup process establishes compliance with the NCP. *Id.* at 21-23.

Moran argues that Von Duprin has not shown that its cleanup process comported with the NCP, noting that Von Duprin cited to expert opinion but did not analyze the specific provisions of the NCP or identify which specific cleanup costs comported with the NCP. (Filing No. 139 at 12-19.) Moran also disputes that Von Duprin's cleanup costs were necessary under CERCLA, an issue of facts. It argues that Von Duprin's expert did not offer an opinion on whether Von Duprin incurred cleanup costs in order to reduce contaminants that pose a risk to human health and the environment. *Id.* at 20.

The Major Defendants likewise argue that Von Duprin has not proven its response costs were necessary and compliant with the NCP and fault Von Duprin for failing to adequately identify its response costs. The Major Defendants believe that Von Duprin must identify specific cleanup costs and show they were necessary and compliant with the NCP. (Filing No. 142 at 27.) It disagrees with Von Duprin's position, premised on its understanding of the *NutraSweet* case, that a showing that some of its costs were necessary and compliant with the NCP is sufficient to obtain a summary judgment. *Id.*

Von Duprin's first disputed contention is that "[s]ummary judgment is appropriate for the purposes of determining each Defendant's liability if the undisputed facts demonstrate that at least some of Von Duprin's costs were necessary." (Filing No. 134 at 20.) In support of that contention Von Duprin cites *NutraSweet*, a case in which the Seventh Circuit affirmed partial summary judgment against a CERCLA defendant because it had "caused *some* of the [volatile organic compounds] on NutraSweet's property, not necessarily all of them." 277 F.3d at 785. Based on

this holding Von Duprin asserts that partial summary judgment is also warranted when *some* of its costs, though not necessarily all of them, are recoverable under CERCLA.

CERCLA casts a wide net for liability. It holds liable any person who owned or operated a facility during a time hazardous waste was disposed of at the facility, anyone who arranged for disposal of hazardous waste, and anyone who released or threatened to release hazardous waste. 42 U.S.C. § 9607. There is no floor—that is, any amount of any hazardous substance that qualifies under § 9601(14) triggers liability, no matter how small it is in comparison to the volume of hazardous substances released by one's neighbor. But, costs are treated differently under CERCLA.

The only costs recoverable by a private party are "necessary costs of response incurred…consistent with the national contingency plan," "damages for injury to, destruction of, or loss of natural resources," and "the costs of any health assessment or health effects study carried out" under § 9604(i) of CERCLA. To be recoverable, costs must be necessary and comport with the national contingency plan. But incurring some such costs does not enable a plaintiff to recover costs that were unnecessary, or costs that do not comport with the NCP. Judge Posner said as much in *G.J. Leasing Co.*: "The statutory limitation to 'necessary' costs of cleaning up is important. Without it there would be no check on the temptation to improve one's property and charge the expense of improvement to someone else." 54 F.3d at 386. At the summary judgment stage, Von Duprin must identify each cost that it seeks to recover and designate evidence that the cost was both necessary and that it was incurred consistent with the NCP.

A dispute of material fact regarding whether Von Duprin's costs were incurred in accordance with the NCP precludes summary judgment on this record. Von Duprin designated "the expert opinion of Sam Williams that Von Duprin's response costs were incurred in substantial

compliance with the NCP." ([Filing No. 134 at 21](#).) A ten-page section of Williams' report titled "OPINION 2: Site investigation activities performed at the Property and Study Area have been performed in substantial compliance with the National Contingency Plan (NCP)" offers Williams' opinion that Von Duprin's costs were incurred consistent with the NCP. ([Filing No. 135-14 at 13-23](#).)

But the Major Defendants raise several factual questions about the accuracy of that opinion that also find support in the designated evidence. First, they direct the Court to Williams' deposition, in which he was more equivocal about whether the costs Von Duprin incurred were in compliance with the NCP. ([Filing No. 143-4 at 8](#).) Williams testified that "the work was in substantial compliance with the NCP," but was not able to identify any specific costs that met the NCP's requirements.[8] Williams also acknowledged that, believing the NCP's communication and public relations requirement to be satisfied by Von Duprin's cooperation with IDEM, he did not do an independent analysis of whether any of Von Duprin's work complied with the letter of the NCP's communication and public relations requirement.[9] *Id.* at 24-25. Additionally, the Major

---

[8] One exchange from his deposition reads:

Q: Now have you developed an opinion as to whether those costs are compliant with the NCP?
A: It is my opinion that some of those costs are consistent with the NCP.
Q: Which are not?
A: I cannot spell out specifically. There is a summary of costs that are recoverable and costs that are not recoverable.
Q: A summary of those?
A: Yes.
Q: Where are those? Where is that summary?
A: That was part of the settlement associated with Threaded Rod.
Q: Has that been disclosed as part of your expert report in this matter, which costs are recoverable, which are not?
A: It has not.
Q: What can I look at in Exhibit B to find out which of those costs are recoverable and which of those costs are not?
A: I don't think there is anything in Exhibit B that reflects that.

([Filing No. 143-4 at 8-9](#).)

[9] The NCP advises liable parties that "When an incident occurs, it is imperative to give the public prompt, accurate information on the nature of the incident and the actions underway to mitigate the damage." 40 C.F.R. § 300.155. Von Duprin's position is that its coordination with IDEM satisfied this portion of the NCP.

Defendants point out that Von Duprin did not provide Williams with the actual cost invoices for all the work done by their environmental consultants, but only with "cost summaries," which might not satisfy the NCP's documentation requirements.  *Id.* at 18-19.

The Major Defendants argue that Von Duprin did not meet other requirements of the NCP. They dispute whether the document offered as a sampling and analysis plan required by Section 300.415(b)(4)(ii)(A) qualifies under the terms of the NCP.  ([Filing No. 142 at 34](.)  And they allege Von Duprin did not create a quality assurance project plan, which is required by Section 300.415(b)(4)(ii)(B), until May 2017.  *Id.*  The Major Defendants argue Von Duprin did not comply with the NCP by conducting an engineering evaluation and cost analysis and did not create a health and safety plan in time to comply with the NCP.  *Id.* at 34-35.

Von Duprin urges the Court to follow *Valbruna Slater Steel Corp. v. Joslyn Mfg. Co.*, No. 1:10-CV-044-JD, 2015 WL 8055999, at *4 (N.D. Ind. Dec. 4, 2015), and determine that oversight by a state agency satisfies CERCLA's requirement that cleanup costs be incurred consistent with the NCP.  But the *Valbruna* court did not go so far as to say that.  Rather, the *Valbruna* court said only that state agency involvement can provide an adequate substitute for the NCP's public participation requirement. *Valbruna* at *4-5. But the Major Defendants allege Von Duprin has failed to comply with no less than five other sections and subsections of the NCP, not including Section 300.155, which requires engagement with the public. In light of these other factual disputes, even a strict adherence to *Valbruna* would not be enough for a summary judgment here.

Von Duprin's Motion for Partial Summary Judgment is **denied**.  The Court need not address the other arguments Moran and the Major Defendants make in opposition to that motion.

### 4.       Moran's Motion for Partial Summary Judgment ([Filing No. 138](#))

Moran also seeks partial summary judgment on the liability aspect of Count I. Arguing the harm in this case is divisible, Moran urges the Court to issue "a ruling that it may be responsible for only its proportionate share of the harm," leaving specific damages to be determined at trial. ([Filing No. 139 at 22].) Von Duprin asks the Court to deny Moran's Motion for Partial Summary Judgment, because the harm in this case is not divisible, either theoretically or practically. ([Filing No. 149 at 26].) Von Duprin also asserts that most of Moran's designated evidence is inadmissible. *Id.*

Under CERCLA, although Congress "imposed a 'strict liability standard,' it did not mandate 'joint and several' liability in every case." *Burlington N. & Santa Fe. Ry. Co. v. U.S.*, 556 U.S. 599, 614 (2009) (quoting *United States v. Chem-Dyne Corp.*, 572 F. Supp. 802, 805 & 807 (S.D. Ohio 1983)). The United States Supreme Court embraced *Chem-Dyne* as the seminal case on apportionment in the CERCLA context, which looks to the Restatement (Second) of Torts to determine when harm was divisible.

> [W]hen two or more persons acting independently caus[e] a distinct or single harm for which there is a reasonable basis for division according to the contribution of each, each is subject to liability only for the portion of the total harm that he has himself caused. Restatement (Second of Torts, §§ 443A, 881 (1976); Prosser, Law of Torts, pp. 313-14 (4th ed. 1971).... But where two or more persons cause a single and indivisible harm, each is subject to liability for the entire harm. Restatement (Second) of Torts, § 875; Prosser, at 315-17. *Chem-Dyne Corp.*, 572 F. Supp., at 810.

*Burlington N.* at 614 (ellipses in original).

The Seventh Circuit has distilled that analysis into a two-part test. First, a court "must determine whether the harm at issue is theoretically 'capable of apportionment.'" *U.S. v. NCR Corp.*, 688 F.3d 833, 838 (quoting *Burlington* at 614). That determination is a matter of law and will be made by the Court, but underlying factual findings will often guide the Court's inquiry. *Id.* "Second, if the harm is capable of apportionment, the fact-finder must determine how actually to

apportion the damages, which is 'a question of fact.'" *Id.* (quoting *Burlington* at 614).  The party seeking apportionment—here Moran—bears the burden of proving that a reasonable basis for apportionment exists.  *Id.*

Acknowledging that the second part of the test involves a question of fact, Moran asks the Court only to resolve the first part, determining that the harm in question is theoretically capable of apportionment.  It cites the report of Moran's expert Adam Love, which states: "The areas of chlorinated solvent contamination can be divided based on geographic and chemical characteristics and then apportioned to appropriate [responsible parties] based on those divisions."  ([Filing No. 135-1 at 13](#).)  Love reported "For CVOC [chlorinated volatile organic compound] groundwater plumes in the Site, the CVOC chemical composition from the Von Duprin site is distinct from upgradient CVOC source locations because it consists largely of PCE, whereas the CVOCs from upgradient direction is characterized primarily by TCE." *Id.* at 14.  Moran also cites the deposition testimony of Von Duprin's expert John McInnes, who, when asked whether there were "distinct areas of release on those four sites," responded, "That's correct."  ([Filing No. 140-12 at 27](#).)

Von Duprin agrees that McInnes' statement that "each one of four facilities had its own release into the soil at that facility" is "true and undisputed."  ([Filing No. 149 at 19](#).)  But Von Duprin faults Love's methodology, arguing his opinions are "worthless" because his "modelling work used data that represented the conditions after large quantities of soil had been removed" from the properties.  *Id.* at 20.  That concern highlights a practical problem, not a theoretical one. At summary judgment, Moran is arguing only that the harm—in this case pollution—emanated from geographically distinct areas, and thus can be divided among the responsible parties according to which areas they controlled.  That Moran's estimate of its own contribution may be inaccurate because its expert failed to consider the contamination that might have been revealed if

he had examined excavated soil is irrelevant to the question of whether the harm is divisible.  It speaks only to the question of what share of the damages each party is responsible for—a question of fact that the Court does not address on summary judgment.

Parties "may be able to demonstrate that harms are distinct based on geographical considerations, such as where a site consists of 'non-contiguous' areas of soil contamination." *U.S. v. Hercules, Inc.*, 247 F.3d 706 (8th Cir. 2001) (quoting *Akzo Coatings Inc. v. Aigner Corp.*, 881 F.Supp. 1202, 1210 (N.D. Ind. 1994), *clarified on reconsid.*, 909 F.Supp. 1154 (N.D. Ind. 1995)).  Here, Moran's expert testified that contamination emanated from geographically distinct areas at the properties, not from one contiguous source encompassing all the properties.  McInnes, Von Duprin's expert, agreed.  When asked whether there was "just one big blob of shallow soil impacts," he said, "no".  When asked whether there were "distinct areas of release on those four sites," he said, "that's correct".  (Filing No. 140-12 at 27-28.)  Although Von Duprin clearly disputes Moran's method of arriving at the share of the harm it claims to be responsible for, Von Duprin has not designated any evidence disputing the notion that the contamination in this case emanated from four separate source points on four separate properties.

Von Duprin likens this case to *U.S. v. NCR Corp.*, in which the Seventh Circuit found harm was not divisible where the defendant's pollution on its own would have necessitated remediation even if no other party had polluted.  688 F.3d 833 (7th Cir. 2012).  But Von Duprin does not allege that Moran's pollution on its own would have required substantially the same remedial measures. It analogizes to *NCR* because multiple pollution sources contaminated a single stream of water (here groundwater, in *NCR,* a river) and because "[l]ike in *NCR*, Moran offers a computer model that would limit its own share of liability to a small portion of the whole harm." (Filing No. 149 at 15.)  *NCR* did not reject a model of apportionment calculation outright; in fact, it contended the

24

Supreme Court's decision in *Burlington Northern* "demonstrates that apportionment calculations need not be precise." *NCR* at 842. *NCR* advised that district courts need not always allow imprecise apportionment calculations to serve as evidence of divisibly—courts are free to scrutinize that evidence. But here, Moran has supported its contention with an expert report opining not only that the harm is divisible but attaching a specific percentage of harm to each property that polluted. Love's report is precise enough to carry Moran's burden of showing a reasonable basis for apportionment.

Von Duprin argues most of Moran's designated evidence is inadmissible hearsay. But Moran properly classifies all the disputed evidence as either excluded or excepted from hearsay rules as statements of a party opponent (Fed. R. Evid. 801(d)(2)), records of regularly conducted activity (Fed. R. Evid. 803(6)), and public records (Fed. R. Evid. 803(8)). Moran's designated evidence is properly before the Court.

Moran's Motion for Partial Summary Judgment is **granted**. Moran is liable only for its share of the harm committed; it is not jointly and severally liable. Determination of the specific amount of damages, if any, each party owes, will occur at trial. The Major Defendants also argue the harm in this case is divisible. Because they have moved for summary judgment as to all claims against all parties, the Court considers their arguments separately.

B.    <u>Other Counts – Major Defendants' Motion for Summary Judgment (**Filing No. 141**)</u>

The Major Defendants moved for summary judgment as to all claims against Von Duprin and against Moran. (Filing No. 141.) Against Von Duprin, the Major Defendants argue (1) the harm in this case is divisible and they should be apportioned no liability, (2) Von Duprin has not proven that contamination from any site owned by the Major Defendants caused Von Duprin to incur costs, (3) Von Duprin's claims are barred because the Major Defendants are Bona Fide

Prospective Purchasers, (4) Von Duprin's claims are barred by the third party defense, and (5) Von Duprin has failed to state a claim against Major Holdings under Section 107(a)(2) of CERCLA. (Filing No. 142.) Against Moran, the Major Defendants argue (1) Moran's Section 113(f) claims for contribution fail because the Major Defendants are not responsible parties under Section 107(a), and (2) Moran's state law claims fail because the Major Defendants did not "cause or contribute" to releases of hazardous substances as required for liability under Indiana's Environmental Legal Action Statute. *Id.* at 54.

1. **Von Duprin**

    a. **Divisibility of Harm**

Like Moran, the Major Defendants argue the harm in this case is divisible and parties should be responsible only for their own contribution. However, while Moran claimed it was responsible for 3% of the total harm, the Major Defendants claim to be responsible for 0% of the harm. *Id.* at 24. They aim to avoid liability entirely. Von Duprin argues that because the pollutants co-mingled in a single stream, the harm related to the Major Defendants is not theoretically capable of apportionment, and even if it was, there is no reasonable basis for apportionment. (Filing No. 150 at 16-25.)

The Major Defendants do not specify whether they believe the harm here is geographically divisible, temporally divisible, or both. They claim "[t]here is no evidence that the Major Defendants used the chlorinated solvents at issue, nor is there any evidence that they released or threatened to release any of the chlorinated solvents." (Filing No. 142 at 24.) But Von Duprin has designated evidence that pollution from the Zimmer and Ertel Facilities contributed to the comingled plume. According to McInnes, Von Duprin's expert, "based on the magnitude, extent, and pattern impacts observed in soil and groundwater at each of the four facilities (Zimmer, Ertel,

Moran, and Threaded Rod) all contributed significantly to the comingled plume and none can be considered de minimis. (Filing No. 135-3 at 7-8.) If that is correct, it exposes the Major Defendants to liability as "the owner and operator of a vessel or facility." 42 U.S.C. § 9607(a)(1).

The Major Defendants dispute that evidence. Their expert, Robert Walker, rebuts McInnes' claims that pollution from the Former Zimmer and Ertel Facilities entered the co-mingled plume. (Filing No. 135-7.) Both parties have designated evidence supporting their position, creating a dispute of fact that the Court cannot resolve on summary judgment. But, as the Court said in Section III.A.4 of this Entry, the harm in this case is divisible by geography and there is a reasonable basis for apportionment—the amount of runoff from each site in question. Therefore, the Court **grants in part and denies in part** the Major Defendants' Motion for Summary Judgment. It is **granted** as to divisibility only, leaving the calculation of any damages for the fact-finder to determine at trial.

### b. Caused Von Duprin to Incur Costs

Second, the Major Defendants argue "no release or threatened release from any property currently owned or operated by the Major Defendants caused Von Duprin to incur *any* response costs." (Filing No. 142 at 25.) (Emphasis in original.) Citing *Regional Airport Authority of Louisville v. LFF, LLC*, 460 F.3d 697, 706 (6th Cir. 2006), the Major Defendants argue that "[i]f a party would have incurred 'identical costs' in the absence of any release or threatened release from a facility, then the release or threatened release 'cannot be said to have caused the incurrence of response costs.'" (Filing No. 142 at 25.) Von Duprin does not challenge that legal point, arguing only that it has designated evidence indicating pollution from properties owned by the Major Defendants did cause Von Duprin to incur response costs it otherwise would not have incurred. (Filing No. 150 at 24.)

The Major Defendants cite the deposition testimony of Sam Williams, the expert Von Duprin retained to offer an opinion about its response costs. (Filing No. 142 at 25.) In answering the question "would Von Duprin have been required to incur the costs that you're testifying that it has incurred if its contamination was the only contamination present on its property," Williams answered, "yes." (Filing No. 143-4 at 17.) Von Duprin argues that statement is taken out of context, and the full deposition reveals that Williams did not determine which costs Von Duprin incurred resulted from pollution at upgradient properties. Von Duprin cites the following exchange:

> Q: Which response costs has Von Duprin incurred as a result of Major Holdings' or Major Tool's Actions?
>
> A: As I testified earlier, I haven't distinguished between Major Tool, Zimmer, Ertel, or Moran of the upgradient costs.
>
> Q: So you think Von Duprin has incurred some costs as a result of Major Holdings' or Major Tool's actions, but you don't know which costs those would be?
>
> A: I haven't done that analysis.

*Id.* at 18.

Von Duprin's expert equivocated about whether pollution emanating from the Major Defendants' and other upgradient properties caused Von Duprin to incur additional response costs. But the Court is not convinced that equivocation dooms Von Duprin's Section 107 claim against the Major Defendants. Williams' testimony is inconclusive, but Von Duprin has designated other evidence that indicates pollution from the Former Ertel Facility and Former Zimmer Facility amounts to over 10% of the total contaminants emanating from the site. (Filing No. 135-1 at 24.) It is the job of the fact-finder at trial, not the Court on summary judgment, to weigh this competing evidence. Accordingly, the Major Defendants' Motion for Summary Judgment on these grounds is **denied**.

### i.     <u>Bona Fide Prospective Purchasers</u>

Section 107(a)(1) of CERCLA is subject to certain affirmative defenses, one of which is the bone fide prospective purchaser (or "BFPP") defense. 42 U.S.C. § 9607(a)(1); 2 U.S.C. § 9607(r)(1). The BFPP defense exempts from CERCLA liability a purchaser who:

(1) Acquired ownership of the property after January 11, 2002;

(2) Shows that all disposal of hazardous substances at the property occurred before the purchaser's acquisition of the property;

(3) Conducts "all appropriate inquiries" into the previous ownership and uses of the property;

(4) Provides all legally required notices regarding the lease;

(5) Provides full cooperation, assistance, and access to those conducting response actions at the property;

(6) Complies with institutional and engineering controls and does not impede the effectiveness of such controls;

(7) Complies with requests for information and subpoenas from the Environmental Protection Agency;

(8) Is not affiliated with a responsible or potentially responsible party; and

(9) Exercises appropriate care with respect to the hazardous substances found, including: stopping continuing releases, preventing threatened future releases, and preventing exposure to releases.

The Major Defendants contend they satisfy all these requirements. Von Duprin does not dispute the Major Defendants' contention as to the Zimmer Packaging Facility. As to the other three facilities owned by the Major Defendants, Von Duprin argues the Major Defendants failed

to conduct "all appropriate inquiries" in a timely manner when they acquired the property and that they failed to exercise reasonable care to prevent exposure to previously released hazardous substances. ([Filing No. 150 at 30-366](#).)

## ii. The Former Ertel Facility

On November 16, 2007, Major Tool entered into a 99-year lease and option to purchase the Former Ertel Facility with the City of Indianapolis. ([Filing No. 151-2](#).) Major Tool acquired the Former Ertel Facility on January 31, 2013. ([Filing No. 143-1 at 5](#).) Major Tool hired Heartland Environmental to conduct a Phase I Environmental Site Assessment, which it did on January 17, 2013. *Id.* at 112. That Phase I assessment claims it was "conducted in general conformance with American Society of Testing and Materials (ASTM) Standards for Phase I Environmental Site Assessments (ASTM E 1527-05), including the United States Environmental Protection Agency's (USEPA) All Appropriate Inquiries (AAI) Rule that was finalized on November 1, 2006." *Id.* at 116.

Von Duprin asserts this assessment does not satisfy CERCLA's "all appropriate inquiry" requirement (42 U.S.C. § 9607(q)(1)(A)(viii)(I)) because Major Tool began leasing the property in 2007 but did not conduct an environmental assessment until 2013, just before it purchased the property. ([Filing No. 150 at 35](#).) CERCLA requires parties to make all appropriate inquiries "on or before the date on which the defendant acquired the facility." 42 U.S.C. § 9601(35)(B)(i)(I). Von Duprin argues Major Tool acquired the facility when it began its lease in 2007, not when it purchased the property in 2013 because the BFPP defense protects "'a person who…acquires ownership of the facility after January 11, 2002' and establishes the remainder of the BFPP criteria." ([Filing No. 156 at 17](#).) (Ellipses in original.) The Major Defendants argue CERCLA

refs to acquiring ownership in a property. Neither party cites any caselaw in support of its position.

While the Major Defendants accurately quote the BFPP defense protecting those who acquire ownership after January 11, 2002 and establish the rest of the BFPP criteria, they ignore that the defense also mentions "a person…who acquires a leasehold interest in the facility after January 11, 2002" and establishes the remaining criteria. 42 U.S.C. § 9601(40)(A)(ii)(I). More importantly, CERCLA imposes liability on both owners and operators—a party need not be both owner and operator to incur liability. 42 U.S.C. § 9607(a)(1). The Major Defendants undisputedly became operators of the site in 2007, when they began leasing it, but they have not designated evidence that they satisfied the BFPP defense's "all appropriate inquiries" requirement until 2013, just before they purchased the facility. Thus, the Court cannot grant their summary judgment motion on this basis.

### iii.     The Zimmer Paper Parcel

The parties do not dispute that Major Holdings acquired the Zimmer Paper Parcel on January 31, 2007. ([Filing No. 142 at 44](); [Filing No. 150 at 32]().) Nor do they dispute that, on November 16, 2006, Enviroforensics provided a Phase I Environmental Site Assessment. ([Filing No. 143-1 at 9-56]().) However, Von Duprin argues that assessment was faulty and does not satisfy the BFPP defense's "all appropriate inquiry" requirement for three primary reasons: (1) it was prepared for Major Tool and Machine even though Major Holdings was the nominal owner of the Zimmer Paper Parcel; (2) it did not make the necessary and required inquiries with the owner of the parcel required by 40 C.F.R. § 312.22 *et seq.*; and (3) it does not have the required Environmental Professional certifications required by 40 C.F.R. § 312.21(d).

The Major Defendants correctly point out that the assessment did not need to comply with 40 C.F.R. §§ 312.23 through 312.31 because it followed "[t]he procedures of ASTM International Standard E1527-05," which was an adequate substitute in 2006 under 40 C.F.R. § 312.11. But that does not rebut Von Duprin's argument, which alleges that the Major Defendants failed to comply with the requirements of §§ 312.21 and 312.22. A party cannot circumvent by complying with the procedures of ASTM International Standard E1527-05. Thus, the Court cannot grant summary judgment to the Major Defendants on this basis.

### iv.    **The Former Moran Facility**

Major Holdings acquired the Former Moran Facility on October 4, 2005. (Filing No. 142 at 44.) On December 28, 2004, Enviroforensics conducted a limited Phase II Site Investigation. (Filing No. 143-3 at 4-7.) The Major Defendants assert this investigation satisfies CERCLA's all appropriate inquiries requirement, while Von Duprin argues a Phase I Environmental Site Assessment, like the one the Major Defendants commissioned for the other facilities, was necessary.

CERCLA makes it clear that performing a Phase I Environmental Site Assessment is sufficient to satisfy the all appropriate inquiries prong of the BFPP defense. 42 U.S.C. § 9601(35)(B)(iv)(II). But the law leaves open to interpretation whether a Phase I assessment is the *only* way to satisfy that prong, saying that a Phase I assessment "shall satisfy the requirements" of the all appropriate inquiries prong. At least one court has determined that a Phase I assessment is not the exclusive means by which a purchaser of land can make all appropriate inquiries. *R.E. Goodson Const. Co., Inc. v. International Paper Co.*, No. 4:02-4184-RBH, 2006 WL 1677136, at *6 (D.S.C. June 14, 2006). The *Goodson* court determined that the Senate Report on the amendment adding the "shall satisfy" language to CERCLA read that a Phase I assessment "*can*

satisfy" the "all appropriate inquiries" requirement. *Id.* That court also noted that "Congress could have provided that a Phase I site assessment was required or was the exclusive procedure to satisfy the 'all appropriate inquiries' standard; however, Congress made no such mandate."

