UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| VON DUPRIN LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:16-cv-01942-TWP-MG |
| ) | |
| MORAN ELECTRIC SERVICE, INC., ) | |
| MAJOR HOLDINGS, LLC, ) | |
| MAJOR TOOL AND MACHINE, INC., ) | |
| ZIMMER PAPER PRODUCTS ) | |
| INCORPORATED Defaulted on 7/24/2017, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| MAJOR HOLDINGS, LLC, ) | |
| MORAN ELECTRIC SERVICE, INC., ) | |
| MAJOR HOLDINGS, LLC, ) | |
| MORAN ELECTRIC SERVICE, INC., ) | |
| MAJOR TOOL AND MACHINE, INC., ) | |
| MORAN ELECTRIC SERVICE, INC., ) | |
| ) | |
| Counter Claimants, ) | |
| ) | |
| v. ) | |
| ) | |
| VON DUPRIN LLC, ) | |
| MAJOR HOLDINGS, LLC, ) | |
| VON DUPRIN LLC, ) | |
| VON DUPRIN LLC, ) | |
| MAJOR HOLDINGS, LLC, ) | |
| VON DUPRIN LLC, ) | |
| VON DUPRIN LLC, ) | |
| MAJOR TOOL AND MACHINE, INC., ) | |
| ) | |
| Counter Defendants. ) | |
| ) | |
| ) | |
| MAJOR HOLDINGS, LLC, ) | |
| MAJOR HOLDINGS, LLC, ) | |
| MAJOR TOOL AND MACHINE, INC., ) | |
| ) | |

|   |   |
|---|---|
| Cross Claimants, | ) |
| | ) |
| v. | ) |
| | ) |
| MORAN ELECTRIC SERVICE, INC., | ) |
| MORAN ELECTRIC SERVICE, INC., | ) |
| VON DUPRIN LLC, | ) |
| | ) |
| Cross Defendants. | ) |

**REPORT AND RECOMMENDATION REGARDING**
**MOTION FOR CONTRIBUTION PROTECTION**

This matter is before the Court on the Joint Motion for Contribution Protection filed by Plaintiff Von Duprin LLC ("Von Duprin") and Defendant Moran Electric Service, Inc. ("Moran"), and Defendants Major Holdings, LLC and Major Tool and Machine, Inc. (collectively, "Major") [Filing No. 313]. Chief Judge Tanya Wilson Pratt has designated the undersigned Magistrate Judge to issue a report and recommendation regarding the motion pursuant to 28 U.S.C. § 636(b)(1)(B). [Filing No. 319.] For the reasons set forth below, the Magistrate Judge recommends that the motion be **GRANTED**.

### I. BACKGROUND

Plaintiff alleges that the Defendants in this case are responsible for releases or threats of releases of hazardous substances at various properties. Plaintiff seeks to recover costs it allegedly incurred in conducting certain removal and/or remedial actions relating to the contamination. Plaintiff asserts various state and federal claims against the Defendants; the Defendants assert various counterclaims and various contribution crossclaims against each other pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERLCA"), 42 U.S.C. § 9601 et seq.

On or around December 2, 2022, the parties entered into various settlement agreements. [Filing No. 313-1; Filing No. 313-2; Filing No. 313-3.] All the settlement agreements have now been finalized and submitted to the Court for review.

All of the settlement agreements are contingent on the Court entering an order barring any future claims against the Settling Defendants for contribution by any party or non-party to this case. Such an order would resolve the crossclaims between the Settling Defendants. No other potentially liable parties have been identified by the parties.

## II. DISCUSSION

CERCLA contains no express provision that permits the contribution bar sought by the Settling Defendants. However, in cases brought by the federal or a state government, the statute provides as follows:

> A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

42 U.S.C. § 9613(f)(2). "[I]n order to facilitate settlement in environmental clean-up cases, a number of federal courts have interpreted CERCLA's language to include private parties and determined that non-settling defendants are barred from making any existing or future crossclaims for contribution against settling private parties." *United States v. Mallinckrodt, Inc.*, 2006 WL 3331220, at *2 (E.D. Mo. Nov. 15, 2006) (collecting cases). Courts have found such bars to be appropriate because they further the "strong federal interest in promoting settlement," which "is especially pronounced in complex matters such as CERCLA claims, where the amount of evidence to be gathered for assessing liability is voluminous." *Allied Corp. v. ACME Solvent Reclaiming, Inc.*, 771 F. Supp. 219, 222 (N.D. Ill. 1990) (citing *Metropolitan Housing Dev. Corp. v. Arlington*