This Court is inclined to agree with *Goodson* that Congress did not intend to make a Phase I Environmental Site Assessment the exclusive means by which a purchaser could satisfy the BFPP defense's all appropriate inquiries standard. Bolstering this view in this case is the content of the Phase II assessment the Major Defendants commissioned before purchasing the Moran property. That assessment collected seven soil samples and three groundwater samples, noting that there were dangerous levels of harmful chemicals in some samples and acceptable levels in others. (Filing No. 143-3 at 4-6.) The assessment recommended "removal and disposal of all [underground storage tanks] and associated contaminated soils at the Site…in accordance with all applicable IDEM regulations. In addition, verification sampling of the UST excavations should be completed, and the excavations should be backfilled and the Site properly restored." *Id.* at 7. The Major Defendants acted on that recommendation in 2011 when they "agreed to implement a remedial action plan to address the impacted soil at the former Moran facility property." (Filing No. 135-7 at 10.) Von Duprin also argues that "even if Major Holdings had performed the required pre-acquisition AAI (which it did not timely do), it has failed to take post-acquisition reasonable steps to prevent exposure to previously released hazardous substances." (Filing No. 150 at 34-35.) The argument is not fully developed, and regardless, the Major Defendants have designated evidence indicating they undertook remedial measures at the Moran property in 2011. (Filing No. 135-7 at 10.)

The Major Defendants are Bona Fide Prospective Purchasers of the Former Moran Facility, and thus cannot incur liability on contamination emanating from that property. The Major

Defendants' Motion for Summary Judgment is **granted in part and denied in part**. The Court **grants** summary judgment as to the Zimmer Packaging Facility and the Moran property because the Major Defendants are Bona Fide Prospective Purchasers of those properties. The Court **denies** summary judgment as to the Former Ertel Facility and the Former Zimmer Paper Facility because the Major Defendants have not shown they are Bona Fide Prospective Purchasers of those sites by law.

### 1. Third Party Defense

The Major Defendants also argue they are shielded from liability by the third-party defense. (Filing No. 142 at 50-51.) Codified at 42 U.S.C. § 9607(b)(3), the third-party defense exempts a CERCLA defendant from liability of release or threats of release of hazardous material stemming from an act or omission of a third party. To establish the defense, the defendant must demonstrate that: (1) the third party was not an employee or agent; (2) the acts or omissions of the third party did not occur in connection with a direct or indirect contractual relationship to the defendant; (3) a third party was the sole cause of the release or threatened release of hazardous substances; and (4) the defendant exercised due care with respect to the hazardous substances and took precautions against foreseeable acts and omissions of the third party. The Major Defendants claim they satisfy all four prongs of the defense.

Von Duprin makes multiple arguments in opposition to the Major Defendants' claim, but the Court will focus on one: that the acts or omissions of the third party occurred in connection with a contractual relationship to the Major Defendants. (Filing No. 150 at 26.) The term "contractual relationship" is defined in § 9601(35)(A) of CERCLA as including "land contracts, deeds, easements, leases" where it is established "[a]t the time the defendant acquired the facility the defendant did not know and had no reason to know that any hazardous substance which is the

subject of the release or threatened release was disposed of on, in, or at the facility." According to the next subsection, "[t]o establish that the defendant had no reason to know of the matter described in subparagraph (A)(i)," the defendant must show that it undertook all appropriate inquiries. 42 U.S.C. § 9601(35)(B)(i). As the Court pointed out in section III.B.1.c. of this Entry, the Major Defendants are not able to show they made all appropriate inquiries as to two properties: the Former Ertel Facility and the Zimmer Paper Parcel. Thus, their motion for summary judgment as to those two properties is **denied**.

### 2.     <u>Failure to State a Claim</u>

The Major Defendants argue Von Duprin failed to state a claim against Major Holdings under 42 U.S.C. § 9607(a)(2) because "[a]lthough Von Duprin attempted to assert a claim against Major Holdings under Section 107(a)(2) in its Amended Complaint, Von Duprin did not seek to establish liability against Major Holdings under that provision in its Motion for Summary Judgment." (<u>Filing No. 142 at 52</u>.) Von Duprin does not address this argument in its response brief. (<u>Filing No. 150</u>.) Section 9607(a)(2) subjects to liability "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." The Major Defendants are correct that Von Duprin has not designated evidence that the Major Defendants owned any property *at the time of disposal of any hazardous substance*, and thus does not state a claim under § 9607(a)(2). Therefore, the Court **grants** summary judgment in favor of the Major Defendants as to that claim. However, Von Duprin's claim against the Major Defendants under § 9607(a)(1) as "the owner or operator of a vessel or facility" remains.

### v.     <u>Moran</u>

The Major Defendants move for summary judgment against cross-claimants Moran on its claims for contribution under 42 U.S.C. § 9113(f) ([Filing No. 52](#)) and for cost recovery under Indiana Code § 13-30-9-2 ([Filing No. 70](#)).

## 1.     Contribution

The Major Defendants argue "Moran's Section 113(f) claims fail because Section 113(f) only allows a party to seek contribution from a person or entity that is liable or potentially liable under Section 107(a) and, as set forth above, the Major Defendants are not liable under Section 107(a)." ([Filing No. 142 at 54](#).)  But the Court has concluded that the Major Defendants may be liable under Section 107(a)(1) for contamination emanating from two properties, the Former Ertel Facility and the Zimmer Paper Parcel.  Thus, Major Defendants' motion fails because it relies entirely on arguments made above.  The Major Defendants' Motion for Summary Judgment against cross-claimants Moran as to liability under 42 U.S.C. § 6113(f) is **denied**.

## 2.     Indiana Environmental Legal Actions Statute

The Indiana Environmental Legal Actions statute provides a cause of action for contribution in multi-party environmental clean-ups.  Ind. Code § 13-30-9.  It allows a party to bring an action "against a person that caused or contributed to the release to recover reasonable costs of a removal or remedial action involving the hazardous substances or petroleum."  *Id.* at § 13-30-9-2. The Major Defendants argue that "[t]here is no other evidence that the Major Defendants ever caused or contributed to any release of any hazardous substance at issue in this case, and no expert in this case offered any opinion that the Major Defendants have done so." ([Filing No. 142 at 54](#).)

Moran disagrees, arguing the Major Defendants' carelessness with respect to contamination on their property contributed to the harm caused by hazardous substance released

on their property. ([Filing No. 152 at 12](#).) Specifically, "Moran has designated evidence showing that there was a release from a[n underground storage tank] and a leaking drum at the Zimmer Parcel when Major owned and controlled that property." *Id.* Moran also argues it "has designated evidence showing that Major has contracted with the City of Indianapolis specifically with respect to remediating contaminants at issue in this case, which remediation has not occurred." *Id.* That evidence creates a dispute of material fact precluding summary judgment on this issue. Thus, Major Defendants' motion is **denied**.

## IV.    CONCLUSION

For the reasons stated above, Von Duprin's Motion for Partial Summary Judgment on Section 107(a) Liability, ([Filing No. 133](#)), is **DENIED**. Moran's Cross-Motion for Partial Summary Judgment, ([Filing No. 138](#)), is **GRANTED**. All claims against Moran remain for resolution at trial, but Moran is not jointly and severally liable on Count I, it is liable only for the proportion of the harm it caused. The Major Defendants' Cross-Motion for Summary Judgment against Plaintiff and Motion for Summary Judgment Against Cross-Claimant, ([Filing No. 141](#)), is **GRANTED in part and DENIED in part**. Both claims against the Major Defendants remain for resolution at trial, but like Moran, they are liable only for the proportion of the harm they caused. Additionally, they are not liable for any contamination emanating from the Zimmer Packaging Facility or the Moran property because they are bona fide prospective purchasers of those parcels of land. The Major Defendants' Motion for Summary Judgment against cross-claimant Moran is **DENIED**. Thus, both cross-claims ([Filing No. 52](#); [Filing No. 70](#)) remain to be resolved at trial.

      **SO ORDERED.**

Date:  2/11/2019

_____

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Alexandra Robinson French
BARNES & THORNBURG LLP
arobinson@btlaw.com

Edward S. Griggs
BARNES & THORNBURG LLP (Indianapolis)
sean.griggs@btlaw.com

Samuel B. Gardner
ICE MILLER LLP
samuel.gardner@icemiller.com

Glenn David Bowman
STOLL KEENON OGDEN, PLLC (Indianapolis)
Glenn.Bowman@skofirm.com

Angela Pease Krahulik
ICE MILLER LLP
krahulik@icemiller.com

Marc Andrew Menkveld
STOLL KEENON OGDEN, PLLC (Indianapolis)
Marc.Menkveld@skofirm.com

Nicholas B. Reuhs
ICE MILLER LLP
nicholas.reuhs@icemiller.com

Bruce L. Kamplain
NORRIS CHOPLIN & SCHROEDER LLP
bkamplain@ncs-law.com

Cynthia Elaine Lasher
NORRIS CHOPLIN & SCHROEDER LLP
clasher@ncs-law.com

VON DUPRIN LLC,                                    )
                                                   )
        Plaintiff,                         )
                                                   )
        v.                                 )   Case No. 1:16-cv-01942-TWP-DML
                                                   )
MORAN ELECTRIC SERVICE, INC.,                      )
MAJOR HOLDINGS, LLC,                               )
MAJOR TOOL AND MACHINE, INC.,                      )
ZIMMER PAPER PRODUCTS                              )
INCORPORATED Defaulted on 7/24/2017,               )
                                                   )
        Defendants.                        )
_____            )
                                                   )
MAJOR HOLDINGS, LLC,                               )
MORAN ELECTRIC SERVICE, INC.,                      )
MAJOR HOLDINGS, LLC,                               )
MORAN ELECTRIC SERVICE, INC.,                      )
MAJOR TOOL AND MACHINE, INC.,                      )
MORAN ELECTRIC SERVICE, INC.,                      )
                                                   )
        Counter Claimants,                 )
                                                   )
        v.                                 )
                                                   )
VON DUPRIN LLC,                                    )
MAJOR HOLDINGS, LLC,                               )
VON DUPRIN LLC,                                    )
VON DUPRIN LLC,                                    )
MAJOR HOLDINGS, LLC,                               )
VON DUPRIN LLC,                                    )
VON DUPRIN LLC,                                    )
MAJOR TOOL AND MACHINE, INC.,                      )
                                                   )
        Counter Defendants.                )
_____            )
MAJOR HOLDINGS, LLC,                               )
MAJOR HOLDINGS, LLC,                               )
MAJOR TOOL AND MACHINE, INC.,                      )
                                                   )
        Cross Claimants,                   )

```
                                              )
                    v.                        )
                                              )
MORAN ELECTRIC SERVICE, INC.,                 )
MORAN ELECTRIC SERVICE, INC.,                 )
VON DUPRIN LLC,                               )
                                              )
                    Cross Defendants.         )
```

## FINDINGS OF FACT AND CONCLUSIONS OF LAW
## FOLLOWING BENCH TRIAL

A bench trial on this Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") litigation was held beginning on July 22, 2019 and concluding on August 1, 2019. This CERCLA action brought by Von Duprin, LLC ("Von Duprin") against Defendants Moran Electric Service, Inc. ("Moran"), and Major Holdings, LLC ("Major Holdings"), and Major Tool and Machine, Inc. ("Major Tool") (collectively, "the Major Defendants"), seeks to allocate the responsibility for the pollution that created a toxic groundwater plume under an area in Northeast Indianapolis, Indiana and to determine the parties' respective financial responsibility for cleanup of the polluted area. On February 11, 2019, the Court granted partial summary judgment and determined Moran and Major Defendants are liable only for the proportion of the harm they caused; and the Major Defendants are not liable for any contamination emanating from the Zimmer Packaging Facility of the Moran Property. (Filing No. 203 at 37.) Upon consideration of the evidence presented during the bench trial[1], the Court now issues its Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a)(1). Any finding of fact that is more properly considered a conclusion of law is adopted as such. Similarly, any conclusion of law that is more properly considered a finding of fact is adopted as such.

---

[1] In addition, the Court considers the parties' Joint Stipulation of Facts for Trial (Filing No. 205).

# I.  FINDINGS OF FACT

The pollution necessitating this litigation emanated from four properties: (1) the Von Duprin Property, (2) the Moran Property, (3) the Ertel Property, and (4) the Zimmer Paper Property.[2] Von Duprin seeks to recover costs already incurred to investigate the releases of chlorinated solvents in the plume area and to mitigate the vapor intrusion risks at buildings and residences near that area, as well as future costs.  The Major Defendants and Moran each filed counterclaims and crossclaims regarding each parties' cleanup responsibilities. The Major Defendants assert that they are not obligated to pay the costs Von Duprin has incurred or will incur relating to the commingled plume.  Moran asserts that it is a liable party as the owner of the Moran Property at the time a release incurred, and the harm in this lawsuit is divisible and ideal for apportionment.

## A.  The Von Duprin Property

The Von Duprin Property is located at 1929 Columbia Avenue, Indianapolis, Indiana. Between 1965 and 1986, Von Duprin's predecessor—Von Duprin, Inc.—owned the Von Duprin Property and manufactured security hardware and safety products there.  (Filing No. 205 at 6.) That manufacturing involved the use of the chlorinated solvents trichloroethylene ("TCE") and perchloroethylene ("PCE"), the two toxic chemicals at issue in this case.[3] During the 1970's, the Von Duprin Property housed a large Detrex degreaser that used hundreds of gallons of TCE. (Filing No. 250 at 198-211; Tr. Ex.'s 1105 & 1106.)  Prior to Von Duprin's ownership, other

---

[2] The Zimmer Paper Property is subdivided into the Zimmer Paper Facility and the Zimmer Packaging Facility.

[3] *Trichloroethylene* (TCE) is used as a solvent for cleaning metal parts. Exposure to very high concentrations of trichloroethylene can cause dizziness, headaches, sleepiness, incoordination, confusion, nausea, unconsciousness, and even death.  *See* https://www.atsdr.cdc.gov/toxfaqs/tf.asp?id=172&tid=30. *Perchloroethylene* (PCE) is a colorless liquid that is also called tetrachloroethylene, PERC.  It is primarily used for dry cleaning fabrics and degreasing metals. *See* https://toxtown.nlm.nih.gov/chemicals-and-contaminants/perchloroethylene-pce-perc. Both TCE and PCE are designated as hazardous substances under federal regulations. 40 C.F.R. § 302.4(a).

parties, including Atlas Engine Company in the 1910s and Paramount Hardware from 1937-1961, and several dry cleaners operated on or near the Von Duprin Property. Von Duprin's operations resulted in the release of hazardous chemicals, including TCE and PCE, into the soil and groundwater on and around the Von Duprin Property. (Filing No. 205 at 7.)

In 1986, Von Duprin ceased operations, and its owner at that time, Ingersoll-Rand Company, sold the Von Duprin Property to Threaded Rod Company, Inc. ("Threaded Rod") in 1987. Threaded Rod manufactured anchor bolts and connecting rods and did not generate hazardous waste.

In March 2009, the Indiana Department of Environmental Management ("IDEM") determined that soil and groundwater on the Von Duprin Property had been contaminated by chlorinated solvents. In August 2013, IDEM notified Von Duprin that it was a potentially responsible party for contamination of the Von Duprin Property. Threaded Rod brought a lawsuit against Von Duprin (and others) to recover damages relating to the environmental contamination on the Von Duprin Property, alleging that Von Duprin had caused or contributed to the soil and groundwater contamination at the property. Von Duprin settled the litigation with Threaded Rod, agreeing to pay $1.5 million and to undertake certain remedial actions on the Von Duprin Property. (Filing No. 248 at 53, 94, 239-40.)

Von Duprin has undertaken remedial actions both on its own property and at downgradient properties including residences. After it was identified as a potentially responsible party by IDEM in August 2013, Von Duprin began investigating potential vapor intrusion at downgradient properties. In early 2014 Von Duprin entered Indiana's State Cleanup Program and in 2016 transitioned to the Voluntary Remediation Program, an EPA approved remediation program aimed at cleaning up contaminated properties. Von Duprin contacted individual homeowners whose

property was located within the plume area had TCE concentrations above IDEM's site-specific screening levels. Von Duprin also requested that IDEM become involved. ([Filing No. 249 at 141](#).) Von Duprin sent letters, made telephone calls, had face to face conversations and conducted indoor air sampling at residences in the area of contaminated groundwater plume and installed vapor intrusion mitigation systems at homes that were impacted by vapor intrusion. ([Filing No. 249 at 91-92](#), 145-47.) The residential investigations and mitigation work continue today. When the potential for vapor intrusion was identified at the J.T.V. Hill Park facility, Von Duprin conducted investigation activities and interim measures to prevent public exposure to harmful TCE vapors in that building, and ultimately installed a sub-slab depressurization system to address vapor intrusion. (Tr. Ex's. 1022, 1026, 1029, 1085, 1087, 1089.) IDEM was closely involved and provided supervision of Von Duprin's activities. In 2019, Von Duprin excavated 212 tons of soil from the Von Duprin Property. ([Filing No. 248 at 103](#).)

Von Duprin also performed a successful bench scale and pilot test of *in situ* biological reduction, which could accelerate the natural degradation process in order to eliminate chlorinated solvents in the groundwater. (Filing No. 249 at 229-236) (Tr. Ex. 1072; Tr. Ex. 1071). Samples from known affected areas at the former Von Duprin property; specifically, the soils and the groundwater, were collected and sent to a laboratory where some were held aside as control samples and others are inoculated with bacterial cultures in order to understand if this technology will indeed accelerate the natural degradation processes. *Von Duprin* injected a bacterial culture, along with some media that it uses to accelerate its growth to allow it to degrade a greater area of the chlorinated solvents and the injected area saw enhanced degradation of these chlorinated solvents. At the time of trial, a bench scale and pilot test study report had not yet been submitted

to IDEM, but the observations were shared with Moran and Major Tool Defendants as well as IDEM. *Id*. at 234-235.

Although substantial work has been performed, additional investigation and mitigation work in the plume area remains to be done because the source of the vapor intrusion—the TCE contaminated shallow groundwater beneath the homes and J.T.V. Hill Park—has not been eliminated. IDEM will require future groundwater remediation, and the responsible parties identified by IDEM are parties to this litigation. (*See* Filing No. 248 at 251-253.)

**B.    The Moran Property**

The Moran Property refers to the property addressed as 1931 Dr. Andrew J. Brown Avenue and sometimes referenced in documentation as 1401 East 20th Street in Indianapolis. From at least 1946 to 1996, Moran owned and conducted business operations at the Moran Property. It operated multiple shops, including a dynamometer shop, motor shop, compressor shop, and wiring department. Moran's primary business was the rebuilding and repair of heavy-duty electrical motors.

During its operation at the Moran Property, Moran used degreasers and cleaning agents that contained TCE. (Filing No. 250 at 154.) There were multiple pits, parts washers, and tanks located on the properties owned by Moran, and Moran used degreasers and cleaning agents – including TCE – in its business operations. Moran used somewhere between 55 and 150 gallons of TCE in its degreasing operations. *Id.* at 156; Tr. Ex. 723 at 45-46. Problems arose during Moran's degreasing operations, and employees committed violations when degreasing. (Tr. Ex. 722 at 12; Tr. Ex. 723 at 60-62, 117-118.) Some violations related to the washing of the parts above the vapor line of the degreaser, while others related to the carless handling of TCE that led to TCE splashing out of the degreaser. Moran ceased operations at the Moran Property in 1998.

Major Holdings acquired the Moran Property on October 4, 2005 and is the current owner of the property. In December 2004, before it acquired the Moran Property, Major Holdings retained EnviroForensics & PolicyFind to conduct a Phase II Environmental Site Assessment ("Phase II ESA") on the property.[4] Major Tool operates on the property making large metal parts for commercial clients. It has not used, generated, transported, treated, stored, or disposed of TCE or PCE on the Moran Property. Between December 5 and December 12, 2011, the Major Defendants removed and disposed of 4,641 tons of contaminated soil at the Moran Property. The Major Defendants have not used, generated, transported, treated, stored, or disposed of TCE, PCE, dichloroethylene, or vinyl chloride on the Moran Property. (Tr. Ex. 105 at 5).

## C. __The Ertel Property__

The Ertel Property refers to the property addressed as 2045 Dr. Andrew J. Brown Avenue in Indianapolis. Ertel Manufacturing owned and operated the property between 1917 and 1998, using it to make automotive engine parts. This manufacturing included the use of degreasing baths and solvents, likely including TCE and PCE. The Ertel Property was sold to Dynagear in 1998, which used it to manufacture auto parts until 2002, when the property was abandoned, leaving behind soil and groundwater impacted with chlorinated volatile organic compounds ("CVOCs"). Between 2004 and 2008, the city of Indianapolis, IDEM, and the U.S. Environmental Protection Agency ("EPA") performed cleanup activities at the Ertel Property.

On September 25, 2007, Major Tool began leasing the Ertel Property from the city of Indianapolis. Prior to leasing the Ertel Property, Major Tool retained EnviroForensics to conduct

---

[4] A Phase II Environmental Site Assessment is an environmental investigation of a property to characterize and delineate potential contamination at a property or site. A Phase II ESA includes tracing all possible paths of contamination movement from the source, and developing recommendations to remediate the contaminated materials.

a Phase I Environmental Site Assessment ("Phase I ESA")[5] consistent with the American Society for Testing and Materials ("ASTM") Standard E1527-05. (Tr. Ex. 1166.) Major Tool acquired the Ertel Property from the city on January 31, 2013 and is the current owner. Prior to acquiring the Ertel Property the Major Defendants commissioned another Phase I ESA. (Tr. Ex. 1191.) The Major Defendants have not used, generated, transported, treated, stored, or disposed of any hazardous substance, including TCE or PCE at the Ertel Property.

**D.**     **The Zimmer Paper Property**

The Zimmer Paper Property refers to both the Zimmer Paper Facility, addressed as 1931 Dr. Andrew J. Brown Avenue, and the Zimmer Packaging Facility, addressed as 1450 East 20th Street in Indianapolis. Moran owned and operated the Zimmer Paper Property from 1967 to 1984. Moran used degreasers and chlorinated solvents in its operations during this time. Moran's operations at the Zimmer Paper Property required the use of parts washers, but the specific chemicals used in those washers were not identified at trial. Thus, there is no evidence that Moran used TCE or PCE at the Zimmer Paper Property.

From 1986 to 2006, Zimmer Paper Products, Inc. ("Zimmer") owned and operated the Zimmer Paper Property. Zimmer used the property for chemical and equipment storage, among other things. It used solvents in the course of its work, but it is not clear what kind of solvents.

Major Holdings acquired the Zimmer Paper Property from Zimmer on January 31, 2007 and is the current owner of the property. On November 16, 2006, Major Tool retained EnviroForensics to conduct a Phase I ESA for the Zimmer Paper Property that was consistent with the ASTM E1527-05 standard. (Tr. Ex. 1241.) After Major Holdings purchased the Zimmer Paper

---

[5] A purpose of a Phase I Environmental Site Assessment is to determine the existence of recognized environmental conditions (the presence or likely presence of hazardous substances on a property that indicated an existing release, a past release or material threat of a release of hazardous substances on the property, into the ground, groundwater or surface of the property) at the site. (Tr. Exhibit 1166 at 1.)

Property, contaminated soil was removed from the property and a 16,000-gallon underground storage tank was discovered and removed.

**E.**     **Contaminated Soil and Groundwater**

For many years toxic solvents were used unsafely at each property at issue in this case. These toxic solvents, particularly TCE and PCE, seeped into the soil and groundwater beneath the properties, contaminating that soil and groundwater. The groundwater from the four properties commingled into a plume, which ran downgradient to the southwest and contaminated residential properties and J.T.V. Hill Park, located in the Martindale-Brightwood Neighborhood in Indianapolis.

The groundwater contamination does not present a risk of harm to human health via drinking water or direct contact because the contaminated groundwater is deep below ground and not used for drinking water. Rather, at the concentrations present in this commingled plume, TCE vapors can migrate upward through the overlaying soil, resulting in TCE vapor intrusion into overlying structures and risking inhalation of the harmful vapors. The minimum concentration required for shallow groundwater contamination to off-gas and present a potential risk of vapor intrusion varies from site to site, but within this particular plume area, shallow groundwater TCE concentrations above 18 micrograms per liter ("μg/L") is considered by IDEM to present a risk of vapor intrusion. Indeed, TCE vapor intrusion has occurred at some of the properties in question. More importantly for the general public, TCE vapor intrusion has also occurred or is an ongoing concern at the indoor facility at J.T.V. Hill Park and about 40 homes situated over the plume. In short, the shallow groundwater contamination in this plume is not merely a theoretical problem or a problem only at the sites where releases occurred, but instead presents an actual risk to human health even a considerable distance away from the source properties at issue in the litigation.

In August 2013, IDEM notified Von Duprin, the furthest downgradient of the properties involved in this litigation, that it was a potentially responsible party under the State Cleanup Program in connection with the soil and groundwater contamination in the area. As detailed above, Von Duprin performed extensive sampling and investigation of the soil, soil gas, indoor air, and groundwater at the Von Duprin Property. Von Duprin also installed mitigation systems in downgradient residences and the park building, affected by the contamination and continues to maintain and pay the costs of those systems.

## F.  **Expert Testimony**

At trial, three expert witnesses testified.

Von Duprin proffered the expert testimony of Sam Williams, P.G., CHG. ("Mr. Williams"), an environmental consultant with more than 30 years' experience in working on and managing national contingency plan-compliant sites. Mr. Williams works for, and owns less than 1% of Geosyntec Consultants ("Geosyntec"), a company that performs and prepares work plans and reports related to state and federal Superfund sites and contaminated industrial sites. (Filing No. 250 at 6, 105.) Mr. Williams reviewed dozens of environmental work plans (including those prepared by Geosyntec), and reports to IDEM, correspondence between Von Duprin's consultants and regulators and affected members of the public, as well as state and federal regulatory guidance documents for environmental cleanups. He ultimately opined that Von Duprin's response to the contamination, taken as a whole, complied with the national contingency plan ("NCP").

The Major Defendants proffered the expert testimony of Gary Hokkanen ("Mr. Hokkanen"), who was employed by the EPA when CERCLA was enacted. He has been retained to offer expert opinions relating to NCP compliance on multiple occasions. Mr. Hokkanen reviewed applicable guidance from the EPA relating to the relevant provisions of the NCP prior to

forming his opinions in this matter, and listed that guidance in his expert report. (Ex. 103 at 35-38). Mr. Hokkanen provided an opinion that Von Duprin's response actions did not comply with several provisions of the NCP.