2

*Heights*, 616 F.2d 1006, 1013 (7th Cir. 1980)). The Court agrees with the reasoning of the court in *Allied Corp.*: Because "[i]t is hard to imagine that any defendant in a CERCLA action would be willing to settle if, after the settlement, it would remain open to contribution claims from other defendants," and "[t]he measure of finality which a cross-claim 4 bar provides will make settlements more desirable," *Id.*, it is appropriate to enter contribution bars in cases involving settlements between private parties in certain circumstances.

The parties agree that in determining whether such circumstances exist in this case, the Court should consider the same factors that are relevant to a decision whether to approve a CERCLA settlement in which the federal government or a state is involved.

> Under well-established law, in deciding whether to approve a proposed settlement in the CERCLA context, the court must apply the following three factors: (1) whether the proposed decree is fair; (2) whether the settlement is reasonable; and (3) whether the proposed decree is consistent with and faithful to the objectives of the statute. *United States v. CBS Corp.*, 2009 WL 2230889, at *7 (S.D. Ind. 2009) (Young, J.); *see also United States v. SCA Servs. of Ind., Inc.*, 827 F. Supp. 526, 532 (N.D. Ind. 1993) (citing *United States v. Cannons Engineering Corp.*, 899 F.2d 79, 84 (1st Cir. 1990)). The approval of settlements in the CERCLA context is "committed to the trial court's informed discretion." 827 F.Supp. at 532 (quoting 899 F.2d at 84). "It is not the court's function to determine whether the proposal is the best possible settlement that could have been obtained or one which the court itself might have fashioned, but rather 'whether the settlement is within the reaches of the public interest.'" 827 F. Supp. at 533 (quoting 899 F.2d at 84).

*Evansville Greenway & Remediation Tr. v. S. Indiana Gas & Elec. Co., Inc.*, 2010 WL 11569547, at *1 (S.D. Ind. Sept. 8, 2010) (footnote in original); *see also e.g.*, *Haber Land Co. Ltd. V. Am. Steel City Indus. Leasing*, No. 1:18-cv-0491-JMS-MJD, 2020 WL 3259016 (S.D. Ind. June 1, 2020), *report and recommendation adopted by* No. 1:18-cv-04091-JMS-MJD, 2020 WL 3258649, at *1 (S.D. Ind. June 16, 2020). The Court finds that approach to be appropriate and, accordingly, examines each of the relevant factors, in turn, below.

    A.    **Fairness**

"Fairness in the CERCLA settlement context has both procedural and substantive components. 'To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance.'" *Haber*, 2020 WL 3259016 at *3. In this case, the parties' settlement negotiations were achieved after years of negotiations, multiple formal mediations—with a private mediator and the Court—multiple informal negotiations, filings for summary judgment, a full bench trial, and conducting an appeal. The Court is confident that the parties engaged in good faith negotiations. There is no reason to believe that the settlement positions taken by the parties were based on anything other than their assessment of the risks and the costs of continuing to litigate considering the Seventh Circuit's ruling in this case, and the settlements ultimately reached are reasonable considering those positions. Accordingly, the Court has no concern about the procedural fairness of the settlements.

Regarding substantive fairness, it "requires that the settlement terms be based upon, and roughly correlated with, some acceptable measure of comparative fault, apportioning liability among the settling parties according to rational (if necessarily imprecise) estimates of how much harm each [potentially responsible party] has done." *Id.* (internal citations and quotations omitted). "The court will uphold the terms of a settlement so long as the measure of comparative fault on which the settlement terms are based is not arbitrary, capricious, and devoid of a rational basis." *Id.* (internal citations and quotations omitted).