Moran called Adam H. Love, Ph.D. ("Dr. Love") as an expert witness. Dr. Love is an expert in environmental site assessment and remediation, environmental forensics and groundwater modeling, geology, hydrogeology, chemistry, and fate and transport.[6] Dr. Love created a database of the site investigation data from groundwater and native soil that had been collected from the different properties at issue in this case. He used this database to analyze each property's contribution to the contaminated groundwater plume. Because he had no data from earlier time periods, Dr. Love's allocation analysis is limited to the time period covered by the available data (primarily 2005-2017) and does not take into account the releases and migration of chlorinated solvents that occurred in the decades preceding the collection of the first data. (Filing No. 244 at 28). He opined that the harm caused by the releases of CVOCs could be allocated to each property based upon their distinct geographic region and offered an opinion on what percentage of contamination could be attributed to each property. In particular, of the chlorinated solvents in the plume, he opined that 54.2% came from the Von Duprin Property, 3.11% came from the Moran Property, 13.77% came from the Ertel Property, and 28.94% came from the Zimmer Property, with the Zimmer Paper Parcel responsible for the vast majority of that portion. (Tr. Ex. 101 at 23.) He did not offer an opinion on which *parties* contributed to the commingled plume; he only weighed in on the proportion of the contamination each *property* was responsible for. Nor did he opine as to when those chemicals were released from each property.

---

[6] Fate and transport refers to the study of how chemicals degrade and where chemicals travel in the environment when they are released.

## G.    The Litigation and Von Duprin's Costs

Von Duprin incurred and continues to incur substantial costs to investigate and mitigate vapor intrusion in the plume area.  It initiated this CERCLA litigation to recover some of those costs from parties responsible for the upgradient contamination—Moran, the Major Defendants, and Zimmer.  Zimmer did not appear or respond to the Complaint, and the Clerk entered a default against Zimmer under Federal Rule of Civil Procedure 55(a).  (Filing No. 90.)  In its Amended Complaint, filed on January 4, 2017, Von Duprin alleges the same claims against each Defendant: (1) cost recovery under section 107(a)(4)(B) of CERCLA, and (2) declaratory judgment under section 113(g)(2) of CERCLA.[7]  It also alleges environmental claims against Moran and Zimmer under Indiana Code § 13-30-9, *et seq.*, which allows Hoosiers to "bring an environmental legal action against a person that caused or contributed to the release [of hazardous substances or petroleum] to recover reasonable costs of a removal or remedial action."  *Id.*

Through this litigation, Von Duprin seeks to recover the following costs from Moran and the Major Defendants:

| | |
|---|---|
| (1) Vapor Intrusion Mitigation at Downgradient Homes | $465,000.00 |
| (2) Investigation of Contamination in the Plume Area Upgradient and Downgradient to Von Duprin Property | $750,000.00 |
| (3) Vapor Intrusion Mitigation at J.T.V. Hill Park | $120,000.00 |
| (4) Bench Scale and Pilot Tests of a Potential Groundwater Remedy, *in situ* Biological Reduction | $365,000.00 |
| (5) IDEM Oversight Costs | $38,945.80.00[8] |

---

[7] Both the case law and administrative materials addressing CERCLA frequently switch back and forth between referring to sections of the Act by their section number, as enacted, and their section by number as codified. "Section 107(a)" of CERCLA, for example, was codified at 42 U.S.C. § 9607(a); "Section 113(f)" corresponds to § 9613(f). See *Bernstein v. Bankert*, 733 F.3d 190, 203 n. 10 (7th Cir. 2013).

[8] On page 12 of its Proposed Facts and Conclusions of Law, Von Duprin indicates it incurred $34,945.80 in IDEM oversight costs, but on page 41 it seeks damages in the amount of $38,945.80 for those costs. (Filing No. 254 at 12,

(6) Threaded Rod Settlement                                                $1,500,000.00

Those costs total $3,238,945.80.[9]  In addition to these costs Von Duprin has already incurred, it seeks a declaratory judgment requiring Defendants to contribute to the future costs to remediate the plume.[10]  No party presented evidence at trial regarding the anticipated future cost of remediation.

The Major Defendants and Moran asserted cross-claims and counterclaims under Section 113(f), seeking contribution for any liability allocated to them.  (Filing No. 46; Filing No. 52; Filing No. 68.)  Moran asserted a cross-claim against the Major Defendants under the Indiana Environmental Legal Action statute, but at trial it voluntarily dismissed that cross-claim.

Von Duprin, Moran, and the Major Defendants cross-moved for partial summary judgment. (Filing No. 133; Filing No. 138; Filing No. 141.) In the Order denying Von Duprin's Motion for Partial Summary Judgment, the Court determined as a matter of law that the harm in this case was divisible.  Thus, instead of holding all parties jointly and severally liable for the remediation costs, the Court would be able to allocate a share of responsibility to each party and apportion costs according to that percentage.  Because the determination of those percentages is a question of fact, the Court did not resolve it at the summary judgment stage.  In the same Order,

41.) The Court's review of Exhibit 1018 confirms that Von Duprin did in fact incur $38,945.80 in IDEM oversight costs.

[9] The Court was forced to resolve an arithmetic discrepancy in Von Duprin's Proposed Facts and Conclusions of Law to arrive at this number. Von Duprin indicated it was seeking to recover "$1.7 million in environmental consulting fees," but its itemized accounting of those fees totaled $1.72 million. (Filing No. 254 at 12.) Von Duprin's itemized list indicated it incurred $770,000.00 in fees "for investigation of contamination in the plume area upgradient and downgradient of the Von Duprin property." *Id.* But the record cite it gives for that figure—testimony of Geosyntec Consultant Alan Ferree—indicates Von Duprin actually incurred only $750,000.00 worth of fees for this service. (Filing No. 249 at 197.) This $750,000.00 figure would render Von Duprin's total of $1.7 million in consulting costs accurate and is consistent with the total Von Duprin gives elsewhere in its Proposed Facts and Conclusions of Law. *See* Filing No. 254 at 41. Von Duprin again refers to this number as $770,000.00 on page 22 of its Proposed Facts and Conclusions of Law. (Filing No. 254 at 22.) The Court treats that reference as a clerical error as well.

[10] Von Duprin does not seek to recover the $688,350.25 it incurred in support of its litigation efforts or the $777,000.00 that was expended solely to investigate the contamination at the Von Duprin Property.

the Court determined that the Major Defendants were Bona Fide Prospective Purchasers of the Moran Property and the Zimmer Packaging Facility, and thus they could not be responsible for any soil or groundwater contamination stemming from those facilities. (Filing No. 203.)

## II.     CONCLUSIONS OF LAW

### A.     Von Duprin's Section 107(a) Claim

#### 1.     Standard

To establish a *prima facie* case of liability in a private party CERCLA action under Section 107, a plaintiff is required to prove the following five elements: (1) the site in question is a "facility" as defined under Section 101(9); (2) there has been a release or threatened release of hazardous substances; (3) the plaintiff has incurred costs in response to the release or threatened release; (4) the costs incurred in responding to the release or threatened release were "necessary response costs" and "were consistent with the national contingency plan"; and (5) the defendant is a responsible party under Section 107(a). *See* 42 U.S.C. § 9607(a); *see also e.g. Allied Waste Transp., Inc. v. John Sexton Sand & Gravel Corp.*, No. 13 C 1029, 2016 WL 3443897, at *13 (N.D. Ill. June 23, 2016). Response costs are defined as the "costs of investigating and remedying the effects of a release or threatened release of a hazardous substance into the environment." *Rolan v. Atlantic Richfield Co.*, No. 1:16-CV-357-TLS, 2017 WL 3191791, at *6 (N.D. Ind. July 26, 2017). Response costs are "necessary" if the costs "are incurred in response to a threat to human health or the environment and they are necessary to address that threat." *Id*. The plaintiff bears the burden of proof as to each element of each claim for each property against the defendant. *G.J. Leasing Co., Inc. v. Union Elec. Co.*, 854 F.Supp. 539, 558 (S.D. Ill. 1994).

Here, the parties have stipulated that: (1) each party is a "person" under Section 101(21); (2) each property at issue is a "facility" under Section 101(9); (3) there has been a "release" or

"threatened release" of hazardous substances at each property at issue under Section 101(22) and Section 107(a); and (4) some contaminants detected at each property at issue are "hazardous substances" under Section 101(14).  (Filing No. 205.)  Von Duprin bears the burden of establishing the remaining elements of its claim.  *G.J. Leasing Co., Inc.*, 854 F.Supp. at 558.  Even where a plaintiff is able to establish each element of its claim, a defendant can avoid liability under Section 107(a) if the defendant proves that it satisfies one of the affirmative defenses enumerated in Section 107(a).  The Bona Fide Prospective Purchaser ("BFPP") defense is an enumerated affirmative defense.  42 U.S.C. 9607(a)(1); 42 U.S.C. § 9607(r)(1); 42 U.S.C. § 9601(40).

A defendant can also limit or eliminate its liability under Section 107(a) by demonstrating that the harm at issue is divisible.  As Congress intended the scope of liability under CERCLA to be determined from traditional and evolving principles of common law, the Court is not required to find that liability is joint and several in every case.  *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 613 (2009) (quoting *United States v. Chem–Dyne Corp.*, 572 F.Supp. 802, 808 (S.D. Ohio 1983)); *see also United States v. NCR Corp.*, 688 F.3d 833, 838 (7th Cir. 2012).  Rather, where a party demonstrates that the relevant harm in the case is divisible as between the multiple purported causes, the party only bears liability for the portion of the total harm that he himself has caused.  *NCR Corp.*, 688 F.3d at 838 (citing *Burlington Northern*, 556 U.S. at 614).

## 2.    __Divisibility of Harm__

Under CERCLA, although Congress "imposed a 'strict liability standard,' it did not mandate 'joint and several' liability in every case."  *Burlington N. & Santa Fe. Ry. Co. v. U.S.*, 556 U.S. 599, 614 (2009) (quoting *United States v. Chem-Dyne Corp.*, 572 F. Supp. 802, 805 & 807 (S.D. Ohio 1983)).  The United States Supreme Court embraced *Chem-Dyne* as the seminal

case on apportionment in the CERCLA context, which looks to the Restatement (Second) of Torts to determine when harm was divisible.

> [W]hen two or more persons acting independently caus[e] a distinct or single harm for which there is a reasonable basis for division according to the contribution of each, each is subject to liability only for the portion of the total harm that he has himself caused. Restatement (Second of Torts, §§ 443A, 881 (1976); Prosser, Law of Torts, pp. 313-14 (4th ed. 1971).… But where two or more persons cause a single and indivisible harm, each is subject to liability for the entire harm. Restatement (Second) of Torts, § 875; Prosser, at 315-17. Chem-Dyne Corp., 572 F. Supp., at 810.

*Burlington N.* at 614 (ellipses in original).

The Seventh Circuit has distilled that analysis into a two-part test. First, a court "must determine whether the harm at issue is theoretically 'capable of apportionment.'" *NCR Corp.*, 688 F.3d at 838 (quoting *Burlington N.* at 614). That determination is a matter of law and will be made by the Court, but underlying factual findings will often guide the Court's inquiry. *Id.* "Second, if the harm is capable of apportionment, the fact-finder must determine how actually to apportion the damages, which is 'a question of fact.'" *Id.* (quoting *Burlington N.* at 614). The Court determined in its Entry on the Parties' Cross-Motions for Summary Judgment that the harm in this case is theoretically capable of apportionment. (Filing No. 203 at 22-23.) Equitable considerations play no role in the apportionment analysis; rather, apportionment is proper only when the evidence supports the divisibility of the damages jointly caused by the PRPs. *Burlington N.* at 615 n.9.

The harm in this case is groundwater contaminated by CVOCs that can result in a vapor which is toxic when inhaled. It is true but irrelevant that, once a CVOC discharge enters the plume, runs downgradient, and vaporizes, it is impossible to tell where it came from. This is a case involving a single harm "that is nonetheless divisible because it is possible to discern the degree to which different parties contributed to the damages." *U.S. v. Hercules, Inc.* 247 F.3d 706, 718

(8th Cir. 2001). Each party, through the property or properties it is attached to, has caused a separate amount of harm, and no party is responsible for the harm caused by another.

Moran's expert, Dr. Love, demonstrated a reasonable basis for apportionment. He created a database based on at least 30 reports that monitored groundwater on the four properties between 2005 and 2017. (Filing No. 244 at 55-56.) This database contained "thousands of different individual data points." *Id.* He determined, based on that data, that the contamination in this case emanated from four geographically distinct areas. *Id.* at 54. He also determined that both the magnitude of the concentration of CVOCs as well as the chemical characteristics of those CVOCs at the Von Duprin Property are dramatically different from the magnitude and chemical characteristics of the three upgradient properties. *Id.* at 31. "The concentration goes up a factor of five and the concentrations change from being TCE dominated to PCE dominated" as one examines data from the wells on the Von Duprin Property. *Id.* Dr. Love was able to use the ratio of TCE to PCE in the soil and groundwater samples taken from each individual property to determine how much each property contributed to the commingled plume. *Id.* at 32. This evidence, detailed in Dr. Love's report and then explained from the witness stand at trial, confirmed the conclusion the Court reached in its Entry on the Parties' Cross-Motions for Summary Judgment that the harm in this case is divisible and a reasonable basis for its apportionment exists.

### 3. <u>Threaded Rod Settlement</u>

Von Duprin paid $1.5 million to Threaded Rod as part of a settlement and, as part of that settlement, Von Duprin acquired ownership of wells Threaded Rod had dug on the plume area and the data Threaded Rod had obtained from monitoring those wells. (Filing No. 248 at 51-53; 107.) Von Duprin cannot recover the $1.5 million that was paid to Threaded Rod as part of a settlement under 42 U.S.C. § 9607.

As the Supreme Court of the United States has explained, § 9607 and § 9613 provide two clearly distinct remedies. *U.S. v. Atlantic Research Corp.*, 551 U.S. 128, 138 (2007). "CERCLA provide[s] for a right to cost recovery in certain circumstances, [§9607(a)], and separate rights to contribution in other circumstances, [§§ 9613(f)(1), 9613(f)(3)(B)]." *Cooper Indus. Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 163 (2004). Section 9613(f) grants a potentially responsible person the right to contribution when he has paid more than his or her proportionate share. *Atlantic Research*, 551 U.S. at 138. In contrast, section 9607(a) permits recovery of cleanup costs but does not create a right to contribution. *Id.* at 139. "When a party pays to satisfy a settlement agreement or a court judgment, it does not incur its own costs of response. Rather, it reimburses other parties for costs that those parties incurred." *Id.* In other words, the Supreme Court has determined that § 9607 only allows a plaintiff to recover for cleanup costs, and money used to pay a settlement is not strictly a cleanup cost. Thus, the Court will analyze Von Duprin's attempt to recover the $1.5 million it paid in a settlement to Threaded Rod as part of Von Duprin's § 9613 claim.

### 4.    National Contingency Plan Compliance

The national contingency plan ("NCP") is a federal regulation promulgated by the United States Environmental Protection Agency that establishes criteria for performing removal and remedial actions designed to assure that a CERCLA-quality cleanup is achieved. 40 C.F.R. Part 300. An issue, argued extensively by the parties, was whether the costs Von Duprin incurred were consistent with the NCP. Under § 9607 of CERCLA, Von Duprin may recover "any … necessary costs of response incurred." To be recoverable, costs must be necessary and comport with the NCP.

Whether a response cost is consistent with the NCP is determined based on the NCP in effect at the time the response costs were incurred. *See, e.g., G.J. Leasing Co. v. Union Elec. Co.*,

854 F. Supp. 539, 563 (S.D. Ill. 1994), *aff'd*, 54 F.3d 379 (7th Cir. 1995); *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). Under the current version of the NCP, a "private party response action" is consistent with the NCP "if the action, when evaluated as a whole, is in substantial compliance with the applicable requirements … and results in a CERCLA-quality cleanup." 40 C.F.R. § 300.700(c)(3)(i); *Franklin County Convention Facilities Auth. v. American Premier Underwriters, Inc.*, 240 F.3d 534, 543 (6th Cir. 2001).

A person seeking to recover response costs must substantially comply with only the portions of the NCP that apply to the task being performed. Importantly, many NCP requirements do not apply in the investigation phase of a response, nor do some requirements apply in actions undertaken to remove, rather than remediate, hazardous substances from a site. Indeed, "because any clean-up proposal and, consequently, any clean-up of a contaminated site must first be preceded by an investigation of the nature and extent of contamination, such investigative and assessment costs need not be incurred in compliance with the NCP and are 'necessary.'" *CNH Am., LLC v. Champion Envtl. Servs.*, 863 F. Supp. 2d 793, 809 (E.D. Wis. 2012) (collecting cases which hold that "initial investigation, site-assessment, and monitoring costs are recoverable under § 107(a) of CERCLA irrespective of compliance with NCP requirements").

### a) Investigation and Assessment Costs

Von Duprin has labeled the $750,000.00 it spent on investigation of contamination in the plume area upgradient and downgradient to Von Duprin Property as investigation and assessment costs. At trial, Von Duprin's environmental consultant Alan Ferree testified that Von Duprin paid his firm $750,000.00 for off-site investigation. (Filing No. 249 at 197.) No evidence in the record directly disputes that claim. Von Duprin's expert, Mr. Williams, issued a report which confirms that many of Von Duprin's costs were investigative. He details investigative reports commissioned

by each party in section 5.6 of his report (Tr. Ex. 106 at 16), but he also lists investigative work in sections 5.1, 5.2.1, 5.2.3, and 5.2.5 (Tr. Ex. 106 at 10-13.) His report does not contradict Alan Ferree's testimony. Neither Mr. Williams' report nor his testimony suggest that the only investigation and assessment costs incurred by the parties in this case were the costs of commissioning the investigations listed in section 5.6 of his report. The Court considers the $750,000.00 Von Duprin spent on investigation of contamination in the plume area upgradient and downgradient to Von Duprin Property to be initial investigation, site-assessment, and monitoring costs. As such, those costs need not be consistent with the NCP to be recoverable under 42 U.S.C. § 9607(a), and these costs are recoverable.

### b)     Remedial Costs

Other costs Von Duprin seeks to recover—the $120,000.00 for remediation of J.T.V. Hill Park, $465,000.00 for residential vapor intrusion remediation, and $365,000.00 for bench scale and pilot testing qualify as costs for remediation actions. 42 U.S.C. § 9601(24). These remedial costs are recoverable under 42 U.S.C. § 9607(a) if Von Duprin shows they were incurred consistent with the NCP. The NCP provisions relevant to Von Duprin's non-investigative costs include: Section 300.150 (Worker Health and Safety); Section 300.160 (Documentation and Cost Recovery); Sections 300.400(c)(1), (4), (5), and (7) (Determining the Need for Fund Financed Response Actions); Section 300.400(g) (Identification of Applicable or Relevant and Appropriate Requirements); Sections 300.410 and 300.415 (Removal Site Evaluations and Actions); Section 300.420 (Remedial Site Evaluation); Section 300.430 (Remedial Investigation/Feasibility Study and Remedy Selection); Section 300.435 (Remedial Design, Remedial Action and Operation and Maintenance); and Sections 300.155, 300.415, and 300.430 (Public Participation and Community Relations). Despite the number of specific provisions listed within the NCP, a "private party

response action" is consistent with the NCP "if the action, when evaluated as a whole, is in substantial compliance with the applicable requirements … and results in a CERCLA-quality cleanup." 40 C.F.R. § 300.700(c)(3)(i); *Franklin County Convention Facilities Auth. v. American Premier Underwriters, Inc.*, 240 F.3d 534, 543 (6th Cir. 2001).

At trial, Von Duprin's expert, Mr. Williams, testified on the issue of whether Von Duprin incurred these costs consistent with the NCP. Mr. Williams opined that taken as a whole, Von Duprin's actions substantially complied with the NCP. The Major Defendants' expert Mr. Hokkanen did not render an opinion regarding whether or not Von Duprin complied with the NCP, instead he responded in rebuttal to Mr. Williams opinions. (Filing No. 245 at 48). The Court considers the following evidence in determining Von Duprin's substantial compliance.

Maintaining Documentation Requirement – 40 C.F.R. § 300.160: In relevant part, Section 300.160 of the NCP requires parties to "maintain documentation to support all actions taken under the NCP and to form the basis for cost recovery." Von Duprin introduced more than 2,000 pages of invoices at trial, which provide phase information and other details that provided Von Duprin with the information it required to process and pay the invoices. (Tr. Ex. 1017.) Von Duprin presented fact testimony from Alan Ferree, Russell Eiler, and Ryan Fimmen that explained the work Von Duprin's consultant performed, the costs incurred, categories of damages, review and approval of Geosyntec's work and invoices, and what costs were non-recoverable, including legal support and costs to investigate and remediate soil contamination at the Von Duprin Property. For the work performed by Geosyntec, Mr. Williams admitted that he only reviewed "three or four" of the hundreds of invoices issued by Geosyntec. (Filing No. 250 at 75-76.) Mr. Williams testified that because he works for and has a portion of ownership in Geosyntec, he is familiar with their invoicing. However, the invoices Mr. Williams reviewed did not contain narratives describing the

work being performed, and a review of the invoices shows that the majority of the invoices similarly lacked that information. (Tr. Ex. 1017; Filing No. 250 at 77-78.) For the work performed by any other consultant, Mr. Williams reviewed "cost summaries" prepared by an unknown person. *Id.* at 72-73. Mr. Hokkanen agreed that narratives are not always listed on invoices for environmental consultants. (Filing No. 245 at 22.) Although expert testimony discussing the invoices in more detail, or narratives confirming specific tasks performed by Geosyntec may have been helpful to the Court, it was not required. The Court determines that the Mr. Williams provided a reliable opinion as to Von Duprin's compliance with Section 300.160.

Engineering Evaluation/Cost Analysis Requirement – 40 C.F.R. 300.415(b)(4)(i): Section 300.415(b)(4)(i) requires a party to conduct an engineering evaluation/cost analysis ("EE/CA") or its equivalent if a planning period of at least six months exists before on-site activities must be initiated. Mr. Williams explained that an EE/CA was required to be prepared for Von Duprin's work, and he admitted that there was no EE/CA created for the work performed. (Filing No. 250 at 94-95.) Mr. Hokkanen agreed, noting that an EE/CA should be prepared immediately after it is determined that a removal action is necessary, but no EE/CA was prepared here. (Filing No. 245 at 32-33.)

Sampling and Analysis Plan and Quality Assurance Project Plan Requirement – 40 C.F.R. § 300.415(b)(4)(ii)(A) and 40 C.F.R. § 300.415(b)(4)(ii)(B): Section 300.415(b)(4)(ii)(A) requires a sampling and analysis plan ("SAP") to be created and Section 300.415(b)(4)(ii)(B) requires a quality assurance project plan ("QAPP") to be created for removal actions. No document relating to the work performed specifically sets forth a SAP. (Filing No. 250 at 95-96; *see also* Tr. Ex. 103 at 11.) At best, the elements of a SAP were included for work performed after 2014, meaning no work performed before that time complied with Section 300.415. (Filing No. 245 at 33.) Both

experts agree no QAPP was created before May 2017, meaning no work performed before that time complied with Section 300.415. (Tr. Ex. 103 at 11; Filing No. 250 at 96; Filing No. 245 at 34.)  In sum, Von Duprin failed to prove that the costs it seeks to recover for work performed before May 2017 were necessary response costs incurred consistent with Section 300.415.

Health and Safety Program Requirement – 40 C.F.R. § 300.150: Section 300.150 of the NCP requires the preparation and implementation of a health and safety program ("HASP") where a response action is taken.  Response actions were taken by Von Duprin, but no HASP was created or implemented for Von Duprin's work before August 2014.  (Tr. Ex. 103 at 8; Filing No. 250 at 87-88; Filing No. 245 at 19-20.)  Von Duprin failed to prove that the costs it seeks to recover for work performed before August 2014 were necessary response costs incurred consistent with Section 300.150.

Applicable or Relevant and Appropriate Requirement – 40 C.F.R. § 300.400(g): Section 300.400(g) and other sections of the NCP require a party to identify and comply with applicable or relevant and appropriate requirements ("ARARs") to the extent practicable.  *See also* 40 C.F.R. § 300.415; 40 C.F.R. § 300.430; 40 C.F.R. § 300.435.  Von Duprin followed IDEM screening levels to evaluate data. (Tr. Ex. 103 at 10; Filing No. 245 at 30.)  Mr. Hokkanen opined that following IDEM screening levels to evaluate data is not equivalent to identifying all ARAR, consistent with Section 300.400(g).  *Id.*  Because Section 300.400(g) only requires Von Duprin to identify and comply with ARARs "to the extent practicable," the Court finds that Von Duprin has satisfied this requirement.

Local Community Concerns – 40 C.F.R. § 300.400(c): Section 300.400(c) requires parties to, among other things, be sensitive to local community concerns in determining the need for, planning, or undertaking certain response actions.  Mr. Hokkanen opined that "[y]ou need to

23

inform the potentially affected community in what you're doing, get their feedback, respond to that feedback, because people are impacted by this contamination, so you need to determine what their concerns are and then respond to those concerns." (Filing No. 245 at 24.) He also opined that performing all work in accordance with schedules from a government agency like IDEM "could" constitute being sensitive to local community concerns.

Von Duprin has sufficiently demonstrated that it was sensitive to local community concerns. Not only did it perform all work in accordance with schedules from IDEM, but Von Duprin communicated with affected residences, as well as community leaders that managed the J.T.V. Hill Community Center. Moreover, Von Duprin's partial Remediation Work Plan included a Community Relations Plan which was timely submitted to IDEM for public comment. (Filing No. 250 at 50, Filing No. 248 at 30.) Taken as a whole, Von Duprin has proven that it substantially complied with the NCP to recover necessary response costs incurred consistent with Section 300.400(c) for the $120,000.00 for remediation of J.T.V. Hill Park and the $465,000.00 for residential vapor intrusion remediation.