The parties explain in their brief in support that "[t]he settlement amount paid by Major—a bona fide prospective purchaser for two of the relevant properties and the only party to this lawsuit that indisputably did not cause or contribute to any of the relevant Contamination—is consistent with the prior judgment issued by the Court and the estimated costs necessary to address the Contamination in the commingled plume." [Filing No. 313 at 7.] The Moran settlement

4

provides that Moran will pay a percentage of the investigation and clean-up costs and is consistent with the percentage previously determined by this Court. [Filing No. 313 at 8.] The Court finds that the settlements reflect the parties' informed and rational analysis of the available information in this case and therefore are substantively fair.

### B.  Reasonableness

In evaluating the reasonableness of a settlement, courts look to "various factors including the settlement's likely efficaciousness as a vehicle for cleansing the environment; the extent to which it satisfactorily compensates the public for actual and anticipated costs of remedial and response measures; and the relative strength of the parties' litigating positions." *Id.* (internal citations and quotations omitted). "Courts also consider the foreseeable litigation risks and transaction costs associated with litigation when determining whether a settlement is reasonable." *Id.*

In this case, Major has agreed to make a settlement payment to Von Duprin in exchange for Von Duprin's agreement to obtain a regulatory closure for the plume. The parties stipulate that the Indiana Department of Environmental Management ("IDEM") as approved a preliminary remediation work plan as part of Von Duprin's voluntary remediation program, and Von Duprin will perform future remedial worked under IDEM's oversight and with its approval. [Filing No. 313 at 8.] The parties contend that while Major may have ultimately benefitted through continued litigation, having entered into a settlement at this stage, Major is ensuring that funds are used to remediate the Contamination rather than incurring litigation costs. [Filing No. 313 at 9.] Similarly, the parties note that Moran has agreed to pay Von Duprin an agreed-upon percentage of the costs necessary to obtain regulatory closure of the plume, allowing Von Duprin to move forward with funds from both Moran and Major, rather than continued litigation.

Settling this case now, rather than continuing to litigate, means that funds that would have been spent on litigation by all sides will go toward remediation. While it is possible that Plaintiff could have netted more by litigating this case to judgment, it recognizes the very real risk that it could have netted less. It was certainly reasonable to choose the certainty of settlements now over uncertain judgments that might be obtained after many more months of litigation. Therefore, the Court finds that the settlements easily satisfy the reasonableness requirement.

### C.   Consistency with Objectives of CERCLA

Finally, the Court must ensure that the settlements are consistent with the objectives of CERCLA. CERCLA "was designed to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." *Id.* (quoting *Bernstein v. Bankert*, 733 F.3d 190, 200 (7th Cir. 2013). Where a settlement is fair and reasonable, it will further these goals. *Id.* This case is no exception. As discussed above, the settlements in this case clearly further the objectives of CERCLA, as the property will be remediated and each potentially liable party that has the means to do so will contribute to the cost of that remediation.

### III.   CONCLUSION

For the reasons set forth above, the Magistrate Judge finds that the settlements reached by the parties are fair, reasonable, and consistent with the objectives of CERCLA. Accordingly, the Magistrate Judge recommends that the parties' joint motion seeking a contribution bar [313], be **GRANTED** and that the Court enter the following order:

> The settlements between the Plaintiff and Defendants Moran Electric Services, Inc., Major Holdings, LLC, and Major Tool and Machine, Inc. (the "Settling Defendants") are hereby approved and, pursuant to the All Writs Act, 28 U.S.C. § 1651(a), upon dismissal of this case, any federal, state, or common law contribution claim now or hereafter asserted against the Settling Defendants relating to environmental contamination at or emanating from the properties located at (1) 1931 Dr. Andrew J. Brown Avenue, Indianapolis, Indiana

(sometimes referenced in documentation as 1401 East 20th Street, Indianapolis, Indiana) (Local Parcel Numbers 1090311 and 1090578), (2) 1931 Dr. Andrew J. Brown Avenue, Indianapolis, Indian (Local Parcel number 1104465); (3) 2045 Dr. Andrew J. Brown Avenue, Indianapolis, Indiana (Local Parcel umber 1006760); 1450 East 20th Street, Indianapolis, Indiana (Local Parcel number 1090308); (4) 1929 Columbia Avenue, Indianapolis, Indiana (Local Parcel numbers 1077482 and 1104806), asserted by any party to this lawsuit or any person, agency, or entity not currently named a party to this lawsuit shall be barred.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

**SO ORDERED.**

Date: 12/21/2022

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**