Community Relations Requirements: 40 C.F.R. § 300.700(c)(6); 40 C.F.R. § 300.415(n); 40 C.F.R. § 300.430(c); 40 C.F.R. § 300.430(f): These sections of the NCP require parties to undertake various community relations actions when performing response and remedial actions. The requirements relating to remedial actions are particularly onerous, as they include conducting interviews, establishing a local information repository, providing the opportunity for a public meeting, and publishing an analysis of the proposed plan in a local newspaper. 40 C.F.R. § 300.430. Von Duprin's efforts relating to the local community included requesting access to residences for certain sampling and mitigation activities. (*See* Tr. Ex. 106 at 72 (describing all "public participation and community relations" actions taken by Von Duprin)); Tr. Ex. 1002;

Filing No. 250 at 99; Filing No. 245 at 36-37).  Mr. Hokkanen opined that these provisions are integral to the NCP and Von Duprin needed to do significantly more to comply with them.  (Filing No. 245 at 35-37.)  Mr. Hokkanen did  not review all of the information which Mr. Williams relied upon in forming his opinions about Von Duprin's outreach to the community and he did not consider the Memorandum of Agreement between IDEM and USEPA which establishes that USEPA finds the public participation requirements of the VRP to be adequate. (Tr. Vol. 6 at 1029:15-22) In addition, Von Duprin's partial Remediation Work Plan included a Community Relations Plan and which was submitted to IDEM for public comment. These efforts, performed with IDEM approval, satisfy some of the community relations requirements for either removal or remedial actions to show that the costs Von Duprin seeks to recover were necessary response costs incurred consistent with Section 300.700(c), 40 Section 300.415(n); Section 300.430(c), and Section 300.430(f).

Von Duprin's compliance was not perfect, however, the NCP requirements are not intended to be a checklist of required actions for private remediations. *See Franklin County* at 546. CERCLA is to be liberally construed to serve its dual purposes of efficiently cleaning the environment, while at the same time holding responsible parties accountable for their actions.  *See In re Eagle–Picher Indus., Inc.,* 131 F.3d 1185, 1191 (6th Cir.1997).  Taken as a whole, the Court determines that Von Duprin's remediation substantially complied with the NCP and resulted in a "CERCLA-quality" cleanup as that term has been described by the EPA. Because Von Duprin has presented evidence that remedial costs were incurred consistent with the NCP as required by § 9607, Von Duprin can recover a portion of the $465,000.00 it spent to mitigate vapor intrusion at downgradient homes, a portion of the $120,000.00 it spent to mitigate vapor intrusion at J.T.V. Hill Park, and a portion of the $365,000.00 it spent on bench scale and pilot tests.

c)      **IDEM Oversight Costs**

The last cost Von Duprin seeks to recover in its § 9607 claim is the $38,945.80 it spent on IDEM oversight.  These are costs incurred by IDEM, which IDEM later billed to either Threaded Rod or Von Duprin.  (Tr. Ex. 108; Tr. Ex. 1018; Filing No. 248 at 34, 43-44; 242-43.)  Von Duprin cannot recover these costs under § 9607 for several reasons.

As a preliminary matter, it is unclear which of these invoices include costs incurred by *Von Duprin*.  Of the 32 IDEM invoices in the record, 22 of the invoices are addressed to Threaded Rod.  (Tr. Ex. 1018.)  It is not clear if Von Duprin is paying those invoices directed to Threaded Rod and, if so, whether it is doing so as a result of its settlement with Threaded Rod (the costs of which are not recoverable in a § 9607 claim).

To the extent Von Duprin is paying all of the invoices, it is not clear if these costs pertain to off-site or on-site work. (Tr. Ex. 1018.) Von Duprin made it clear that it was not seeking to recover costs relating to certain work performed on the Von Duprin Property, as those costs would not be recoverable in this lawsuit.  (Filing No. 248 at 32, 42-43; 107.)  While Von Duprin subtracted the amounts relating to Geosyntec's on-site work from the total damage amount sought, it is not clear that Von Duprin did so with the IDEM costs.  *Id*. at 107.  As the IDEM invoices do not provide enough information regarding the nature of the work performed to allow the Court to make this distinction (*see* Tr. Ex. 1018), Von Duprin has not proven that it is entitled to recover those costs in this case.

Finally, there is no evidence that Mr. Williams reviewed any of the IDEM invoices or offered any opinion regarding whether the work performed relating to those invoices complied with the NCP.  Without any testimony from Mr. Williams regarding whether the consistency of

these costs with the NCP, the Court cannot find the Threaded Rod Settlement costs are recoverable in this lawsuit.

### 5. Major Defendants' Bona Fide Prospective Purchaser Defense

Section 107(a)(1) of CERCLA is subject to certain affirmative defenses, one of which is the bone fide prospective purchaser defense. 42 U.S.C. § 9607(a)(1); 2 U.S.C. § 9607(r)(1). The BFPP defense exempts from CERCLA liability a purchaser who:

(1) Acquired ownership of the property after January 11, 2002;
(2) Shows that all disposal of hazardous substances at the property occurred before the purchaser's acquisition of the property;
(3) Conducts "all appropriate inquiries" into the previous ownership and uses of the property;
(4) Provides all legally required notices regarding the lease;
(5) Provides full cooperation, assistance, and access to those conducting response actions at the property;
(6) Complies with institutional and engineering controls and does not impede the effectiveness of such controls;
(7) Complies with requests for information and subpoenas from the Environmental Protection Agency;
(8) Is not affiliated with a responsible or potentially responsible party; and
(9) Exercises appropriate care with respect to the hazardous substances found, including: stopping continuing releases, preventing threatened future releases, and preventing exposure to releases.

The Major Defendants argued at trial that they are BFPPs of all the property they own and operate that is at issue in this case. In its Entry on the Parties' Cross-Motion for Summary Judgment, the Court determined that the Major Defendants were BFPPs of the Moran Property and the Zimmer Packaging Facility and thus could not incur any liability related to CVOCs that entered the commingled plume from those properties. (Filing No. 203 at 33-34.) But issues of material fact precluded a determination at the summary judgment stage that the Major Defendants were BFPPs of the Ertel Property and the Zimmer Paper Facility. *Id.*

The sticking point with those two properties was the "all appropriate inquiries" prong of the BFPP defense. At trial, the Major Defendants did not show that they satisfied CERCLA's all

appropriate inquiries ("AAI") requirement with regards to the Ertel Property or the Zimmer Paper Facility.

### a)     The Ertel Property

In its Entry on the Parties' Cross-Motions for Summary Judgment, the Court found that "[t]he Major Defendants undisputedly became operators of the [Ertel Property] in 2007, when they began leasing it, but they have not designated evidence that they satisfied the BFPP defense's 'all appropriate inquiries' requirement until 2013, just before they purchased the facility." (Filing No. 203 at 31.)

At trial, the Major Defendants offered into evidence a Phase I ESA dated September 8, 2006, and argued that this 2006 Phase I ESA complied with the AAI requirements.  (Tr. Tr. Ex. 1166.)  Major Tool performed its Phase I ESA pursuant to the ASTM Phase I Environmental Site Assessment Standard (E1527-05), which meant it had to have been completed or updated within 180 days of and prior to the lease in order to be considered valid.  40 C.F.R. § 312.20(b).  (Tr. Tr. Ex. 1166.)  Major Tool entered into a 99-year Lease on November 16, 2007.  (Tr. Tr. Ex. 1021.) Accordingly, the September 6, 2006 Phase I ESA does not satisfy the AAI requirements because it was not completed or updated within 180 days of and prior to the Lease.  40 C.F.R. § 312.20(b); Filing No. 244 at 152-153.

Because the Major Defendants did not show that they satisfied CERCLA's all appropriate inquiries requirement, they are not BFPPs of the Ertel Property.  Thus, they can incur liability from contamination stemming from that property.

### b)     The Zimmer Paper Facility

In its Entry on the Parties' Cross-Motions for Summary Judgment, the Court found that the Phase I ESA the Major Defendants conducted prior to acquiring the Zimmer Paper Facility was

insufficient to qualify them as BFPPs of that parcel because it did not comply with the requirements of 40 C.F.R. §§ 312.21 and 312.22. These sections establish federal standard and practices for conducting all appropriate inquiries into the previous ownership and uses of a property and are not satisfied by adhering to the procedures of ASTM International Standard E2247. 40 C.F.R. §§ 312.11. The Major Defendants did not offer any new evidence or testimony at trial to address this Court's prior determination that they do not qualify for the BFPP defense for the Zimmer Paper Property. At trial, the Major Defendants pointed to the same Phase I ESA dated November 16, 2006, that they used at the summary judgment phase. (Tr. Ex. 1241.) The Major Defendants did not offer any evidence at trial to rebut Von Duprin's arguments that the 2006 Phase I ESA failed to comply with the requirements of 40 C.F.R. §§ 312.21 and 312.22. Given the failure of the 2006 Phase I ESA to satisfy the all appropriate inquiries requirements, Major Holdings is not a BFPP for the Zimmer Paper Facility. Therefore, the Major Defendants can incur liability for contamination that joined the commingled plume after it was released from the Zimmer Paper Facility.[11]

### 6. __Apportionment__

Under 107(a)(1) and (2), the following persons are liable under CERCLA:

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of.

---

[11] As the Court noted in its Entry on the Parties' Cross-Motions for Summary Judgment, the Major Defendants' third-party defense, raised under §9607(b)(3), also requires them to have made all appropriate inquiries in regard to all property they own. (Filing No. 203 at 34-35.) Thus, the Major Defendants' third-party defense fails as to the Ertel Property and the Zimmer Paper Facility for the same reason their BFPP defense fails on those properties.

42 U.S.C. 9607(a)(1) and (2).  The Court holds that Major Tool is liable under 107(a) as the current owner of the Ertel Site and Zimmer Paper Facility.  The Court holds that Von Duprin is a liable party as the owner of the Von Duprin Site at the time a release occurred.  The Court holds that Moran is a liable party as the owner of the Moran Property at the time a release occurred.

The parties have disputed whether Zimmer, a party in default, can be apportioned any share of the harm in this case.  In CERCLA, "[w]hen a court cannot assign an ideal measure of monetary responsibility to an otherwise responsible party—because, for example, that party is immune from suit, bankrupt, or defunct—this gives rise to an orphan share."  *Litgo N.J. Inc. v. Comm'r N.J. Dep't of Envtl. Prot*., 725 F.3d 369, 380 n. 4 (3d Cir. 2013) (internal quotations and citations omitted).  Here, however, no party presented evidence that a release or threatened release of TCE occurred while Zimmer owned and operated the Zimmer Paper Property.[12]  Thus, there is no basis for assigning orphan shares to Zimmer.

Once liable parties are identified under Section 107(a), the Court must determine whether the harm is divisible.  In its Entry on the Parties' Cross-Motions for Summary Judgment, the Court determined that the harm in this case was theoretically capable of apportionment. (Filing No. 230 at 26-27.)  The evidence at trial supports this conclusion.

**7.  Allocation**

Having determined the harm is divisible, the Court must next determine equitable allocation. In allocating response costs between multiple parties, a court "may consider any factor appropriate to balance the equities in the totality of the circumstances." *Evnvtl. Transp. ENSCO Sys. v. ENSCO, Inc.,* 969 F.2d 503, 507-08 (7th Cir. 1992). Under CERCLA, the allocation of responsibility is based on equitable factors determined to be relevant by the Court. 42 U.S.C. §

---

[12] Although Zimmer used solvents in the course of its operations at the Zimmer Paper Property, the particular type of solvents used is unclear. (Tr. Ex. 105 at 6; Filing No. 245 at 70-72.)

9613(f)(1). Some criteria, referred to as the *Gore* factors, that the Court has considered are (a) the distinguishability of each party's waste; (b) the amount of hazardous waste; (c) degree of toxicity of the contaminants at issue; (d) degree of involvement of the parties in waste generation; (e) degree of cooperation with federal, state or local officials to prevent any harm to public health or the environment; and (f) degree of care taken by the parties with respect to the hazardous waste concerned.

Von Duprin suggests, upon consideration of the equitable factors, each source property-- Ertel Property, Zimmer Paper Property, Moran Property and Von Duprin Property--should be allocated an equal 25% share of the response costs. He proffers that Von Duprin is allocated 100% of the 25% share attributable to the Von Duprin Property. Moran is allocated 75% of the 25% share attributable to the Moran site and 75% of the 25% share attributable to the Zimmer Paper Property for a final allocation share of 37.5% of the repose costs. (Filing No. 254-1 at 39-40.) Major Defendants are allocated 100% of the 25% share attributable to the Ertel site, 25% of the 25% share attributable to the Moran site, and 25% of the 25% share attributable to the Zimmer Paper Property for final allocation share of 37.5% of the past response costs. *Id*.

Moran suggests a percentage allocation of 54.2% share attributable to the Von Duprin Property, 3.11% attributable to the Moran Property, 13.77% attributable to the Ertel Property, and 28.94% attributable to the Zimmer Paper Property. Their calculation is based on Dr. Love's testimony that he was able to determine the contribution to harm resulting from releases at the upgradient properties by referring to the level of solvent impacts in shallow soil (vadose zone) at each of the sites – Ertel, Zimmer Paper and Moran. (Filing No. 244 at 93.) Dr. Love was able to calculate the percentage of the total CVOCs in the downgradient area and allocate those portions attributable to the upgradient properties. Dr. Love considered his conclusions to a reasonable

degree of scientific certainty and opined that the harm in this case could be distributed among the four properties in the amounts listed above. In his allocation calculation, Dr. Love did not consider any equitable factors.

The Major Defendants suggests that they should not be allocated any response costs under Section 113(f). They argue that they have not used, generated, transported, treated, stored, or disposed of any of the hazardous substances at issue, including TCE or PCE, on any of the properties at issue, at any time. (Tr. Ex. 105 at 5). There is no evidence that the Major Defendants ever released or threatened to release any of the hazardous substances at issue on any of those properties. They assert that although both Moran and Von Duprin caused and contributed to contamination, neither voluntarily agreed to investigate or remediate their properties. And, Moran has not undertaken any remediation on its properties. Based upon the relevant factors and the totality of the circumstances, the Major Defendants suggests that they should not be allocated any response costs under Section 113(f).

To allow the Major Defendants to avoid liability for its share of the response costs, under the totality of circumstances in this case, would undermine CERCLA's intended purposes. Considering the evidence presented at trial, including the equitable factors, the Court determines the allocution as follows: Von Duprin Property 50%, Ertel Property 10%, Zimmer Property 20% and Moran Property 20%.

On its § 9607 claim, the costs Von Duprin can recover are its $750,000.00 in investigation and assessment costs, $465,000.00 in downgradient residential vapor intrusion mitigation costs and $120,000.00 in J.T.V. Hill vapor intrusion mitigation costs, and the $365,000.00 it spent on bench scale and pilot tests for a total of $1,700,000.00. The $1.5 million it paid in its settlement with Threaded Rod is not recoverable under § 9607, nor is the $38,945.80 it sought to recover for

IDEM oversight costs. The Environmental response costs total $1,700,000.00, and they are hereby apportioned as follows:

1. **Von Duprin Property**: Von Duprin is the only party in this case who owned the Von Duprin Site when a release occurred, and is therefore liable under CERCLA, 42 U.S.C. 9607(a)(2). No other person has been named as a party who may bear responsibility under CERCLA, 42 U.S.C. 9607(a) for pollution at the Von Duprin Property. The Von Duprin Property is apportioned 50% of the total harm. Von Duprin is responsible for 100% of that harm.

2. **Ertel Property**: Major Tool is the only party in this case who currently owns the Ertel site, and is therefore liable under CERCLA, 42 U.S.C. 9607(a)(1). No other person has been named as a party who may bear responsibility under CERCLA, 42 U.S.C. 9607(a) for pollution at the Ertel Property. The Ertel Property is apportioned 10% of the harm, and Major Tool is liable for 100% of that harm.

3. **Zimmer Paper Property**: Major Tool is liable under 42 U.S.C. 9607(a)(1) as the current owner of the Zimmer Paper Parcel. Zimmer Paper has been defaulted as a liable party under 42 U.S.C. 9607(a)(2). No other party has been identified as a current owner of the Zimmer Paper Parcel, and there is insufficient evidence in the record showing that Moran ever used chlorinated solvents at the Zimmer Paper Parcel, or that a release occurred during Moran's period of ownership. The Zimmer Paper Parcel has been apportioned 20% of the harm. Major Tool is liable for 100% of that harm.

4. **Moran Property**: Moran is liable under 42 U.S.C. 9607(a)(2) as the owner of the Moran Property at the time that a release occurred there. Major Tool, as a BFPP

of the Moran Property, is not liable for any share of the harm that came from the Moran Property. The harm apportioned to the Moran Property is 20%. Moran is liable for 100% of that harm.

Von Duprin incurred $1,700,000.00 in recoverable investigation and assessment costs-- $465,000.00 in downgradient residential vapor intrusion mitigation costs, $120,000.00 in J.T.V. Hill vapor intrusion mitigation costs and $365,000.00 in bench scale and pilot tests costs. Von Duprin itself is responsible for $850,000.00 of that sum. Moran is responsible for $340,000.00. The Major Defendants are responsible for $510,000.00. Any share attributable to TCE contamination stemming from the Zimmer Packaging Facility cannot be charged to any party in this case, and thus must be borne by Von Duprin, as it was Von Duprin's burden to establish another party's liability for that share of the harm.

## B. Von Duprin's Section 113(f) Claims

In its Amended Complaint, Von Duprin sought

a declaratory judgment on liability for response costs that is binding in any subsequent actions to recover further response costs and declares Moran liable under CERCLA Section 107(a), 42 U.S.C. § 9607(a), for all or its proper share of response costs Von Duprin has incurred and will incur with respect to the Contamination migrating from the Moran Property and Zimmer Paper Parcel, pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), and 22 U.S.C. §§ 2201-2202.

(Filing No. 42 at 13.) It also sought

a declaratory judgment on liability for response costs that is binding in any subsequent actions to recover further response costs and declares Major Holdings liable under CERCLA Section 107(a), 42 U.S.C. § 9607(a), for all or its proper share of response costs that Von Duprin has incurred and will incur with respect to the Contamination migrating from the Moran Property, Ertel Property, Zimmer Packaging Facility, and Zimmer Paper Parcel, pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), and 28 U.S.C. §§ 2201-2202.

*Id.* at 16-17.

Under CERCLA, a plaintiff can obtain a declaratory judgment where it has incurred "some minimal level of expense associated with the alleged contamination, such as assessment or monitoring costs." *City of Gary, Indiana v. Shafer*, 683 F. Supp. 2d 836, 854 (N.D. Ind. 2010) (quoting *VME Americas, Inc. v. Hein-Werner Corp.*, 946 F. Supp. 683, 694 (E.D. Wis. 1996)). A declaratory judgment is an appropriate remedy under CERCLA where it is not yet possible to determine the actual cost of cleanup. *Id.* (quoting *Bowen Eng'g v. Estate of Reeve*, 799 F. Supp. 467, 476 (D.N.J. 1992)). "Once liability is established under section 107(a) of CERCLA, section 113(g) of CERCLA requires entry of a declaratory judgment as to liability for future response costs." *Evansville Greenway and Remediation Trust v. S. Indiana Gas and Elec. Co., Inc.*, 661 F. Supp. 2d 989, 1010 (S.D. Ind. 2009). Consequently, "if a plaintiff successfully establishes liability for the response costs sought in the initial cost-recovery action, it is entitled to a declaratory judgment on present liability that will be binding on future cost-recovery actions." *City of Colton v. Am. Promotional Events, Inc.-West*, 614 F.3d 998, 1007 (9th Cir. 2010). The fact that future costs are somewhat speculative is not a bar to declaratory judgment under CERCLA. *Kelly v. E.I. DuPont de Nemours & Co.*, 17 F.3d 836, 844 (6th Cir. 1994). Accordingly, Von Duprin's request for Declaratory Judgment must be **granted**.

No evidence was presented at trial as to what future cleanup of the upgradient and downgradient properties might cost. Therefore, in addition to the sums awarded under section 107(a), Von Duprin is entitled to an award of future costs in the same allocation percentages as those costs are incurred—30% from the Major Defendants and 20% from Moran. But there are strings attached to this award. First, Von Duprin is only entitled to recover future costs that are "not inconsistent with the NCP." *U.S. v. Saporito*, 2011 WL 2473332 at *13 (N.D. Ill. June 22, 2011). If any future cost recovery action is brought, the burden will be on Von Duprin to identify

cleanup activities and their attendant costs, and to demonstrate those costs are not inconsistent with the NCP. *Id*. Second, this declaratory judgment applies only to downgradient and upgradient costs. Because Von Duprin does not seek to recover the $777,000.00 that was expended solely to investigate the contamination at the Von Duprin Property, neither the Court's ruling on its § 9607(a) claim nor its § 9613(g)(2) claim speak to those costs. Thus, Von Duprin is only entitled to recover in the percentages specified above for future cleanup costs upgradient or downgradient to its own property that are not inconsistent with the NCP.

Because Von Duprin did not bring a claim for contribution under section 113(g)(3) against Moran or the Major Defendants, it cannot recover any portion of the $1.5 million it paid as part of its settlement agreement with Threaded Rod.

## C. Environmental Legal Action Claims

Von Duprin asserted a state law Environmental Legal Action claim against Moran and Zimmer Paper. (Filing No. 42 at 14-15, 20-21.) The Environmental Legal Action statute allows the recovery of reasonable costs of environmental assessment and removal and remedial actions, as well as attorneys' fees, from persons who caused or contributed to the releases of a hazardous substance that poses a risk to human health or the environment. Moran admittedly "caused or contributed" to a release of a hazardous substance (TCE) so it is liable for Von Duprin's reasonable costs. However, any such costs are identical to the costs Von Duprin seeks to recover under its CERCLA claim.

## D. Cross-claims and Counterclaims

The Major Defendants and Moran filed cross-claims against each other for contribution under 42 U.S.C. § 9613(f). (Filing No. 19 at 29-31; Filing No. 53-1 at 4-5.) They also both filed counterclaims against Von Duprin for contribution under 42 U.S.C. § 9613(f). (Filing No. 46 at

35-38; Filing No. 52 at 43-44.) This Order shall resolve all of those cross-claims and counterclaims. The parties shall pay the judgment awarded by this Order and going forward shall each contribute to any cleanup costs stemming from pollution in the commingled plume according to the percentages enumerated in section II.A.6 of this Order.

### III.   CONCLUSION

Based upon the foregoing findings of fact and conclusions of law, the Court concludes that Von Duprin has shown by a preponderance of the evidence that it is entitled to an award of $510,000.00 plus interest from the Major Defendants and an award of $340,000.00 plus interest from Moran, for past response costs. Von Duprin is also entitled to an award of future costs in the same allocation percentage—30% from the Major Defendants, 20% from Moran—as those costs are incurred.

**SO ORDERED.**

Date: 3/30/2020

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Glenn David Bowman
STOLL KEENON OGDEN, PLLC (Indianapolis)
Glenn.Bowman@skofirm.com

Alexandra Robinson French
BARNES & THORNBURG LLP
arobinson@btlaw.com

Samuel B. Gardner
ICE MILLER LLP
samuel.gardner@icemiller.com

Edward S. Griggs
BARNES & THORNBURG LLP (Indianapolis)
sean.griggs@btlaw.com

Bruce L. Kamplain
NORRIS CHOPLIN & SCHROEDER LLP
bkamplain@ncs-law.com

Angela Pease Krahulik
ICE MILLER LLP
krahulik@icemiller.com

Cynthia Elaine Lasher
NORRIS CHOPLIN & SCHROEDER LLP
clasher@ncs-law.com

Marc Andrew Menkveld
STOLL KEENON OGDEN, PLLC (Indianapolis)
Marc.Menkveld@skofirm.com

Nicholas B. Reuhs
ICE MILLER LLP
nicholas.reuhs@icemiller.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| VON DUPRIN LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-01942-TWP-DML |
| | ) | |
| MORAN ELECTRIC SERVICE, INC., | ) | |
| MAJOR HOLDINGS, LLC, | ) | |
| MAJOR TOOL AND MACHINE, INC., | ) | |
| ZIMMER PAPER PRODUCTS | ) | |
| INCORPORATED & Defaulted on 7/24/2017, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| MAJOR HOLDINGS, LLC, | ) | |
| MORAN ELECTRIC SERVICE, INC., | ) | |
| MAJOR HOLDINGS, LLC, | ) | |
| MORAN ELECTRIC SERVICE, INC., | ) | |
| MAJOR TOOL AND MACHINE, INC., | ) | |
| MORAN ELECTRIC SERVICE, INC., | ) | |
| | ) | |
| Counter Claimants, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VON DUPRIN LLC, | ) | |
| MAJOR HOLDINGS, LLC, | ) | |
| VON DUPRIN LLC, | ) | |
| VON DUPRIN LLC, | ) | |
| MAJOR HOLDINGS, LLC, | ) | |
| VON DUPRIN LLC, | ) | |
| VON DUPRIN LLC, | ) | |
| MAJOR TOOL AND MACHINE, INC., | ) | |
| | ) | |
| Counter Defendants. | ) | |
| | ) | |
| | ) | |
| MAJOR HOLDINGS, LLC, | ) | |

| MAJOR HOLDINGS, LLC, | ) |
| MAJOR TOOL AND MACHINE, INC., | ) |
| | ) |
| Cross Claimants, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| MORAN ELECTRIC SERVICE, INC., | ) |
| MORAN ELECTRIC SERVICE, INC., | ) |
| VON DUPRIN LLC, | ) |
| | ) |
| Cross Defendants. | ) |
| | ) |

## FINAL JUDGMENT PURSUANT TO FED. R. CIV. PRO. 58

The Court having this day made its Entry directing the entry of final judgment, the Court now enters **FINAL JUDGMENT**.

For the reasons detailed in the Court's Findings of Fact and Conclusions of Law, the Court now enters **FINAL JUDGMENT** in this action in favor of Plaintiff Von Duprin LLC and against Defendants Major Holdings, LLC; Major Tool and Machine, Inc.; and Moran Electric Service, Inc. Plaintiff Von Duprin LLC has shown by a preponderance of the evidence that it is entitled to an award of $510,000 plus interest from Defendants Major Holdings, LLC and Major Tool and Machine, Inc., and an award of $340,000 plus interest from Moran Electric Service, Inc under 42 U.S.C. § 9607(a).

Von Duprin's request for a declaratory judgment under § 9613(g) is granted. Thus, Von Duprin is entitled to an award of future costs in the same allocation percentage—30% from the Major Defendants, 20% from Moran—as those costs are incurred, provided they are cleanup costs for the properties upgradient or downgradient of the Von Duprin property and that they are not inconsistent with the National Contingency Plan.

Defendants Major Holdings, LLC, Major Tool and Machine, Inc., and Moran Electric Service, Inc. are compelled to pay money damages to Von Duprin as directed in the order. This action is **TERMINATED**.

**SO ORDERED.**

Date: 3/30/2020

_Tanya Walton Pratt_
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Laura A. Briggs, Clerk

BY: _Laura R. Simic_
Deputy Clerk, U. S. District Court

Distribution:

Glenn David Bowman
STOLL KEENON OGDEN, PLLC (Indianapolis)
Glenn.Bowman@skofirm.com

Alexandra Robinson French
BARNES & THORNBURG LLP
arobinson@btlaw.com

Samuel B. Gardner
ICE MILLER LLP
samuel.gardner@icemiller.com

Edward S. Griggs
BARNES & THORNBURG LLP (Indianapolis)
sean.griggs@btlaw.com

Bruce L. Kamplain
NORRIS CHOPLIN & SCHROEDER LLP
bkamplain@ncs-law.com

Angela Pease Krahulik
ICE MILLER LLP
krahulik@icemiller.com

Cynthia Elaine Lasher
NORRIS CHOPLIN & SCHROEDER LLP
clasher@ncs-law.com

Marc Andrew Menkveld
STOLL KEENON OGDEN, PLLC (Indianapolis)
Marc.Menkveld@skofirm.com

Nicholas B. Reuhs
ICE MILLER LLP
nicholas.reuhs@icemiller.com

# *** PUBLIC DOCKET ***

APPEAL,CLOSED

**U.S. District Court**
**Southern District of Indiana (Indianapolis)**
**CIVIL DOCKET FOR CASE #: 1:16-cv-01942-TWP-DML**

VON DUPRIN LLC v. MORAN ELECTRIC SERVICE,
INC. et al
Assigned to: Judge Tanya Walton Pratt
Referred to: Magistrate Judge Debra McVicker Lynch
Cause: 42:9607 Real Property Tort to Land

Date Filed: 07/22/2016
Date Terminated: 03/30/2020
Jury Demand: None
Nature of Suit: 893 Environmental
Matters
Jurisdiction: Federal Question

**Plaintiff**

**VON DUPRIN LLC**                     represented by  **Alexandra Robinson French**
                                                      BARNES & THORNBURG LLP
                                                      11 South Meridian Street
                                                      Indianapolis, IN 46204
                                                      317-231-7248
                                                      Fax: 317-231-7433
                                                      Email: arobinson@btlaw.com
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Edward S. Griggs**
                                                      BARNES & THORNBURG LLP
                                                      (Indianapolis)
                                                      11 South Meridian Street
                                                      Indianapolis, IN 46204
                                                      (317)231-7793
                                                      Fax: (317)231-7433
                                                      Email: sean.griggs@btlaw.com
                                                      *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**MORAN ELECTRIC SERVICE,**            represented by  **Bruce L. Kamplain**
**INC.**                                               NORRIS CHOPLIN & SCHROEDER
                                                      LLP
                                                      101 West Ohio Street
                                                      Ninth Floor
                                                      Indianapolis, IN 46204
                                                      (317) 269-9330

Fax: (317) 269-9338
Email: bkamplain@ncs-law.com
*ATTORNEY TO BE NOTICED*

**Cynthia Elaine Lasher**
NORRIS CHOPLIN & SCHROEDER
LLP
101 West Ohio Street
Ninth Floor
Indianapolis, IN 46204
(317) 269-9330
Email: clasher@ncs-law.com
*ATTORNEY TO BE NOTICED*

**Glenn David Bowman**
STOLL KEENON OGDEN, PLLC
(Indianapolis)
201 N. Illinois Street, Suite 1225
Indianapolis, IN 46204
(317) 464-1591
Fax: (317) 464-1592
Email: Glenn.Bowman@skofirm.com
*ATTORNEY TO BE NOTICED*

**Marc Andrew Menkveld**
STOLL KEENON OGDEN, PLLC
(Indianapolis)
201 N. Illinois Street, Suite 1225
Indianapolis, IN 46204
317-464-1591
Fax: 317-464-1592
Email: Marc.Menkveld@skofirm.com
*ATTORNEY TO BE NOTICED*

**Defendant**
**MAJOR HOLDINGS, LLC**                 represented by **Angela Pease Krahulik**
ICE MILLER LLP
One American Square
Suite 2900
Indianapolis, IN 46282
(317) 236-5991
Fax: (317) 592-5437
Email: krahulik@icemiller.com
*ATTORNEY TO BE NOTICED*

**Nicholas B. Reuhs**
ICE MILLER LLP
One American Square

Suite 2900
Indianapolis, IN 46282
317-236-2160
Email: nicholas.reuhs@icemiller.com
*ATTORNEY TO BE NOTICED*

**Samuel B. Gardner**
ICE MILLER LLP
One American Square
Suite 2900
Indianapolis, IN 46282-0002
317-236-2234
Fax: 317-592-4878
Email: samuel.gardner@icemiller.com
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **MAJOR TOOL AND MACHINE, INC.** | represented by | **Angela Pease Krahulik** (See above for address) *ATTORNEY TO BE NOTICED* |
| | | **Nicholas B. Reuhs** (See above for address) *ATTORNEY TO BE NOTICED* |
| | | **Samuel B. Gardner** (See above for address) *ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **ZIMMER PAPER PRODUCTS INCORPORATED** *< Defaulted on 7/24/2017* | represented by | **ZIMMER PAPER PRODUCTS INCORPORATED** . PRO SE |

**Cross Claimant**

| | | |
|---|---|---|
| **MAJOR HOLDINGS, LLC** | represented by | **Angela Pease Krahulik** (See above for address) *ATTORNEY TO BE NOTICED* |
| | | **Nicholas B. Reuhs** (See above for address) *ATTORNEY TO BE NOTICED* |
| | | **Samuel B. Gardner** (See above for address) *ATTORNEY TO BE NOTICED* |

V.

**Cross Defendant**

**MORAN ELECTRIC SERVICE, INC.**

represented by **Glenn David Bowman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marc Andrew Menkveld**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**MAJOR HOLDINGS, LLC**

represented by **Angela Pease Krahulik**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas B. Reuhs**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel B. Gardner**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**VON DUPRIN LLC**

represented by **Alexandra Robinson French**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Edward S. Griggs**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**MORAN ELECTRIC SERVICE, INC.**

represented by **Glenn David Bowman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marc Andrew Menkveld**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

| | | |
|---|---|---|
| **MAJOR HOLDINGS, LLC** | represented by | **Angela Pease Krahulik**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Nicholas B. Reuhs**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Samuel B. Gardner**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Counter Defendant**

| | | |
|---|---|---|
| **VON DUPRIN LLC** | represented by | **Alexandra Robinson French**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Edward S. Griggs**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Cross Claimant**

| | | |
|---|---|---|
| **MAJOR HOLDINGS, LLC** | represented by | **Angela Pease Krahulik**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Nicholas B. Reuhs**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Samuel B. Gardner**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

V.

**Cross Defendant**

| | | |
|---|---|---|
| **MORAN ELECTRIC SERVICE, INC.** | represented by | **Glenn David Bowman**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Marc Andrew Menkveld**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Counter Claimant**

| | | |
|---|---|---|
| **MAJOR HOLDINGS, LLC** | represented by | **Angela Pease Krahulik**<br>(See above for address) |

*ATTORNEY TO BE NOTICED*

**Nicholas B. Reuhs**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel B. Gardner**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**VON DUPRIN LLC**                    represented by **Alexandra Robinson French**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Edward S. Griggs**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**MORAN ELECTRIC SERVICE,**           represented by **Glenn David Bowman**
**INC.**                              (See above for address)
*ATTORNEY TO BE NOTICED*

**Marc Andrew Menkveld**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**MAJOR HOLDINGS, LLC**               represented by **Angela Pease Krahulik**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas B. Reuhs**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel B. Gardner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**VON DUPRIN LLC**                    represented by **Alexandra Robinson French**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Edward S. Griggs**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**MAJOR TOOL AND MACHINE,**        represented by **Angela Pease Krahulik**
**INC.**                                            (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Nicholas B. Reuhs**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Samuel B. Gardner**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

V.

**Cross Defendant**

**VON DUPRIN LLC**                 represented by **Alexandra Robinson French**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Edward S. Griggs**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**MAJOR TOOL AND MACHINE,**        represented by **Angela Pease Krahulik**
**INC.**                                            (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Nicholas B. Reuhs**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Samuel B. Gardner**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

| | | |
|---|---|---|
| **VON DUPRIN LLC** | represented by | **Alexandra Robinson French** (See above for address) *ATTORNEY TO BE NOTICED* |
| | | **Edward S. Griggs** (See above for address) *ATTORNEY TO BE NOTICED* |

**Counter Claimant**

| | | |
|---|---|---|
| **MORAN ELECTRIC SERVICE, INC.** | represented by | **Glenn David Bowman** (See above for address) *ATTORNEY TO BE NOTICED* |
| | | **Marc Andrew Menkveld** (See above for address) *ATTORNEY TO BE NOTICED* |

V.

**Counter Defendant**

| | | |
|---|---|---|
| **MAJOR TOOL AND MACHINE, INC.** | represented by | **Angela Pease Krahulik** (See above for address) *ATTORNEY TO BE NOTICED* |
| | | **Nicholas B. Reuhs** (See above for address) *ATTORNEY TO BE NOTICED* |
| | | **Samuel B. Gardner** (See above for address) *ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 07/22/2016 | 1 | COMPLAINT *FOR DAMAGES AND INJUNCTIVE RELIEF* against All Defendants, filed by VON DUPRIN LLC. (Filing fee $400, receipt number 0756-3981495) (Attachments: # 1 Exhibit A-SITE PROPERTIES MAP, # 2 Civil Cover Sheet)(Griggs, Edward) (Entered: 07/22/2016) |
| 07/22/2016 | 2 | NOTICE of Appearance by Edward S. Griggs on behalf of Plaintiff VON DUPRIN LLC. (Griggs, Edward) (Entered: 07/22/2016) |
| 07/22/2016 | 3 | Corporate Disclosure Statement by VON DUPRIN LLC. (Griggs, Edward) (Entered: 07/22/2016) |
| 07/22/2016 | 4 | REQUEST FOR WAIVER of Service sent to Registered Agent for Moran Electric Service, Inc. on 7/22/2016, filed by Plaintiff VON DUPRIN LLC. (Attachments: # 1 Exhibit Waiver of the Service of Summons)(Griggs, |

| | | Edward) (Entered: 07/22/2016) |
|---|---|---|
| 07/22/2016 | 5 | REQUEST FOR WAIVER of Service sent to Registered Agent for Major Holdings, LLC on 7/22/2016, filed by Plaintiff VON DUPRIN LLC. (Attachments: # 1 Exhibit Waiver of the Service of Summons)(Griggs, Edward) (Entered: 07/22/2016) |
| 07/22/2016 | 6 | NOTICE of Appearance by Alexandra Robinson French on behalf of Plaintiff VON DUPRIN LLC. (French, Alexandra) (Entered: 07/22/2016) |
| 07/25/2016 | 7 | MAGISTRATE JUDGE's NOTICE of Availability to Exercise Jurisdiction issued. (AAM) (Entered: 07/25/2016) |
| 08/08/2016 | 8 | NOTICE of Appearance by Glenn David Bowman on behalf of Defendant MORAN ELECTRIC SERVICE, INC.. (Bowman, Glenn) (Entered: 08/08/2016) |
| 08/08/2016 | 9 | WAIVER OF SERVICE Returned Executed, filed by MORAN ELECTRIC SERVICE, INC.. MORAN ELECTRIC SERVICE, INC. waiver sent on 7/22/2016. (Bowman, Glenn) (Entered: 08/08/2016) |
| 08/08/2016 | 10 | Corporate Disclosure Statement by MORAN ELECTRIC SERVICE, INC.. (Bowman, Glenn) (Entered: 08/08/2016) |
| 08/08/2016 | 11 | NOTICE of Appearance by Marc Andrew Menkveld on behalf of Defendant MORAN ELECTRIC SERVICE, INC.. (Menkveld, Marc) (Entered: 08/08/2016) |
| 08/15/2016 | 12 | WAIVER OF SERVICE Returned Executed, filed by VON DUPRIN LLC. MAJOR HOLDINGS, LLC waiver sent on 7/22/2016. (Attachments: # 1 Attachment 1 - Executed Waiver of the Service of a Summons)(French, Alexandra) (Entered: 08/15/2016) |
| 08/16/2016 | 13 | NOTICE of Appearance by Seth M. Thomas on behalf of Defendant MAJOR HOLDINGS, LLC. (Thomas, Seth) (Entered: 08/16/2016) |
| 08/16/2016 | 14 | NOTICE of Appearance by Angela Pease Krahulik on behalf of Defendant MAJOR HOLDINGS, LLC. (Krahulik, Angela) (Entered: 08/16/2016) |
| 08/16/2016 | 15 | NOTICE of Appearance by Samuel B. Gardner on behalf of Defendant MAJOR HOLDINGS, LLC. (Gardner, Samuel) (Entered: 08/16/2016) |
| 08/22/2016 | 16 | SCHEDULING ORDER: Initial Pretrial Conference set for 10/17/2016 11:00 AM in room #277, United States Courthouse, 46 E. Ohio Street, Indianapolis, Indiana before Magistrate Judge Debra McVicker Lynch. Read this entire order carefully; it sets out the court's expectations for the conference. Signed by Magistrate Judge Debra McVicker Lynch on 8/22/2016.(SWM) (Entered: 08/23/2016) |
| 09/20/2016 | 17 | MOTION to Dismiss *Motion to Partially Dismiss Complaint*, filed by Defendant MORAN ELECTRIC SERVICE, INC.. (Attachments: # 1 Text of Proposed Order)(Menkveld, Marc) (Entered: 09/20/2016) |
| | | |

| 09/20/2016 | [18](#) | BRIEF/MEMORANDUM in Support re [17](#) MOTION to Dismiss *Motion to Partially Dismiss Complaint* , filed by Defendant MORAN ELECTRIC SERVICE, INC.. (Menkveld, Marc) (Entered: 09/20/2016) |
|---|---|---|
| 09/20/2016 | [19](#) | *Defendant Major Holding LLC's* ANSWER to [1](#) Complaint *for Damages and Injunctive Relief*, First CROSSCLAIM against MORAN ELECTRIC SERVICE, INC., First COUNTERCLAIM against VON DUPRIN LLC, filed by MAJOR HOLDINGS, LLC.(Thomas, Seth) (Entered: 09/20/2016) |
| 09/20/2016 | [20](#) | Corporate Disclosure Statement by MAJOR HOLDINGS, LLC. (Thomas, Seth) (Entered: 09/20/2016) |
| 09/30/2016 | [21](#) | Joint MOTION for Protective Order , filed by Cross Claimant MAJOR HOLDINGS, LLC, Cross Defendant MORAN ELECTRIC SERVICE, INC., Plaintiff VON DUPRIN LLC, Counter Defendant VON DUPRIN LLC. (Attachments: # [1](#) Text of Proposed Order Uniform Stipulated Protective Order, followed by Exhibit A)(French, Alexandra) (Entered: 09/30/2016) |
| 10/04/2016 | [22](#) | UNIFORM STIPULATED PROTECTIVE ORDER [21](#) APPROVED. Signed by Magistrate Judge Debra McVicker Lynch on 10/4/2016.(SWM) (Entered: 10/04/2016) |
| 10/07/2016 | [23](#) | *Joint Proposed* CASE MANAGEMENT PLAN TENDERED, filed by Plaintiff VON DUPRIN LLC, Counter Defendant VON DUPRIN LLC *on behalf of All Parties*. (Attachments: # [1](#) Supplement ESI Supplement to Case Management Plan)(French, Alexandra) (Entered: 10/07/2016) |
| 10/07/2016 | [24](#) | RESPONSE in Opposition re [17](#) MOTION to Dismiss *Motion to Partially Dismiss Complaint* , filed by Plaintiff VON DUPRIN LLC. (Attachments: # [1](#) Text of Proposed Order)(French, Alexandra) (Entered: 10/07/2016) |
| 10/07/2016 | [25](#) | First MOTION for Extension of Time to in which to [19](#) Answer to ComplaintCrossclaimCounterclaim , filed by Cross Defendant MORAN ELECTRIC SERVICE, INC.. (Attachments: # [1](#) Text of Proposed Order Order to Partially Dismiss Complaint)(Menkveld, Marc) (Entered: 10/07/2016) |
| 10/12/2016 | [26](#) | REPLY in Support of Motion re [17](#) MOTION to Dismiss *Motion to Partially Dismiss Complaint* , filed by Cross Defendant MORAN ELECTRIC SERVICE, INC., Defendant MORAN ELECTRIC SERVICE, INC.. (Menkveld, Marc) (Entered: 10/12/2016) |
| 10/13/2016 | [27](#) | *Von Duprin LLC's* ANSWER to [19](#) Answer to ComplaintCrossclaimCounterclaim *of Major Holdings, LLC*, filed by VON DUPRIN LLC.(French, Alexandra) (Entered: 10/13/2016) |
| 10/27/2016 | [28](#) | ENTRY and ORDER from Initial Pretrial Conference held before Magistrate Judge Debra McVicker Lynch on 10/17/2016. The case management plan submitted in this case is approved as modified to include (1) Sec. III E. The parties shall submit (not file) courtesy copies of their respective demand and response at the time of service via email to judgelynchchambers@insd.uscourts.gov. There is no need to follow the email |

| | | |
|---|---|---|
| | | with a hard copy; and (2) the modifications set forth on the approval page (last page) of the document. Telephone Status Conference set for 4/3/2017 at 9:00 AM (Eastern) before Magistrate Judge Debra McVicker Lynch. (See Order.) Signed by Magistrate Judge Debra McVicker Lynch. (KGK) Modified on 10/28/2016 (KGK). (Entered: 10/28/2016) |
| 10/27/2016 | 29 | ORDER: CASE MANAGEMENT PLAN APPROVED AS AMENDED. Dispositive Motions due by 7/17/2017. Discovery due by 6/21/2017. Signed by Magistrate Judge Debra McVicker Lynch on 10/27/2016.(SWM) (Entered: 10/28/2016) |
| 11/02/2016 | 30 | ORDER denying Moran's 25 Motion for Extension of Time to respond to cross claim. Moran must file its response to Major Holdings's cross claim by November 22, 2016. Moran must also file its answer to those portions of Von Duprin's complaint not covered by its motion to dismiss by November 22, 2016. See Order for additional information. Signed by Magistrate Judge Debra McVicker Lynch on 11/2/2016. (SWM) (Entered: 11/03/2016) |
| 11/22/2016 | 31 | *Moran Electric Service, Inc.'s* ANSWER to 1 Complaint, 19 Answer to ComplaintCrossclaimCounterclaim , ANSWER to 1 Complaint, 19 Answer to ComplaintCrossclaimCounterclaim , COUNTERCLAIM against MAJOR HOLDINGS, LLC, VON DUPRIN LLC, filed by MORAN ELECTRIC SERVICE, INC..(Bowman, Glenn) (Entered: 11/22/2016) |
| 11/22/2016 | 32 | NOTICE of Service of Initial Disclosures , filed by Defendant MORAN ELECTRIC SERVICE, INC., Cross Defendant MORAN ELECTRIC SERVICE, INC., Counter Claimant MORAN ELECTRIC SERVICE, INC.. (Bowman, Glenn) (Entered: 11/22/2016) |
| 11/22/2016 | 33 | NOTICE of Service of Initial Disclosures , filed by Counter Claimant MAJOR HOLDINGS, LLC, Defendant MAJOR HOLDINGS, LLC, Cross Claimant MAJOR HOLDINGS, LLC. (Krahulik, Angela) (Entered: 11/22/2016) |
| 11/22/2016 | 34 | **PLEASE DISREGARD, INCORRECT FILING** NOTICE of Filing *of Initial Disclosures* by VON DUPRIN LLC (French, Alexandra) Modified on 11/22/2016 (JLS). (Entered: 11/22/2016) |
| 11/22/2016 | 35 | NOTICE of Service of Initial Disclosures *Pursuant to Fed. R. Civ. P. 26(a)(1)*, filed by Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, Plaintiff VON DUPRIN LLC. (French, Alexandra) (Entered: 11/22/2016) |
| 12/13/2016 | 36 | *Major Holdings, LLC's* ANSWER to 31 Answer to ComplaintAnswer to CrossclaimCounterclaim , filed by MAJOR HOLDINGS, LLC.(Krahulik, Angela) (Entered: 12/13/2016) |
| 12/13/2016 | 37 | ANSWER to 31 Answer to ComplaintAnswer to CrossclaimCounterclaim , filed by VON DUPRIN LLC.(French, Alexandra) (Entered: 12/13/2016) |
| 12/22/2016 | 38 | Exhibit List *Preliminary*, filed by Plaintiff VON DUPRIN LLC, Witness List *Preliminary*, filed by Plaintiff VON DUPRIN LLC. (French, Alexandra) (Entered: 12/22/2016) |
| | | |

| 12/22/2016 | 39 | MOTION to Amend/Correct 1 Complaint , filed by Plaintiff VON DUPRIN LLC. (Attachments: # 1 Amended Complaint)(French, Alexandra) (Entered: 12/22/2016) |
|---|---|---|
| 12/27/2016 | 40 | Submission of Proposed Order , re 39 MOTION to Amend/Correct 1 Complaint , filed by Plaintiff VON DUPRIN LLC. (French, Alexandra) (Entered: 12/27/2016) |
| 01/04/2017 | 41 | ORDER granting Plaintiff's 39 Motion to Amend Complaint to Add Defendants. Signed by Magistrate Judge Debra McVicker Lynch on 1/4/2017. (SWM) (Entered: 01/05/2017) |
| 01/04/2017 | 42 | AMENDED COMPLAINT against All Defendants, filed by VON DUPRIN LLC. (Attachments: # 1 Exhibit A)(SWM) (Entered: 01/05/2017) |
| 01/10/2017 | 43 | MOTION to Withdraw Attorney Appearance *[Seth M. Thomas]*, filed by Defendant MAJOR HOLDINGS, LLC. (Attachments: # 1 Text of Proposed Order Proposed Order)(Thomas, Seth) (Entered: 01/10/2017) |
| 01/10/2017 | 44 | NOTICE of Lawsuit & Request for Waiver of Service for Summons *to Major Tool and Machine and to Zimmer Paper Products Incorporated* Supplied by VON DUPRIN LLC. (Attachments: # 1 Exhibit Request for Waiver to Major Tool, # 2 Exhibit Request for Waiver to Zimmer Paper) (French, Alexandra) (Entered: 01/10/2017) |
| 01/12/2017 | 45 | ORDER granting 43 Motion to Withdraw Attorney Appearance. Attorney Seth M. Thomas withdrawn. Signed by Judge Tanya Walton Pratt on 1/12/2017. (JLS) (Entered: 01/12/2017) |
| 01/18/2017 | 46 | ANSWER to 42 Amended Complaint *For Damages and Injunctive Relief*, CROSSCLAIM against MORAN ELECTRIC SERVICE, INC., COUNTERCLAIM against VON DUPRIN LLC, filed by MAJOR HOLDINGS, LLC.(Krahulik, Angela) (Entered: 01/18/2017) |
| 01/19/2017 | 47 | NOTICE of Appearance by Nicholas B. Reuhs on behalf of Cross Claimants MAJOR HOLDINGS, LLC, MAJOR HOLDINGS, LLC, Counter Claimants MAJOR HOLDINGS, LLC, MAJOR HOLDINGS, LLC, Defendant MAJOR HOLDINGS, LLC, Counter Defendant MAJOR HOLDINGS, LLC. (Reuhs, Nicholas) (Entered: 01/19/2017) |
| 01/19/2017 | 48 | WAIVER OF SERVICE Returned Executed, filed by VON DUPRIN LLC. MAJOR TOOL AND MACHINE, INC. waiver sent on 12/22/2016. (Attachments: # 1 Exhibit Waiver of Service of Summons)(French, Alexandra) (Entered: 01/19/2017) |
| 01/23/2017 | 49 | Witness List *Preliminary*, filed by Counter Claimants MAJOR HOLDINGS, LLC, MAJOR HOLDINGS, LLC, Cross Claimant MAJOR HOLDINGS, LLC, Defendant MAJOR HOLDINGS, LLC. (Krahulik, Angela) (Entered: 01/23/2017) |
| 01/23/2017 | 50 | Exhibit List *Preliminary*, filed by Counter Claimants MAJOR HOLDINGS, LLC, MAJOR HOLDINGS, LLC, Cross Claimant MAJOR HOLDINGS, |

| | | LLC, Defendant MAJOR HOLDINGS, LLC. (Krahulik, Angela) (Entered: 01/23/2017) |
|---|---|---|
| 01/23/2017 | [51](#) | Exhibit List *Preliminary*, filed by Defendant MORAN ELECTRIC SERVICE, INC., Cross Defendants MORAN ELECTRIC SERVICE, INC., MORAN ELECTRIC SERVICE, INC., Counter Claimant MORAN ELECTRIC SERVICE, INC., Witness List *Preliminary*, filed by Defendant MORAN ELECTRIC SERVICE, INC., Cross Defendants MORAN ELECTRIC SERVICE, INC., MORAN ELECTRIC SERVICE, INC., Counter Claimant MORAN ELECTRIC SERVICE, INC.. (Menkveld, Marc) (Entered: 01/23/2017) |
| 01/24/2017 | [52](#) | *Moran's* ANSWER to [42](#) Amended Complaint *of Von Duprin*, COUNTERCLAIM against MAJOR HOLDINGS, LLC, VON DUPRIN LLC, filed by MORAN ELECTRIC SERVICE, INC..(Menkveld, Marc) (Entered: 01/24/2017) |
| 01/24/2017 | [53](#) | MOTION for Leave to File *to Assert Cross-Claims Against Newly Added Defendants*, filed by Defendant MORAN ELECTRIC SERVICE, INC.. (Attachments: # [1](#) Exhibit Moran's Cross-Claims Against Major Tool and Machine, Inc. and Zimmer Paper Products Incorporated, # [2](#) Text of Proposed Order Order on Moran's Motion to Assert Cross-Claims Against Newly Added Defendants)(Menkveld, Marc) (Entered: 01/24/2017) |
| 02/06/2017 | [54](#) | MOTION for Leave to File *Serve via IN SOS*, filed by Plaintiff VON DUPRIN LLC. (Attachments: # [1](#) Exhibit Zimmer Correspondence, # [2](#) Exhibit Return Receipt, # [3](#) Exhibit Returned Mail, # [4](#) Exhibit SOS Entity Details, # [5](#) Exhibit Zimmer Correspondence, # [6](#) Exhibit Tillwick Declaration, # [7](#) Exhibit Denisco Declaration, # [8](#) Text of Proposed Order) (French, Alexandra) (Entered: 02/06/2017) |
| 02/07/2017 | [55](#) | *Von Duprin* ANSWER to [46](#) Answer to Amended ComplaintCrossclaimCounterclaim *Major Holdings*, filed by VON DUPRIN LLC.(French, Alexandra) (Entered: 02/07/2017) |
| 02/07/2017 | [56](#) | ANSWER to [52](#) Answer to Amended ComplaintCounterclaim , filed by MAJOR HOLDINGS, LLC.(Gardner, Samuel) (Entered: 02/07/2017) |
| 02/10/2017 | [57](#) | NOTICE of Appearance by Angela Pease Krahulik on behalf of Defendant MAJOR TOOL AND MACHINE, INC.. (Krahulik, Angela) (Entered: 02/10/2017) |
| 02/10/2017 | [58](#) | NOTICE of Appearance by Nicholas B. Reuhs on behalf of Defendant MAJOR TOOL AND MACHINE, INC.. (Reuhs, Nicholas) (Entered: 02/10/2017) |
| 02/10/2017 | [59](#) | NOTICE of Appearance by Samuel B. Gardner on behalf of Defendant MAJOR TOOL AND MACHINE, INC.. (Gardner, Samuel) (Entered: 02/10/2017) |
| 02/10/2017 | [60](#) | NOTICE of Filing *Initial Extension to Respond to Written Discovery* by MAJOR HOLDINGS, LLC (Gardner, Samuel) (Entered: 02/10/2017) |

| 02/10/2017 | 61 | Corporate Disclosure Statement by MAJOR TOOL AND MACHINE, INC.. (Gardner, Samuel) (Entered: 02/10/2017) |
|---|---|---|
| 02/10/2017 | 62 | NOTICE of Parties' First Extension of Time, filed by Defendant MAJOR TOOL AND MACHINE, INC.. (Gardner, Samuel) (Entered: 02/10/2017) |
| 02/14/2017 | 63 | NOTICE of Parties' First Extension of Time, filed by Defendant MORAN ELECTRIC SERVICE, INC., Counter Claimants MORAN ELECTRIC SERVICE, INC., MORAN ELECTRIC SERVICE, INC., Cross Defendants MORAN ELECTRIC SERVICE, INC., MORAN ELECTRIC SERVICE, INC.. (Menkveld, Marc) (Entered: 02/14/2017) |
| 02/14/2017 | 64 | ANSWER *to Moran Electric, Inc.'s Amended Counterclaim*, filed by Plaintiff VON DUPRIN LLC, Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC. (French, Alexandra) (Entered: 02/14/2017) |
| 02/21/2017 | 65 | ORDER denying w/o prejudice Plaintiff's 54 Motion to Serve Defendant Zimmer through Service on Secretary of State. See Order. Signed by Magistrate Judge Debra McVicker Lynch on 2/21/2017. (SWM) (Entered: 02/21/2017) |
| 02/23/2017 | 66 | SCHEDULING ORDER- Final Pretrial Conference set for 3/7/2018 at 2:00 PM in room #330, United States Courthouse, 46 E. Ohio Street, Indianapolis, Indiana before Judge Tanya Walton Pratt. Jury Trial set for 4/2/2018 at 9:00 AM in room #344, United States Courthouse, 46 E. Ohio Street, Indianapolis, Indiana before Judge Tanya Walton Pratt. Signed by Judge Tanya Walton Pratt on 2/23/2017.(CBU) (Entered: 02/23/2017) |
| 02/23/2017 | 67 | COURTROOM PROCEDURES AND TRIAL PRACTICE before Judge Tanya Walton Pratt (CBU) (Entered: 02/23/2017) |
| 03/15/2017 | 68 | *Defendant Major Tool and Machine, Inc's* ANSWER to 42 Amended Complaint *For Damages and Injunctive Relief*, CROSSCLAIM against VON DUPRIN LLC, COUNTERCLAIM against VON DUPRIN LLC, filed by MAJOR TOOL AND MACHINE, INC..(Krahulik, Angela) (Entered: 03/15/2017) |
| 03/22/2017 | 69 | NOTICE of Service of Initial Disclosures , filed by Defendant MAJOR TOOL AND MACHINE, INC., Counter Claimant MAJOR TOOL AND MACHINE, INC., Cross Claimant MAJOR TOOL AND MACHINE, INC.. (Krahulik, Angela) (Entered: 03/22/2017) |
| 03/30/2017 | 70 | *Moran's* ANSWER to Complaint *Major Tool's Cross-Claim for Contribution (Dkt. 68)*, COUNTERCLAIM *for Contribution* against MAJOR TOOL AND MACHINE, INC., filed by MORAN ELECTRIC SERVICE, INC..(Menkveld, Marc) (Entered: 03/30/2017) |
| 04/04/2017 | 71 | Second MOTION for Service by Publication *and Service on Secretary of State*, filed by Plaintiff VON DUPRIN LLC. (Attachments: # 1 Exhibit 1 - Revocation of Certificate of Authority, # 2 Exhibit 2 - Secretary of State Correspondence Regarding Digitization of Records, # 3 Exhibit 3 - IDEM |

| | | |
|---|---|---|
| | | Notice Letter re: Former Zimmer Property, # 4 Exhibit 4 - E-mail with Alan Patzik, # 5 Exhibit 5 - Illinois Secretary of State Business Record, # 6 Exhibit 6 - Letter Confirming Closure of Assignment for Benefit of Creditors, # 7 Exhibit 7 - Activate Healthcare Webpage with 1450 E 20th Street Address, # 8 Text of Proposed Order)(French, Alexandra) (Entered: 04/04/2017) |
| 04/05/2017 | 72 | ENTRY and ORDER from Status Conference held before Magistrate Judge Debra McVicker Lynch on 4/3/2017. On oral motion at the conference, the motion at Docket 53 is WITHDRAWN. Telephone Status Conference set for 6/1/2017 at 9:30 AM (Eastern) before Magistrate Judge Debra McVicker Lynch. (See Order.) Signed by Magistrate Judge Debra McVicker Lynch. (KGK) Modified on 4/5/2017 (KGK). (Entered: 04/05/2017) |
| 04/10/2017 | 73 | ORDER granting Plaintiff's 71 Motion regarding Service on Defendant Zimmer Paper Products Incorporated. Von Duprin is granted leave to serve Zimmer Paper Products Incorporated and its presumed survivor Zimmer Paper Products of Delaware, LLC through service on the Indiana Secretary of State and by publication, as prescribed by Ind. R. Trial Proc. 4.10 (service on Secretary of State) and 4.13 (service by publication). The court also extends the time for completion of service under Fed. R. Civ. P. 4(m) for 60 days, until June 6, 2017. Signed by Magistrate Judge Debra McVicker Lynch on 4/10/2017. (MAC) (Entered: 04/11/2017) |
| 04/20/2017 | 74 | *Major Tool and Machine, Inc.'s* ANSWER to 70 Answer to ComplaintCounterclaim , filed by MAJOR TOOL AND MACHINE, INC.. (Krahulik, Angela) (Entered: 04/20/2017) |
| 05/02/2017 | 75 | Summons Issued as to ZIMMER PAPER PRODUCTS INCORPORATED. (JLS) (Entered: 05/02/2017) |
| 05/04/2017 | 76 | Unopposed MOTION for Extension of Time to June 16, 2017 *to Respond to Moran Electric Service, Inc.'s Discovery Requests*, filed by Plaintiff VON DUPRIN LLC, Cross Defendant VON DUPRIN LLC, Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC. (Attachments: # 1 Text of Proposed Order)(French, Alexandra) (Entered: 05/04/2017) |
| 05/05/2017 | 77 | ORDER granting Plaintiff's 76 Motion for Extension of Time to Respond to Moran Electric Service, Inc.'s Discovery Requests. The Plaintiff shall serve its responses to the five (5) interrogatories agreed to by the parties on or before May 22, 2017 and serve all other discovery responses by June 16, 2017. Signed by Magistrate Judge Debra McVicker Lynch on 5/5/2017. (SWM) (Entered: 05/05/2017) |
| 05/08/2017 | 78 | ORDER ON MOTION TO DISMISS - For the reasons stated above, the Court DENIES Moran's Motion to Dismiss. (Filing No. 17 ). Signed by Judge Tanya Walton Pratt on 5/8/2017. (JLS) (Entered: 05/08/2017) |
| 06/05/2017 | 79 | SERVICE by Publication filed by VON DUPRIN LLC. Last publication date May 19, 2017. (Attachments: # 1 Exhibit Summons for Service by SOS, # 2 Exhibit Publishers Affidavit)(French, Alexandra) (Entered: 06/05/2017) |

| 06/08/2017 | 80 | ENTRY and ORDER from Status Conference held before Magistrate Judge Debra McVicker Lynch on 6/1/2017. Counsel shall confer and request by motion any adjustment of case management deadlines they seek at this time in light of IDEM's determination and related matters. Signed by Magistrate Judge Debra McVicker Lynch. (KGK) (Entered: 06/08/2017) |
|---|---|---|
| 06/09/2017 | 81 | Joint MOTION *to Enter Revised Case Management Plan*, filed by Plaintiff VON DUPRIN LLC, Cross Defendant VON DUPRIN LLC, Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC. (Attachments: # 1 Exhibit 1 - Proposed Revised Case Management Order)(French, Alexandra) (Entered: 06/09/2017) |
| 06/12/2017 | 82 | Submission of Proposed Order , re 81 Joint MOTION *to Enter Revised Case Management Plan*, filed by Plaintiff VON DUPRIN LLC, Cross Defendant VON DUPRIN LLC, Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC. (French, Alexandra) (Entered: 06/12/2017) |
| 06/14/2017 | 83 | ORDER granting Parties' 81 Joint Motion for Entry of Revised CMP. The revised case management plan will be entered by separate order. Signed by Magistrate Judge Debra McVicker Lynch on 6/14/2017. (SWM) (Entered: 06/14/2017) |
| 06/14/2017 | 84 | ORDER: CASE MANAGEMENT PLAN APPROVED AS SUBMITTED (Revised CMP). Dispositive Motions due by 3/1/2018. Discovery due by 2/1/2018. Signed by Magistrate Judge Debra McVicker Lynch on 6/14/2017. (SWM) (Entered: 06/14/2017) |
| 06/21/2017 | 85 | APPLICATION *for Entry of Default*, filed by Plaintiff VON DUPRIN LLC. (Attachments: # 1 Exhibit Declaration iso Default Entry, # 2 Text of Proposed Order)(French, Alexandra) Modified on 6/22/2017 to change to a motion event (MAT). (Entered: 06/21/2017) |
| 06/23/2017 | 86 | SCHEDULING ORDER: Having approved the revised Case Management Plan as submitted, the final pretrial set March 7, 2018 and the jury trial set April 2, 2018 are VACATED. This matter is set for final pretrial conference on September 19, 2018 at 10:00 a.m. in Room 330 and the jury trial is set to commence on October 15, 2018 at 10:00 a.m. in Courtroom 344, Birch Bayh Federal Building and United States Courthouse, 46 East Ohio Street, Indianapolis, Indiana. The final pretrial conference is for attorneys only. At the final pretrial conference, Counsel shall be prepared to discuss the status of the action, including all matters requiring completion preparatory to trial. See Order for additional information. Signed by Judge Tanya Walton Pratt on 6/23/2017.(SWM) (Entered: 06/23/2017) |
| 07/20/2017 | 87 | AFFIDAVIT of Service for Summons served on ZIMMER PAPER PRODUCTS INCORPORATED. Affidavit Result of Mailing: Return to Sender. (Attachments: # 1 Exhibits, # 2 Envelope)(MAT) (Entered: 07/20/2017) |
| | | |

| 07/21/2017 | 88 | MOTION to Withdraw *Demand for Jury Trial*, filed by Defendant MAJOR HOLDINGS, LLC. (Attachments: # 1 Text of Proposed Order Granting Motion to Withdraw Jury Demand)(Krahulik, Angela) (Entered: 07/21/2017) |
|---|---|---|
| 07/24/2017 | 89 | ORDER granting 88 Motion to Withdraw Jury Demand - Major Holdings, LLC's demand for a jury trial as to all claims so triable is hereby withdrawn. The jury trial scheduled October 15, 2018 is now converted to a bench trial. Bench Trial set for 10/15/2018 at 10:00 AM (Eastern Time) in room #344, United States Courthouse, 46 E. Ohio Street, Indianapolis, Indiana before Judge Tanya Walton Pratt. Signed by Judge Tanya Walton Pratt on 7/24/2017. (MEJ) Modified to correct typo on 7/24/2017 (MEJ). (Entered: 07/24/2017) |
| 07/24/2017 | 90 | Clerk's ENTRY OF DEFAULT as to ZIMMER PAPER PRODUCTS INCORPORATED. Signed by Clerk, Laura A. Briggs. (MEJ) (Entered: 07/24/2017) |
| 07/31/2017 | 91 | Second MOTION *for Entry of Second Revised Case Management Plan*, filed by Plaintiff VON DUPRIN LLC. (Attachments: # 1 Exhibit Case Management Plan, # 2 Text of Proposed Order)(French, Alexandra) (Entered: 07/31/2017) |
| 08/02/2017 | 92 | NOTICE of Change of Attorney Information. Consistent with Local Rule 5-3, Glenn David Bowman hereby notifies the Clerk of the court of changed contact information. (Bowman, Glenn) (Entered: 08/02/2017) |
| 08/02/2017 | 93 | NOTICE of Change of Attorney Information. Consistent with Local Rule 5-3, Marc Andrew Menkveld hereby notifies the Clerk of the court of changed contact information. (Menkveld, Marc) (Entered: 08/02/2017) |
| 08/23/2017 | 94 | Summons Returned Unexecuted as to ZIMMER PAPER PRODUCTS INCORPORATED. (Attachments: # 1 Attachment 1, # 2 Attachment 2, # 3 Attachment 3, # 4 Envelope) (MEJ) (Entered: 08/23/2017) |
| 09/12/2017 | 95 | MARGINAL ENTRY entered re Parties' 91 Joint Motion for Entry of Second Revised CMP: This proposed CMP is not compatible with the current trial date. Before the court can consider this schedule, the parties must file a motion to continue the trial date. Signed by Magistrate Judge Debra McVicker Lynch on 9/12/2017. (SWM) (Entered: 09/13/2017) |
| 09/13/2017 | 96 | MOTION for Continuance of Jury Trial , filed by Plaintiff VON DUPRIN LLC. (Attachments: # 1 Text of Proposed Order)(French, Alexandra) Modified on 9/14/2017 to clairfy (MEJ). (Entered: 09/13/2017) |
| 09/14/2017 | 97 | SCHEDULING ORDER - 96 Motion for Continuance is granted. The final pretrial conference set for September 19, 2018 and bench trial set for October 15, 2018 are VACATED. Bench Trial reset for 2/11/2019 at 9:00 AM (Eastern Time) in room #344, United States Courthouse, 46 E. Ohio Street, Indianapolis, Indiana before Judge Tanya Walton Pratt. Final Pretrial Conference reset for 1/16/2019 at 11:00 AM (Eastern Time) in room #330, United States Courthouse, 46 E. Ohio Street, Indianapolis, Indiana before Judge Tanya Walton Pratt. The final pretrial conference is for attorneys only. At the final pretrial conference, Counsel shall be prepared to discuss the status |

| | | |
|---|---|---|
| | | of the action, including all matters requiring completion preparatory to trial. Signed by Judge Tanya Walton Pratt on 9/14/2017. (MEJ) Modified on 10/16/2017 to fix clerical error (MEJ). (Entered: 09/14/2017) |
| 09/18/2017 | 98 | ORDER: SECOND REVISED CASE MANAGEMENT PLAN APPROVED AS AMENDED. Discovery due by 6/1/2018. Dispositive Motions due by 6/29/2018. Signed by Magistrate Judge Debra McVicker Lynch on 9/18/2017. (CBU) (Entered: 09/19/2017) |
| 09/26/2017 | 99 | ORDER Setting Settlement Conference and Related Deadlines: Settlement Conference set for 2/9/2018 09:30 AM (Eastern Time) in room #277, United States Courthouse, 46 E. Ohio Street, Indianapolis, Indiana before Magistrate Judge Debra McVicker Lynch. On or before three (3) business days before the conference, the parties shall submit (not file) a confidential settlement statement. See Order for additional information. Signed by Magistrate Judge Debra McVicker Lynch on 9/26/2017.(SWM) (Entered: 09/26/2017) |
| 09/27/2017 | 100 | ORDER Resetting Settlement Conference: The court, sua sponte, VACATES the settlement conference set for February 9, 2018 and RESETS the settlement conference for February 15, 2018, at 1:30 p.m. (Eastern). All other provisions of the court's Order Setting Settlement Conference and Related Deadlines (Dkt. 99) remain in full force and effect. Signed by Magistrate Judge Debra McVicker Lynch on 9/27/2017.(SWM) (Entered: 09/27/2017) |
| 12/11/2017 | 101 | ANSWER *to Major Tool and Machine, Inc.'s Counterclaim*, filed by Plaintiff VON DUPRIN LLC, Cross Defendant VON DUPRIN LLC, Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC. (French, Alexandra) (Entered: 12/11/2017) |
| 01/04/2018 | 102 | Corporate Disclosure Statement by VON DUPRIN LLC identifying Corporate Parent ALLEGION PLC for VON DUPRIN LLC. (French, Alexandra) Modified on 1/5/2018 to remove duplicate wording (MEJ). (Entered: 01/04/2018) |
| 01/10/2018 | 103 | STIPULATION *of Extension of Expert Disclosure Deadlines*, re 98 Order: Case ManagementSet Deadlines, filed by Cross Claimant MAJOR HOLDINGS, LLC, Counter Defendant MAJOR TOOL AND MACHINE, INC., Cross Defendant MORAN ELECTRIC SERVICE, INC., Plaintiff VON DUPRIN LLC. (Attachments: # 1 Text of Proposed Order)(French, Alexandra) Modified on 1/11/2018 (TRG). (Entered: 01/10/2018) |
| 01/12/2018 | 104 | ORDER granting Parties' 103 Joint Motion (Stipulation) of Extension of Expert Disclosure Deadlines. Plaintiff's expert witnesses shall be disclosed pursuant to Fed. R. Civ. 26(a)(2)on or before March 23, 2018. Defendants' expert witnesses shall be disclosed pursuant to Fed. R. Civ. P. 26(a)(2) on or before May 22, 2018. Signed by Magistrate Judge Debra McVicker Lynch on 1/12/2018. (SWM) (Entered: 01/12/2018) |
| 02/06/2018 | 105 | *** WITHDRAWN PER ORDER DATED 2/9/2018 *** Unopposed MOTION *for Leave for Insurer to Appear at Settlement Conference by* |

| | | |
|---|---|---|
| | | *Telephone*, filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Attachments: # 1 Text of Proposed Order Order) (Gardner, Samuel) Modified on 2/12/2018 (SWM). (Entered: 02/06/2018) |
| 02/08/2018 | 106 | MOTION to Withdraw 105 Unopposed MOTION *for Leave for Insurer to Appear at Settlement Conference by Telephone* , filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Attachments: # 1 Text of Proposed Order Order)(Gardner, Samuel) (Entered: 02/08/2018) |
| 02/09/2018 | 107 | ORDER withdrawing Defendants Major Holdings, LLC and Major Tool and Machine, Inc.'s 105 Motion for Leave for Insurer to Appear at Settlement Conference by Telephone; granting Defendants' 106 Motion to Withdraw Dkt. 105. Signed by Magistrate Judge Debra McVicker Lynch on 2/9/2018. (SWM) (Entered: 02/12/2018) |
| 02/20/2018 | 108 | ENTRY from Settlement Conference held before Magistrate Judge Debra McVicker Lynch on 2/15/2018. The conference was held and concluded without a settlement. Signed by Magistrate Judge Debra McVicker Lynch. (KGK) (Entered: 02/20/2018) |
| 03/21/2018 | 109 | MOTION to Strike 46 Answer to Amended ComplaintCrossclaimCounterclaim, 68 Answer to Amended ComplaintCrossclaimCounterclaim, 52 Answer to Amended ComplaintCounterclaim , filed by Plaintiff VON DUPRIN LLC. (Attachments: # 1 Text of Proposed Order)(French, Alexandra) (Entered: 03/21/2018) |
| 03/21/2018 | 110 | BRIEF/MEMORANDUM in Support re 109 MOTION to Strike 46 Answer to Amended ComplaintCrossclaimCounterclaim, 68 Answer to Amended ComplaintCrossclaimCounterclaim, 52 Answer to Amended ComplaintCounterclaim , filed by Plaintiff VON DUPRIN LLC. (French, Alexandra) (Entered: 03/21/2018) |
| 03/23/2018 | 111 | NOTICE *of Expert Witness Disclosures*, filed by Plaintiff VON DUPRIN LLC (Griggs, Edward) (Entered: 03/23/2018) |
| 04/03/2018 | 112 | NOTICE *of Withdrawal of Motion to Strike Moran Electric Service, Inc. Only*, filed by Plaintiff VON DUPRIN LLC, re 109 MOTION to Strike 46 Answer to Amended ComplaintCrossclaimCounterclaim, 68 Answer to Amended ComplaintCrossclaimCounterclaim, 52 Answer to Amended ComplaintCounterclaim . (French, Alexandra) (Entered: 04/03/2018) |
| 04/04/2018 | 113 | MOTION for Leave to File *Amended Answer and Affirmative Defenses*, filed by Defendant MORAN ELECTRIC SERVICE, INC., Counter Claimants MORAN ELECTRIC SERVICE, INC., MORAN ELECTRIC SERVICE, INC., MORAN ELECTRIC SERVICE, INC., Cross Defendants MORAN ELECTRIC SERVICE, INC., MORAN ELECTRIC SERVICE, INC.. (Attachments: # 1 Exhibit A. Moran's Amended Answer & Affirmative Defenses, # 2 Text of Proposed Order)(Bowman, Glenn) (Entered: 04/04/2018) |
| | | |

| 04/04/2018 | 114 | MARGINAL ENTRY - Notice of Partial Resolution and Withdrawal of Von Duprin's Motion to Strike Unresponsive Answers & Conclusory Affirmative Defenses 112 acknowledged. Signed by Judge Tanya Walton Pratt on 4/4/2018.(NAD) Modified on 4/4/2018 (NAD). (Entered: 04/04/2018) |
|---|---|---|
| 04/04/2018 | 115 | RESPONSE in Opposition re 109 MOTION to Strike 46 Answer to Amended ComplaintCrossclaimCounterclaim, 68 Answer to Amended ComplaintCrossclaimCounterclaim, 52 Answer to Amended ComplaintCounterclaim , filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Gardner, Samuel) (Entered: 04/04/2018) |
| 04/10/2018 | 116 | REPLY in Support of Motion re 109 MOTION to Strike 46 Answer to Amended ComplaintCrossclaimCounterclaim, 68 Answer to Amended ComplaintCrossclaimCounterclaim, 52 Answer to Amended ComplaintCounterclaim , filed by Plaintiff VON DUPRIN LLC, Cross Defendant VON DUPRIN LLC, Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC. (Attachments: # 1 Exhibit 1 - Table of Allegations and Responses)(French, Alexandra) (Entered: 04/10/2018) |
| 04/20/2018 | 117 | ORDER granting Defendant Moran Electric Service, Inc's 113 Motion for Leave to File amended answer and affirmative defenses. Signed by Magistrate Judge Debra McVicker Lynch on 4/20/2018. (SWM) (Entered: 04/20/2018) |
| 04/20/2018 | 118 | AMENDED ANSWER to Complaint, filed by Defendant MORAN ELECTRIC SERVICE, INC. (SWM) (Entered: 04/20/2018) |
| 05/14/2018 | 119 | Joint MOTION for Extension of Time to June 29, 2018 and July 27, 2018 in which to 104 Order on Motion, 98 Order: Case ManagementSet Deadlines *Completion of Discovery and Dispositive Motions Deadline*, filed by Defendant MORAN ELECTRIC SERVICE, INC.. (Attachments: # 1 Text of Proposed Order)(Bowman, Glenn) (Entered: 05/14/2018) |
| 05/15/2018 | 120 | ORDER EXTENDING CERTAIN CASE MANAGEMENT DEADLINES - The parties jointly moved for an extension of certain case management deadlines and, having considered the motion, the Court hereby GRANTS it. IT IS THEREFORE ORDERED that the deadline for completion of discovery is extended to June 29, 2018 and the deadline for dispositive motions is extended to July 27, 2018. Signed by Judge Tanya Walton Pratt on 5/15/2018.(NAD) (Entered: 05/15/2018) |
| 05/22/2018 | 121 | NOTICE of Service of Initial Disclosures *Expert Disclosures*, filed by Defendant MORAN ELECTRIC SERVICE, INC., Counter Claimants MORAN ELECTRIC SERVICE, INC., MORAN ELECTRIC SERVICE, INC., MORAN ELECTRIC SERVICE, INC., Cross Defendants MORAN ELECTRIC SERVICE, INC., MORAN ELECTRIC SERVICE, INC.. (Bowman, Glenn) (Entered: 05/22/2018) |
| 05/22/2018 | 122 | NOTICE *of Service of Expert Disclosures*, filed by Cross Claimants MAJOR HOLDINGS, LLC, MAJOR HOLDINGS, LLC, MAJOR TOOL AND |

| | | |
|---|---|---|
| | | MACHINE, INC., Counter Claimants MAJOR HOLDINGS, LLC, MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC., Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC. (Krahulik, Angela) (Entered: 05/22/2018) |
| 07/03/2018 | 123 | ORDER denying Von Duprin's 109 Motion to Strike. See Order. Signed by Magistrate Judge Debra McVicker Lynch on 7/3/2018. (SWM) (Entered: 07/03/2018) |
| 07/13/2018 | 124 | Statement *of Defenses* by MORAN ELECTRIC SERVICE, INC.. (Bowman, Glenn) (Entered: 07/13/2018) |
| 07/13/2018 | 125 | Statement *of Claims and Defenses* by MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Gardner, Samuel) (Entered: 07/13/2018) |
| 07/16/2018 | 126 | MOTION to Amend/Correct 124 Statement *of Defenses*, filed by Defendant MORAN ELECTRIC SERVICE, INC., Counter Claimants MORAN ELECTRIC SERVICE, INC., MORAN ELECTRIC SERVICE, INC., MORAN ELECTRIC SERVICE, INC., Cross Defendants MORAN ELECTRIC SERVICE, INC., MORAN ELECTRIC SERVICE, INC.. (Attachments: # 1 Exhibit A- Moran's Amended Statement of Defenses and Claims, # 2 Text of Proposed Order)(Bowman, Glenn) (Entered: 07/16/2018) |
| 07/16/2018 | 128 | Amended Statement of Defenses and Claims, filed by MORAN ELECTRIC SERVICE, INC. (SWM) (Main Document 128 replaced on 7/19/2018) (JD). (Entered: 07/18/2018) |
| 07/18/2018 | 127 | ORDER granting Moran Electric Service Inc's 126 Motion for leave to file amended statement of defenses and claims. IT IS THEREFORE ORDERED that "Moran's Amended Statement of Defenses and Claims," which was filed as Exhibit A to "Moran Electric Service, Inc.'s Motion for Leave to Signed by Magistrate Judge Debra McVicker Lynch on 7/18/2018. (SWM) Modified on 7/18/2018 (SWM). (Entered: 07/18/2018) |
| 07/19/2018 | 129 | MOTION *to Set Summary Judgment Briefing Schedule*, filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC., MORAN ELECTRIC SERVICE, INC.. (Attachments: # 1 Text of Proposed Order Granting Motion to Set Summary Judgment Briefing Schedule) (Krahulik, Angela) (Entered: 07/19/2018) |
| 07/20/2018 | 130 | RESPONSE in Opposition re 129 MOTION *to Set Summary Judgment Briefing Schedule* , filed by Plaintiff VON DUPRIN LLC, Cross Defendant VON DUPRIN LLC, Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC. (Attachments: # 1 Text of Proposed Order)(French, Alexandra) (Entered: 07/20/2018) |
| 07/20/2018 | 131 | REPLY in Support of Motion re 129 MOTION *to Set Summary Judgment Briefing Schedule* , filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC., MORAN ELECTRIC SERVICE, INC.. (Krahulik, Angela) (Entered: 07/20/2018) |
| | | |

| 07/24/2018 | 132 | ORDER granting Defendants' 129 Motion to Set Summary Judgment Briefing Schedule. Von Duprin's deadline to file its Motion for Summary Judgment and Brief in Support is July 27, 2018 (limited to 35 pages); Moran, Major Holdings, and Major Tool's deadline to file their Cross-Motions for Summary Judgment, Briefs in Support, and Responses in Opposition to Von Duprin's Motion for Summary Judgment is August 17, 2018 (limited to 55 pages); Von Duprin's deadline to file its Reply in Support of its Motion for Summary Judgment and Responses in Opposition to Cross-Motions for Summary Judgment is September 14, 2018 (limited to 40 pages); and Moran, Major Holdings, and Major Tool's deadline to file their Replies in Support of Cross-Motions for Summary Judgment is September 28, 2018 (limited to 20 pages). If Von Duprin believes a Surreply is appropriate under Local Rule 56-1(d), plaintiff may file a Surreply no later than seven days from the filing of Defendants' Replies in Support of Cross-Motions for summary judgment, (limited to 7 pages). Signed by Judge Tanya Walton Pratt on 7/24/2018. (MAC) (Entered: 07/25/2018) |
|---|---|---|
| 07/27/2018 | 133 | MOTION for Partial Summary Judgment , filed by Plaintiff VON DUPRIN LLC. (Griggs, Edward) (Entered: 07/27/2018) |
| 07/27/2018 | 134 | BRIEF/MEMORANDUM in Support re 133 MOTION for Partial Summary Judgment , filed by Plaintiff VON DUPRIN LLC. (Griggs, Edward) (Entered: 07/27/2018) |
| 07/27/2018 | 135 | Designation of Evidence re 133 MOTION for Partial Summary Judgment , filed by Plaintiff VON DUPRIN LLC. (Attachments: # 1 DE 1 - Expert Report of A. Love, # 2 DE 2 - Commissioner's Order, # 3 DE3 - Expert Report of J. McInnes, # 4 DE 4 - Excerpts of R. Walker Deposition, # 5 DE 5 - Excerpts of A. Love Deposition, # 6 DE 6 - See Separately Linked Document, # 7 DE 7 - Walker Report, # 8 DE 8 - Von Duprin Notice of Liability, # 9 DE 9 - Site Status Letter, # 10 DE 10 - Threaded Rod Complaint, # 11 DE 11 - Email to Counsel, # 12 DE 12 - Major RFA Responses, # 13 DE 13 - Excerpts of S. Williams Deposition, # 14 DE 14 - Expert Report of S. Williams) (French, Alexandra) (Entered: 07/27/2018) |
| 07/27/2018 | 136 | EXHIBIT in Support of Motion re 133 MOTION for Partial Summary Judgment -*Designated Evidence 6 + Exhibits A-E*, filed by Plaintiff VON DUPRIN LLC. (Attachments: # 1 Ex. A to DE 6 (Part 1 of 5), # 2 Ex. A to DE 6 (Part 2 of 5), # 3 Ex. A to DE 6 (Part 3 of 5), # 4 Ex. A to DE 6 (Part 4 of 5), # 5 Ex. A to DE 6 (Part 5 of 5), # 6 Ex. B to DE 6, # 7 Ex. C to DE 6, # 8 Ex. D to DE 6, # 9 Ex. E to DE 6)(French, Alexandra) (Entered: 07/27/2018) |
| 07/27/2018 | 137 | NOTICE of Filing *of Deposition Transcripts Cited in Motion for Partial Summary Judgment* by VON DUPRIN LLC (Attachments: # 1 Deposition Transcript of Robert B. Walker, LPG, # 2 Deposition Transcript of Adam Love, PhD, # 3 Deposition Transcript of Sam Williams, PG, CHG, CEM, QSD) (French, Alexandra) (Entered: 07/27/2018) |
| 08/17/2018 | 138 | Cross MOTION for Partial Summary Judgment , filed by Defendant MORAN ELECTRIC SERVICE, INC.. (Attachments: # 1 Text of Proposed Order |

| | | |
|---|---|---|
| | | proposed order granting partial summary judgment)(Menkveld, Marc) (Entered: 08/17/2018) |
| 08/17/2018 | 139 | RESPONSE in Opposition re 133 MOTION for Partial Summary Judgment *and Brief in Supp9ort of Cross Motion for Summary Judgment*, filed by Defendant MORAN ELECTRIC SERVICE, INC.. (Menkveld, Marc) (Entered: 08/17/2018) |
| 08/17/2018 | 140 | Designation of Evidence re 139 Response in Opposition to Motion *Von Duprin Motion for Summary Judgment and Cross Motion for Summary Judgment*, filed by Defendant MORAN ELECTRIC SERVICE, INC.. (Attachments: # 1 Exhibit A Environmental Protection Agency Assessment/Visual Site Inspection for Von Duprin Final Report "EPA Site Inspection", # 2 Exhibit B May 2, 2014 Rescission of Corrective Action Complete without controls decision to Van Duprin IND006066112 "IDEM Recission Letter", # 3 Exhibit C October 3, 1980 letter regarding Disposal of Trichloroethylene signed by Von Duprin Chemical Engineer, Jack Cornpropst "TCE Disposal Letter", # 4 Exhibit D October 31, 1978 Letter re Disposal of Perchlorethylene to Von Duprrin Chemical Engineer Jack Cornpropst "PCE Disposal letter", # 5 Exhibit E December 29, 2008 Columbia Baseline Assessment Report performed by Mundell & Associates, inc. "Mundell Report, # 6 Exhibit F Enviro-Chem Corp west manifest forms produced by Von Duprin "Von Duprin Waste Forms", # 7 Exhibit G April 12, 2012 Site Status letter from IDEM to Threaded Rod Co., Inc. CEO Rebecca Branson "Site Status Letter", # 8 Exhibit H All materials designated by Von Duprin Docket 135., # 9 Exhibit I - August 1996 Limited Phase Ii Environmental Site Assessment performed by Allied Environmental Services, Inc. "Allied Report", # 10 Exhibit J Epert Report of Adam H. Love, Ph.D., Rouz Associates May 21, 2018, # 11 Exhibit k Expet Report of John W. McInnes, June 26, 2018, # 12 Exhibit L Transcript from Deposition of Jhn W. McInnes, June 26, 2018, # 13 Exhibit M Voluntary Remediation Program Application filed by Von Duprin LLC on oir about June 2, 2016 "VRP Application:, # 14 Exhibit N June 11, 2010 Document review and further site investigation request, VFC Document No. 56071357, # 15 Exhibit O Soil Remediation Completion Report Former Moran January 20, 2012 VFC No. 65173610, # 16 Exhibit P June 6, 2011 Heartland FSI Report, VFC No. 65173259, # 17 Exhibit Q May 29, 2008 Soil Remediation Completion Report performed by Quality Environmental Professional, Inc.)(Menkveld, Marc) (Entered: 08/17/2018) |
| 08/17/2018 | 141 | Cross MOTION for Summary Judgment *Against Plaintiff and Motion for Summary Judgment Against Cross-Claimant*, filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Krahulik, Angela) (Entered: 08/17/2018) |
| 08/17/2018 | 142 | RESPONSE IN OPPOSITION to 133 , *Brief in Support of Cross-Motion for Summary Judgment Against Plaintiff, and 141 Brief in Support of Motion for Summary Judgment Against Cross-Claimant*, filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC. (Krahulik, Angela) Modified on 8/21/2018 - Added link to 133 and 141 . (NAD). |

| | | (Entered: 08/17/2018) |
|---|---|---|
| 08/17/2018 | 143 | Designation of Evidence re 142 Cross MOTION for Summary Judgment , *Brief in Support of Cross-Motion for Summary Judgment Against Plaintiff, and Brief in Support of Motion for Summary Judgment Against Cross-Claimant* , filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Attachments: # 1 Exhibit A-1. Weir Decl. and Exhibits Part 1, # 2 Exhibit A-2. Weir Decl. and Exhibits Part 2, # 3 Exhibit B. Zumbaugh Decl. and Exhibit, # 4 Exhibit C. Williams Depo., # 5 Exhibit D. Hokkanen Report, # 6 Exhibit E. E-mail from Griggs, # 7 Exhibit F. McInnes Depo.)(Krahulik, Angela) (Entered: 08/17/2018) |
| 08/21/2018 | 144 | MOTION *to strike Major Tool's and Major Holdings Motion for Partial Summary Judgment*, filed by Defendant MORAN ELECTRIC SERVICE, INC.. (Attachments: # 1 Text of Proposed Order granting Moran's Motion to Strike Major's motion for partial summary judgment)(Menkveld, Marc) (Entered: 08/21/2018) |
| 08/24/2018 | 145 | RESPONSE in Opposition re 144 MOTION *to strike Major Tool's and Major Holdings Motion for Partial Summary Judgment* , filed by Cross Claimants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC., Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Krahulik, Angela) (Entered: 08/24/2018) |
| 08/28/2018 | 146 | Final Exhibit List , filed by Plaintiff VON DUPRIN LLC, Final Witness List , filed by Plaintiff VON DUPRIN LLC. (French, Alexandra) Modified on 8/29/2018 (NAD). (Entered: 08/28/2018) |
| 08/28/2018 | 147 | Final Witness List , filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC., Final Exhibit List , filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Krahulik, Angela) Modified on 8/29/2018 (NAD). (Entered: 08/28/2018) |
| 08/28/2018 | 148 | Final Witness List *and Final Exhibit List*, filed by Defendant MORAN ELECTRIC SERVICE, INC.. (Bowman, Glenn) Modified on 8/29/2018 (NAD). (Entered: 08/28/2018) |
| 09/14/2018 | 149 | REPLY in Support of Motion re 133 MOTION for Partial Summary Judgment , 138 Cross MOTION for Partial Summary Judgment , filed by Plaintiff VON DUPRIN LLC. (Griggs, Edward) (Entered: 09/14/2018) |
| 09/14/2018 | 150 | REPLY in Support of Motion re 133 MOTION for Partial Summary Judgment , 141 Cross MOTION for Summary Judgment *Against Plaintiff and Motion for Summary Judgment Against Cross-Claimant* , filed by Plaintiff VON DUPRIN LLC. (Griggs, Edward) (Entered: 09/14/2018) |
| 09/14/2018 | 151 | Designation of Evidence re 143 Designation of Evidence, 135 Designation of Evidence, 140 Designation of Evidence , filed by Plaintiff VON DUPRIN LLC. (Attachments: # 1 Exhibit IDEM RWP Approval, # 2 Exhibit Major-City Lease (Ertel), # 3 Exhibit Comfort Letter request (Moran), # 4 Exhibit IDEM Comment Letter, # 5 Exhibit Krahulik e-mail 7-16-18, # 6 Exhibit |

| | | Krahulik e-mail 7-20-18)(Griggs, Edward) (Entered: 09/14/2018) |
|---|---|---|
| 09/14/2018 | 152 | RESPONSE in Opposition re 141 Cross MOTION for Summary Judgment *Against Plaintiff and Motion for Summary Judgment Against Cross-Claimant Moran*, filed by Cross Defendant MORAN ELECTRIC SERVICE, INC.. (Menkveld, Marc) (Entered: 09/14/2018) |
| 09/14/2018 | 153 | Designation of Evidence re 152 Response in Opposition to Motion *for Partial Summary Judgment Against Moran*, filed by Cross Defendant MORAN ELECTRIC SERVICE, INC.. (Attachments: # 1 Exhibit Moran Property Deed, # 2 Exhibit Zimmer Deed, # 3 Exhibit Project Agreement, # 4 Exhibit Ertel Deed, # 5 Exhibit MTM Trans., # 6 Exhibit Weyreter Trans., # 7 Exhibit City Memo, # 8 Exhibit Harrell Trans., # 9 Exhibit NFA Letter, # 10 Exhibit PI Hearing Trans., # 11 Exhibit City Trans., # 12 Exhibit QEPI LSI, # 13 Exhibit QEPI SRCR, # 14 Exhibit UST Closure Rpt., # 15 Exhibit Groves Trans. I, # 16 Exhibit MTM Comf. Ltr. Req., # 17 Exhibit Demand for Compliance, # 18 Exhibit Com Order, # 19 Exhibit Settlement Agreement (Redacted_)(Menkveld, Marc) (Entered: 09/14/2018) |
| 09/28/2018 | 154 | REPLY in Support of Motion re 138 Cross MOTION for Partial Summary Judgment , filed by Counter Claimant MORAN ELECTRIC SERVICE, INC.. (Menkveld, Marc) (Entered: 09/28/2018) |
| 09/28/2018 | 155 | Designation of Evidence re 154 Reply in Support of Motion *for Partial Summary Judgment and in Rebuttal to Von Duprin's Challenge to Moran's Disclosed Expert*, filed by Counter Claimant MORAN ELECTRIC SERVICE, INC.. (Attachments: # 1 Exhibit Declaration of Adam Love September 28, 2018)(Menkveld, Marc) (Entered: 09/28/2018) |
| 09/28/2018 | 156 | REPLY in Support of Motion re 141 Cross MOTION for Summary Judgment *Against Plaintiff and Motion for Summary Judgment Against Cross-Claimant* , filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Krahulik, Angela) (Entered: 09/28/2018) |
| 09/28/2018 | 157 | REPLY in Support of Motion re 141 Cross MOTION for Summary Judgment *Against Plaintiff and Motion for Summary Judgment Against Cross-Claimant* , filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Krahulik, Angela) (Entered: 09/28/2018) |
| 10/05/2018 | 158 | Surreply re 138 Cross MOTION for Partial Summary Judgment , filed by Plaintiff VON DUPRIN LLC. (Griggs, Edward) (Entered: 10/05/2018) |
| 10/05/2018 | 159 | NOTICE *of supplemental authority*, filed by Plaintiff VON DUPRIN LLC, re 133 MOTION for Partial Summary Judgment , 156 Reply in Support of Motion, 150 Reply in Support of Motion. (Attachments: # 1 Exhibit 9th Circuit decision) (Griggs, Edward) (Entered: 10/05/2018) |
| 10/10/2018 | 160 | MOTION to Strike 159 Notice (Other) *of Supplemental Authority*, filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Krahulik, Angela) (Entered: 10/10/2018) |
| 10/10/2018 | 161 | BRIEF/MEMORANDUM in Support re 160 MOTION to Strike 159 Notice |

| | | |
|---|---|---|
| | | (Other) *of Supplemental Authority* , filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Krahulik, Angela) (Entered: 10/10/2018) |
| 10/19/2018 | 162 | RESPONSE in Opposition re 160 MOTION to Strike 159 Notice (Other) *of Supplemental Authority* , filed by Plaintiff VON DUPRIN LLC, Cross Defendant VON DUPRIN LLC, Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC. (French, Alexandra) (Entered: 10/19/2018) |
| 10/26/2018 | 163 | REPLY in Support of Motion re 160 MOTION to Strike 159 Notice (Other) *of Supplemental Authority* , filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Krahulik, Angela) (Entered: 10/26/2018) |
| 12/10/2018 | 164 | ORDER ON MORAN ELECTRIC'S 144 MOTION TO STRIKE MAJOR TOOL'S AND MAJOR HOLDINGS' MOTION FOR PARTIAL SUMMARY JUDGMENT - The Court finds that although Major Holdings' summary judgment motion against Moran was filed after the July 24, 2018 dispositive motions deadline, it was filed in good faith and did not intentionally miss the deadline. Thus, the late filing constitutes excusable neglect. For those reasons, Moran's Motion to Strike Major Defendants' Motion for Summary Judgment (Filing No. 144 ) is DENIED. Moran has until January 8, 2019 to file a brief in response to the Major Defendants' Cross-Motion for Summary Judgment (Filing No. 141 ). The Major Defendants' deadline for filing a reply is January 22, 2019. (See Order.) Signed by Judge Tanya Walton Pratt on 12/10/2018. (NAD) (Entered: 12/11/2018) |
| 12/10/2018 | 165 | ORDER ON MAJOR TOOL AND MACHINE, INC.'S AND MAJOR HOLDINGS LLC'S 160 MOTION TO STRIKE NOTICE OF SUPPLEMENTAL AUTHORITY - While Von Duprin's Notice was longer than necessary to draw the Court's attention to the Pakootas decision, its submission did not amount to a substantial disregard of the case management schedule. For those reasons, the Major Defendants' Motion to Strike Plaintiff's Notice of Supplemental Authority (Filing No. 160 ) is DENIED. (See Order.) Signed by Judge Tanya Walton Pratt on 12/10/2018. (NAD) (Entered: 12/11/2018) |
| 12/13/2018 | 166 | MOTION *to Limit Expert Testimony at Trial*, filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Krahulik, Angela) (Entered: 12/13/2018) |
| 12/13/2018 | 167 | BRIEF/MEMORANDUM in Support re 166 MOTION *to Limit Expert Testimony at Trial* , filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Attachments: # 1 Exhibit A. Expert Report of Williams, # 2 Exhibit B. Williams Deposition Transcript)(Krahulik, Angela) (Entered: 12/13/2018) |
| 12/13/2018 | 168 | MOTION in Limine *to Exclude Expert Opinions of Sam Williams*, filed by Defendant MORAN ELECTRIC SERVICE, INC.. (Attachments: # 1 Exhibit Sam Williams Depo, # 2 Exhibit Sam Williams Expert Report)(Menkveld, |

| | | |
|---|---|---|
| | | Marc) (Entered: 12/13/2018) |
| 12/13/2018 | 169 | MOTION in Limine *to Exclude Opinions of Adam H. Love, Ph.D.*, filed by Plaintiff VON DUPRIN LLC, Cross Defendant VON DUPRIN LLC, Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC. (French, Alexandra) (Entered: 12/13/2018) |
| 12/13/2018 | 170 | BRIEF/MEMORANDUM in Support re 169 MOTION in Limine *to Exclude Opinions of Adam H. Love, Ph.D.* , filed by Plaintiff VON DUPRIN LLC, Cross Defendant VON DUPRIN LLC, Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC. (French, Alexandra) (Entered: 12/13/2018) |
| 12/13/2018 | 171 | Appendix of Exhibits in Support of Motion re 169 MOTION in Limine *to Exclude Opinions of Adam H. Love, Ph.D.* , filed by Plaintiff VON DUPRIN LLC, Cross Defendant VON DUPRIN LLC, Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC. (Attachments: # 1 Exhibit 1 - 2008 QEPI Soil Remediation Completion Report, # 2 Exhibit 2 - 2012 Heartland Soil Remediation Completion Report, # 3 Exhibit 3 - 2007 QEPI UST Removal Report, # 4 Exhibit 4a - Comprehensive Dataset (Part 1 of 2), # 5 Exhibit 4b - Comprehensive Dataset (Part 1 of 2), # 6 Exhibit 5 - Soil Data Subset, # 7 Exhibit 6 - Groundwater Data Subset, # 8 Exhibit 7 - Errata Letter, # 9 Exhibit 8 - Divisibility Presentation, # 10 Add'l Authority - EPA Performance Monitoring, # 11 Add'l Authority - Payne Remediation Hydraulics, # 12 Add'l Authority - EPA Framework for Site Characterization)(French, Alexandra) (Entered: 12/13/2018) |
| 12/21/2018 | 172 | Joint MOTION for Extension of Time to 3/1/2019 *to File Proposed Findings of Fact and Conclusions of Law*, filed by Plaintiff VON DUPRIN LLC, Cross Defendant VON DUPRIN LLC, Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC. (Attachments: # 1 Text of Proposed Order)(French, Alexandra) (Entered: 12/21/2018) |
| 12/27/2018 | 173 | RESPONSE in Opposition re 169 MOTION in Limine *to Exclude Opinions of Adam H. Love, Ph.D.* , filed by Defendant MORAN ELECTRIC SERVICE, INC.. (Bowman, Glenn) (Entered: 12/27/2018) |
| 12/27/2018 | 174 | ORDER - GRANTING JOINT 172 MOTION TO EXTEND DEADLINE TO SUBMIT PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW. Having considered the Motion and being duly advised, the Court now grants said motion in the entirety, and extends the deadline to submit findings and conclusions to March 1, 2019, or if trial should end on a date other than February 22, 2019, to the date seven (7) days after the conclusion of trial. Signed by Judge Tanya Walton Pratt on 12/27/2018. (NAD) (Entered: 12/27/2018) |
| 12/27/2018 | 175 | RESPONSE in Opposition re 166 MOTION *to Limit Expert Testimony at Trial*, 168 MOTION in Limine *to Exclude Expert Opinions of Sam Williams* , |

| | | filed by Plaintiff VON DUPRIN LLC, Cross Defendant VON DUPRIN LLC, Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC. (French, Alexandra) (Entered: 12/27/2018) |
|---|---|---|
| 01/02/2019 | 176 | Witness List , filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Krahulik, Angela) (Entered: 01/02/2019) |
| 01/02/2019 | 177 | Exhibit List , filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Krahulik, Angela) (Entered: 01/02/2019) |
| 01/02/2019 | 178 | NOTICE *of Anticipated Use of Evidence Presentation Equipment at Trial*, filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC. (Krahulik, Angela) (Entered: 01/02/2019) |
| 01/02/2019 | 179 | Witness List *and Exhibit List*, filed by Defendant MORAN ELECTRIC SERVICE, INC.. (Attachments: # 1 Exhibit A citations to Deposition of Richard Phelps)(Bowman, Glenn) (Entered: 01/02/2019) |
| 01/02/2019 | 180 | NOTICE *of Designation of Deposition Testimony*, filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC. (Krahulik, Angela) (Entered: 01/02/2019) |
| 01/02/2019 | 181 | TRIAL BRIEF by VON DUPRIN LLC. (Attachments: # 1 Exhibit IDEM Partial RWP Approval)(Griggs, Edward) (Entered: 01/02/2019) |
| 01/02/2019 | 182 | Witness List , filed by Plaintiff VON DUPRIN LLC, Cross Defendant VON DUPRIN LLC, Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC. (French, Alexandra) (Entered: 01/02/2019) |
| 01/02/2019 | 183 | Exhibit List , filed by Plaintiff VON DUPRIN LLC, Cross Defendant VON DUPRIN LLC, Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC. (French, Alexandra) (Entered: 01/02/2019) |
| 01/02/2019 | 184 | NOTICE *re: Plaintiff's Intent to Utilize the Court's Presentation Equipment*, filed by Plaintiff VON DUPRIN LLC, Cross Defendant VON DUPRIN LLC, Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC (French, Alexandra) (Entered: 01/02/2019) |
| 01/02/2019 | 185 | NOTICE *of Anticipated Use of Evidence Presentation Equipment At Trial*, filed by Defendant MORAN ELECTRIC SERVICE, INC. (Bowman, Glenn) (Entered: 01/02/2019) |
| 01/02/2019 | 186 | MOTION in Limine , filed by Plaintiff VON DUPRIN LLC, Cross Defendant VON DUPRIN LLC, Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC. (French, Alexandra) (Entered: 01/02/2019) |
| 01/02/2019 | 187 | NOTICE *of Summarized Deposition Testimony to be Used at Trial*, filed by Plaintiff VON DUPRIN LLC, Cross Defendant VON DUPRIN LLC, Counter |

| | | |
|---|---|---|
| | | Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC (French, Alexandra) (Entered: 01/02/2019) |
| 01/03/2019 | [188](#) | REPLY in Support of Motion re [166](#) MOTION *to Limit Expert Testimony at Trial* , filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Krahulik, Angela) (Entered: 01/03/2019) |
| 01/03/2019 | [189](#) | REPLY in Support of Motion re [169](#) MOTION in Limine *to Exclude Opinions of Adam H. Love, Ph.D.* , filed by Plaintiff VON DUPRIN LLC, Cross Defendant VON DUPRIN LLC, Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC. (French, Alexandra) (Entered: 01/03/2019) |
| 01/07/2019 | [190](#) | RESPONSE in Opposition re [186](#) MOTION in Limine , filed by Defendant MORAN ELECTRIC SERVICE, INC.. (Bowman, Glenn) (Entered: 01/07/2019) |
| 01/08/2019 | [191](#) | MOTION for Leave to File *Sur-Reply in Opposition to [169](#) Von Duprin's Motion to exclude the opinions of Adam H. Love, Ph.D* ,, filed by Defendant MORAN ELECTRIC SERVICE, INC. (Attachments: # [1](#) Exhibit A to petiton for leave to file sur-reply, # [2](#) Exhibit to Sur-Reply)(Bowman, Glenn) Modified on 1/9/2019 -Edited text and added link to [169](#) (NAD). (Entered: 01/08/2019) |
| 01/09/2019 | [192](#) | Submission of Proposed Order , re [191](#) MOTION for Leave to File *Sur-Reply in Opposition to Von Duprin's* MOTION *to exclude the opinions of Adam H. Love, Ph.D.*, filed by Defendant MORAN ELECTRIC SERVICE, INC.. (Bowman, Glenn) (Entered: 01/09/2019) |
| 01/09/2019 | [193](#) | OBJECTION *to Von Duprin's Summary of Deposition Testimony to be Used at Trial* by MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. Related document: [187](#) Notice (Other) filed by VON DUPRIN LLC. (Krahulik, Angela) (Entered: 01/09/2019) |
| 01/09/2019 | [194](#) | MOTION *for Seperation of Witnesses*, filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Krahulik, Angela) (Entered: 01/09/2019) |
| 01/09/2019 | [195](#) | MOTION *to Exclude or Limit Major Defendants' Designation of Deposition Testimony*, filed by Plaintiff VON DUPRIN LLC, Cross Defendant VON DUPRIN LLC, Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC. (French, Alexandra) (Entered: 01/09/2019) |
| 01/09/2019 | [196](#) | MOTION *to Exclude Certain Exhibits Proposed by Major Defendants*, filed by Plaintiff VON DUPRIN LLC, Cross Defendant VON DUPRIN LLC, Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC. (French, Alexandra) (Entered: 01/09/2019) |
| 01/09/2019 | [197](#) | MOTION *to Exclude Certain Exhibits Proposed by Moran*, filed by Plaintiff |

| | | |
|---|---|---|
| | | VON DUPRIN LLC, Cross Defendant VON DUPRIN LLC, Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC. (French, Alexandra) (Entered: 01/09/2019) |
| 01/11/2019 | 198 | SCHEDULING ORDER - This matter is before the Court for scheduling purposes, on its own motion. Although the pending motions for summary judgment are ripe for ruling before the currently scheduled trial date of February 11, 2019, and due to congestion of the Court's calendar with a criminal jury trial, the Court will not be able to complete its analysis and prepare the necessary entry in time for adequate trial preparation. Under this Court's plan adopted pursuant to the Civil Justice Reform Act of 1990, the Court should continue a trial on its own motion if a dispositive motion remains pending 30 days before trial. Accordingly, the bench trial set for February 11, 2019 and the final pretrial conference set for January 16, 2019 are hereby VACATED and RESCHEDULED. The final pretrial conference is RESET for June 19, 2019 at 2:00 p.m. in Room 330. Counsel only need attend the final pretrial conference. The bench trial is RESET to commence on July 15, 2019 at 9:00 a.m. in Courtroom 344, Birch Bayh Federal Building and United States Courthouse, Indianapolis, Indiana. Signed by Judge Tanya Walton Pratt on 1/11/2019.(NAD) (Entered: 01/11/2019) |
| 01/16/2019 | 199 | RESPONSE in Opposition re 196 MOTION *to Exclude Certain Exhibits Proposed by Major Defendants*, 195 MOTION *to Exclude or Limit Major Defendants' Designation of Deposition Testimony* , filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Attachments: # 1 Exhibit A. Phelps Deposition Citations)(Krahulik, Angela) (Entered: 01/16/2019) |
| 01/28/2019 | 200 | MOTION for Continuance *of Trial and to Set Telephonic Status Conference*, filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Attachments: # 1 Text of Proposed Order Continuing Bench Trial & Setting Telephonic Status Conference)(Krahulik, Angela) (Entered: 01/28/2019) |
| 01/29/2019 | 201 | NOTICE of Appearance by Bruce L. Kamplain on behalf of Defendant MORAN ELECTRIC SERVICE, INC.. (Kamplain, Bruce) (Entered: 01/29/2019) |
| 01/29/2019 | 202 | NOTICE of Appearance by Cynthia Elaine Lasher on behalf of Defendant MORAN ELECTRIC SERVICE, INC.. (Lasher, Cynthia) (Entered: 01/29/2019) |
| 02/11/2019 | 203 | ENTRY ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT - For the reasons stated above, Von Duprin's Motion for Partial Summary Judgment on Section 107 (a) Liability, (Filing No. 133 ), is DENIED. Moran's Cross-Motion for Partial Summary Judgment, (Filing No. 138 ), is GRANTED. All claims against Moran remain for resolution at trial, but Moran is not jointly and severally liable on Count I, it is liable only for the proportion of the harm it caused. The Major Defendants' Cross-Motion for |

| | | |
|---|---|---|
| | | Summary Judgment against Plaintiff and Motion for Summary Judgment Against Cross-Claimant, (Filing No. 141 ), is GRANTED in part and DENIED in part. Both claims against the Major Defendants remain for resolution at trial, but like Moran, they are liable only for the proportion of the harm they caused. Additionally, they are not liable for any contamination emanating from the Zimmer Packaging Facility or the Moran property because they are bona fide prospective purchasers of those parcels of land. The Major Defendants' Motion for Summary Judgment against cross-claimant Moran is DENIED. Thus, both cross-claims (Filing No. 52 ; Filing No. 70 ) remain to be resolved at trial. (See Entry.) Signed by Judge Tanya Walton Pratt on 2/11/2019. (NAD) (Entered: 02/11/2019) |
| 02/21/2019 | 204 | ORDER - granting 200 Motion for Continuance. IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED that the bench trial and final pretrial in this matter is hereby CONTINUED. The Court finds a status conference is not necessary. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED the final pretrial is RESCHEDULED to June 26, 2019 at 10:00 a.m. in Room 330. The bench trial is RESCHEDULED to commence on July 22, 2019 at 9:00 a.m. in Courtroom 344, Birch Bayh Federal Building and U.S. Courthouse, Indianapolis, Indiana. Signed by Judge Tanya Walton Pratt on 2/21/2019. (NAD) (Entered: 02/21/2019) |
| 03/19/2019 | 205 | STIPULATION *of Fact for Trial - Joint*, filed by Plaintiff VON DUPRIN LLC, Cross Defendant VON DUPRIN LLC, Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC. (French, Alexandra) (Entered: 03/19/2019) |
| 06/14/2019 | 206 | ENTRY ON PENDING MOTIONS - For the reasons explained above, the Court makes the following rulings: Major Defendants' Motion to Limit Expert Testimony at Trial (Filing No. 166 ) and Moran's Motion in Limine to Exclude Expert Opinions of Sam Williams (Filing No. 168 ) are DENIED. Von Duprin's Motion in Limine to Exclude Opinions of Adam H. Love, Ph.D. (Filing No. 169 ) is DENIED. Moran's Motion for Leave to File Sur-Reply in Opposition to Von Duprin's Motion to Exclude the Opinions of Adam H. Love, Ph.D. ( Filing No. 191 ) is DENIED as moot. Von Duprin's Motion in Limine (Filing No. 186 ) is DENIED. The Major Defendants' Motion for Separation of Witnesses (Filing No. 194 ) is GRANTED. The Court directs the parties to instruct their witnesses to not discuss their testimony with anyone else either before or after it is given. Von Duprin's Motion to Exclude or Limit Major Defendants' Designation of Deposition Testimony (Filing No. 195 ) is DENIED. Von Duprin's Motion to Exclude Certain Exhibits Proposed by Major Defendants (Filing No. 196 ) is GRANTED in part and DENIED in part. It is granted as to the admissibility of evidence regarding the Major Defendants' investigation into vapor intrusion at properties outside the comingled plume area. It is denied as to the admissibility of the Phelps Deposition and the Fye Deposition. And finally, Von Duprin's Motion to Exclude Certain Exhibits Proposed by Moran (Filing No. 197 ) is DENIED. (See Entry.) Signed by Judge Tanya Walton Pratt on 6/14/2019. (NAD) (Entered: 06/14/2019) |

| | | |
|---|---|---|
| 06/21/2019 | 207 | SCHEDULING ORDER - The final pretrial conference set June 26, 2019 will now be held in Courtroom 344, Birch Bayh Federal Building and U.S. Courthouse, Indianapolis, Indiana. Please make note of this change.Signed by Judge Tanya Walton Pratt on 6/21/2019. (NAD) (Entered: 06/24/2019) |
| 06/26/2019 | 208 | MINUTE ENTRY for final pretrial held before Judge Tanya Walton Pratt on 6/26/2019: Parties appeared by counsel. Discussion was held regarding pending motions, anticipated witnesses and exhibits. The Court will issue a separate Entry consistent with Fed. R. Civ. P. 16 (d) and (e). This matter remains set for bench trial on July 22, 2019 at 9:00 a.m. in Courtroom 344, Birch Bayh Federal Building and United States Courthouse, Indianapolis Indiana. Signed by Judge Tanya Walton Pratt. (Court Reporter David Moxley.)(TRG) (Entered: 06/26/2019) |
| 06/27/2019 | 209 | ENTRY FOLLOWING FINAL PRETRIAL CONFERENCE - A 10 day bench trial is scheduled to begin on Monday, July 22, 2019 at 9:00 a.m. and will be held in the Birch Bayh Federal Building and U.S. Courthouse, 46 East Ohio Street, Indianapolis, Indiana, Courtroom #344. (See Order for additional instruction and deadlines.) Signed by Judge Tanya Walton Pratt on 6/27/2019. (NAD) (Entered: 06/27/2019) |
| 07/01/2019 | 210 | NOTICE of Subpoena to appear and testify at trial to Michael Sharkey, filed by Defendant MORAN ELECTRIC SERVICE, INC. (Bowman, Glenn) (Entered: 07/01/2019) |
| 07/01/2019 | 211 | NOTICE of Subpoena to appear and testify at trial to John Letsinger, filed by Defendant MORAN ELECTRIC SERVICE, INC. (Bowman, Glenn) (Entered: 07/01/2019) |
| 07/01/2019 | 212 | NOTICE of Subpoena to appear and testify at trial to Kim Vedder, filed by Defendant MORAN ELECTRIC SERVICE, INC. (Bowman, Glenn) (Entered: 07/01/2019) |
| 07/01/2019 | 213 | NOTICE of Subpoena to appear and testify at trial to Michael Fye, filed by Defendant MORAN ELECTRIC SERVICE, INC. (Bowman, Glenn) (Entered: 07/01/2019) |
| 07/01/2019 | 214 | NOTICE of Subpoena to appear and testify at trial to Steven Meyer, filed by Defendant MORAN ELECTRIC SERVICE, INC. (Bowman, Glenn) (Entered: 07/01/2019) |
| 07/09/2019 | 215 | NOTICE of Change of Corporate Representatives for Trial, filed by Plaintiff VON DUPRIN LLC, Cross Defendant VON DUPRIN LLC, Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC (French, Alexandra) (Entered: 07/09/2019) |
| 07/09/2019 | 216 | Notice of Service of Proposed Subpoena on Nonparty to Appear and Testify at Trial, filed by Defendant MORAN ELECTRIC SERVICE, INC.. (Bowman, Glenn) (Entered: 07/09/2019) |
| 07/09/2019 | 218 | NOTICE of Filing Motion by Defendant Moran Electric Service, Inc. to |

| | | |
|---|---|---|
| | | *Remove ECF 217 from the Docket* by MORAN ELECTRIC SERVICE, INC. (Attachments: # 1 Text of Proposed Order Text of Proposed Order) (Kamplain, Bruce) Modified on 7/10/2019 - Edited for administrative purposes(NAD). (Entered: 07/09/2019) |
| 07/10/2019 | 219 | ORDER granting in part 218 Motion to remove ECF 217. The clerk is directed to restrict 217 to an ex parte security designation. Only counsel for Moran should have access to the docket and docket entry. Signed by Judge Tanya Walton Pratt on 7/10/2019. (CBU) (Entered: 07/10/2019) |
| 07/11/2019 | 220 | Notice of Service of Proposed Subpoena on Nonparty *to Appear and Testify at Trial (Greg Zumbaugh)*, filed by Cross Claimants MAJOR HOLDINGS, LLC, MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC., Counter Claimants MAJOR HOLDINGS, LLC, MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC., Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Krahulik, Angela) (Entered: 07/11/2019) |
| 07/11/2019 | 221 | Notice of Service of Proposed Subpoena on Nonparty *to Appear and Testify at Trial (Nivas Vijayaraghavan)*, filed by Cross Claimants MAJOR HOLDINGS, LLC, MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC., Counter Claimants MAJOR HOLDINGS, LLC, MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC., Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Krahulik, Angela) (Entered: 07/11/2019) |
| 07/11/2019 | 222 | Notice of Service of Proposed Subpoena on Nonparty *to Appear and Testify at Trial (Michael Fye)*, filed by Cross Claimants MAJOR HOLDINGS, LLC, MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC., Counter Claimants MAJOR HOLDINGS, LLC, MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC., Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Krahulik, Angela) (Entered: 07/11/2019) |
| 07/11/2019 | 223 | Notice of Service of Proposed Subpoena on Nonparty *to Appear and Testify at Trial (Chris Rothenberger)*, filed by Cross Claimants MAJOR HOLDINGS, LLC, MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC., Counter Claimants MAJOR HOLDINGS, LLC, MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC., Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Krahulik, Angela) (Entered: 07/11/2019) |
| 07/11/2019 | 224 | Notice of Service of Proposed Subpoena on Nonparty *to Appear and Testify at Trial (Ryan Groves)*, filed by Cross Claimants MAJOR HOLDINGS, LLC, MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC., Counter Claimants MAJOR HOLDINGS, LLC, MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC., Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Krahulik, Angela) (Entered: 07/11/2019) |
| 07/11/2019 | 225 | ORDER SETTING TRIAL SCHEDULE - Due to congestion of the Court |

| | | |
|---|---|---|
| | | calendar with a criminal jury trial, the 9-10 day bench trial in this matter will commence as scheduled on the following dates: Monday, July 22, 2019, 8:30 a.m. until adjourned (See Order for additionally scheduled dates). Signed by Judge Tanya Walton Pratt on 7/11/2019.(NAD) (Entered: 07/12/2019) |
| 07/15/2019 | 226 | NOTICE of Filing *Excerpts from Deposition Transcripts* by MORAN ELECTRIC SERVICE, INC. (Menkveld, Marc) (Entered: 07/15/2019) |
| 07/15/2019 | 227 | NOTICE *Excerpts from Richard Phelps Deposition Transcript*, filed by Defendant MORAN ELECTRIC SERVICE, INC., re 226 NOTICE of Filing. (Menkveld, Marc) (Entered: 07/15/2019) |
| 07/15/2019 | 228 | NOTICE *Excerpts from John Letsinger Deposition Transcript*, filed by Defendant MORAN ELECTRIC SERVICE, INC. (Menkveld, Marc) (Entered: 07/15/2019) |
| 07/15/2019 | 229 | TRIAL BRIEF *Pretrial Brief* by MORAN ELECTRIC SERVICE, INC.. (Attachments: # 1 Exhibit 1-property location map, # 2 Exhibit 2-parcel numbers map)(Bowman, Glenn) (Entered: 07/15/2019) |
| 07/15/2019 | 230 | TRIAL BRIEF *Pre-Trial Brief* by MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Krahulik, Angela) (Entered: 07/15/2019) |
| 07/15/2019 | 231 | TRIAL BRIEF by VON DUPRIN LLC. (French, Alexandra) (Entered: 07/15/2019) |
| 07/19/2019 | 232 | Exhibit List - *Joint Trial Exhibits*, filed by Plaintiff VON DUPRIN LLC, Cross Defendant VON DUPRIN LLC, Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC. (French, Alexandra) (Entered: 07/19/2019) |
| 07/19/2019 | 233 | Exhibit List - *Von Duprin's Exhibits*, filed by Plaintiff VON DUPRIN LLC, Cross Defendant VON DUPRIN LLC, Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC. (French, Alexandra) (Entered: 07/19/2019) |
| 07/19/2019 | 234 | Exhibit List , filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Krahulik, Angela) (Entered: 07/19/2019) |
| 07/19/2019 | 235 | Exhibit List , filed by Defendant MORAN ELECTRIC SERVICE, INC.. (Bowman, Glenn) (Entered: 07/19/2019) |
| 07/23/2019 | 236 | MINUTE ENTRY for Bench Trial held before Judge Tanya Walton Pratt on 7/22/2019: Parties appeared by counsel. Evidence entered and testimony presented. Parties were ordered to return on Tuesday, July 23, 2019 at 8:30 a.m. and Court was adjourned for the day. Signed by Judge Tanya Walton Pratt. (Court Reporter Cathy Jones.)(TRG) (Entered: 07/23/2019) |
| 07/24/2019 | 237 | MINUTE ENTRY for bench trial held before Judge Tanya Walton Pratt on 7/23/2019 (Day 2): Parties appeared by counsel. Evidence entered and testimony presented. Parties were ordered to return on Wednesday, July 24, 2019 at 8:30 a.m. and Court was adjourned for the day. Signed by Judge Tanya Walton Pratt. (Court Reporter Cathy Jones.)(TRG) (Entered: |

| | | 07/24/2019) |
|---|---|---|
| 07/25/2019 | 238 | MINUTE ENTRY for bench trial held before Judge Tanya Walton Pratt on 7/24/2019 (Day 3): Parties appeared by counsel. Evidence entered and testimony presented. Parties were ordered to return on Thursday, July 25, 2019 at 8:30 a.m. and Court was adjourned for the day. Signed by Judge Tanya Walton Pratt. (Court Reporter Cathy Jones.)(TRG) (Entered: 07/25/2019) |
| 07/25/2019 | 239 | MINUTE ENTRY for bench trial held before Judge Tanya Walton Pratt on 7/25/2019 (Day 4): Parties appeared by counsel. Evidence entered and testimony presented. Parties were ordered to return on Wednesday, July 31, 2019 at 8:30 a.m. and Court was adjourned for the day. Signed by Judge Tanya Walton Pratt. (Court Reporter Cathy Jones.)(TRG) (Entered: 07/25/2019) |
| 07/31/2019 | 240 | NOTICE *of Tender of Exhibit 1209 (Continuation)*, filed by Plaintiff VON DUPRIN LLC, Cross Defendant VON DUPRIN LLC, Counter Defendants VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, VON DUPRIN LLC, re 232 Exhibit List. (Attachments: # 1 Exhibit 1209 cont'd) (French, Alexandra) (Entered: 07/31/2019) |
| 07/31/2019 | 241 | MINUTE ENTRY for bench trial held before Judge Tanya Walton Pratt on 7/31/2019 (Day 5): Parties appeared by counsel. Evidence entered and testimony presented. Parties were ordered to return on Thursday, August 1, 2019 at 8:30 a.m. and Court was adjourned for the day. Signed by Judge Tanya Walton Pratt. (Court Reporter David Moxley.)(TRG) (Main Document 241 replaced on 8/1/2019) (TRG). (Entered: 07/31/2019) |
| 08/02/2019 | 242 | MINUTE ENTRY for bench trial held before Judge Tanya Walton Pratt on 8/1/2019 (Day 6): Parties appeared by counsel. Evidence entered and testimony presented. Closing arguments presented. The Court ordered proposed findings of fact due no later than September 12, 2019. The Court will issue its ruling no later than September 30, 2019. The trial concluded and Court was adjourned. Signed by Judge Tanya Walton Pratt. (Court Reporter David Moxley.)(TRG) (Entered: 08/02/2019) |
| 08/02/2019 | 243 | EXHIBITS admitted into evidence during trial. Signed by counsel.(TRG) (Entered: 08/02/2019) |
| 08/13/2019 | 244 | TRANSCRIPT of Bench Trial (Vol. 5) held on 07/31/2019 before Judge Tanya Walton Pratt. (162 pages.) Court Reporter/Transcriber: David Moxley (Telephone: (317) 416-1749). Please review Local Rule 80-2 for more information on redaction procedures. Redaction Statement due 9/3/2019. Release of Transcript Restriction set for 11/12/2019. (Moxley, David) Released on 11/12/2019 (SWM). (Entered: 08/13/2019) |
| 08/13/2019 | 245 | TRANSCRIPT of Bench Trial (Vol. 6) held on 08/01/2019 before Judge Tanya Walton Pratt. (166 pages.) Court Reporter/Transcriber: David Moxley (Telephone: (317) 416-1749). Please review Local Rule 80-2 for more information on redaction procedures. Redaction Statement due 9/3/2019. |

| | | Release of Transcript Restriction set for 11/12/2019. (Moxley, David) Released on 11/12/2019 (SWM). (Entered: 08/13/2019) |
|---|---|---|
| 08/13/2019 | 246 | NOTICE of FILING of OFFICIAL TRANSCRIPT of Bench Trial (Vols. 5 - 6) held before Judge Tanya Walton Pratt on 07/31/2019 - 08/01/2019 (Moxley, David) (Entered: 08/13/2019) |
| 08/16/2019 | 247 | NOTICE of FILING of OFFICIAL TRANSCRIPT of Bench Trial, Volumes 1-4, held before Judge Tanya Walton Pratt on July 22, 23, 24, 25, 2019 (Jones, Cathy) (Entered: 08/16/2019) |
| 08/16/2019 | 248 | TRANSCRIPT of Bench Trial, Vol. 1, held on July 22, 2019 before Judge Tanya Walton Pratt. (264 pages.) Court Reporter/Transcriber: Cathy Jones (Telephone: (317) 922-9958). Please review Local Rule 80-2 for more information on redaction procedures. Redaction Statement due 9/6/2019. Release of Transcript Restriction set for 11/14/2019. (Jones, Cathy) Released on 11/15/2019 (SWM). (Entered: 08/16/2019) |
| 08/16/2019 | 249 | TRANSCRIPT of Bench Trial, Vol. 2, held on July 23, 2019 before Judge Tanya Walton Pratt. (247 pages.) Court Reporter/Transcriber: Cathy Jones (Telephone: (317) 922-9958). Please review Local Rule 80-2 for more information on redaction procedures. Redaction Statement due 9/6/2019. Release of Transcript Restriction set for 11/14/2019. (Jones, Cathy) Released on 11/15/2019 (SWM). (Entered: 08/16/2019) |
| 08/16/2019 | 250 | TRANSCRIPT of Bench Trial, Vol. 3, held on July 24, 2019, before Judge Tanya Walton Pratt. (243 pages.) Court Reporter/Transcriber: Cathy Jones (Telephone: (317) 922-9958). Please review Local Rule 80-2 for more information on redaction procedures. Redaction Statement due 9/6/2019. Release of Transcript Restriction set for 11/14/2019. (Jones, Cathy) Released on 11/15/2019 (SWM). (Entered: 08/16/2019) |
| 08/16/2019 | 251 | TRANSCRIPT of Bench Trial, Vol. 4, held on July 25, 2019, before Judge Tanya Walton Pratt. (61 pages.) Court Reporter/Transcriber: Cathy Jones (Telephone: (317) 922-9958). Please review Local Rule 80-2 for more information on redaction procedures. Redaction Statement due 9/6/2019. Release of Transcript Restriction set for 11/14/2019. (Jones, Cathy) Released on 11/15/2019 (SWM). (Entered: 08/16/2019) |
| 09/12/2019 | 252 | Proposed Findings of Fact by MORAN ELECTRIC SERVICE, INC.. (Bowman, Glenn) (Entered: 09/12/2019) |
| 09/12/2019 | 253 | Proposed Findings of Fact by MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC.. (Attachments: # 1 Text of Proposed Order of Major Tool & Major Holdings' Proposed Findings of Fact, Conclusions of Law, and Judgment)(Krahulik, Angela) (Entered: 09/12/2019) |
| 09/12/2019 | 254 | Proposed Findings of Fact by VON DUPRIN LLC. (Attachments: # 1 Text of Proposed Order)(French, Alexandra) (Entered: 09/12/2019) |
| 09/18/2019 | 255 | REDACTION STATEMENT re 245 Transcript, 251 Transcript, 248 Transcript, 250 Transcript, 249 Transcript, 244 Transcript filed by attorney |

| | | |
|---|---|---|
| | | Samuel B. Gardner. No redaction is needed. (Gardner, Samuel) (Entered: 09/18/2019) |
| 03/30/2020 | 256 | FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING BENCH TRIAL - Based upon the foregoing findings of fact and conclusions of law, the Court concludes that Von Duprin has shown by a preponderance of the evidence that it is entitled to an award of $510,000.00 plus interest from the Major Defendants and an award of $340,000.00 plus interest from Moran, for past response costs. Von Duprin is also entitled to an award of future costs in the same allocation percentage30% from the Major Defendants, 20% from Moranas those costs are incurred. (See Order.) Signed by Judge Tanya Walton Pratt on 3/30/2020.(NAD) (Entered: 03/30/2020) |
| 03/30/2020 | 257 | FINAL JUDGMENT PURSUANT TO FED. R. CIV. PRO. 58 - For the reasons detailed in the Court's Findings of Fact and Conclusions of Law, the Court now enters FINAL JUDGMENT in this action in favor of Plaintiff Von Duprin LLC and against Defendants Major Holdings, LLC; Major Tool and Machine, Inc.; and Moran Electric Service, Inc. Plaintiff Von Duprin LLC has shown by a preponderance of the evidence that it is entitled to an award of $510,000 plus interest from Defendants Major Holdings, LLC and Major Tool and Machine, Inc., and an award of $340,000 plus interest from Moran Electric Service, Inc under 42 U.S.C. § 9607(a). Von Duprin's request for a declaratory judgment under § 9613(g) is granted. Thus, Von Duprin is entitled to an award of future costs in the same allocation percentage30% from the Major Defendants, 20% from Moranas those costs are incurred, provided they are cleanup costs for the properties upgradient or downgradient of the Von Duprin property and that they are not inconsistent with the National Contingency Plan. This action is TERMINATED. Signed by Judge Tanya Walton Pratt on 3/30/2020.(NAD) (Entered: 03/30/2020) |
| 04/28/2020 | 258 | NOTICE OF APPEAL as to 256 Findings of Fact and Conclusions of Law Following Bench Trial, 257 Closed Judgment, filed by Defendants MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC. (Filing fee $505, receipt number 0756-5971799) (Krahulik, Angela) Modified on 4/29/2020 - added link to Entry at 203 (NAD). Modified on 4/29/2020 to create link to add'l document (LBT). (Entered: 04/28/2020) |
| 04/28/2020 | 259 | DOCKETING STATEMENT by MAJOR HOLDINGS, LLC, MAJOR TOOL AND MACHINE, INC. re 258 Notice of Appeal (Krahulik, Angela) (Entered: 04/28/2020) |

**Case #: 1:16-cv-01942-TWP-DML**